| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| *Caption in Compliance with D.N.J. LBR 9004-2(c)* |
| Ciardi Ciardi & Astin<br>Albert A. Ciardi, III, Esquire<br>Daniel S. Siedman, Esquire<br>1905 Spruce Street,<br>Philadelphia, PA 19103<br>Telephone:  215-557-3550<br>Facsimile:  215-557-3551<br>aciardi@ciardilaw.com<br>dsiedman@ciardilaw.com |

| | |
|---|---|
| *In re:* | Chapter 11 |
| Daryl Fred Heller | Case No. 25-11354 |
| Debtor. | |

### CERTIFICATION OF ALBERT A. CIARDI III IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO CONTINUE THE STATE COURT PROCEEDINGS AGAINST THE DEBTOR IN PENNSYLVANIA AND NEW JERSEY, PROHIBIT USE OF CASH COLLATERAL, TRANSFER VENUE AND EXPEDITED DISCOVERY

Certification of Albert A. Ciardi III in support of the Motion of Deerfield Capital, LLC ("Deerfield" or "Movant") for Relief from the Automatic Stay, Prohibit Use of Cash Collateral, Transfer Venue and Expedited Discovery and in support thereof avers as follows:

### PARTIES

1.      Deerfield Capital, LLC ("Deerfield") is a limited liability company formed and operating in the Commonwealth of Pennsylvania, with a mailing address of 16 Deerfield Road, Lancaster, PA 17603.

2.      Daryl Heller ("Heller" or "Debtor") is an individual and resident of the Commonwealth of Pennsylvania who owns seventy-six percent (76%) of a property in Cape May County at 7605 Pleasure Avenue, Sea Isle City, NJ 08243 (the "Property").  Heller has

1

fraudulently filed for bankruptcy relief in the District of New Jersey claiming that his principal

asset is in New Jersey[1].

## FACTS

3.      On or about April 11, 2024, Heller Capital Group, LLC ("Borrower") made,

executed and delivered to Deerfield a Promissory Note evidencing Heller Capital's indebtedness

and obligations to Deerfield in the face amount of $5,900,000 (the "Note"). A true and correct

copy of the Note is attached hereto as **Exhibit A.**  The Note contains a warrant of attorney which

authorizes a confession of judgment upon the occurrence of an event of default.

4.      In order to further induce Lender to provide funds to Borrower under the Note,

Borrower provided a Membership Pledge Agreement to Deerfield (the "Pledge Agreement").

Heller Investment Holdings, LLC ("Heller Investment") is a Guarantor and Co-Borrower.  Heller

is a Co-Borrower and Guarantor as well.  A true and correct copy of the Guaranty is attached

hereto **Exhibit B**.  Heller Capital, Heller Investment and Heller are hereinafter referred to

collectively as "Judgment Debtors."

5.      Judgment Debtors defaulted on the Note as a result of: (a) the Borrower's failure to

pay the entire principal by the maturity date, April 15, 2024, and (b) Daryl Heller's failure to pay

pursuant to its guaranty.  *See* **Exhibit A** and **Exhibit B**.

6.      Furthermore, Judgment Debtors made, executed and delivered to Deerfield a

Forbearance Agreement whereby Judgment Debtors acknowledged and confirmed the default

---

[1] While Heller is no stranger to fraud, this most recent action is one of his more desperate.  After injunctions were
entered against him in Pennsylvania on February 6, 2025, and New York on December 17, 2024, the Debtor has
violated those orders.  Heller has provided financial statements which do not list any assets in New Jersey.  His
petition, signed under penalty of perjury, indicates that his principal asset is a house in Sea Isle City, clearly a false
statement, however, given the number of false statements he has made in the last six months alone, not a surprise.

under the Note on April 15, 2024, and further acknowledged the total amount due of $6,150,000.00 (the "Forbearance Agreement").

7.      Judgment Debtors defaulted on the Forbearance Agreement by failing to satisfy the loan.

8.      On or about April 23, 2024, Judgment Debtors made, executed and delivered to the Deerfield a second forbearance agreement whereby Judgment Debtors acknowledged and confirmed the default of the Note and Forbearance Agreement and further acknowledged the total amount due of $6,650,000.00 (the "Second Forbearance Agreement").

9.      Judgment Debtors defaulted on the Second Forbearance Agreement.

10.     On or about June 4, 2024, Judgment Debtors made, executed and delivered to the Deerfield a third forbearance agreement whereby Judgment Debtors acknowledged and confirmed the default of the Note and Second Forbearance Agreement and further acknowledged the total amount due of $6,680,000.00 (the "Third Forbearance Agreement").

11.     Judgment Debtors defaulted on the Third Forbearance Agreement.

12.     On or about August 12, 2024, Judgment Debtors made, executed and delivered to the Deerfield a fourth forbearance agreement whereby Judgment Debtors acknowledged and confirmed the default of the Note and Third Forbearance Agreement and further acknowledged the total amount due of $6,838,653.35 (the "Fourth Forbearance Agreement").

13.     Judgment Debtors defaulted on the Fourth Forbearance Agreement

14.     The Fourth Forbearance Agreement required all obligations to be fully satisfied on or before August 14, 2024, a deadline with which Judgment Debtors did not comply.

