# EXHIBIT D

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

PRESTIGE FUND A, LLC, et al., :
   Plaintiffs,  :
       :
   v.    : No. CI-24-06012
       :
PARAMOUNT MANAGEMENT :
GROUP, LLC,   :
   Defendant.  :

## OPINION

The matter before the Court is Plaintiffs, Prestige Fund A, LLC, et al., and Defendant,

Paramount Management Group, LLC, regarding Plaintiff's Emergency Motion for Contempt dated

and filed December 20, 2024, on which a hearing was held on December 30, 2024. For the reasons

stated below, the motion for a finding of indirect civil contempt granted.

## I. BACKGROUND

At the heart of this case lies a tangled web of business ventures, once shimmering with the

allure of lucrative returns, now unraveling into a cautionary tale of business failures and betrayal.

The Plaintiffs, collectively referred to as "the Funds," are a group of distinct limited liability

companies incorporated in Delaware and Pennsylvania. These investment funds, comprising

approximately 2,700 investors, each contributing over $700 million, have placed all their eggs in

ATMs as the Funds' sole investment. The Funds are managed by a series of entities: Prestige Funds

Management, LLC ("PFM"), Prestige Funds Management II, LLC ("PFM II"), Prestige Funds

Management III, LLC ("PFM III"), and WF Velocity Funds Management, LLC ("WF")

(collectively, "the Managers"). Prestige Investment Group, LLC is the sole member of PFM, the

Majority Member of PFM II and PFM III, and the sole Class A Member and controlling manager

of WF. As such, Prestige Investment Group, LLC holds the controlling interest in all of the

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

managing entities and, consequently, in the Funds themselves. These types of layered limited liability entities are endemic in this case.

Defendant, Paramount Management Group, LLC ("Paramount"), is the entity entrusted with managing the Funds' ATM portfolio. The Funds purchased the ATMs from Paramount, which retained operational control and management of the machines on the Funds' behalf. Paramount specializes in providing comprehensive ATM management services across a wide range of industries, including, but not limited to, convenience stores, pharmacies, and hospitality establishments. Typically, Paramount or its investors own the ATMs, with Paramount managing all aspects of the operation, including cash logistics, secure processing, maintenance, and customer support. Paramount's portfolio is acquired through a combination of cash purchases and, occasionally, equity splits. Service agreements are often structured to allow the seller to continue providing cash delivery and maintenance, with compensation typically tied to cash withdrawals.

Over 12 years ago, in April 2012, Daryl Heller ("Heller") and Jerry D. Hostetter ("Hostetter") entered into an Amended and Restated Agreement for Prestige Investment Group, LLC. Heller, as the majority Class A Member, owning 60% of the Class A interests, and Hostetter owning 40% of the Class A interests, controls the actions of Prestige Investment Group and its affiliated entities, including the Managers and the Funds. Additionally, Heller is the chairman and majority owner of Paramount, as well as the CEO of Heller Capital Group, which is the controlling member of Paramount.

Notably, at the start of this action, Heller found himself intricately entangled in this dispute due to his influential roles on both sides of the case. On one hand, he serves as the chairman and majority owner of Paramount Management Group, the Defendant, which is accused of failing to meet its contractual obligations to the Funds. As the CEO of Heller Capital Group, which is the

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

majority, if not sole, member of Paramount, Heller holds significant control over the operations and decisions of Paramount. On the other hand, Heller also controls Prestige Investment Group, LLC, the entity that holds the majority of Class A members in the Managers overseeing the plaintiff Funds. Through this position, he is in control of the management of the Funds and their legal actions. This dual position places Heller at the center of the dispute, as he is both the manager of the Funds seeking legal redress and the owner of the company accused of breaching its contractual obligations, further complicating the legal landscape of this case.

However, Heller's entanglement did not hinder the Funds from pursuing legal redress. As background for the exact issue in this case, between 2020 and 2024, Paramount entered into ATM Management Services Agreements ("MSAs") with each of the Funds. These agreements stipulate that all revenue generated from the ATMs is initially directed to Paramount to cover operational costs, with any remaining funds to be remitted to the Funds as set forth in each MSA. Under the terms of the MSAs, if Paramount fails to make the agreed-upon monthly payments, the Funds must provide written notice and a 20-day period to cure the non-payment. Should Paramount fail to cure, the MSAs allow the Funds to terminate the agreements upon written notice.