15.     On or about October 20, 2024, Judgment Debtors made, executed and delivered to Deerfield a fifth forbearance agreement whereby Judgment Debtors further acknowledged and

confirmed the default of the Note and Fourth Forbearance Agreement (among other forbearance

agreements, all of which are in default) and confirmed the total amount due of $7,349,250.86, plus

additional fees, costs and interest (the "Fifth Forbearance Agreement").  A true and correct copy

of the Fifth Forbearance Agreement is attached hereto as **Exhibit C**.

   16. The Fifth Forbearance Agreement required all obligations to be fully satisfied on

or before October 31, 2024.

   17. Judgment Debtors are in default of the Note and Fifth Forbearance Agreement (and

all prior forbearance agreements) for the following reasons:

    (a) failure to timely make payments as set forth in Section 2(a) of the Note;

    (b) failure to pay the balance on maturity as required by Section 1 of the Pledge

Agreement; and

    (c) failure to pay all forbearance exit fees as required by Section 2(a) of the

    Fifth Forbearance Agreement.

*See* **Exhibits A**, **B**, **and C**.

   18. The Fifth Forbearance Agreement incorporated all the prior Forbearance

Agreements and defaults set forth therein.  *See* **Exhibit C**.  All Forbearance Agreements by and

between Judgment Debtors and Deerfield re-stated the Warrant of Attorney and Confession of

Judgment language.

   19. The Confession of Judgment language in the Note specifically states:

> **THE FOLLOWING PARAGRAPH SETS FORTH A
> WARRANT OF ATTORNEY TO CONFESS JUDGMENT
> AGAINST THE MAKER. IN GRANTING THIS WARRANT
> OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE
> MAKER, THE MAKER HEREBY KNOWINGLY,
> INTENTIONALLY AND VOLUNTARILY, AND, ON THE
> ADVICE OF SEPARATE COUNSEL OF THE MAKER,
> UNCONDITIONALLY WAIVE ANY AND ALL RIGHTS**

THE MAKER HAVE OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR A HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MAKER HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ATTORNEYS OF ANY COURT OF COMMON PLEAS OF PENNSYLVANIA, OR ANY ATTORNEY OR ATTORNEYS OF ANY OTHER COURT OF RECORD ELSEWHERE, OR THE PROTHONOTARY OR CLERK OF ANY COURT OF RECORD IN PENNSYLVANIA OR ELSEWHERE, TO APPEAR FOR MAKER IN SUCH COURT IN AN APPROPRIATE ACTION THERE OR ELSEWHERE BROUGHT OR TO BE BROUGHT AGAINST MAKER AT THE SUIT OF HOLDER ON THIS NOTE, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD, AND THEREIN CONFESS OR ENTER JUDGMENT AGAINST MAKER FOR THE EXACT SUM WHICH SHALL BE THE AMOUNT OF THE AFORESAID PRINCIPAL SUM OF THIS NOTE, WITH LOAN FEES, INTEREST AND WITH ANY OTHER PAYMENTS AND CHARGES WHICH ARE PAYABLE BY THE MAKER UNDER THE TERMS OF THE LOAN DOCUMENTS, AND WITH COSTS OF SUIT AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) FOR COLLECTION (BUT IN NO EVENT LESS THAN TEN THOUSAND DOLLARS ($10,000.00) NOR MORE THAN THE ACTUAL ATTORNEY FEES INCURRED); AND FOR SO DOING, THIS NOTE OR A COPY THEREOF VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT, WITHOUT FURTHER STAY, AND WITH FULL RELEASE OR ERRORS, ANY LAW, USAGE OR CUSTOM TO THE CONTRARY NOTWITHSTANDING. SUCH AUTHORITY AND POWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF, AND JUDGMENT MAY BE CONFESSED AS AFORESAID FROM TIME TO TIME AS THERE IS OCCASION THEREFOR.

MAKER ACKNOWLEDGES AND AGREES THAT (i) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (ii) HOLDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT

> **OF DEFAULT AND IN ACCORDANCE WITH THE
> FOREGOING WARRANT OF ATTORNEY WOULD BE
> IN ACCORDANCE WITH MAKER'S REASONABLE
> EXPECTATIONS, AND (iii) MAKER HEREBY WAIVES
> THE EFFECT AND APPLICATION OF, AND AGREES THE
> HOLDER SHALL NOT BE BOUND BY, THE DUTIES AND
> OBLIGATIONS IMPOSED
> BY 20 PA.C.S SECTION 5601.3(b) WITH REGARD TO ANY
> RIGHT, POWER OR REMEDY GRANTED TO THE
> HOLDER IN THIS NOTE OR ANY OTHER RELATED
> LOAN DOCUMENTS.**

*See* **Exhibit A**, Paragraph 8.