Paramount met its payment obligations through March 2024. However, starting in April 2024, Paramount ceased making payments, leaving 25 payments, across 25 entities comprising the Funds, totaling $16,369,033.52 of unpaid payments. This failure to remit payments continued through August 2024. On August 2, 2024, the Funds sent a formal notice of non-payment to Paramount, demanding payment by August 22, 2024. When Paramount failed to comply, the Funds, on August 23, 2024, invoked their right to terminate the MSAs and demanded the prompt transfer of ATM-related information.

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

By the time the initial Complaint was filed in August 2024, Paramount had failed to remit 100 payments, spanning April through July, totaling $65,422,167.08. As of the filing of this Opinion, Paramount has failed to remit any additional payments to the Funds, bringing the total amount of unpaid revenue to approximately $130,854,421.00.

## II.    PROCEDURAL HISTORY

On August 23, 2024, Plaintiffs filed their Complaint alleging Count I – Breach of Contract, Count II – Breach of Contract, and Count III – Injunctive Relief. Along with the filing of its Complaint, Plaintiffs also filed a Petition for Special Injunction and Preliminary Injunction on August 23, 2024, for which this Court held a hearing on August 26, 2024. Additionally, on August 26, 2024, Defendant filed its Answer with New Matter and Counterclaim. Defendant's Counterclaim alleges Specific Performance. Then, on August 26, 2024, Defendant filed its Answer to Plaintiffs' Petition for Special Injunction and Preliminary Injunction, and on August 27, 2024, it filed a Brief in Opposition to Plaintiffs' Petition for Special Injunction and Preliminary Injunction.

After the August 26 hearing, on the issue of Plaintiffs' Petition for Special Injunction and Preliminary Injunction, the Court found injunctive relief unnecessary in its Order dated, August 27, 2024. Specifically, the Court found that Plaintiffs failed to meet the requirement of establishing the viability of the Defendant's enterprise as in such a precarious position that the only way to preserve the enterprise is through extraordinary relief. While the Court found Heller's testimony during the August 26 hearing to be credible in representing the financial position of Defendant, the problematic pleading posture of the case also remained an issue. As the case was plead, in some capacity Daryl Heller was suing Daryl Heller.

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

On September 3, 2024, Plaintiffs filed a Motion for Entry of a Rule to Show Cause and Scheduling a Preliminary Injunction Hearing, arguing that the Court never addressed Plaintiffs' request for a Preliminary Injunction. The Court entered an Order dated September 4, 2024, issuing a Rule to Show Cause upon Defendant to show why Plaintiffs are not entitled to the relief requested and scheduling a subsequent hearing for October 15, 2024.

Subsequently, on September 11, 2024, Plaintiffs filed Preliminary Objections to Defendant's Answer to Complaint with New Matter and Counterclaim. The Court never made a ruling on Plaintiffs' Preliminary Objections because on September 12, 2024, a Joint Praecipe to Discontinue All Claims and Counterclaims and Mark the Case Closed was filed with the Prothonotary. Heller, as both the manager of the Funds seeking legal redress and the owner of the company accused of breaching its contractual obligations, hired legal counsel to represent Plaintiffs as it is within his contractual rights. However, also on September 12, 2024, the attorneys that had been representing the Plaintiffs thus far filed an Emergency Petition to Strike the Discontinuance. Due to the overlapping nature of Heller's control within both companies, in an Order dated September 16, 2024, the Court directed each party, and the new attorneys appointed by Heller, to brief the Petition to Strike the Discontinuance.

The Court notes that one of the biggest and unresolved issues within the original Plaintiffs case is the issue of standing to sue. Apparently to address this issue, the parties filed a Stipulation entered by the court on September 24, 2024, where a stay of proceedings to effect unless a "Triggering Event" occurred. *See,* Stipulation for Expansion of Time ¶ 8-10. Upon the occurrence of a "Triggering Event," it was stipulated that Hostetter "shall immediately assume a majority and super majority governing interest in and majority and super majority voting control of Prestige Investment Group, LLC; and the Joint Praecipe to Discontinue All Claims and Counterclaims and

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

Mark the Case Closed filed on September 12, 2024 in the Fund Litigation shall be struck off and the Fund Litigation reinstated." *Id.* ¶ 12. Subsequently, a "Triggering Event" occurred and Hostetter gained standing to reinstate the lawsuit as, per the stipulation, Hostetter now controlled Prestige Investment Group, LLC, who in turn, controlled the Funds.