20.     The Fifth Forbearance Agreement also includes a separate warrant of attorney

provision, which specifically states:

> **BORROWER, HELLER CAPITAL GROUP, INC., PLEDGOR, HELLER
> INVESTMENT HOLDINGS, LLC AND GUARANTOR, DARYL HELLER,
> HEREBY AUTHORIZE AND EMPOWER ANY ATTORNEY OR THE
> PROTHONOTARY OR CLERK OF ANY COURT IN THE
> COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR
> AT ANY TIME FOR DEBTORS, FOR ALL OBLIGATIONS AND ANY AND
> ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO
> ANY COLLATERAL SECURING THE OBLIGATIONS, TOGETHER WITH
> COSTS OR SUIT, AND AN ATTORNEY'S COMMISSION OF (10%) OF THE
> OBLIGATIONS FOR COLLECTION, BUT IN ANY EVENT NOT LESS
> THAN ONE HUNDRED THOUSAND DOLLARS ($100,000.00) ON WHICH
> JUDGMENT OR JUDGMENTS ONE OF MORE EXECUTIONS MAY ISSUE
> IMMEDIATELY; AND FOR SO DOING, THE WITHIN AGREEMENT
> SHALL BE SUFFICIENT WARRANT, THE AUTHORITY GRANTED IN
> THE WITHIN AGREEMENT TO CONFESS JUDGMENT AGAINST
> DEBTORS SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT
> AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT
> ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER
> THE AGREEMENT, DEBTORS HEREBY WAIVE ANY RIGHT DEBTORS
> MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH
> ANY SUCH CONFESSION OF JUDGMENT TO THE EXTENT THE
> ATTORNEY FEES AND OTHER COSTS AND EXPENSES DEMANDED BY
> LENDER FROM DEBTORS EXCEED TEN PRECENT (10%) OF THE
> OBLIGATIONS, DEBTORS HEREBY AUTHORIZE LENDER TO PETITION
> THE COURT FOR AN ADDITIONAL AWARD OF FEES AND EXPENSES
> AND AGREES NOT TO OPPOSE SUCH PETITION.**

*See* **Exhibit C**, Paragraph 11

21. Judgment Debtors executed a Disclosure of Confession of Judgment whereby Debtor acknowledged that it was represented by independent legal counsel and knowingly, intelligently and voluntarily waived its rights. A true and correct copy of the Disclosure of Confession of Judgment is attached hereto as **Exhibit D.**

22. In order to induce Deerfield to enter into the Fifth Forbearance Agreement, Judgment Debtors acknowledged they were represented by counsel and specifically released and waived any defenses to the Note. *See* **Exhibit C**, Paragraph 6.

23. Pursuant to the above-mentioned event of default under the Fifth Forbearance Agreement on December 5, 2024, Deerfield confessed judgment against Judgment Debtors, for the total amount of $7,916,938.92 and reasonable attorney's fees in the amount of $791,693.89, for a total of $8,708,632.81, plus interest and costs.

24. The following amounts are immediately due and payable by Judgment Debtors in connection with the Note and Fifth Forbearance Agreement:

| | |
|---|---|
| Principal as of November 21, 2024 | $ 7,916,938.92 |
| Attorney's Fees (10% Commission) | $  791,693.89 |
| Total | $ 8,708,632.81 |

25. On December 5, 2024, Deerfield filed the following complaints in confession of judgment in the Court of Common Pleas of Lancaster County, Pennsylvania:

a. *Deerfield Capital, LLC v. Heller Capital Group*, LLC, No. CI-24-08737;

b. *Deerfield Capital, LLC v. Daryl F. Heller*, No. CI-24-08740; and

c. *Deerfield Capital, LLC v. Heller Investment Holdings, LLC*, No. CI-24-08739.

26. Judgment by confession was entered on December 5, 2024 against Heller and Heller has taken no action to contest or challenge that Judgment.

7

27.     Deerfield has transferred an Exemplified Judgment to the State of New Jersey which is currently processing through the JEDS system.  A true and correct copy of the Request to Record Foreign Judgment is attached hereto as **Exhibit E**.  Once that transfer is completed, Deerfield will take steps to register that Judgment as a lien on the Property in Cape May County.

28.     On January 30, 2025, Deerfield notified the broker for Heller that a judgment was in the process of transferring to New Jersey.  A true and correct copy of the Letter to the Broker is attached hereto as **Exhibit F**.  Important to note, Heller was at this point already subject to an injunction from the Supreme Court of New York preventing the transfer of assets anywhere, however, in flagrant violation of that order, he executed a sale agreement and a deed package for the Property and, upon information and belief, was preparing to close on the sale of the Property at any minute but for the Order to Show Cause filed by Deerfield on February 7, 2025 in Superior Court of New Jersey[2].

29.     On February 4, 2025, a notice of agreement of sale was filed of record.  A true and correct copy of the Notice of Agreement of Sale is attached hereto as **Exhibit G**.

30.     Deerfield does not have a copy of the Agreement of Sale but believes it is an arm's length buyer and has been in contact with buyer's counsel.

31.     Deerfield is currently attempting to execute on Heller's assets in Pennsylvania, Massachusetts, Michigan and Maryland.  Heller has been evading service of process and discovery in the pending Pennsylvania matters.

32.     As part of the pre-judgment attempts to negotiate with Judgment Debtors, Deerfield became aware of material misrepresentations made by Heller regarding certain assets represented to be a source of repayment.

---

[2] This Superior Court matter is now stayed and it is clear that Heller filed solely to prevent the Superior Court from ruling on that Order to Show Cause.