Nevertheless, Plaintiffs and Defendant began a series of negotiations in order to settle the dispute between the parties. On November 21, 2024, the Court Ordered a Consent Judgment to be entered in favor of Plaintiffs and against Defendant in the amount of $138,156,118.38. The Consent Judgment further Ordered Defendant to supply to Plaintiffs a complete inventory of all ATM Units purchased by Plaintiffs, or members of Plaintiffs, from Defendant, and that Defendant is to assign and transfer all of Defendant's rights, title, and interest to Plaintiffs' ATM units as well as the location agreements, permits, ATM passwords and combinations, and all vendor and other contracts or agreements relating to Plaintiffs' ATM units.

On December 3, 2024, Plaintiffs filed an Emergency Motion for Contempt, a Brief in Support of Emergency Motion for Contempt, a Motion for Miscellaneous Relief, and a Brief in Support of a Motion for Miscellaneous Relief. Subsequently, in this Court's Order dated December 4, 2024, a Civil Contempt Hearing was scheduled for December 6, 2024. After the Civil Contempt Hearing, the Court entered an Order, on December 6, 2024, finding Defendant in Contempt of this Court for failing to Comply with the Consent Judgment and Order of November 21, 2024. The Court required that for Paramount to purge itself of the contempt it must: (a) remit to Plaintiffs all profits generated by Plaintiffs' ATM units from November 21, 2024, to the date Paramount's contempt is purged; (b) execute and deliver to Plaintiffs a document assigning and transferring Paramount's right, title, and interest to Plaintiffs' ATM units as well as the Location Agreements, Permits, ATM passwords and combination, and all vendor and other contracts or agreements

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

relating to Plaintiffs' ATM units (excluding the communication modems installed in any of Plaintiff's ATM units; and (c) supplying various data information to counsel for Plaintiffs.

After a status conference held via Zoom on December 19, 2024, another Civil Contempt Hearing was scheduled for December 30, 2024, following Plaintiffs' Second Emergency Motion for Contempt filed on December 20, 2024, due to Defendant's alleged noncompliance.

While the case has unfolded, other creditors of Paramount have sought to intervene in this litigation to protect their positions. On December 10, 2024, Traditions Bank sought to intervene because it is in the midst of litigating a dispute with Paramount in York County, Pennsylvania, alleging that Paramount had breached obligations to Traditions Bank. Paramount did not respond to the lawsuit and Traditions Bank now has a default judgment. On December 27, 2024, Customers Bank filed a petition to intervene. Customers Bank seeks to intervene due to alleged default by Paramount and a company known as Blackford Holdings, LLC[1] for a $5,914,530.78 judgment entered by confession in the Court of Common Pleas of Chester County, Pennsylvania. The common denominator in all of the cases is Daryl Heller.

Therefore, the issues now present before the Court are:

1.     Whether Defendant is in contempt of any of the Court's prior Orders.

2.     Whether any Contempt has been cured.

3.     If contempt has not been cured, what further actions are necessary to cure the contempt.

4.     The remedy for any contempt that has occurred and the justification for such remedy.

### III.    STANDARD OF REVIEW

---

[1] Customers Bank alleges that Daryl Heller is the Managing member of Blackford Holdings, LLC.

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *See In re Estate of DiSabato*, 2017 PA Super 185, 165 A.3d 987 (2017); *Waggle v. Woodland Hills Association, Inc.*, 213 A.3d 397 (Pa. Commw. Ct. 2019); *Commonwealth v. Honore*, 150 A.3d 521 (Pa. Commw. Ct. 2016). The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. *Barna v. Langendoerfer*, 2021 PA Super 17, 246 A.3d 343 (2021).