33.    To be abundantly clear, Heller has committed fraud, has dissipated assets and evaded service.  Deerfield has filed, with this Motion, a Notice of Deposition of Heller under FRBP 9014 and 7030 and will seek the Court's involvement for expedited scheduling of both a deposition and a hearing. The bankruptcy process is for honest and transparent debtors willing to make full disclosures.  Heller is the antipathy of that concept.  Deerfield fully expects that when Heller testifies at that deposition, his creditors meeting or the hearing on this Motion for Relief, Heller will assert his Fifth Amendment rights and, as a result, waste both the Court's time and the creditors' time.

34.    Deerfield was provided with a series of documents from Heller which purported to show a potential distribution that would occur for several million dollars from an entity owned by Daryl Heller.  However, a review of the documents' metadata revealed that it was created minutes before being sent to Deerfield and, based upon a conversation with the counterparty to the document, was a fraud.

35.    Deerfield is aware of the allegations asserted against Heller in the Paramount action pending in the Court of Common Pleas for Lancaster County at CI-24-06012 (the "Paramount Action") and the action filed by Jerry D. Hostetter in that same court at CI-24-06517. Given the nature and gravity of the allegations in the Paramount action and the fraudulent conduct which has occurred in conjunction with Deerfield's attempts to collect in the present action, Deerfield sought supplementary relief to protect its collateral.  A $2,000,000 contempt award was entered against Heller, however, Heller's fraudulent Chapter 11 petition does not mention this claim, another false statement under oath[3].  A true and correct copy of the Order for Contempt is attached hereto as **Exhibit H.**

---

[3] To the extent Heller tries to excuse the omission of this creditor from his Petition under some theory that he forgot, Heller filed a notice of appeal of the judgment on the last day and this creditor was clearly on his mind .

36.     Heller, at a recent hearing in the Paramount Action, declined to testify based upon his Fifth Amendment right not to self-incriminate.  However, his right to preserve his liberty creates serious concerns about the value of Deerfield's collateral and the management of the entities under Heller's control.

37.     Deerfield also has a judgment against Heller Investment and Heller Capital and has moved for the Appointment of a Receiver of both, Heller Investment and Heller Capital, in the Court of Common Pleas of Lancaster County, Pennsylvania.

38.     Deerfield has also filed a Complaint against various entities who may have received fraudulent transfers from Debtor, Heller Capital or Heller Investment.  A true and correct copy of the Complaint against Accordo, *et. al.* is attached hereto as **Exhibit I.**

39.     The Court of Common Pleas of Lancaster County recently entered a Preliminary Injunction against Heller and others, a copy of the Petition and Order are attached hereto as **Exhibit J.**

40.     Heller has been prohibited since February 6, 2025 from transferring any asset in excess of $1,000.00.  Therefore, Movant is entitled to full and complete discovery on the source of funds for his counsel and where Heller is banking.

41.     Furthermore, Heller Capital Inc. recently sold its interest in an entity known as Prevail Ventures, LLC/ProSportsman, but none of those proceeds were paid to Deerfield but, rather, were diverted.

42.     Heller, upon information and belief, is liquidating assets and not paying his debts.

43.     Heller made transfers and incurred obligations in the value of millions of dollars to third parties in the exact amount to be determined in discovery.

44.     Some if not all transfers and/or obligations were made to insiders.

45.     Upon information and belief, Heller retained possession or control of the property transferred.

46.     The Judgment Debtors, including Heller, upon information and belief, transferred substantially all of the valuable and liquid assets of the Judgment Debtors leaving the Judgment Debtors with investments in potentially worthless assets or assets subject to litigation.

47.     Judgment Debtors, including Heller, made such transfers well aware that the representations made to Deerfield and various other creditors regarding assets were false and with full knowledge of the fraud and mismanagement at the Paramount companies.

48.     Judgment Debtors, including Heller, transferred these assets to move real estate and valuable property away from creditors with full knowledge of their ongoing fraudulent conduct.

49.     Upon information and belief, the value of the consideration received by said Judgment Debtors was not reasonably equivalent to the value of the property transferred and/or the amount of the obligation incurred.

50.     Upon information and belief, said Judgment Debtors were insolvent or became insolvent shortly after said transfers were made or the obligations incurred.

51.     Judgment Debtors, and Heller, each had an actual intent to hinder, delay, or defraud the Deerfield.

52.     Heller, Heller Capital, and Heller Investment Holdings in the last year have removed money or assets from the reach of creditors as follows:

      a.  Grandview Jets, an entity owned in part by Defendant Heller, sold a jet aircraft in December 2024[4]. Heller Capital owns a substantial portion of Grandview Jets

---

[4]  Deerfield has just learned of this sale and reserves the right to take further action with regards to the sale in December 2024

and, despite the security interest of Deerfield in Heller Capital, none of the funds related to that sale were paid to Deerfield.

b.  Heller Capital sold an interest in Prevail Ventures to KGH Synergies in December 2024. Again, no proceeds were paid to Deerfield.

c.  Heller purchased a parcel of improved real property in Lancaster County in January 2024 for $439,000 and then, in July 2024, transferred the property to his son, Ethan Heller, for One Dollar.