Contempt is conduct that disrespects the authority of a court, willful disregard or disobedience of a court order, or conduct that tends to impede the due administration of justice. *See Com. v. Long*, 533 Pa. 388, 625 A.2d 630 (1993); *Com. Dept. of Environmental Resources v. Pennsylvania Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975); *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015); *Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654 (2004); *Com. v. Mutzabaugh*, 699 A.2d 1289 (Pa. Super. Ct. 1997). Contempt can be committed directly or indirectly, and either type may be deemed civil or criminal depending on the court's purpose for imposing punishment; the classification determines a contemnor's procedural rights and a court's sentencing options. *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015).

The central ground of both civil and criminal contempt is the obstruction of orderly process, and each type of contempt serves a different purpose for regulating obstruction. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011). The controlling factor in distinguishing between civil and criminal contempt is the dominant purpose and objective of the court's order. Specifically, the distinction between civil contempt and criminal contempt depends upon whether sanctions' dominant purpose is to punish for violation of court order – criminal contempt – or to coerce into

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

compliance with order – civil contempt. *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974 (Pa. 2023).

Furthermore, a contempt proceeding is classified as civil contempt if the court's dominant purpose is remedial, to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, and to coerce compliance with the court's previous order, and in some cases to compensate the complainant for losses suffered. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010); *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003); *Com., Dept. of Environmental Protection v. Cromwell Tp., Huntingdon County*, 613 Pa. 1, 32 A.3d 639 (2011). On the other hand, a contempt proceeding is for criminal contempt if the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public by punishing the contemnor. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011); *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010); *Borough of Beaver v. Steckman*, 728 A.2d 418 (Pa. Commw. Ct. 1999).

The factors that generally point to a civil contempt, rather than criminal, are (1) where the complainant is a private person as opposed to the government or a governmental agency, (2) where the proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action, (3) where holding the respondent in contempt affords relief to a private party, (4) where the relief requested is primarily for the benefit of the complainant, and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the respondent so contumelious that the court is impelled to act on its own motion. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011). A judgment in a civil contempt proceeding for the benefit of a private complainant will incidentally vindicate the

authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests; but the test for whether contempt is criminal or civil contempt is the dominant purpose, not the incidental result. *Sutch v. Roxborough Memorial Hosp.*, 2016 PA Super 126, 142 A.3d 38 (2016).

Moreover, contempt of court may be direct or indirect. *Stamus v. Dutcavich*, 2007 PA Super 381, 938 A.2d 1098 (2007); *Com. v. Harris*, 409 Pa. 163, 185 A.2d 586 (1962); *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956).  Direct contempt, which is the obstruction of a court's orderly process by conduct, word, or deed in the presence of the court, is subject to summary proceedings not only if it takes place "directly under the eye" of the court—in the sense that the court is looking directly at it—but also anywhere within the judge's view. *Garr v. Peters*, 2001 PA Super 110, 773 A.2d 183 (2001); *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Fenstamaker v. Fenstamaker*, 337 Pa. Super. 410, 487 A.2d 11 (1985); *Bruzzi v. Bruzzi*, 332 Pa. Super. 346, 481 A.2d 648 (1984); *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015). When the contemptuous conduct takes place in the presence of the court, the court is under no obligation to prove it actually witnessed the disturbance. *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015). However, indirect contempt is misconduct committed outside the court's presence, and proof of its commission is required since the conduct is not self-evident. *Stamus v. Dutcavich*, 2007 PA Super 381, 938 A.2d 1098 (2007); *Com. v. Brumbaugh*, 2007 PA Super 226, 932 A.2d 108 (2007); *Com. v. Haigh*, 2005 PA Super 139, 874 A.2d 1174 (2005); *Com. v. McMullen*, 599 Pa. 435, 961 A.2d 842 (2008); *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010).

In proceedings for indirect civil contempt, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

order. *MacDougall v. MacDougall*, 2012 PA Super 83, 49 A.3d 890 (2012). Generally, the failure to comply with an order is a matter of civil contempt because the court's contempt adjudication seeks to coerce compliance. *Stewart v. Foxworth*, 2013 PA Super 91, 65 A.3d 468 (2013). However, mere noncompliance with a court order is not by itself sufficient to prove contempt; rather, complaining party must prove that (1) contemnor had notice of specific order or decree that he is alleged to have disobeyed, (2) act constituting contemnor's violation was volitional, and (3) contemnor acted with wrongful intent. *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974 (Pa. 2023). A party must not only have violated a clear order, but that order must have been definite, clear, and specific, leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. *Sutch v. Roxborough Memorial Hosp.*, 2016 PA Super 126, 142 A.3d 38 (2016); *Com. v. Kolansky*, 2002 PA Super 145, 800 A.2d 937 (2002); *Com. v. Pruitt*, 2000 PA Super 381, 764 A.2d 569 (2000); *Com. v. Baker*, 564 Pa. 192, 766 A.2d 328 (2001).