d.  Heller transferred an interest in a company known as Green Cabbage in September/October 2024 and advised Deerfield that almost $8,000,000.00 would be paid from the sale to Deerfield. However, Deerfield determined that the documents provided by Heller were fraudulent and created just moments before Heller sent an email to Deerfield concerning that transaction. Upon further investigation, counsel to the buyer confirmed to Deerfield that the documents provided by Heller were fraudulent, that Heller was paid several million dollars already, and that he would not be paid any further sums.

e.  The transfers mentioned above would have provided funds to substantially satisfy Deerfield's claim, but Heller fraudulently and intentionally moved assets out of the reach of creditors.

f.  Deerfield has filed and perfected UCC-1s on each of the Judgment Debtors. True and correct copies of the as-filed UCC-1s on the Judgment Debtors are attached hereto as **Exhibit K.**

g.  Deerfield is a secured creditor of Heller and opposes any use of cash collateral because of Heller's fraud**.**

53. Heller Capital Group transferred $1,300,000.00 to the Heller Family Foundation in 2023 at a time when Heller was clearly insolvent.

54. Heller, in August 2024, was chartering private jets to visit his daughter while he owed millions to the Deerfield and involved in litigation over hundreds of millions of dollars missing from investors in related companies, monies for which Heller has still not accounted[5].

55. A preliminary injunction order was entered on February 7, 2025. *See* **Exhibit J**.

56. On February 7, 2025, Deerfield filed a Verified Complaint for a Constructive Trust in New Jersey. An Order to show cause was entered and a hearing was scheduled for February 10, 2025.

57. Heller filed this bankruptcy to evade the lien from the Judgment being transferred to New Jersey and the effect of the preliminary injunction entered in Lancaster County. That injunction remains in place as to all parties other than Debtor.

58. Heller has fraudulently transferred assets in the recent past in an attempt to evade his creditors.

## MOTION FOR RELIEF FROM AUTOMATIC STAY

59. Deerfield incorporates paragraphs 1 through 58 as if full set forth herein.

60. Bankruptcy Code section 362(d) provides that on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay for cause. 11 U.S.C.§ 362(d)(1).

61. Because section 362(d)(1) does not define the term "cause," courts are left to consider what constitutes cause based on the totality of the circumstances in each particular

---

[5] Movant will seek discovery of Heller as relevant to this Motion for a full and complete accounting of his assets and liabilities over the past year as well as an accounting of to where all the misappropriated investor fund are hidden. Movant will also seek discovery as to any transfers after December 17, 2024.

case. *In re Heine*, 2022 U.S. App. LEXIS 7759, at *6 (3d Cir. Jan. 12, 2022) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). The Third Circuit accords wide latitude to a bankruptcy court in determining whether to grant relief from the automatic stay. *Id.* (citing *In re Myers*, 491 F.3d 120, 130 (3d Cir. 2007)).

62.    The Third Circuit has expressly noted that the legislative history of section 362(d)(1) provides: "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Wilson*, 116 F.3d at 91 (quoting S. Rep. No. 95-989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N 5787, 5836).

63.    With this principle in mind, the Third Circuit has repeatedly recognized that relief from the automatic stay is appropriate to permit a proceeding to continue in another court. *See, e.g.*, *Heine*, 2022 U.S. App. LEXIS 7759, at *2, 5-7 (holding that bankruptcy court did not abuse its discretion when it granted relief from the automatic stay to allow movant to continue to litigate ongoing state court action against debtor where "there had already been extensive proceedings" in the action at the time the debtor filed petition and the state court had already resolved certain issues in the action); *Boltz-Rubinstein v. Berman*, 2011 U.S. App. LEXIS 22460, at *1-2 (3d Cir. Nov. 3, 2011) (affirming district court decision that affirmed bankruptcy court decision granting creditor relief from automatic stay to pursue litigation against debtor in Washington district court, where district court had found that parties had made requests for a jury trial; the Washington action was "progressing"; the record supported the bankruptcy court's concern that the debtors' bankruptcy filing was motivated in part by an interest in shifting the forum from Washington to Pennsylvania, where the debtors had filed bankruptcy; and the debtor would not

14

suffer any prejudice if relief was granted because the movant could move to withdraw the reference and assert its right to a jury trial in the district court (*citing Boltz-Rubenstein v. McNaul Ebel Nawrot & Helgren, PLLC*, 2011 U.S. Dist. LEXIS 156376, at *1 n.1 (E.D. Pa. Feb. 24, 2011))); *Wilson*, 116 F.3d at 90-91 (reversing and remanding to district court for entry of order directing bankruptcy court to lift automatic stay to allow appellant to proceed with a pending appeal in state court action against debtor); *In re Brown*, 951 F.2d 564, 565-66, 570 (3d Cir. 1991) (citing opinions in which other circuit courts had affirmed orders lifting the automatic stay to permit litigation of a dispute in state court; and holding that bankruptcy court should permit pending state court proceeding to continue on grounds that the state court was familiar with the background of the case, and therefore, "allowing the bankruptcy judge to step in at this point would result in duplication of effort and added expense to the parties"; there was no reason why the state court, in making the necessary determinations, would not be competent and impartial; there was "no cognizable prejudice" to the debtor in permitting the state court proceeding to proceed to conclusion in the state court; and court could not "overlook the impact of the flood of litigation pouring in on the bankruptcy courts, a development that requires that they carefully husband their resources" (*citing In re Holtkamp*, 669 F.2d 505, 508-09 (7th Cir. 1982); *In re Olmstead*, 608 F.2d 1365, 1367-68 (10th Cir. 1979))).