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the present inability to comply is an affirmative defense that must be proven by the alleged contemnor. *Cunningham v. Cunningham*, 2018 PA Super 64, 182 A.3d 464 (2018); *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Cecil Tp. v. Klements*, 821 A.2d 670 (Pa. Commw. Ct. 2003); *Com. v. U. S. Steel Corp.*, 15 Pa. Commw. 184, 325 A.2d 324 (1974). If the alleged contemnor is unable to perform and has in good faith attempted to comply with the court order, contempt is not proven. *In re Estate of DiSabato*, 2017 PA Super 185, 165 A.3d 987 (2017); *Mueller v. Anderson*, 415 Pa. Super. 458, 609 A.2d 842 (1992); *Wetzel v. Suchanek*, 373 Pa. Super. 458, 541 A.2d 761 (1988); *Grubb v. Grubb*, 326 Pa. Super. 218, 473 A.2d 1060 (1984); *Cecil Tp. v. Klements*, 821 A.2d 670 (Pa. Commw. Ct. 2003). In the instance where the court in civil proceedings finds there has been willful noncompliance with its earlier orders, constituting

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

contempt, but the contemnor presents evidence of his present inability to comply, the court should set conditions for purging the contempt with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616, 621 (1977). However, the defense of impossibility of performance is only available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party. *Cunningham v. Cunningham*, 182 A.3d 464 (Pa. Super. 2018).

In providing contempt sanctions, if the contempt is civil, a fine may be imposed or, if incarceration is ordered, the person may avoid imprisonment by doing some act of compliance to purge the contempt. *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Goodman v. Goodman*, 383 Pa. Super. 374, 556 A.2d 1379 (1989); *Fatemi v. Fatemi*, 371 Pa. Super. 101, 537 A.2d 840 (1988). Since any criminal contempt is a crime in the ordinary sense, it is a violation of law constituting a public wrong punishable by fine, imprisonment, or both. *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003). The punishment imposed for criminal contempt is specifically punitive in nature; it is intended to impose punishment for past misconduct and may include a definite term of incarceration. *U.S. v. Pozsgai*, 999 F.2d 719 (3d Cir. 1993); *Vito v. Vito*, 380 Pa. Super. 258, 551 A.2d 573 (1988); *Gunther v. Bolus*, 2004 PA Super 8, 853 A.2d 1014 (2004).

Additionally, the court may impose an unconditional fine upon a civil contemnor to encourage future compliance for the benefit of the injured private party. *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). This fine must be based upon evidence of the complainant's actual loss, and the complainant's right, as a civil litigant, to the compensatory fine depends on the outcome of the basic controversy. *Id.* Although a court may impose an unconditional fine in civil contempt, it may do so only if the purpose is not to punish but instead to compensate for losses

suffered by the complainant. *Garr v. Peters*, 2001 PA Super 110, 773 A.2d 183 (2001). When fixing the amount of contempt sanctions, the court must also consider the financial resources of the alleged contemnor as well as the financial consequences of the burden imposed by the sanctions. *Sutch v. Roxborough Memorial Hosp*., 2016 PA Super 126, 142 A.3d 38 (2016).

Furthermore, attorney's fees and other disbursements that are necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. *Wood v. Geisenhemer-Shaulis*, 2003 PA Super 224, 827 A.2d 1204 (2003); *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). Since an award of counsel fees is intended to reimburse an innocent litigant for expenses that were made necessary by the conduct of an opponent, it is coercive and compensatory, not punitive; thus, counsel fees are a proper element of a civil contempt order. *Wood v. Geisenhemer-Shaulis*, 2003 PA Super 224, 827 A.2d 1204 (2003); *Goodman v. Goodman*, 383 Pa. Super. 374, 556 A.2d 1379 (1989); *Schnabel Associates, Inc. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO*, 338 Pa. Super. 376, 487 A.2d 1327 (1985). In extreme circumstances, a court may order a sheriff or other proper officer of any county to take into custody and commit to jail any person who is fined for contempt until the fine is paid or discharged. *See* 42 Pa.C.S. § 4134. A person who is unable to pay the fine may be committed to jail by the court for no longer than three months. *Id*.