64.    In assessing whether cause exists, courts consider whether (i) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (ii) the hardship to the movant by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the creditor has a probability of prevailing on the merits. *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Int'l Bus. Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)).

15

65.    The legislative history of section 362(d) indicates that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." *Id.* (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)). In fact, the mere existence of a more appropriate forum than the bankruptcy court constitutes cause for relief under section 362(d). *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995).

66.    Other courts consider a variety of factors, including: 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms. *In re Abeinsa Holding, Inc.*, 2016 Bankr. LEXIS 3641, at *8-9 (Bankr. D. Del. Oct. 6, 2016) (citing *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007)). These factors all also weigh in favor of Deerfield.

67.    Under section 362(g), in any hearing concerning relief from the automatic stay, the party opposing relief has the burden of proof on all issues other than the debtor's equity in

the property. 11 U.S.C. § 362(g); *In re Johnson*, 196 Fed. App'x 112, 114 (3d Cir. Aug. 15,

2006). According to some courts, the movant bears the initial burden to establish a *prima facie*

case of cause and the debtor must then rebut the movant's case. *Rexene*, 141 B.R. at 577.

According to other courts, when the debtor's equity is not at issue, it is not the movant's

responsibility to show that the debtor would not be harmed by stay relief; instead, the debtor

bears the burden of resisting stay relief. *See, e.g., In re Abeinsa Holding, Inc.*, 2016 Bankr.

LEXIS 3641, at *7-8 (Bankr. D. Del. Oct. 6, 2016).

68.    In *Rexene*, the Delaware Bankruptcy Court granted relief from the automatic stay

to permit the movants to prosecute an action against the debtors in a Texas district court. *Id.*

at 575. In addressing the first factor of the analysis, the court found that no great prejudice

to the debtors would result from lifting the stay because discovery in the action was nearly

complete; the movants sought only to liquidate, and not implement, their claim; and the

longer the trial was delayed, the more burdensome it would be for the parties to prepare for

trial. *Id.* at 577.

69.    In addressing the second factor, the court found that the equities greatly favored the

movants because the hardship to the movants would be considerable if relief were denied,

whereas the prejudice to the debtors would be very slight, if any, were relief were granted. *Id.*

The court noted that the attorneys, witnesses, documents, and parties were located in Texas,

and thus, the movants would suffer an added logistical burden if they were forced to litigate

in  Delaware. *Id.* Thus, the court found, the added expense of moving the action to Delaware

was unnecessary. *Id.*

70.    Next, observing that "[o]ne of the primary purposes in granting relief from the

stay to permit claim liquidation is to economize judicial resources," the court found that the

record indicated that the lawsuit would come to trial quickly in Texas and that if the lawsuit were moved to Delaware, it was not even clear whether it would go to trial in the bankruptcy court or the district court. *Id.* (*quoting Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 249 (D. Colo. 1990)).

71.   The court found further that duplicative litigation would impose a burden on not only the movants, but also the courts. *Id.* The court noted that judicial economy requires a prompt resolution in a single forum and with the same judge who was originally assigned to the case. *Id.* "This Court is of the opinion that to begin this litigation anew in this bankruptcy court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources." *Id.* (*quoting In re Murray Indus., Inc.*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990)).

72.   Finally, in addressing the third prong, the court observed that the required showing for probability of success on the merits is "very slight." *Id.* at 578 (*citing Peterson*, 116 B.R. at 250). The court noted: "Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where, as here, we believe that the decision- making process should be relegated to bodies other than this court." *Id.* (*quoting Fonseca v. Phila. Housing Auth. (In re Fonseca)*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990)). The court found the required slight showing "easily met" because the district court had already denied the debtors' motion for summary judgment in the action, and concluded, after an analysis of the facts and equitable considerations, that relief from the automatic stay was justified. *Id.*

73.   The Delaware Bankruptcy Court has not hesitated in other cases to grant relief from the automatic stay to allow parties to continue or even initiate litigation in another court. *See,*

18

*e.g., Abeinsa*, 2016 Bankr. LEXIS 3641, at \*6-14 (granting motion for relief from automatic stay to allow movant to initiate litigation for breach of contract against debtors in Oregon district court because debtors had failed to show that litigation would prejudice interests of creditor body, where any concerns about effect of stay relief were purely speculative; the potential hardship to movant outweighed the hardship to debtors, where court was cognizant of movant's misgivings that debtors were using the stay offensively to force their choice of forum, and district court, having already ruled on a related matter involving the parties, was already familiar with their dispute and best positioned to take up the matter; and movant had sufficient likelihood of success on merits); *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 126-29 (Bankr. D. Del. 2009) (granting motion for relief from automatic stay to allow movant to proceed with California district court action against debtors where although bankruptcy courts are routinely called upon to interpret and apply non-bankruptcy law, including contracts like the one involved at issue, debtors had indicated a willingness, and indeed a preference, to resolve the issue promptly, and thus, debtors would not suffer great prejudice if stay were lifted and the action moved forward; the action would not be heard in both Delaware and California, and thus, debtors would not have to litigate the dispute on two fronts and thereby suffer prejudice, and in fact, any such duplicate proceedings would cause a waste of judicial resources; debtors would not suffer prejudice if the matter, which involved a contract interpretation dispute, were heard by district court; debtors, having a principal place of business in Illinois, would have to travel whether the action was heard in Delaware or California; many of the facts underlying the dispute occurred in California, and hence, although debtors' central management and business operations were not located in California, debtors would not suffer any material hardship if they litigated the matter in California district court as