### IV.    DISCUSSION

The Funds assert that the court should hold Paramount and Daryl Heller in contempt of court for: (1) failing to remit to the Funds all profits generated by the Fund's ATM units since November 21, 2024; (2) failing to provide a complete inventory of all Fund-owned ATMs; (3) failing to timely provide data regarding the Fund's ATM units; and (4) failing to certify compliance and indicating that compliance will not be certified. Consequently, the Funds request the court to appoint an independent auditor paid by Paramount, increase the amount of

13

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

the judgment, require compliance with the provision of information, and hold Daryl Heller personally liable for penalties.

Paramount responds that it has cured many issues of contempt, has no employees to coordinate records for an auditor, and has no funds to pay an auditor and even funds that come available are subject to claims by other creditors. While the court appreciates the arguments made by counsel at the December 30, 2024, hearing and in their briefs, this decision must be governed by the facts submitted by the parties by stipulation and proper affidavits. Moreover, given the fact that Daryl Heller has asserted his 5th Amendment rights against self-incrimination in response of many questions the Funds would ask him, the court takes a negative inference against Mr. Heller with respect to any responses such that they would be against his and Paramount's interest.

A.    *Paramount and Heller are in Contempt of Numerous Court Orders*

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the present inability to comply is an affirmative defense that must be proven by the alleged contemnor. *Cunningham v. Cunningham*, 2018 PA Super 64, 182 A.3d 471 (2018). Paramount has not made an argument that it is impossible to comply with the court's orders other than the fact that all employees were fired. Paramount created its impossibility to perform undermining any defense on that basis. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616, 621 (1977); *see also Cunningham v. Cunningham*, 182 A.3d 464 (Pa. Super. 2018) (the defense of impossibility of performance is only available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.)

The stipulations submitted for the December 30, 2024, hearing make clear that Paramount is in civil contempt of court orders in at least three out of the four areas alleged by the Funds. Paramount has not certified compliance, has not provided a complete inventory of all Fund-owned

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

ATMs, did not timely provide data regarding Fund ATMs. With respect to "profits" not being provided per the order, it is necessary that the moving party prove the order clear, leaving no doubt or uncertainty in the mind of the contemnor or the prohibited conduct. Here, the Funds seemed to intend that "profits" mean gross profits or income streams rather than net profits. The term is not clear enough to hold Paramount in contempt.

Despite the fact of contemptuous conduct, Paramount had made significant progress as of December 30, 2024, to remedy certain areas of contempt. For example, Paramount has been transmitting funding streams to the Funds. Paramount has provided a list of Fund-owned ATMs and continues to arrange for transfer of physical access to certain ATMs. Paramount has provided access to data needed to operate the ATMs. All of this appears to be too little too late for the Funds to recover much of their investment and would likely have been too late even if such orders had been entered in early 2024. What started off as an investment returning income to the Funds appears to have transformed into at best a significant under-capitalized expansion of ATM buying or at worst a Ponzi scheme.

Given the court's finding of contempt, the court must determine the penalty. The Funds insist that more can be done to cure the contempt and request an order requiring additional actions by Paramount. The Funds further ask the court to hold Mr. Heller personally liable for payment of any penalty imposed by this contempt order and the Funds seek to raise the judgment in this action to $593,569,844.76. The court will discuss each area below.

### B.    *Paramount's Ability to Cure*

Paramount has no employees. Consequently, the Funds ask the court to appoint a forensic auditor. However, the Funds are not the only creditor seeking payment from Paramount. Two cases have been filed to intervene in this action by creditors seeking satisfaction of their debts. It

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

is not in the public interest to appoint a forensic auditor at the expense of other creditors that would focus on recovery of assets for the Funds. Given the judgment already entered against Paramount in favor of the funds and the additional amount that will be added to the judgment, the Funds can engage in efforts to satisfy their judgment, as they have already started doing.