compared to economic and strategic hardship that movant would suffer if the stay was not

lifted and the matter was litigated in bankruptcy court; and movant submitted sufficient

exhibits to support a slight showing of probability of success on the merits); *Save Power

Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear),* 193 B.R. 713, 718-19

(Bankr. D. Del. 1996) (granting motion for relief from automatic stay to allow pending Texas

district court to continue breach of contract action against debtors where although there was no

evidence that the hardship to movants considerably outweighed the hardship to debtors, the

court found that no prejudice would result from continuation of the action; the district court

had already made a judicial finding that debtor had not shown a substantial likelihood of success

on the merits, and thus, movants had at least a probability of prevailing on the merits; debtor

had invested significant human resources and legal fees in prosecuting the Texas action to

date, and thus, common sense suggested that the investments would be best protected by

allowing the Texas action to proceed; district court judge had already heard issued a 15 page

decision, and thus, "advanced significantly along the judicial learning curve"; a pre-trial

schedule indicated a timely adjudication of the Texas action could be effected; a pending

adversary action between the parties was subject to a motion to withdraw reference and a

related motion for a determination of the core nature of the proceeding, and these motions would

only incur further expense and delay for the parties, and for district court judge addressing the

reference issue, and thus, judicial efficiency also argued strongly in favor of lifting the stay; and

in its briefing, debtor had not offered any arguments why cause had not been shown).

74.     Likewise, here, insofar as it bears the burden of making a *prima facie* case

under section 362(d), Deerfield easily satisfies the requirements for showing cause for

relief from the automatic stay.  First, for a host of reasons, no prejudice, great or otherwise, to the Debtor will result from granting relief from the automatic stay.

75.    The Debtor is a complete fraud whose financial statements and records provided to creditors and others bear at best a loose resemblance to the truth and most likely have no connection to the truth.

76.    The Movant, among others, has obtained injunctions against the Debtor in state court in Pennsylvania and fully intends to oppose any use of cash collateral.

77.    The Movant's judgments are of record and not subject to attack in this Court under the *Rooker-Feldman* doctrine.

78.    The Debtor's Petition contains false statements.

79.    The Debtor, upon information and belief, paid his counsel a retainer while the Debtor was prohibited from using more than $1,000.00.

80.    The Debtor filed this Petition solely to stay the Order to Show Cause pending in the Superior Court of New Jersey for a property in which the Debtor has no equity causing severe prejudice to the buyer of that property and the creditors of the Debtor including Movant, thereby demonstrating bad faith.

81.    Movant has a security interest in all of the Debtor's cash and assets pursuant to a filed UCC-1.  Movant opposes the use of cash collateral for any purpose.

82.    Upon information and belief, Debtor will refuse to answer all questions presented to him about his assets, liabilities and potential transfers which would result in the dismissal of this case and a further delay.

83.    Relief from the stay is warranted to (a) allow Movant to refile the Order to Show Cause and enjoin transfers of the Sea Isle property, (b) allow New Jersey Superior Court to

21

continue processing the transferred judgment of Movants, (c) allow Movant to continue its

collection activities in Pennsylvania as directed by the preliminary injunction order, and (d)

allow Movant to continue its receiver actions against non-Debtor entities.

### PROHIBITION ON USE OF CASH COLLATERAL

84.    Movant has a recorded UCC-1 against Debtor.

85.    Movant also has a recorded UCC-1 against Heller Capital Group, LLC.

86.    Debtor is unemployed, and, upon information and belief, his only source of cash

is Heller Capital Group.

87.    Any cash from Heller Capital Group is subject to the UCC-1 of the Movant as

proceeds of Movant's collateral, and Movant objects to any such use on a going forward basis.

88.    The Debtor should not be permitted to continue to live the high life at the

expense of his creditors.

89.    Movant opposes all use of cash collateral by Debtor unless and until a full

accounting of assets, liabilities and transfers is provided by Debtor as well as a budget, with

any such accounting and budget performed and compiled by a qualified financial specialist.

90.    The Debtor is not trustworthy.

91.    The Debtor has not provided a budget or even sought use of cash collateral, and

such use should be prohibited until the entry of an order of this Court.

### MOTION TO TRANSFER VENUE

92.    Generally, the venue is proper in the federal district in which the debtor has his

domicile, residence, principal place of business or principal assets for the 180 days

immediately preceding the case commencement. *See 28 U.S.C. § 1408.*

93.    The Court must first determine whether the Debtor had his principal assets in the District of New Jersey.

94.    Upon information and belief, the Debtor has his principal assets in Pennsylvania and the only asset in New Jersey is a home in Sea Isle City which has no equity and Debtor is only a 76% owner.