The Funds also seek to continue accrual of assessments against Paramount ordered by the court on December 6, 2024. This request is denied, and the accrual will cease as of December 30, 2024. The penalty accrued as of December 30, 2024, in the amount of $2,050,000 shall be added to the judgment.

### C.    Personal Liability of Daryl Heller

The Funds insist that the court should hold Daryl Heller personally liable for contempt because he "caused Paramount to violate this Court's Orders." In support of this request, the Funds point to the following actions by Heller:

1. Terminating staff while knowing some were needed to provide information as ordered by the court;
2. Directing Paramount to pay one of his other companies, Heller Capital Group, in excess of $300,000 with income from the Fund's ATM units;
3. Directing the movement of funds between Paramount bank accounts and other Heller-controlled bank accounts; and,
4. Directing that Paramount withhold $700,000 in funds available to Paramount to pay the Funds for a contempt fine.

In support of holding Heller personally liable, the Funds rely on *N. Strabane Twp. v. Majestic Hills LLC*, No. 958 C.D. 2023, 2024 WL 5148461, at *1 (Pa. Commw. Ct. Dec. 18, 2024). This case is controlling as well as persuasive to the court. The procedural history of Majestic Hills is important to this case. Majestic Hills, LLC developed a parcel of land in North Strabane Township into 200 home lots. Majestic Hills, LLC is wholly owned by JND, which in turn is wholly owned and controlled by the DeNardos, who are husband and wife, with each owning 50%. *Id.* at *1. Mr. DeNardo is the managing member of JND. *Id.* The project ran into issues with

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

numerous compliance requirements that caused landslides at the development.  North Strabane Township sued Majestic Hills, LLC, JND, and the DeNardos.  The parties entered a consent decree, part of which, dismissed the DeNardos from the case.

Subsequently, JND refused to comply with portions of the consent decree causing the Township and the Pennsylvania Department of Environmental Protection to file for a preliminary injunction against Majestic Hills, LLC, JND, and the DeNardos requesting that none of defendants dissipate assets "in anticipation of civil liability or contempt sanctions." *Id.* at *4.  The trial court entered an order to this effect. The Township also filed a petition for contempt of the consent decree.

The trial court then heard testimony on the petition for contempt, a case in which the DeNardos were not defendants.  The court found that the DeNardos were sophisticated real estate developers, the DeNardos and JND were one and the same, and the DeNardos did not have the financial ability to pay for compliance when the consent decree was signed. *Id.* at *5.  The trial court awarded $275,000 as a compensatory sanction against the DeNardos, JND, and Majestic Hills, LLC, jointly and severally.  The DeNardos appealed contending they were not defendants in the consent decree case and could not be held in contempt or sanctioned for JND's noncompliance.

On appeal, the Commonwealth Court reaffirmed that, "[a]n officer of a corporation can be held in contempt of that corporation's noncompliance even when not named as a defendant in the action." *Id.* at *10 (citations omitted).  Quoting from the Supreme Court of the United States, the Commonwealth Court explained:

> [a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they are guilty of disobedience, and *may be punished for contempt.*

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

*Id.* (citations omitted) (quoting *Wilson v. United States*, 221 U.S. 361, 376-77, 31 S.Ct. 538, 55 L.Ed. 771 (1911)) (emphasis in the original Commonwealth Court Opinion).

In a similar situation, the Superior Court held:

> [Corporate officers'] willful violation of the order in their capacity as directors, officers and shareholders of the corporation was clearly contumacious and subject to a civil contempt citation, *regardless of whether* [corporate officers] *were joined as parties.* Where corporate officers knowingly disobey an injunction, the injunction can be enforced directly against those officers *even when they have not been joined as parties to the suit.* ... [A] corporation acts only through its officers, agents, representatives and employees, and if such persons are permitted to knowingly violate the terms of an injunction, it would be impossible for a court to ever enforce an injunctive order against a corporation .... Here, [corporate officers] were the sole shareholders, directors and officers of [the corporation]. [Corporate officers] caused the corporation to be dissolved for the express purpose of avoiding its legal obligation to rebuild (or pay to rebuild) the retaining wall.

*Belle v. Chieppa*, 442 Pa. Super. 371, 380, 659 A.2d 1035, 1039–40 (1995) (Citations omitted).  Clearly, Daryl Heller can be held jointly liable for the contempt of Paramount.