95.    Movant believes the Debtor will not be able to prove this requirement of Section 1408.

96.    Debtor provided the Movant a December 31, 2023 financial statement showing over $300,000,000.00 in net worth, of which the equity in the Sea Isle Property was valued at $1,600,000.00. That is .005% of the Debtor's alleged net worth.

97.    Debtor's Chapter 11 Petition claims assets of between $100,000,001.00 and $500,000,000.00. Even assuming for the sake of argument that Debtor's assets are only $100,000,001.00, which is the low end of the range of what he claims, then the Sea Isle City property is a mere 1.6% of his assets. It strains credulity to believe that an asset constituting 1.6% of the Debtor's asset value as stated by the Debtor in the Petition is his "principal asset."

98.    It should also be noted that the Debtor's principal residence, as stated in the Petition as 909 Greenside Drive, Lititz, Pennsylvania, is a 5,603 square foot home valued at in excess of $1,800,000.00 and located in a gated, country club and golf community. Again, these factors make Debtor's stated reason for filing in New Jersey even less plausible.

99.    Debtor also provided to the Movant a copy of his 433 A/B with financial statements sent to the Internal Revenue Service as of April 1, 2024.

100.    Shockingly, Debtor does not disclose the Sea Isle Property to the IRS.

101.   Equally ridiculous is the April 1, 2024 financial statement shows a net worth of

$109,000,000.00 and doesn't include assets on the 2023 financial statement just from months

earlier.

102.   The vast disparity in the financial statements, showing a nearly $200,000,000.00

change in the Debtor's net worth in just a few months, highlights the questionable veracity of

information being provided by the Debtor.

103.   Both financial statements will be provided in Court to avoid disclosing on the

public docket personal identifying information.

104.   The Court should further be concerned that less than a year ago, the Debtor

submitted a financial statement under oath, which excluded what he now claims is his

"principal asset."

105.   This fraudulent non-disclosure probably is the reason the IRS failed to lien the

New Jersey property.

106.   Unless the Debtor satisfied the IRS in the last year, the Debtor fraudulently

omitted the IRS from his Petition.

107.   Even if the Debtor can establish that there are principal assets in New Jersey, the

Court must then examine the interest of justice and the convenience of the parties to see if any

deference to the Debtor's choice is negated. *City of Clinton v. Pilgrim's Pride Corp. (In re

Pilgrim's Pride),* 2009 WL 4884430, *4–5, 2009 U.S. Dist. LEXIS 117751, *15 (N.D.Tex.

Dec. 17, 2009).

108.   When undertaking the "interest of justice" analysis, the Court considers (a) the

venue in which the estate can be most efficiently administered, (b) the venue that will promote

judicial economy and efficiency, (c) the parties' ability to receive a more fair trial in one forum

24

versus another, and (d) a state's interest in having local controversies decided within its borders. *In re the Crosby National Golf Club, LLC*, 534 B.R. 888, 890-91 (Bankr. N.D. Tex. 2015).

109.   There is no doubt that the Debtor legally and, in fact, actually resides in Pennsylvania as he has so stated in the Petition, his family resides in Pennsylvania, the witnesses to his fraudulent conduct reside in Pennsylvania, his businesses are located in Pennsylvania, his creditors are located in Pennsylvania, and the Debtor's personal and business records are located in Pennsylvania.

110.   Simply put, there is no connection to New Jersey except for a shore house that the Debtor only partially owns and was attempting to sell in violation of a court order.

111.   Venue is appropriate in and should be transferred to the Eastern District of Pennsylvania.

## REQUEST FOR EXPEDITED DISCOVERY

112.   Debtor has been purposely evading discovery for months.

113.   Movants and others have been seeking financial discovery which the Debtor has failed to provide.

114.   Movants request that in addition to an expedited hearing, the Court permit expedited discovery and require the Debtor to appear for a deposition under Rules 9014 and 7030, as well as 2004 within the next seven days.

115.   Debtor should be required to choose between (a) being an honest and transparent debtor that fully complies with discovery or (b) his current evasive and fraudulent conduct.

116.   Movant requests a conference with the Court at the Court's earliest convenience to establish a hearing and discovery schedule.

117.   Movant may also seek discovery from the Debtor and others on the source of funds that the Debtor used to pay Debtor's counsel, including any retainer that has been paid, as well as all of his assets and liabilities.

118.   Upon further discovery, the Movant may seek to amend the Motion to include bad faith dismissal with a bar order.

### REQUEST FOR EXPEDITED HEARING

119.   Movant is filing a Request for an Expedited Hearing simultaneously with this filing.

WHEREFORE, Deerfield respectfully requests that the Court (a) grant relief from the automatic stay; (b) prohibit use of cash collateral, (c) transfer venue to the Eastern District of Pennsylvania, (d) require expedited discovery and (e) for such other and further relief as is just, necessary or appropriate.

**Ciardi Ciardi & Astin**

By: _____
Albert A. Ciardi, III, Esquire
Daniel S. Siedman, Esquire
1905 Spruce Street,
Philadelphia, Pa 19103
215-557-3550
215-557-3551 (fax)
Attorneys for Deerfield Capital, LLC

Dated: February 11, 2025