### D.    Reassessment of the Judgment

The Funds argue that the judgment against Paramount should increase by $455,413,726.38 because Heller assessed the value of the Funds' network to be $455,413,726.38 on November 1, 2024, in an asset purchase agreement.  The purchase agreement is signed by Daryl Heller on behalf of Paramount and on behalf of Heller Capital.

The parties negotiated a consent judgment which the court signed on November 21, 2024, in the amount of $138,156,118.38.  The asset sale agreement was known to the parties three weeks prior to the consent judgment, and the terms of the judgment and the amount could have been adjusted prior to entry.

### E.    Other Penalties

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

In providing contempt sanctions, if the contempt is civil, a fine may be imposed or, if incarceration is ordered, the person may avoid imprisonment by doing some act of compliance to purge the contempt. *Moran, supra.* The court may impose an unconditional fine upon a civil contemnor to encourage future compliance for the benefit of the injured private party. *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). This fine must be based upon evidence of the complainant's actual loss, and the complainant's right, as a civil litigant, to the compensatory fine depends on the outcome of the basic controversy. *Id.* Furthermore, attorney's fees and other disbursements that are necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. *Wood, supra.* Plaintiffs have not argued for or presented any evidence in support of other contempt sanctions and no others will be imposed.

## V.    Conclusion

Considering the evidence before it, the court finds Paramount in contempt. In what appears to be a sophisticated shell game orchestrated by Daryl Heller, assets represented under oath to the court did not exist. Paramount, controlled by Heller, failed to comply, or timely comply, with numerous court orders. Accordingly, the court enters the following order.

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

PRESTIGE FUND A, LLC, et al.,   :
   Plaintiffs,     :
           :
     v.       :  No. CI-24-06012
           :
PARAMOUNT MANAGEMENT   :
GROUP, LLC,       :
    Defendant.    :

## ORDER

AND NOW this 10th day of January 2025, it is hereby ORDERED that after review of all

pending contempt matters, Defendant is found in CIVIL CONTEMPT.  It is further ORDERED

the sums assessed against Paramount pursuant to the December 6, 2024 Order, in the amount of

$2,050,000 shall added to the judgment and this amount only shall be paid jointly and severally

by Paramount and Daryl Heller.  Plaintiffs' other requests for sanctions and relief are DENIED.

BY THE COURT:

LEONARD G. BROWN III, PRESIDENT JUDGE

ATTEST: _Audrey L Conrad_
Deputy

Copies to: Matthew H. Haverstick, Esq.
    Joshua J. Voss, Esq. > KLEINBARD LLC
    Carson B. Morris, Esq.
    Barbara A. Zemlock, Esq.
    Heidi R. Freese, Esq. > TUCKER ARENSBERG PC
    Samantha G. Zimmer, Esq. - KLEINBARD LLC
    Edward T. Butkovitz, Esq. - KLEINBARD LLC
    Rory Connaughton, Esq.
    JESSICA C. LASKE, ESQ.

**CONTINUANCE OF DISTRIBUTION LIST:**

CARDTRONICS USE INC (1)

FIRST NATIONAL BANK OF PENNSYLVANIA (1)

JONESTOWN BANK AND TRUST COMPANY(1)

BELCO COMMUNITY CREDIT UNION (1)

PEOPLES BANK (1)

TRUIST BANK NA (1)

FIRST COMMONWEALTH BANK (1)

JP MORGAN CHASE BANK NA (1)

FIRST REGENTS HOLDINGS LLC (1)

POWERQUEST FINANCIAL LLC (1)

CASH VENTURES III LLC (1)

APOLLO INVESTMENT HOLDINGS (1)

GOLDEN GATE INVESTMENT COMPANY LLC (1)

HELLER CAPITAL GROUP LLC (1)

HELLER INVESTMENTS HOLDING (1)

PREMIER MANAGEMENT GROUP INC (1)

H2 VENTURES LLC (1)

SHARENET LLC (1)

PARAMOUNT MGP LLC (1)

BLACKFORD HOLDINGS LLC (1)

BLACKFORD ATM VETURES LLC(1)

ATM OPS INC D/B/A BITSTOP (1)

POWERCOIN LLC (1)

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 1-3-25