**STARK & STARK, P.C.**
A Professional Corporation
Marshall T. Kizner, Esq.
Joseph H. Lemkin, Esq.
100 American Metro Boulevard
Hamilton, NJ 08619-2319
(609) 791-7022
*Attorneys for Prestige*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>DARYL FRED HELLER,<br><br>               Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**PRESTIGE'S MOTION FOR ORDER CONFIRMING THAT IT IS NOT STAYED FROM PROCEEDING WITH DISCOVERY AND CIVIL CONTEMPT PROCEEDINGS PURSUANT TO 11 U.S.C. § 362(B)(4)**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige") hereby files this motion in an abundance of caution, for an Order confirming that Prestige Is Not Stayed From Proceeding With Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(a) (the "Motion"), and, hereby states, as follows:

## BACKGROUND

1.    On November 21, 2024, Prestige received judgment in its favor and against Daryl Fred

Heller's ("Debtor") company Paramount Management Group, LLC ("Paramount"), by consent, for

$138,156,118.38 ("Judgment") in the Commonwealth of Pennsylvania, Lancaster County Court of

Common Pleas, No. CI-24-06012 (the "Prestige Action"). A copy of the Judgment is attached hereto as

Exhibit "A."

2.    The Judgment further required within two (2) days of the date of the judgment,

Paramount shall supply to Paramount a complete inventory of all ATMs Units purchased by Prestige

from Paramount (Prestige's ATM Units). See id., Exhibit "A."

3.    The Judgment also required that within seven (7) days of the date of the Judgment,

Paramount shall assign and transfer to Prestige (1) all of Paramount's right, title and interest to

Prestige's ATM Units; as well as (2) the location agreements, permits, ATM passwords and

combinations, and all vendor and other contracts or agreements relating to Prestige's ATM Units

(excluding the communication modems installed in any of Prestige's ATM Units). See id., Exhibit

"A."

4.    Paramount failed and refused to comply with the Judgment it consented to.

5.    As a result, Prestige was forced to file an Emergency Motion for Contempt in the Prestige

Action.

6.    On December 6, 2024, following a hearing, the Hon. Leonard G. Brown, Presiding Judge

of the Lancaster County Court of Common Pleas entered an order finding Paramount in contempt and

issuing various sanctions to compel compliance ("Contempt Order"). A copy of the December 6, 2024

Order is attached hereto as Exhibit "B."

7.    More specifically, the court ordered that Paramount be assessed $50,000 a day in

sanctions until it has purged itself of contempt. See Exhibit "B."

8.   In addition, to purge itself of contempt, Paramount shall remit to Prestige all profits generated from Prestige's ATM Units from November 21, 2024 to the present. <u>See</u> Exhibit "B."

9.   Paramount was also required to provide documents, location agreements, ATM passwords, vendor contracts, master list of ATMs and other documents. <u>See</u> Exhibit "B."

10.   Paramount, again, failed and refused to comply with the Judgment it consented to as well as the Contempt Order. As a result, Prestige was forced to file a second Emergency Motion for Contempt on December 20, 2024 in the Prestige Action.  A hearing was held on December 30, 2024.

11.   Prestige filed a brief in further support of the second Emergency Motion for Contempt on January 3, 2025. A copy of the brief is attached hereto as Exhibit "C."

12.   On January 10, 2025, the Hon. Leonard G. Brown, Presiding Judge of the Lancaster County Court of Common Pleas, entered a nineteen (19) page opinion finding both Paramount and Debtor, as of the sole remaining representative of Paramount, in contempt. A copy of the contempt opinion and order is attached hereto as Exhibit "D."

13.   Judge Brown provided a detailed review and analysis of Paramount and Debtor's conduct and concluded that "[c]onsidering the evidence before it, the court finds Paramount in contempt.  In what appears to be a sophisticated shell game orchestrated by Daryl Heller, assets represented under oath to the court did not exist.  Paramount, controlled by Heller, failed to comply, or timely comply, with numerous court orders.  Accordingly, the court enters the following order." <u>See</u> <u>id.</u>, Exhibit "D," page 19.

14.   On January 10, 2025, the Court entered an order ("Second Contempt Order") finding Paramount in civil contempt and assessing sums against it in the amount of $2,050,000 and found Debtor jointly and severally liable for the civil contempt penalty. <u>See</u> <u>id.</u>, Exhibit "D," page 20.

15.   The sums due to Prestige from Paramount and Debtor under the Judgment and Second Contempt Order remain uncollected. However, Prestige is stayed from pursuing its rights against

Debtor, personally, due to the imposition of the automatic stay in this case. Prestige, however, is not stayed from enforcing its rights vis-à-vis Paramount.

16. In service of pursuing the Judgment against Paramount, Prestige has served discovery in aid of execution, including interrogatories and requests for production of documents.

17. Regarding the interrogatories, Prestige served them on Paramount on November 21, 2024, through Paramount's counsel at the time (DLA Piper).

18. One week later, Paramount's then-counsel filed a petition to withdraw, which the trial court granted on November 27, 2024.

19. Paramount obtained new legal representation (Montgomery McCraken Walker & Rhoads) and Prestige forwarded to Paramount's new counsel on December 9, 2024 a copy of the previously served interrogatories.

20. Paramount's full and complete answers to Prestige's interrogatories were due to be served within thirty (30) days of service, or no later than December 23, 2024.

21. Paramount did not obtain an extension of time, nor did it seek a protective order with respect to the interrogatories.

22. Despite this, Paramount failed to provide any response to the interrogatories by December 23, 2024.

23. Around the same time, Prestige was pursuing Paramount for contempt under the Judgment.

24. Through the contempt proceedings, Prestige learned that Daryl Heller is the sole remaining officer/employee of Paramount: all other officers and employees were discharged by Paramount.

25. Shortly before the trial court's final contempt Order, Paramount's second counsel filed a petition to withdraw, which the trial court granted on January 10, 2025.

26. Also, shortly before the final contempt Order, Prestige filed a motion to compel answers to its interrogatories, which the trial court granted on January 10, 2025.

27.    Specifically, the trial court directed Paramount to answer interrogatories within 20 days from the date of the Order or suffer sanctions.

28.    Because Daryl Heller is the sole remaining representative of Paramount, Prestige served the January 10 Order on Daryl Heller's personal counsel on January 14, 2025.

29.    The deadline for compliance with the January 10th Order was January 30, 2025.

30.    On January 30, Prestige sent an email to Mr. Heller's counsel, soliciting answers to the Interrogatories and advising that Prestige intended to move for sanctions if answers were not received.

31.    Mr. Heller's counsel responded by acknowledging receipt and committing to send the communication to Mr. Heller.

32.    Despite the above, the deadline for compliance, came and went and Paramount, once again, failed to answer the interrogatories.

33.    In sum, despite Paramount being represented by *two different* law firms (DLA Piper and Montgomery McCraken) during the time when the interrogatories were outstanding, and despite Paramount's sole remaining officer having personal counsel who was also served with the interrogatories, neither Paramount nor Daryl Heller have supplied a single interrogatory answer.

34.    Accordingly, Prestige filed—before the Debtor's Petition, a Motion for Sanctions and Attorneys' fees as to both Paramount and Debtor, on January 31, 2025. A true copy of the Motion for Sanctions is attached hereto as Exhibit "E."

35.    Before the motion was resolved by the trial court, and due to the Debtor's bankruptcy filing, in an abundance of caution, Prestige filed a Praecipe to Attach Alternative Proposed Order to Plaintiffs' Motion for Sanctions and Attorneys' Fees (the "Praecipe").  A true copy of the Praecipe along with the proposed alternative order (the "Alternative Order") is attached hereto as Exhibit "F." The Alternative Order sought to solely assess sanctions against Paramount – not the Debtor.

36. Prestige submitted another Praecipe on February 21st whereby it further advised the Court of Common Pleas that it was not seeking relief against the Debtor. A true copy of the February 21st Praecipe is attached hereto as Exhibit "G."

37. Notwithstanding, submission of the Alternative Order and the Praecipes, on March 11, 2025, the Court of Common Pleas of Lancaster County entered an Order which, upon personal service, imposes sanctions on both Paramount and the Debtor jointly and severally, for each day that Paramount fails to answer Prestige's interrogatories in aid of execution (the March 11th Order"). A true copy of the March 11th Order is attached hereto as Exhibit "H."

38. On or about March 18, 2025, Prestige's counsel forwarded a copy of the March 11th Order to Debtor's counsel. Debtor's counsel raised a concern that the March 11th Order potentially violated the automatic stay.

39. Out of an abundance of caution, Prestige moves for relief to adjudicate that the stay was not violated under the March 11th Order.

## LEGAL ARGUMENT

**A. Enforcement of the March 11th Order Does Not Violate the Automatic Stay**

**a. Discovery**

40. 11 U.S.C.S. § 362(a)(1) provides that the filing of a bankruptcy petition operates as a stay of " (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case …." (Emphasis added.)

41. The automatic stay does not bar litigants from imposing discovery obligations on debtors in their capacity as a non-party witnesses, even if a debtor is also to a defendant in a related action that has been stayed as to the debtor. *See Groner v. Miller (In re Miller)*, 262 B.R. 499, 507 (B.A.P. 9th Cir. 2001) (automatic stay does not apply to discovery issued to a debtor if it relates to claims

against non-debtors that were not stayed, even if the information to be elicited from the debtor may later be used against the debtor).

42.    Moreover, it does not violate the automatic stay for a debtor to be compelled to testify in a proceeding against a non-debtor when the debtor has been severed from the proceeding and the purpose of eliciting the testimony is to prosecute a claim against the non-debtor. *Kenoyer v. Cardinale (In re Kenoyer)*, 489 B.R. 103, 115 (N.D. Cal. 2013).  Such testimony is permitted even if the information could later be used against the debtor.  *Id*. at 117. *See also United Nat'l Funding, LLC v. JetDirect Aviation, Inc.*, 2012 U.S. Dist. LEXIS 89587, 2012 WL 2514929, at *4 (D. Nev. June 28, 2012) ("automatic stay does not protect a debtor from complying with discovery requests in a multi-defendant action where the debtor . . . is a Defendant, but where the requests for discovery pertain to the claims against the other non-debtor Defendants . . . ."); *Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*, 2008 Bankr. LEXIS 4692, 2008 WL 8444797, at *7 (B.A.P. 9th Cir. Aug. 15, 2008) (automatic stay does not prevent a party from obtaining information "from the debtor through third-party discovery without the stay being lifted"); *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, 2004 U.S. Dist. LEXIS 24292, 2004 WL 2973822, at *3 (N.D. Ill. Nov. 30, 2004) (granting motion to compel debtor's compliance with subpoena because automatic stay did not bar discovery against the debtor directed towards the claims against non-debtor defendants); *In re Barlas*, 2006 Bankr. LEXIS 875, 2006 WL 1452806, at *2-3 (Bankr. N.D. Iowa May 19, 2006).

43.    Here, there can be no question that the Debtor is obligated to respond to the open discovery demands regarding Paramount.  Notwithstanding the automatic stay in this case, there is no stay as to Paramount.  As firmly established in the numerous cases cited herein, the automatic stay in the Debtor's case, does not obviate or suspend his obligation to comply with third-party discovery.  Because there is no other injunction in place, or extension of the automatic stay, the

Debtor cannot thumb his nose at discovery obligations, and Prestige should be authorized to personally serve and enforce the March 11th Order and the discovery obligations set forth therein.

### b. Civil Contempt Proceedings

44.   Section 362(b)(4) carves out certain government proceedings from the automatic stay. "Civil contempt proceedings are exempted from the automatic stay under the Bankruptcy Code's government regulatory exemption, 11 U.S.C. § 362(b)(4), when … the contempt proceedings are intended to effectuate the court's public policy interest in deterring litigation misconduct." *Dingley v. Yellow Logistics. LLC* (In re Dingley), 852 F.3d 1143, 1144 (9th Cir. 2017).

45.   Notwithstanding Prestige's explicit requests through two Praecipes, including the submission of an alternative form of order excising the Debtor from the contempt order, the Court of Common Pleas entered March 11th Order.  Given, the Debtor's longstanding, willful and contumacious conduct, the Court of Common Pleas was entitled to enter the March 11th Order in order to deter further litigation misconduct by the Debtor and coerce compliance.

**WHEREFORE**, in light of the foregoing, Prestige respectfully requests that the Court enter an Order: (i) confirming that Prestige is authorized to personally serve the Debtor with the March 11th Order; (ii) confirming that Prestige is authorized to enforce the March 11th Order; and (iii) granting such other and additional relief as the Court deems appropriate.

Respectfully submitted,

STARK & STARK
A Professional Corporation


By:/s/ *Marshall T. Kizner*
   MARSHALL T. KIZNER, ESQ.


By:/s/ *Joseph H. Lemkin*
   JOSEPH H. LEMKIN, ESQ.
   100 American Metro Blvd.
   Hamilton, NJ 08619
   (609) 791-7922 (direct)
   (609) 896-9060 (main)
   (609) 895-7395 (facsimile)

Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC

Dated:  March 28, 2025

# EXHIBIT A

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| PRESTIGE FUND A, LLC; | : | |
| PRESTIGE FUND A II, LLC; | : | No. CI-24-06012 |
| PRESTIGE FUND A IV, LLC; | : | |
| PRESTIGE FUND A V, LLC; | : | Hon. Leonard G. Brown, III |
| PRESTIGE FUND A VI, LLC; | : | |
| PRESTIGE FUND A VII, LLC; | : | |
| PRESTIGE FUND A IX, LLC; | : | |
| PRESTIGE FUND B, LLC; | : | |
| PRESTIGE FUND B II, LLC; | : | |
| PRESTIGE FUND B IV, LLC; | : | |
| PRESTIGE FUND B V, LLC; | : | |
| PRESTIGE FUND B VI, LLC; | : | |
| PRESTIGE FUND B VII, LLC; | : | |
| PRESTIGE FUND B BTM I, LLC; | : | |
| PRESTIGE FUND D, LLC; | : | |
| PRESTIGE FUND D III, LLC; | : | |
| PRESTIGE FUND D IV, LLC; | : | |
| PRESTIGE FUND D V, LLC; | : | |
| PRESTIGE FUND D VI, LLC; | : | |
| PRESTIGE FUND D BTM I, LLC; | : | |
| WF VELOCITY I, LLC; | : | |
| WF VELOCITY FUND IV, LLC; | : | |
| WF VELOCITY FUND V, LLC; | : | |
| WF VELOCITY FUND VI, LLC; and | : | |
| WF VELOCITY FUND VII, LLC, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| PARAMOUNT MANAGEMENT GROUP, | : | |
| LLC, | : | |
| Defendant. | : | |

ENTERED AND FILED
PROTHONOTARY'S OFFICE
LANCASTER, PA.
2024 NOV 21  AM 9: 11

## CONSENT JUDGMENT AND ORDER

This matter is before the Court by the consent of Plaintiffs Prestige Fund A,

LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A V, LLC;

Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A IX, LLC;

Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige

Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund

B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC; Prestige Fund D

IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; Prestige Fund D BTM

I, LLC; WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC;

WF Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC (collectively,

**Plaintiffs**) and Defendant Paramount Management Group, LLC (**Defendant**) for

the entry of a Consent Judgment and Order, as reflected in the Stipulation entered

on November 13, 2024, and

The Court has reviewed the Stipulation, all pleadings, and proceedings in

this matter to date, and

For good cause shown,

**IT IS THIS** 21ˢᵗ day of _November_____, 2024,

**ORDERED** that **JUDGMENT** is entered in favor of Plaintiffs against

Defendant in the amount of $138,156,118.38; and it is further

**ORDERED** that, within two (2) days of the date of this Consent Judgment

and Order, Defendant **SHALL SUPPLY** to Plaintiffs a complete inventory of all

ATMs Units purchased by Plaintiffs (or members of Plaintiffs) from Defendant

(**Plaintiffs' ATM Units**); and it is further

**ORDERED** that within seven (7) days of the date of this Consent Judgment

and Order, Defendant **SHALL ASSIGN AND TRANSFER** to Plaintiffs (1) all of

Defendant's right, title and interest to Plaintiffs' ATM Units; as well as (2) the

Location Agreements, Permits, ATM passwords and combinations, and all vendor

and other contracts or agreements relating to Plaintiffs' ATM Units (excluding the

communication modems installed in any of Plaintiffs' ATM Units); and it is further

**ORDERED** that upon entry of this Consent Judgment and Order, Defendant

waives any and all right to an appeal from this Consent Judgment and Order, and it

is further

**ORDERED** that the parties shall bear their own costs and attorneys' fees.

**BY THE COURT:**

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 11-2-2024

ATTEST: _____

**LEONARD G. BROWN III, JUDGE**

Copies to:   Matthew H. Haverstick, Esq.
             Joshua J. Voss, Esq.
             Samantha G. Zimmer, Esq.
             Nathan P. Heller, Esq.
             Joseph Roselius, Esq.
             Jeffrey S. Torosian, Esq.

# EXHIBIT B

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

|  |  |
|---|---|
| PRESTIGE FUND A, LLC, ET AL.,<br>Plaintiffs,<br>v.<br><br>PARAMOUNT MANAGEMENT GROUP,<br>LLC,<br>Defendant. | :<br>:<br>:    No. CI-24-06012<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this ___6th___ day of December, 2024, upon consideration of

Plaintiffs' Emergency Motion for Contempt, and having held a hearing on the

Emergency Motion on December 6, 2024, and it appearing to the Court that

Paramount Management Group, LLC has failed to comply with the Consent

Judgment and Order of November 21, 2024, and the Court finding that Paramount

is in **CONTEMPT** of Court; it is hereby **ORDERED** that the Emergency Motion is

**GRANTED**, and is further **ORDERED** as follows:

1.  Starting on December 7, 2024, Paramount Management Group is

    assessed the sum of $~~100,000~~ *$50,000* **per day** until it has purged itself of the

    *in 2a. below. Starting on December 14, 2024 Paramount Management* *

    contempt/The sum shall be paid by Paramount to the Prothonotary.

    The Prothonotary shall remit any deposited sums to Plaintiffs upon

    further Order of the Court.

2.  <u>Paramount shall purge itself of the contempt by: (a) remitting to</u>

    <u>Plaintiffs all profits generated by Plaintiffs' ATM Units from</u>

    <u>November 21, 2024 to the date Paramount's contempt is purged;</u>

*Group is also assessed the sum of $50,000 per day until it has purged itself of the contempt in 2b and c. The court directs that 2a also includes all underlined language in paragraph 2 and 2b and c also contains the underlined language.

Lancaster County Prothonotary E-Filed - 6 Dec 2024 10:33:55 AM
Case Number: CI-24-06012

(b) executing and delivering to Plaintiffs a document assigning and

transferring Paramount's right, title, and interest to Plaintiffs' ATM

Units as well as the Location Agreements, Permits, ATM passwords

and combinations, and all vendor and other contracts or agreements

relating to Plaintiffs' ATM Units (excluding the communication

modems installed in any of Plaintiffs' ATM Units; and (c) supplying all

of the following to counsel for Plaintiffs:

a. **Master List of Fund-owned ATMs,** which shall include a comprehensive list of all fund-owned ATMs. At minimum, this list needs to include the following items for each Fund-owned ATM:

  i. ATM Serial Number;

  ii. ATM Terminal ID;

  iii. ATM Location;

  iv. ISO / Processor; and

  v. ATM Profile: Cash Management Provider and Maintenance Provider (First and Second line).

b. **Processor Access**, which shall include the following information from each processor of Fund-owned ATMs (CDS, PAI, Switch Commerce, 1st ISO, DNS, etc.):

  i. Full administrative / management access to the online dashboard for each processor; and

  ii. Contact info for account managers for each processor.

c. **Management Software**, which shall include following information for SMS ATA and any additional internal database(s) or industry management software(s) / data repositories utilized by Paramount to manage the Fund-owned ATMs:

  i. Full administrative / management access to each program; and

2

Lancaster County Prothonotary E-Filed - 6 Dec 2024 10:33:55 AM
Case Number: CI-24-06012

      ii. Contact info for account managers for each program.

    d. **Additional data**, specifically:

      i. Network Lists for each ISO involved with the portfolio;

      ii. Contracts between each ISO and sponsor bank(s);

      iii. Contact info for account managers / compliance personnel for each sponsor bank; and

      iv. Additional ATM information:

        1. ATM make, model, serial number, number, rand capacity of cassettes;

        2. Individual Vault, User, Service, Master, and Key Management passwords for each ATM;

        3. ATM vault lock type;

        4. Communication Method;

          a. Cell modem provider;

          b. RMS availability and passwords;

        5. ATM compliance status; and

        6. Any location agreements that were not provided by Paramount to Plaintiffs in prior data transmittals.

3. Upon delivery of all items set forth in paragraph 2, Paramount shall file a certification with the Court that it has complied with this Order. In turn, within 24 hours, Plaintiffs shall file a certification verifying Paramount's compliance or non-compliance with paragraph 2.

4. Upon Paramount's compliance with paragraphs 2 and 3 of this Order, and receipt of a confirmatory certification from Plaintiffs, Paramount shall be purged of the contempt.

Lancaster County Prothonotary E-Filed - 6 Dec 2024 10:33:55 AM
Case Number: CI-24-06012

BY THE COURT:

_____
LEONARD G. BROWN III, JUDGE

ATTEST: _____

Copies to:    Matthew H. Haverstick, Esq.
              Joshua J. Voss, Esq.
              Samantha G. Zimmer, Esq.
              Paramount Management Group, LLC

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 12-9-24

4

# EXHIBIT C

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
*Attorneys for Plaintiffs*

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

|  |  |  |
|---|---|---|
| | : | |
| PRESTIGE FUND A, LLC, ET AL., | : | No. CI-24-06012 |
| Plaintiffs, | : | |
| v. | : | Hon. Leonard G. Brown, III |
| | : | |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' BRIEF IN FURTHER SUPPORT OF**
**EMERGENCY MOTION FOR CONTEMPT**

As required by the Court's Order of December 30, 2024, Plaintiffs Prestige

Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A

V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A IX,

LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC;

Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC;

Prestige Fund B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC;

Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC;

Prestige Fund D BTM I, LLC; WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF

Velocity Fund V, LLC; WF Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

(collectively, **the Funds**) respectfully submit this brief in further support of their

Emergency Motion for Contempt.

## I.    BACKGROUND

On November 21, 2024, this Court entered the Consent Judgment and Order.

On December 3, 2024, the Funds filed their Emergency Motion for Contempt,

explaining various ways Defendant Paramount Management Group, LLC was out of

compliance with the Consent Judgment. The Court heard argument on the

Emergency Motion on December 6, 2024. By Order dated the same day, the Court

found Paramount in contempt and set forth various things Paramount was required

to do to purge the contempt. Notably, paragraph 3 of the December 6 Order

required Paramount to file a certification with the Court that it had fully complied

with the Order.

As of the date of this brief, Paramount has not filed any such certification

and, per the Status Report Paramount filed on December 29, 2024, it readily

acknowledges it has not done so.

On December 18, 2024, at the request of the Funds, the Court ordered a Zoom

status conference on December 19, 2024. Following the status conference, the Court

entered another contempt order. Paragraph 4 of the December 19 Order directed

Paramount to remit to the Funds by midnight on December 19 "[a]ll profits,

revenues, or any other revenue streams or proceeds generated by Plaintiff's ATM

Units but currently going into accounts of Defendant[.]" Paramount did not, in fact,

remit any revenues to the Funds by midnight on December 19. Instead, by two

wires received by the undersigned counsel on December 23, Paramount remitted

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

$114,209.29.[1] Paramount did not certify that the wires were all profits/revenues required to be remitted under the December 6 and December 19 Orders.

The December 19 Order also set a further contempt hearing for December 30. At the December 30 hearing, the parties submitted stipulated testimony in lieu of live testimony (all such testimony is incorporated here by reference). Just prior to the hearing, the Funds submitted a proposed contempt order. At the hearing, Paramount again confirmed, through counsel, it had not certified compliance with the December 6 Order. Following the hearing, the Court entered an Order dated December 30 requiring the parties to submit additional briefing.

As of the date of this brief, the contempt fine accruing under the December 6 Order stands at $2,450,000 (and grows by $100,000 per day).

## II.    ARGUMENT

### A.    Paramount and Daryl Heller are in contempt of the Court's prior Orders.

Presently Paramount and Daryl Heller stand in contempt of the Court's November 21, December 6, and December 19 Orders in three ways: (1) they have not submitted to the Funds all profits generated by the Funds' ATM Units since November 21, 2024; (2) they have not remitted a complete inventory of all Fund-owned ATMs; and (3) they have failed to timely remit data regarding the Funds' ATM Units, and otherwise left them so saddled with debt as to render them of

---

[1] Later by wires received by the undersigned on December 27 and December 30, Paramount remitted an additional $26,000, bring the total to $140,209.29.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

limited value. As noted above, Paramount has not certified compliance with the December 6 Order and has indicated it *won't ever* certify compliance.

### 1.    Paramount has not remitted all profits/revenues to the Funds.

Despite being twice ordered to remit to the Funds profits/revenues earned by Paramount from the Funds' ATMs since November 21, *see* Dec. 6 Order at ¶ 2(a); Dec. 19 Order at ¶ 4, Paramount still has not complied. To date, the Funds have received four wires, totaling approximately $140,000. Paramount has not certified if this is all profits or revenues. More importantly, the Funds know this sum is not all profits/revenues. As set forth in the attached Affidavit of Matthew Eby (Exhibit A), according to Paramount's own records, some $1,320,252.82 was received by Paramount from November 21, 2024 to December 24, 2024 attributable to the Funds' ATMS. *See* Eby Affid. at ¶ 11.a.i. Subtracting from that total the $114,209.29 received by the Funds during the time period in Paramount's spreadsheet (the last $26,000 Paramount remitted to the Funds was *after* Paramount generated the spreadsheet analyzed by Eby), the Funds should have received an additional $1,206,043.53. Moreover, under the testimonial stipulation of Daryl Heller, the Funds asked him if Paramount had turned over all profits, *see* Heller Stip. at ¶ 4.j, and he invoked his Fifth Amendment right to not answer. Hence, the Court can adversely infer that Paramount has not paid all such sums. *See Harmon v. Mifflin Cnty. Sch. Dist.*, 713 A.2d 620, 623 (Pa. 1998). That testimony is corroborated by the Eby Affidavit and the spreadsheet produced by Paramount (which was introduced as Plaintiffs' Exhibit 1 at the December 30

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

contempt hearing). *Cf. Cruz v. Workers' Compensation Appeal Bd.*, 99 A.3d 397, 412

(Pa. 2014) (holding adverse inference must be corroborated by other evidence for

party to meet burden of proof).

As is further material, the parties have a legal dispute on the meaning of the

word "profits" in paragraph 2(a) of the December 6 Order, but even that dispute

does not absolve Paramount of the contempt. The Funds submitted the text of the

December 6 Order as a proposed order and purposefully chose the word "profits"

instead of "revenues" in an attempt to be fair *to the Defendant*. The rationale for

that choice was to acquire from Paramount only the moneys to which the Funds

were entitled, and not those moneys received by Paramount from the ATMs that

rightfully belong to the ATM vendors involved in operating the ATMs. Hence, the

Funds chose "profits," which means "a valuable return: GAIN." *See* PROFIT, *The*

*Merriam-Webster Dictionary* (New edition 2004). And, even if the Court were to

interpret the December 6 Order as only requiring Paramount to remit to the Funds

net profits (meaning profits after Paramount paid all expenses, and not just those

expenses involving ATM vendor expenses), the Court's December 19 Order ended

this interpretation as a reasonable one. Under the December 19 Order, the Funds

were entitled to "[a]ll profits, revenues, or any other revenue streams or proceeds,"

*see* Dec. 19 Order at ¶ 4, meaning, at a bare minimum, Paramount's legal

interpretation of the December 6 Order became unreasonable after December 19.

In sum, regardless of the legal interpretation of the December 6 Order,

Paramount is not in compliance with the command to remit to the Funds all profits

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

CI-24-06012

earned by Paramount on the Funds' ATMs since November 21. Notably, Paramount

itself won't say it is in compliance: it refuses to so certify. Thus, Paramount remains

in contempt of Court on this issue.

### 2.    Paramount has not remitted a complete inventory of all Fund-owned ATMs.

On this issue, like the profits issue above, Paramount has not certified

compliance and has indicated it won't certify compliance. To date, Paramount has

assigned to the Funds only approximately 10,000 ATMs where all information

required in paragraph 2.a of the December 6 Order was supplied. Paramount does

not represent that this is a comprehensive inventory. In fact, under the stipulation

with Heller, the Funds asked him if Paramount had produced a complete list, *see*

Heller Stip. at ¶ 4.a, and he invoked his Fifth Amendment right to not answer.

Hence, the Court can adversely infer that Paramount has not supplied such a list.

*See Harmon*, 713 A.2d at 623. That the list received to date is incomplete is

corroborated by the stipulated testimony of Matt Eby, where he explained that over

38,000 ATMs were purchased by the Funds, *see* Eby Stip. at ¶¶ 10-22. *Cf. Cruz*, 99

A.3d at 412. Further, Brent Bauman testified that the inventory he has received is

not complete. *See* Bauman Stip. at ¶ 22. In sum, therefore, Paramount's non-

compliance with this Court-ordered mandate is clear and continuing.

### 3.    Paramount failed to timely remit data and failed to pay debts it incurred on the Funds' ATMs.

Under the December 6 Order, Paramount was required to grant the Funds

access to certain management software and to remit relevant contracts necessary to

operate the ATMs, once assigned, *see* Dec. 6 Order at ¶ 2.c-d; it failed to do so.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

CI-24-06012

Indeed, per the stipulated testimony, Paramount did not tender access to the management software until December 20, which was too late to be meaningfully helpful. *See* Danca Stip. at ¶¶ 22-30; Bauman Stip. at ¶¶ 15-16. Paramount also did not transmit the critical acquisition contracts until December 27, and even then, it did not transmit all of them. *See* Bauman Stip. at ¶¶ 17-21; Heller Stip. at ¶ 4.b.

As equally important, when Paramount made a partial assignment of some of the Funds' ATMs on December 10, it left those ATMs saddled with unresolved debts incurred by Paramount. *See* Bauman Stip. at ¶¶ 23-28; Danca Stip. at ¶ 30. This rendered the conveyance—in large part—valueless. *See* Bauman Stip. at ¶ 29; Danca Stip. at ¶ 30.

Had Paramount acted timely, the above-referenced burdens on the network would have been alleviated. Its willful failure to meet its obligations has hamstrung the Funds at every turn. This undermines the mandates of this Court as expressed in both the Consent Judgment and the December 6 Order.

## B.    Only some of the contempt has been cured.

The parties remain in discussions about transferring certain ATMs in a warehouse in Lancaster and transferring certain so-called BTM devices. Because those issues remain subject to ongoing discussions, they should not form the basis for a further contempt finding at this point. Further, while Paramount has supplied many of the contracts related to the Funds' ATMs, the Funds remain unsure if they have received all relevant contracts, as required by paragraph 2.d of the December 6 Order. Notably, under the Heller Stipulation, the Court can adversely infer that

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

at least some of this information has not been supplied. *See* Heller Stip. at ¶ 4.b.
But this too remains subject to ongoing discussions.

### C.    Paramount has simple actions it can take to cure the contempt and it has failed to establish why it cannot meet its contempt obligations.

#### 1.    Paramount should supply the profits and the inventory and certify its compliance.

Paramount can purge the contempt by supplying the profits and inventory. It should then certify its compliance—subject to penalties of perjury—as required by paragraph 3 of the December 6 Order. This is straightforward and within Paramount's abilities based on the present record.

#### 2.    Paramount has failed to establish an affirmative defense to its violations of this Court's Orders.

Paramount does not dispute it violated this Court's Orders. In fact, during the December 30 hearing, Paramount claimed only that it lacked the ability to comply with the Court's Orders because it had recently terminated staff and suffered financial distress. These unproven assertions of self-inflicted harm are no excuse, however.

Inability to comply is an affirmative defense that must be proven by the alleged contemnor. *Cecil Twp. v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth. 2003) (citing *Barrett v. Barrett,* 368 A.2d 616, 621 (Pa. 1977)). "There is no contempt if the alleged contemnor, *without fault on his part* is unable to comply with the order, and has in *good faith* attempted to comply." *Cecil Twp.*, 821 A.2d at 675 (Pa. Cmwlth. 2003) (emphasis added; citations omitted).

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

Here, Paramount has presented no evidence to support its affirmative
defense. The only evidence introduced at the December 30 hearing included
stipulations—none of which supported Paramount's position. To the contrary, they
affirmatively show that Paramount had the capacity to comply with this Court's
Orders, but deliberately chose not to do so.

To illuminate, Paramount violated three Orders: (1) the November 21
Consent Judgment and Order; (2) the December 6 Order; and (3) the December 19
Order. All of these Orders relate back to Paramount's obligation to produce basic
information concerning the Funds' ATMs. Paramount's purported inability to
comply with these Orders did not arise until December 13, 2024, when it laid off
most of its staff. This purported defense, however, ignores Paramount's ability to
comply prior to that date, as well as its active interference in any meaningful efforts
at compliance.

Paramount was fully staffed for the 39-day period between entry of the
Consent Judgment and Order and the date it fired staff. Yet, the evidence shows
that not only was little done to comply, but also any such efforts were deliberately
thwarted. For example, in response to the November 21 Consent Judgment and
Order, Paramount's now former CEO, Randall Leaman, directed Paramount
personnel to gather the necessary information to provide to Heller and his legal
counsel so they could review and decide what to send to the Funds. *See* Affid. of

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

Randall Leaman (fourth bullet point).[2] Paramount did not provide the necessary information to the Funds, resulting in the December 6, 2024 hearing and Contempt Order.

Paramount's post-December 6 conduct consisted of further efforts to impede rather than comply with this Court's Orders. In response to the December 6 Order—while Paramount was still fully staffed—Paramount directed its CEO not to be involved in any data gathering. *See* Affid. of Randall Leaman (fifth bullet point).

On December 10, 2024, Paramount and the Funds discussed the need for Paramount to grant the Funds access to vital software needed to run the Funds' ATM network. *See* Danca Stip. at ¶¶ 22-24. Paramount responded with a proposal to extract data from the software and provide it to the Funds. *Id.* at ¶ 24. Rather than follow through on its own proposal, Paramount terminated its staff just three days later, on December 13, 2024. *Id.* at ¶ 25. Paramount then proffered its lack of staffing to excuse its noncompliance. *Id.* at ¶ 26. Despite no changes in Paramount staffing, the Funds were eventually granted software access on December 20, 2024. *See id.* at ¶ 29. By that time, however, the Funds suffered irreparable harm due to the delayed access to time-sensitive information. *See id.* at ¶ 30.

Finally, Paramount claims it lacks adequate staff and funding to comply with the Court's Orders. This assertion relies on the unverified statements of Paramount's attorney and is unsupported by any evidence. While the Funds need

---

[2] Leigh Danca was directed not to provide the Funds with certain contracts. *See* Danca Stip. at ¶¶ 32-33.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

not disprove Paramount's position, the evidence certainly suggests that it could comply if it wanted to. Paramount presently has no less than $700,000 in funding that it has inexplicably failed to transfer to the Funds,[3] as well as $1.65 million that it anticipates receiving before the end of May. *See* Heller Stip. at ¶ 4.x-y. Paramount also continues to receive revenue from the Funds' ATMs. *See* Plaintiffs' Exhibit 1 from December 30 Hearing (Paramount spreadsheet).

In summary, Paramount has failed to adduce evidence to establish any affirmative defense to its violations of this Court's Orders. To the contrary, the evidence shows that at all relevant times Paramount acted without good faith, and, at best, intentionally caused its own purported temporary inability to comply. Accordingly, an additional finding of contempt is warranted.

### D. The appropriate remedies for the ongoing contempt are as set forth in the Funds' proposed order.

The Court should order Paramount to comply with the prior Orders, certify compliance, pay its contempt fine, and should increase the value of the judgment. If Paramount won't certify compliance, the Court should appoint, at Paramount's expense, a forensic auditor to review Paramount's books and records regarding the inventory and the profits and then supply the certification of the results. These are the terms as set forth in the Funds' proposed order.

---

[3] This constitutes a separate violation of this Court's Orders by itself.

Case ID: CI-24-06012 Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

1.     **The proposed remedies are justified against Paramount.**

The above remedies are justified. As against Paramount, its claimed inability to comply—which is an affirmative defense, and one not supported by evidence, *see supra*—is a cage of its own making. At a time when it could have easily complied based on manpower at the company, it didn't. Then once all employees were terminated *by Paramount itself*, and it was left with only Daryl Heller to rely upon, it threw its hands up because he's concerned he'll implicate himself in a crime if he certifies. But Heller's Fifth Amendment rights do not excuse Paramount of its duties to comply because, as a company, Paramount cannot invoke the Fifth Amendment. *See, e.g.*, *S.E.C. v. Leach*, 156 F. Supp. 2d 491, 495 (E.D. Pa. 2001) ("It is well settled that a corporate defendant may not assert the Fifth Amendment privilege against self-incrimination …"). So, Paramount must appoint a witness/agent who *can* certify compliance, even if that agent is corporate counsel. *See id.* at 497. In sum, someone, even if an auditor appointed by the Court, must certify compliance.

As a final note on Paramount, it should be on the hook for an increased judgment to match the value of the network as it was assessed by Heller himself on November 1, 2024. *See* Plaintiffs' Exhibit 2 from December 30 Hearing (asset purchase agreement); Heller Stip. at ¶ 4.w. That sum—$455,413,726.38—is the value of what the Funds should have received under the November 21 Consent Judgment. But Paramount's delays in transmitting data, access, and complete parts of the network (remember only 10,000 ATMs have been assigned to date), coupled

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

with the crippling debt left by Paramount, have turned that asset into one that is of little value.

> **2.     The proposed remedies are justified against Heller because he caused Paramount to violate this Court's Orders.**

Heller is subject to contempt for Paramount's violations of this Court's Orders because he actively participated in those violations. Under Pennsylvania law, "corporate officers can be held in contempt of a corporation's noncompliance." *N. Strabane Twp. v. Majestic Hills LLC*, No. 958 C.D. 2023, 2024 WL 5148461, at *10 (Pa. Cmwlth. Dec. 18, 2024) (citations omitted). The same holds true for members of a limited liability company (LLC) and does not require any type of veil piercing. *Id.* The basis for such individual liability, known as the participation theory, is predicated on the officer's own actions and participation in the entity's wrongful conduct, rather than the entity's status and his relationship to the entity. *Id.* at *10-11. Under the participation theory, individual liability attaches to an LLC member where that member either: (1) actively participates in the LLC's wrongdoing; or (2) had knowledge of the entity's wrongful conduct and chose not to act. *See B & R Res., LLC v. Dep't of Env't Prot.*, 180 A.3d 812, 819-21 (Pa. Cmwlth. 2018).

Here, the participation theory supports individual liability as to Heller. Heller had authority, and was charged with responsibility, to provide the Funds with the information required by this Court's Orders. Instead of doing so, he removed and later terminated staff that would have effectuated compliance. *See* Affid. of Randall Leaman (fourth and fifth bullet points); Danca Stip. at ¶¶ 25-26.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

Heller also caused Paramount's financial misfeasance and directed Paramount to use funds in a manner that created the alleged financial distress that Paramount now claims makes compliance impossible. Specifically, Heller did each of the following:

- directed Paramount to pay one of his other companies, Heller Capital Group, in excess of $300,000 with profits from the Funds' ATM Units;[4]

- directed the movement of funds between Paramount bank accounts and other Heller-controlled bank account(s);[5] and

- directed Paramount to withhold no less than $700,000 in funds available to Paramount to pay the Funds for the contempt fine.[6]

Heller is properly found to be in contempt not because of his status as a Paramount member, but because of his actions. Indeed, individual liability may be imposed against him because the foregoing conduct shows that he *caused* Paramount's contemptuous conduct and continues to do so. Thus, a contempt sanction against him personally is justified.

## III.    CONCLUSION

For the foregoing reasons, the Court should find Paramount and Daryl Heller in contempt and grant relief to the Funds consistent with the terms set forth in the Funds' proposed order.

---

[4] *See* Heller Stip. at ¶ 4.m.
[5] *See id.* at ¶ 4.v.
[6] *See id.* at ¶ 4.x.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

Respectfully submitted,

Dated: January 3, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Case ID: CI-24-06012
Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012
CI-24-06012

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently from non-confidential information and documents.

Dated: January 3, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

CI-24-06012

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused a true and correct copy of

Plaintiffs' Brief in Further Support of Emergency Motion for Contempt to be served

upon the following counsel by email:

> Carson Morris, Esq.
> Montgomery McCracken Walker & Rhoads LLP
> CMorris@mmwr.com

Dated: January 3, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

**Oklahoma County Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM**
**Case Number: CI-24-06012**

# Exhibit A

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

| | |
|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : No. CI-24-06012 |
| Plaintiffs, | : |
| v. | : Hon. Leonard G. Brown, III |
| | : |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : |
| Defendant. | : |

## AFFIDAVIT OF MATTHEW EBY

I, Matthew Eby, hereby declare subject to penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities that the following statements are true and correct based upon my personal knowledge, information, and belief:

1.    I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit.

2.    I submit this Affidavit in support of Plaintiffs' Emergency Motion for Contempt.

3.    I have been retained by the Plaintiffs to perform accounting services.

**Scope of Review**

4.    The transaction data reviewed by me pertains to 12 bank accounts held by the Defendant, covering the period from November 21, 2024, to December 24, 2024.

5.    The cash transaction data was provided by the Defendant in an Excel file (entitled, "11.21 – 12.24 Cash Detail"), with each transaction categorized by the Defendant.

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06612

6.     The Defendant also provided screenshots of each bank statement or bank portal to substantiate the ending balances and transactions that occurred within the covered period.

7.     My engagement was limited to reviewing the transaction details as provided by the Defendant. I did not independently verify the accuracy or completeness of the data supplied by the Defendant.

8.     There was no supporting evidence provided by Defendant to verify the accuracy of the transaction category (e.g., invoices, cleared checks, statements, etc.).

9.     My review does not provide any assurance, certification, or opinion regarding the completeness and accuracy of the transaction data provided by Defendant.

**Key Findings**

10.     Based on the records provided, the net cash used during the period was $(912,040.03).

11.     I have summarized the transactions into two categories: "Money Received" and "Money Disbursed":

    a. **Money Received**
        i. **Total Amount**: $1,320,252.82
       ii. **Sources**: Significant sources of funds include processor settlements and check deposits
      iii. **Key Sources**:
          1. Processor Settlements – $1,100,020.66
          2. Check Deposit – $109,035.91

    b. **Money Disbursed**
        i. **Total Amount:** $(2,232,293.25)
       ii. **Sources:** Significant payments include transfers to Heller Capital Group, employee compensations, check payments, credit card payments and vendor payments.

   iii. **Key Sources:**

1. Transfers and invoice payments to Heller Capital Group – $(344,867.62)
2. Transfers and payments to ShareNet – $(142,271.32)
3. Employee related compensation – $(585,463.77)
4. Check payments – $(252,486.67)
5. Credit Card payments – $(125,452.95)
6. Line of Credit payments – $(110,940.31)
7. Other Vendor payments – $(537,938.51)
8. Payments to Fund Managers – $(114,209.29)

12. The Money Disbursed includes two payments to Plaintiffs totaling

$114,209.29.

13. Had Defendant remitted to Plaintiffs all Moneys Received, less the two

payments Defendant did remit, Plaintiffs would have received $1,206,043.53.

14. A detailed breakdown of transactions is attached as Exhibit A.

Dated: January 2, 2025

_____

MATTHEW EBY

3

Case ID: CI-24-06012 Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

# EXHIBIT A

Prothonotary E-Filed - 3 Jan 2025 11:59:23 AM
Case Number: CI-24-06012

| Type | Transaction Type | Customer/Vendor/Other Detail | Amount | | Qty of Transactions |
|------|------------------|------------------------------|--------|--|---------------------|
| Receipt | Processor Settlement | CDS | $ | 940,453.66 | 224 |
| Receipt | Processor Settlement | Other | $ | 46,291.12 | 132 |
| Receipt | Processor Settlement | 1st ISO | $ | 33,342.88 | 52 |
| Receipt | Processor Settlement | CNS | $ | 32,832.65 | 1626 |
| Receipt | Processor Settlement | Switch Commerce | $ | 24,390.96 | 103 |
| Receipt | Processor Settlement | DNS | $ | 22,709.39 | 102 |
| Receipt | Other Received Payments | Payment Alliance | $ | 28,189.67 | 3 |
| Receipt | Other Received Payments | Pathward | $ | 11,441.81 | 1 |
| Receipt | Other Received Payments | AR | $ | 52,851.51 | 21 |
| Receipt | Check Deposit | Check Deposit | $ | 109,035.91 | 9 |
| Receipt | Bank Transfer from WSFS | Bank Transfer from WSFS | $ | 16,216.69 | 1 |
| Receipt | Returned ACH | Returned ACH | $ | 2,496.57 | 2 |
| **Total** | **Receipts** | | **$** | **1,320,252.82** | |
| | | | | | |
| Payment | Payments to/from Sharenet | Sharenet | $ | (142,271.32) | 4 |
| Payment | HCG Payments | HCG Transfer | $ | (160,000.00) | 4 |
| Payment | HCG Payments | HCG Vendor Payments | $ | (184,867.62) | 3 |
| | | | | | |
| Payment | Employee Compensation | Employee Compensation | $ | (564,133.67) | 12 |
| Payment | Employee Reimbursement | Employee Compensation | $ | (21,330.10) | 1 |
| Payment | Check Clear | Check Clear | $ | (252,486.67) | 286 |
| Payment | Corporate Credit Card Paydown | Credit Card - Chase | $ | (125,452.95) | 5 |
| Payment | FNB LOC Payment | FNB LOC Payment | $ | (110,940.31) | 6 |
| Payment | Vendor Payment | Other | $ | (286,911.91) | 49 |
| Payment | Vendor Payment | First Premier | $ | (100,000.00) | 18 |
| Payment | Vendor Payment | Orrstown | $ | (60,069.76) | 1 |
| Payment | Vendor Payment | Legal | $ | (50,000.00) | 1 |
| Payment | Vendor Payment | Willis Towers Watson | $ | (21,091.00) | 1 |
| Payment | Vendor Payment | Avail | $ | (16,787.46) | 1 |
| Payment | Vendor Payment | PowerQuest | $ | (4,750.62) | 4 |
| Payment | Vendor Payment | Verizon | $ | (393.03) | 2 |
| Payment | Vendor Payment | Fundonatic | $ | 2,065.27 | 10 |
| Payment | Tech Expense Account | Tech Expense Account | $ | (768.16) | 20 |
| Payment | Bank Fees | Bank Fees | $ | (2,796.02) | 64 |
| Payment | Other Payments | ACH Chargeback | $ | (15,098.63) | 1 |
| **Total** | **Payments** | | **$** | **(2,118,083.96)** | |
| | | | | | |
| Transfers | Bank Transfers | Bank Transfer | $ | - | 66 |
| Transfers | Klienbard LLC Balance Transfer | Payment to Fund Managers | $ | (114,209.29) | 2 |
| **Total** | **Transfers** | | **$** | **(114,209.29)** | |
| | | | | | |
| | | Net Cash Used | $ | (912,040.43) | |

# EXHIBIT D

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | | |
|---|---|---|
| PRESTIGE FUND A, LLC, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. CI-24-06012 |
| | : | |
| PARAMOUNT MANAGEMENT | : | |
| GROUP, LLC, | : | |
| Defendant. | : | |

## OPINION

The matter before the Court is Plaintiffs, Prestige Fund A, LLC, et al., and Defendant, Paramount Management Group, LLC, regarding Plaintiff's Emergency Motion for Contempt dated and filed December 20, 2024, on which a hearing was held on December 30, 2024. For the reasons stated below, the motion for a finding of indirect civil contempt granted.

## I.    BACKGROUND

At the heart of this case lies a tangled web of business ventures, once shimmering with the allure of lucrative returns, now unraveling into a cautionary tale of business failures and betrayal. The Plaintiffs, collectively referred to as "the Funds," are a group of distinct limited liability companies incorporated in Delaware and Pennsylvania. These investment funds, comprising approximately 2,700 investors, each contributing over $700 million, have placed all their eggs in ATMs as the Funds' sole investment. The Funds are managed by a series of entities: Prestige Funds Management, LLC ("PFM"), Prestige Funds Management II, LLC ("PFM II"), Prestige Funds Management III, LLC ("PFM III"), and WF Velocity Funds Management, LLC ("WF") (collectively, "the Managers"). Prestige Investment Group, LLC is the sole member of PFM, the Majority Member of PFM II and PFM III, and the sole Class A Member and controlling manager of WF. As such, Prestige Investment Group, LLC holds the controlling interest in all of the

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

managing entities and, consequently, in the Funds themselves.  These types of layered limited liability entities are endemic in this case.

Defendant, Paramount Management Group, LLC ("Paramount"), is the entity entrusted with managing the Funds' ATM portfolio. The Funds purchased the ATMs from Paramount, which retained operational control and management of the machines on the Funds' behalf. Paramount specializes in providing comprehensive ATM management services across a wide range of industries, including, but not limited to, convenience stores, pharmacies, and hospitality establishments. Typically, Paramount or its investors own the ATMs, with Paramount managing all aspects of the operation, including cash logistics, secure processing, maintenance, and customer support. Paramount's portfolio is acquired through a combination of cash purchases and, occasionally, equity splits. Service agreements are often structured to allow the seller to continue providing cash delivery and maintenance, with compensation typically tied to cash withdrawals.

Over 12 years ago, in April 2012, Daryl Heller ("Heller") and Jerry D. Hostetter ("Hostetter") entered into an Amended and Restated Agreement for Prestige Investment Group, LLC. Heller, as the majority Class A Member, owning 60% of the Class A interests, and Hostetter owning 40% of the Class A interests, controls the actions of Prestige Investment Group and its affiliated entities, including the Managers and the Funds. Additionally, Heller is the chairman and majority owner of Paramount, as well as the CEO of Heller Capital Group, which is the controlling member of Paramount.

Notably, at the start of this action, Heller found himself intricately entangled in this dispute due to his influential roles on both sides of the case. On one hand, he serves as the chairman and majority owner of Paramount Management Group, the Defendant, which is accused of failing to meet its contractual obligations to the Funds. As the CEO of Heller Capital Group, which is the

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

majority, if not sole, member of Paramount, Heller holds significant control over the operations and decisions of Paramount. On the other hand, Heller also controls Prestige Investment Group, LLC, the entity that holds the majority of Class A members in the Managers overseeing the plaintiff Funds. Through this position, he is in control of the management of the Funds and their legal actions. This dual position places Heller at the center of the dispute, as he is both the manager of the Funds seeking legal redress and the owner of the company accused of breaching its contractual obligations, further complicating the legal landscape of this case.

However, Heller's entanglement did not hinder the Funds from pursuing legal redress. As background for the exact issue in this case, between 2020 and 2024, Paramount entered into ATM Management Services Agreements ("MSAs") with each of the Funds. These agreements stipulate that all revenue generated from the ATMs is initially directed to Paramount to cover operational costs, with any remaining funds to be remitted to the Funds as set forth in each MSA. Under the terms of the MSAs, if Paramount fails to make the agreed-upon monthly payments, the Funds must provide written notice and a 20-day period to cure the non-payment. Should Paramount fail to cure, the MSAs allow the Funds to terminate the agreements upon written notice.

Paramount met its payment obligations through March 2024. However, starting in April 2024, Paramount ceased making payments, leaving 25 payments, across 25 entities comprising the Funds, totaling $16,369,033.52 of unpaid payments. This failure to remit payments continued through August 2024. On August 2, 2024, the Funds sent a formal notice of non-payment to Paramount, demanding payment by August 22, 2024. When Paramount failed to comply, the Funds, on August 23, 2024, invoked their right to terminate the MSAs and demanded the prompt transfer of ATM-related information.

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

By the time the initial Complaint was filed in August 2024, Paramount had failed to remit 100 payments, spanning April through July, totaling $65,422,167.08. As of the filing of this Opinion, Paramount has failed to remit any additional payments to the Funds, bringing the total amount of unpaid revenue to approximately $130,854,421.00.

## II.    PROCEDURAL HISTORY

On August 23, 2024, Plaintiffs filed their Complaint alleging Count I – Breach of Contract, Count II – Breach of Contract, and Count III – Injunctive Relief. Along with the filing of its Complaint, Plaintiffs also filed a Petition for Special Injunction and Preliminary Injunction on August 23, 2024, for which this Court held a hearing on August 26, 2024. Additionally, on August 26, 2024, Defendant filed its Answer with New Matter and Counterclaim. Defendant's Counterclaim alleges Specific Performance. Then, on August 26, 2024, Defendant filed its Answer to Plaintiffs' Petition for Special Injunction and Preliminary Injunction, and on August 27, 2024, it filed a Brief in Opposition to Plaintiffs' Petition for Special Injunction and Preliminary Injunction.

After the August 26 hearing, on the issue of Plaintiffs' Petition for Special Injunction and Preliminary Injunction, the Court found injunctive relief unnecessary in its Order dated, August 27, 2024. Specifically, the Court found that Plaintiffs failed to meet the requirement of establishing the viability of the Defendant's enterprise as in such a precarious position that the only way to preserve the enterprise is through extraordinary relief. While the Court found Heller's testimony during the August 26 hearing to be credible in representing the financial position of Defendant, the problematic pleading posture of the case also remained an issue.  As the case was plead, in some capacity Daryl Heller was suing Daryl Heller.

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

On September 3, 2024, Plaintiffs filed a Motion for Entry of a Rule to Show Cause and Scheduling a Preliminary Injunction Hearing, arguing that the Court never addressed Plaintiffs' request for a Preliminary Injunction. The Court entered an Order dated September 4, 2024, issuing a Rule to Show Cause upon Defendant to show why Plaintiffs are not entitled to the relief requested and scheduling a subsequent hearing for October 15, 2024.

Subsequently, on September 11, 2024, Plaintiffs filed Preliminary Objections to Defendant's Answer to Complaint with New Matter and Counterclaim. The Court never made a ruling on Plaintiffs' Preliminary Objections because on September 12, 2024, a Joint Praecipe to Discontinue All Claims and Counterclaims and Mark the Case Closed was filed with the Prothonotary. Heller, as both the manager of the Funds seeking legal redress and the owner of the company accused of breaching its contractual obligations, hired legal counsel to represent Plaintiffs as it is within his contractual rights. However, also on September 12, 2024, the attorneys that had been representing the Plaintiffs thus far filed an Emergency Petition to Strike the Discontinuance. Due to the overlapping nature of Heller's control within both companies, in an Order dated September 16, 2024, the Court directed each party, and the new attorneys appointed by Heller, to brief the Petition to Strike the Discontinuance.

The Court notes that one of the biggest and unresolved issues within the original Plaintiffs case is the issue of standing to sue. Apparently to address this issue, the parties filed a Stipulation entered by the court on September 24, 2024, where a stay of proceedings to effect unless a "Triggering Event" occurred. *See,* Stipulation for Expansion of Time ¶ 8-10. Upon the occurrence of a "Triggering Event,"  it was stipulated that Hostetter "shall immediately assume a majority and super majority governing interest in and majority and super majority voting control of Prestige Investment Group, LLC; and the Joint Praecipe to Discontinue All Claims and Counterclaims and

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

Mark the Case Closed filed on September 12, 2024 in the Fund Litigation shall be struck off and the Fund Litigation reinstated." *Id*. ¶ 12. Subsequently, a "Triggering Event" occurred and Hostetter gained standing to reinstate the lawsuit as, per the stipulation, Hostetter now controlled Prestige Investment Group, LLC, who in turn, controlled the Funds.

Nevertheless, Plaintiffs and Defendant began a series of negotiations in order to settle the dispute between the parties. On November 21, 2024, the Court Ordered a Consent Judgment to be entered in favor of Plaintiffs and against Defendant in the amount of $138,156,118.38. The Consent Judgment further Ordered Defendant to supply to Plaintiffs a complete inventory of all ATM Units purchased by Plaintiffs, or members of Plaintiffs, from Defendant, and that Defendant is to assign and transfer all of Defendant's rights, title, and interest to Plaintiffs' ATM units as well as the location agreements, permits, ATM passwords and combinations, and all vendor and other contracts or agreements relating to Plaintiffs' ATM units.

On December 3, 2024, Plaintiffs filed an Emergency Motion for Contempt, a Brief in Support of Emergency Motion for Contempt, a Motion for Miscellaneous Relief, and a Brief in Support of a Motion for Miscellaneous Relief. Subsequently, in this Court's Order dated December 4, 2024, a Civil Contempt Hearing was scheduled for December 6, 2024. After the Civil Contempt Hearing, the Court entered an Order, on December 6, 2024, finding Defendant in Contempt of this Court for failing to Comply with the Consent Judgment and Order of November 21, 2024. The Court required that for Paramount to purge itself of the contempt it must: (a) remit to Plaintiffs all profits generated by Plaintiffs' ATM units from November 21, 2024, to the date Paramount's contempt is purged; (b) execute and deliver to Plaintiffs a document assigning and transferring Paramount's right, title, and interest to Plaintiffs' ATM units as well as the Location Agreements, Permits, ATM passwords and combination, and all vendor and other contracts or agreements

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

relating to Plaintiffs' ATM units (excluding the communication modems installed in any of Plaintiff's ATM units; and (c) supplying various data information to counsel for Plaintiffs.

After a status conference held via Zoom on December 19, 2024, another Civil Contempt Hearing was scheduled for December 30, 2024, following Plaintiffs' Second Emergency Motion for Contempt filed on December 20, 2024, due to Defendant's alleged noncompliance.

While the case has unfolded, other creditors of Paramount have sought to intervene in this litigation to protect their positions. On December 10, 2024, Traditions Bank sought to intervene because it is in the midst of litigating a dispute with Paramount in York County, Pennsylvania, alleging that Paramount had breached obligations to Traditions Bank. Paramount did not respond to the lawsuit and Traditions Bank now has a default judgment. On December 27, 2024, Customers Bank filed a petition to intervene. Customers Bank seeks to intervene due to alleged default by Paramount and a company known as Blackford Holdings, LLC[1] for a $5,914,530.78 judgment entered by confession in the Court of Common Pleas of Chester County, Pennsylvania. The common denominator in all of the cases is Daryl Heller.

Therefore, the issues now present before the Court are:

1.    Whether Defendant is in contempt of any of the Court's prior Orders.

2.    Whether any Contempt has been cured.

3.    If contempt has not been cured, what further actions are necessary to cure the contempt.

4.    The remedy for any contempt that has occurred and the justification for such remedy.

### III.    STANDARD OF REVIEW

---

[1] Customers Bank alleges that Daryl Heller is the Managing member of Blackford Holdings, LLC.

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *See In re Estate of DiSabato*, 2017 PA Super 185, 165 A.3d 987 (2017); *Waggle v. Woodland Hills Association, Inc.*, 213 A.3d 397 (Pa. Commw. Ct. 2019); *Commonwealth v. Honore*, 150 A.3d 521 (Pa. Commw. Ct. 2016). The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. *Barna v. Langendoerfer*, 2021 PA Super 17, 246 A.3d 343 (2021).

Contempt is conduct that disrespects the authority of a court, willful disregard or disobedience of a court order, or conduct that tends to impede the due administration of justice. *See Com. v. Long*, 533 Pa. 388, 625 A.2d 630 (1993); *Com. Dept. of Environmental Resources v. Pennsylvania Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975); *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015); *Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654 (2004); *Com. v. Mutzabaugh*, 699 A.2d 1289 (Pa. Super. Ct. 1997). Contempt can be committed directly or indirectly, and either type may be deemed civil or criminal depending on the court's purpose for imposing punishment; the classification determines a contemnor's procedural rights and a court's sentencing options. *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015).

The central ground of both civil and criminal contempt is the obstruction of orderly process, and each type of contempt serves a different purpose for regulating obstruction. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011). The controlling factor in distinguishing between civil and criminal contempt is the dominant purpose and objective of the court's order. Specifically, the distinction between civil contempt and criminal contempt depends upon whether sanctions' dominant purpose is to punish for violation of court order – criminal contempt – or to coerce into

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

compliance with order – civil contempt. *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974 (Pa. 2023).

Furthermore, a contempt proceeding is classified as civil contempt if the court's dominant purpose is remedial, to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, and to coerce compliance with the court's previous order, and in some cases to compensate the complainant for losses suffered. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010); *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003); *Com., Dept. of Environmental Protection v. Cromwell Tp., Huntingdon County*, 613 Pa. 1, 32 A.3d 639 (2011). On the other hand, a contempt proceeding is for criminal contempt if the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public by punishing the contemnor. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011); *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010); *Borough of Beaver v. Steckman*, 728 A.2d 418 (Pa. Commw. Ct. 1999).

The factors that generally point to a civil contempt, rather than criminal, are (1) where the complainant is a private person as opposed to the government or a governmental agency, (2) where the proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action, (3) where holding the respondent in contempt affords relief to a private party, (4) where the relief requested is primarily for the benefit of the complainant, and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the respondent so contumelious that the court is impelled to act on its own motion. *Warmkessel v. Heffner*, 2011 PA Super 46, 17 A.3d 408 (2011). A judgment in a civil contempt proceeding for the benefit of a private complainant will incidentally vindicate the

Case 25-11354-JNP   Doc 158   Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests; but the test for whether contempt is criminal or civil contempt is the dominant purpose, not the incidental result. *Sutch v. Roxborough Memorial Hosp.*, 2016 PA Super 126, 142 A.3d 38 (2016).

Moreover, contempt of court may be direct or indirect. *Stamus v. Dutcavich*, 2007 PA Super 381, 938 A.2d 1098 (2007); *Com. v. Harris*, 409 Pa. 163, 185 A.2d 586 (1962); *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956).  Direct contempt, which is the obstruction of a court's orderly process by conduct, word, or deed in the presence of the court, is subject to summary proceedings not only if it takes place "directly under the eye" of the court—in the sense that the court is looking directly at it—but also anywhere within the judge's view. *Garr v. Peters*, 2001 PA Super 110, 773 A.2d 183 (2001); *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Fenstamaker v. Fenstamaker*, 337 Pa. Super. 410, 487 A.2d 11 (1985); *Bruzzi v. Bruzzi*, 332 Pa. Super. 346, 481 A.2d 648 (1984); *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015). When the contemptuous conduct takes place in the presence of the court, the court is under no obligation to prove it actually witnessed the disturbance. *Com. v. Moody*, 633 Pa. 335, 125 A.3d 1 (2015). However, indirect contempt is misconduct committed outside the court's presence, and proof of its commission is required since the conduct is not self-evident. *Stamus v. Dutcavich*, 2007 PA Super 381, 938 A.2d 1098 (2007); *Com. v. Brumbaugh*, 2007 PA Super 226, 932 A.2d 108 (2007); *Com. v. Haigh*, 2005 PA Super 139, 874 A.2d 1174 (2005); *Com. v. McMullen*, 599 Pa. 435, 961 A.2d 842 (2008); *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Com. v. Griffiths*, 15 A.3d 73 (Pa. Super. Ct. 2010).

In proceedings for indirect civil contempt, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

order. *MacDougall v. MacDougall*, 2012 PA Super 83, 49 A.3d 890 (2012). Generally, the failure to comply with an order is a matter of civil contempt because the court's contempt adjudication seeks to coerce compliance. *Stewart v. Foxworth*, 2013 PA Super 91, 65 A.3d 468 (2013). However, mere noncompliance with a court order is not by itself sufficient to prove contempt; rather, complaining party must prove that (1) contemnor had notice of specific order or decree that he is alleged to have disobeyed, (2) act constituting contemnor's violation was volitional, and (3) contemnor acted with wrongful intent. *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974 (Pa. 2023). A party must not only have violated a clear order, but that order must have been definite, clear, and specific, leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. *Sutch v. Roxborough Memorial Hosp.*, 2016 PA Super 126, 142 A.3d 38 (2016); *Com. v. Kolansky*, 2002 PA Super 145, 800 A.2d 937 (2002); *Com. v. Pruitt*, 2000 PA Super 381, 764 A.2d 569 (2000); *Com. v. Baker*, 564 Pa. 192, 766 A.2d 328 (2001).

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the present inability to comply is an affirmative defense that must be proven by the alleged contemnor. *Cunningham v. Cunningham*, 2018 PA Super 64, 182 A.3d 464 (2018); *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Cecil Tp. v. Klements*, 821 A.2d 670 (Pa. Commw. Ct. 2003); *Com. v. U. S. Steel Corp.*, 15 Pa. Commw. 184, 325 A.2d 324 (1974). If the alleged contemnor is unable to perform and has in good faith attempted to comply with the court order, contempt is not proven. *In re Estate of DiSabato*, 2017 PA Super 185, 165 A.3d 987 (2017); *Mueller v. Anderson*, 415 Pa. Super. 458, 609 A.2d 842 (1992); *Wetzel v. Suchanek*, 373 Pa. Super. 458, 541 A.2d 761 (1988); *Grubb v. Grubb*, 326 Pa. Super. 218, 473 A.2d 1060 (1984); *Cecil Tp. v. Klements*, 821 A.2d 670 (Pa. Commw. Ct. 2003). In the instance where the court in civil proceedings finds there has been willful noncompliance with its earlier orders, constituting

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

contempt, but the contemnor presents evidence of his present inability to comply, the court should set conditions for purging the contempt with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616, 621 (1977). However, the defense of impossibility of performance is only available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party. *Cunningham v. Cunningham*, 182 A.3d 464 (Pa. Super. 2018).

In providing contempt sanctions, if the contempt is civil, a fine may be imposed or, if incarceration is ordered, the person may avoid imprisonment by doing some act of compliance to purge the contempt. *Crozer-Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989); *Goodman v. Goodman*, 383 Pa. Super. 374, 556 A.2d 1379 (1989); *Fatemi v. Fatemi*, 371 Pa. Super. 101, 537 A.2d 840 (1988). Since any criminal contempt is a crime in the ordinary sense, it is a violation of law constituting a public wrong punishable by fine, imprisonment, or both. *Com. v. Ashton*, 2003 PA Super 194, 824 A.2d 1198 (2003). The punishment imposed for criminal contempt is specifically punitive in nature; it is intended to impose punishment for past misconduct and may include a definite term of incarceration. *U.S. v. Pozsgai*, 999 F.2d 719 (3d Cir. 1993); *Vito v. Vito*, 380 Pa. Super. 258, 551 A.2d 573 (1988); *Gunther v. Bolus*, 2004 PA Super 8, 853 A.2d 1014 (2004).

Additionally, the court may impose an unconditional fine upon a civil contemnor to encourage future compliance for the benefit of the injured private party. *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). This fine must be based upon evidence of the complainant's actual loss, and the complainant's right, as a civil litigant, to the compensatory fine depends on the outcome of the basic controversy. *Id*. Although a court may impose an unconditional fine in civil contempt, it may do so only if the purpose is not to punish but instead to compensate for losses

12

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

suffered by the complainant. *Garr v. Peters*, 2001 PA Super 110, 773 A.2d 183 (2001). When fixing the amount of contempt sanctions, the court must also consider the financial resources of the alleged contemnor as well as the financial consequences of the burden imposed by the sanctions. *Sutch v. Roxborough Memorial Hosp*., 2016 PA Super 126, 142 A.3d 38 (2016).

Furthermore, attorney's fees and other disbursements that are necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. *Wood v. Geisenhemer-Shaulis*, 2003 PA Super 224, 827 A.2d 1204 (2003); *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). Since an award of counsel fees is intended to reimburse an innocent litigant for expenses that were made necessary by the conduct of an opponent, it is coercive and compensatory, not punitive; thus, counsel fees are a proper element of a civil contempt order. *Wood v. Geisenhemer-Shaulis*, 2003 PA Super 224, 827 A.2d 1204 (2003); *Goodman v. Goodman*, 383 Pa. Super. 374, 556 A.2d 1379 (1989); *Schnabel Associates, Inc. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO*, 338 Pa. Super. 376, 487 A.2d 1327 (1985). In extreme circumstances, a court may order a sheriff or other proper officer of any county to take into custody and commit to jail any person who is fined for contempt until the fine is paid or discharged. *See* 42 Pa.C.S. § 4134. A person who is unable to pay the fine may be committed to jail by the court for no longer than three months. *Id*.

## IV.    DISCUSSION

The Funds assert that the court should hold Paramount and Daryl Heller in contempt of court for: (1) failing to remit to the Funds all profits generated by the Fund's ATM units since November 21, 2024; (2) failing to provide a complete inventory of all Fund-owned ATMs; (3) failing to timely provide data regarding the Fund's ATM units; and (4) failing to certify compliance and indicating that compliance will not be certified.  Consequently, the Funds request the court to appoint an independent auditor paid by Paramount, increase the amount of

13

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

the judgment, require compliance with the provision of information, and hold Daryl Heller personally liable for penalties.

Paramount responds that it has cured many issues of contempt, has no employees to coordinate records for an auditor, and has no funds to pay an auditor and even funds that come available are subject to claims by other creditors. While the court appreciates the arguments made by counsel at the December 30, 2024, hearing and in their briefs, this decision must be governed by the facts submitted by the parties by stipulation and proper affidavits. Moreover, given the fact that Daryl Heller has asserted his 5th Amendment rights against self-incrimination in response of many questions the Funds would ask him, the court takes a negative inference against Mr. Heller with respect to any responses such that they would be against his and Paramount's interest.

###### A.    *Paramount and Heller are in Contempt of Numerous Court Orders*

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the present inability to comply is an affirmative defense that must be proven by the alleged contemnor. *Cunningham v. Cunningham*, 2018 PA Super 64, 182 A.3d 471 (2018). Paramount has not made an argument that it is impossible to comply with the court's orders other than the fact that all employees were fired. Paramount created its impossibility to perform undermining any defense on that basis. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616, 621 (1977); *see also Cunningham v. Cunningham*, 182 A.3d 464 (Pa. Super. 2018) (the defense of impossibility of performance is only available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.)

The stipulations submitted for the December 30, 2024, hearing make clear that Paramount is in civil contempt of court orders in at least three out of the four areas alleged by the Funds. Paramount has not certified compliance, has not provided a complete inventory of all Fund-owned

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

ATMs, did not timely provide data regarding Fund ATMs.  With respect to "profits" not being provided per the order, it is necessary that the moving party prove the order clear, leaving no doubt or uncertainty in the mind of the contemnor or the prohibited conduct.  Here, the Funds seemed to intend that "profits" mean gross profits or income streams rather than net profits.  The term is not clear enough to hold Paramount in contempt.

Despite the fact of contemptuous conduct, Paramount had made significant progress as of December 30, 2024, to remedy certain areas of contempt. For example, Paramount has been transmitting funding streams to the Funds.  Paramount has provided a list of Fund-owned ATMs and continues to arrange for transfer of physical access to certain ATMs.  Paramount has provided access to data needed to operate the ATMs.  All of this appears to be too little too late for the Funds to recover much of their investment and would likely have been too late even if such orders had been entered in early 2024.  What started off as an investment returning income to the Funds appears to have transformed into at best a significant under-capitalized expansion of ATM buying or at worst a Ponzi scheme.

Given the court's finding of contempt, the court must determine the penalty.  The Funds insist that more can be done to cure the contempt and request an order requiring additional actions by Paramount.  The Funds further ask the court to hold Mr. Heller personally liable for payment of any penalty imposed by this contempt order and the Funds seek to raise the judgment in this action to $593,569,844.76.  The court will discuss each area below.

B.    *Paramount's Ability to Cure*

Paramount has no employees.  Consequently, the Funds ask the court to appoint a forensic auditor.  However, the Funds are not the only creditor seeking payment from Paramount.  Two cases have been filed to intervene in this action by creditors seeking satisfaction of their debts.  It

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

is not in the public interest to appoint a forensic auditor at the expense of other creditors that would focus on recovery of assets for the Funds. Given the judgment already entered against Paramount in favor of the funds and the additional amount that will be added to the judgment, the Funds can engage in efforts to satisfy their judgment, as they have already started doing.

The Funds also seek to continue accrual of assessments against Paramount ordered by the court on December 6, 2024. This request is denied, and the accrual will cease as of December 30, 2024. The penalty accrued as of December 30, 2024, in the amount of $2,050,000 shall be added to the judgment.

C.    *Personal Liability of Daryl Heller*

The Funds insist that the court should hold Daryl Heller personally liable for contempt because he "caused Paramount to violate this Court's Orders." In support of this request, the Funds point to the following actions by Heller:

1. Terminating staff while knowing some were needed to provide information as ordered by the court;
2. Directing Paramount to pay one of his other companies, Heller Capital Group, in excess of $300,000 with income from the Fund's ATM units;
3. Directing the movement of funds between Paramount bank accounts and other Heller-controlled bank accounts; and,
4. Directing that Paramount withhold $700,000 in funds available to Paramount to pay the Funds for a contempt fine.

In support of holding Heller personally liable, the Funds rely on *N. Strabane Twp. v. Majestic Hills LLC*, No. 958 C.D. 2023, 2024 WL 5148461, at *1 (Pa. Commw. Ct. Dec. 18, 2024). This case is controlling as well as persuasive to the court. The procedural history of Majestic Hills is important to this case. Majestic Hills, LLC developed a parcel of land in North Strabane Township into 200 home lots. Majestic Hills, LLC is wholly owned by JND, which in turn is wholly owned and controlled by the DeNardos, who are husband and wife, with each owning 50%. *Id.* at *1. Mr. DeNardo is the managing member of JND. *Id.* The project ran into issues with

16

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

numerous compliance requirements that caused landslides at the development.  North Strabane Township sued Majestic Hills, LLC, JND, and the DeNardos.  The parties entered a consent decree, part of which, dismissed the DeNardos from the case.

Subsequently, JND refused to comply with portions of the consent decree causing the Township and the Pennsylvania Department of Environmental Protection to file for a preliminary injunction against Majestic Hills, LLC, JND, and the DeNardos requesting that none of defendants dissipate assets "in anticipation of civil liability or contempt sanctions."  *Id*. at *4.  The trial court entered an order to this effect. The Township also filed a petition for contempt of the consent decree.

The trial court then heard testimony on the petition for contempt, a case in which the DeNardos were not defendants.  The court found that the DeNardos were sophisticated real estate developers, the DeNardos and JND were one and the same, and the DeNardos did not have the financial ability to pay for compliance when the consent decree was signed.  *Id*. at *5.  The trial court awarded $275,000 as a compensatory sanction against the DeNardos, JND, and Majestic Hills, LLC, jointly and severally.  The DeNardos appealed contending they were not defendants in the consent decree case and could not be held in contempt or sanctioned for JND's noncompliance.

On appeal, the Commonwealth Court reaffirmed  that, "[a]n officer of a corporation can be held in contempt of that corporation's noncompliance even when not named as a defendant in the action."  *Id*. at *10 (citations omitted).  Quoting from the Supreme Court of the United States, the Commonwealth Court explained:

> [a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they are guilty of disobedience, and *may be punished for contempt.*

17

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

*Id.* (citations omitted) (quoting *Wilson v. United States*, 221 U.S. 361, 376-77, 31 S.Ct. 538,

55 L.Ed. 771 (1911)) (emphasis in the original Commonwealth Court Opinion).

In a similar situation, the Superior Court held:

> [Corporate officers'] willful violation of the order in their capacity as directors, officers and shareholders of the corporation was clearly contumacious and subject to a civil contempt citation, *regardless of whether* [corporate officers] *were joined as parties.* Where corporate officers knowingly disobey an injunction, the injunction can be enforced directly against those officers *even when they have not been joined as parties to the suit.* ... [A] corporation acts only through its officers, agents, representatives and employees, and if such persons are permitted to knowingly violate the terms of an injunction, it would be impossible for a court to ever enforce an injunctive order against a corporation .... Here, [corporate officers] were the sole shareholders, directors and officers of [the corporation]. [Corporate officers] caused the corporation to be dissolved for the express purpose of avoiding its legal obligation to rebuild (or pay to rebuild) the retaining wall.

*Belle v. Chieppa*, 442 Pa. Super. 371, 380, 659 A.2d 1035, 1039–40 (1995) (Citations

omitted).  Clearly, Daryl Heller can be held jointly liable for the contempt of Paramount.

D.      *Reassessment of the Judgment*

The Funds argue that the judgment against Paramount should increase by $455,413,726.38

because Heller assessed the value of the Funds' network to be $455,413,726.38 on November 1,

2024, in an asset purchase agreement.  The purchase agreement is signed by Daryl Heller on behalf

of Paramount and on behalf of Heller Capital.

The parties negotiated a consent judgment which the court signed on November 21, 2024,

in the amount of $138,156,118.38.  The asset sale agreement was known to the parties three weeks

prior to the consent judgment, and the terms of the judgment and the amount could have been

adjusted prior to entry.

E.      *Other Penalties*

Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

In providing contempt sanctions, if the contempt is civil, a fine may be imposed or, if incarceration is ordered, the person may avoid imprisonment by doing some act of compliance to purge the contempt. *Moran*, *supra*. The court may impose an unconditional fine upon a civil contemnor to encourage future compliance for the benefit of the injured private party. *Mrozek v. James*, 2001 PA Super 199, 780 A.2d 670 (2001). This fine must be based upon evidence of the complainant's actual loss, and the complainant's right, as a civil litigant, to the compensatory fine depends on the outcome of the basic controversy. *Id.* Furthermore, attorney's fees and other disbursements that are necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. *Wood, supra.* Plaintiffs have not argued for or presented any evidence in support of other contempt sanctions and no others will be imposed.

## V.       Conclusion

Considering the evidence before it, the court finds Paramount in contempt. In what appears to be a sophisticated shell game orchestrated by Daryl Heller, assets represented under oath to the court did not exist. Paramount, controlled by Heller, failed to comply, or timely comply, with numerous court orders. Accordingly, the court enters the following order.

Lancaster County Prothonotary E-Filed - 10 Jan 2025 02:58:58 PM
Case Number: CI-24-06012

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | |
|---|---|
| PRESTIGE FUND A, LLC, et al., | : |
| Plaintiffs, | : |
| | : |
| v. | : No. CI-24-06012 |
| | : |
| PARAMOUNT MANAGEMENT | : |
| GROUP, LLC, | : |
| Defendant. | : |

## **ORDER**

AND NOW this 10th day of January 2025, it is hereby ORDERED that after review of all

pending contempt matters, Defendant is found in CIVIL CONTEMPT.  It is further ORDERED

the sums assessed against Paramount pursuant to the December 6, 2024 Order, in the amount of

$2,050,000 shall added to the judgment and this amount only shall be paid jointly and severally

by Paramount and Daryl Heller.  Plaintiffs' other requests for sanctions and relief are DENIED.

BY THE COURT:

LEONARD G. BROWN III, PRESIDENT JUDGE

ATTEST: _____
Deputy

Copies to:   Matthew H. Haverstick, Esq.
Joshua J. Voss, Esq.   KLEINBARD LLC
Carson B. Morris, Esq.
Barbara A. Zemlock, Esq.
Heidi R. Freese, Esq.   TUCKER ARENSBERG PC
Samantha G. Zimmer, Esq. - KLEINBARD LLC
Edward T. Butkovitz, Esq. - KLEINBARD LLC
Rory Connaughton, Esq.
JESSICA C. LASKE, ESQ.

20

## CONTINUANCE OF DISTRIBUTION LIST:

CARDTRONICS USE INC (1)

FIRST NATIONAL BANK OF PENNSYLVANIA (1)

JONESTOWN BANK AND TRUST COMPANY(1)

BELCO COMMUNITY CREDIT UNION (1)


PEOPLES BANK (1)

TRUIST BANK NA (1)

FIRST COMMONWEALTH BANK (1)

JP MORGAN CHASE BANK NA (1)

FIRST REGENTS HOLDINGS LLC (1)

POWERQUEST FINANCIAL LLC (1)

CASH VENTURES III LLC (1)

APOLLO INVESTMENT HOLDINGS (1)

GOLDEN GATE INVESTMENT COMPANY LLC (1)

HELLER CAPITAL GROUP LLC (1)

HELLER INVESTMENTS HOLDING (1)

PREMIER MANAGEMENT GROUP INC (1)

H2 VENTURES LLC (1)

SHARENET LLC (1)

PARAMOUNT MGP LLC (1)

BLACKFORD HOLDINGS LLC (1)

BLACKFORD ATM VETURES LLC(1)

ATM OPS INC D/E/A BITSTOP (1)

POWERCOIN LLC (1)

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 1-13-25

# EXHIBIT E

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
*Attorneys for Plaintiffs*

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

|  |  |  |
|---|---|---|
| | : | |
| PRESTIGE FUND A, LLC, ET AL., | : | No. CI-24-06012 |
| Plaintiffs, | : | |
| v. | : | Hon. Leonard G. Brown, III |
| | : | |
| PARAMOUNT MANAGEMENT GROUP, | : | |
| LLC, | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFFS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES

Plaintiffs Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A

IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII,

LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC;

Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC;

Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC;

Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC;

Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC;

WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC;

and WF Velocity Fund VII, LLC (collectively, **the Funds**) respectfully submit this

Motion for Sanctions and Attorneys' Fees, and in support, aver as follows:

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

# I.    INTRODUCTION

1.    This Court is familiar with the Funds' litigation in this case and Paramount's serial noncompliance with the Court's Orders.

2.    The Funds' present motion for sanctions is necessitated by yet another example of Paramount's complete and utter disregard of its obligations under the law and this Court's explicit commands.

3.    As set forth below, Paramount first failed to answer the Funds' Interrogatories in Aid of Execution. It then disregarded this Court's Order compelling it to answer those Interrogatories.

4.    The Funds now ask this Court to grant this Motion and issue an order compelling Paramount and Daryl Heller to answer the Funds' Interrogatories in Aid of Execution.

# II.    FACTUAL BACKGROUND

5.    The Funds and Paramount were parties to various ATM Management Services Agreements (MSAs), under which Paramount owed the Funds a monthly revenue remittance. Beginning in April 2024, Paramount ceased making those monthly remittance payments and never resumed.

6.    The Funds filed a Complaint on August 23, 2024 for breach of contract and injunctive relief related to this breach.

7.    On November 21, 2024, this Court entered Judgment by consent in the principal amount of $138,156,118.38 against Paramount (hereafter, the Consent

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

Judgment) and directed Paramount to provide the Funds certain information related to management of their ATM network.

8.      The Consent Judgment remains unsatisfied.

9.      Also on November 21, 2024, the Funds served Paramount, through its counsel at the time (DLA Piper), with Interrogatories in Aid of Execution. *See* Exhibit A.

10.      One week later, Paramount's then-counsel filed a petition to withdraw, which this Court granted on November 27, 2024.

11.      Paramount obtained new legal representation (Montgomery McCraken Walker & Rhoads) and the Funds forwarded to Paramount's new counsel on December 9, 2024 a copy of the previously served Interrogatories in Aid of Execution. *See* Exhibit B.

12.      Paramount's full and complete answers to the Funds' Interrogatories in Aid of Execution were due to be served within thirty (30) days of service, or no later than December 23, 2024.

13.      Paramount did not obtain an extension of time, nor did it seek a protective order with respect to the Interrogatories in Aid of Execution.

14.      Despite this, Paramount failed to provide any response to the Interrogatories in Aid of Execution by December 23, 2024.

15.      Indeed, by email dated December 23, 2024, Paramount's counsel advised that it had not prepared answers and would not be sending them. *See* Exhibit C.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

16.    Around the same time, the Funds were pursuing Paramount for contempt under the Consent Judgment.

17.    In relation to that contempt, this Court issued two Orders finding Paramount and, eventually, its sole remaining officer, Daryl Heller, in contempt of Court.

18.    The Court issued the first Order on December 6, 2024, finding Paramount in contempt and ordering a fine of $50,000 per day until it complied with its obligation to provide the Funds the necessary information to run the ATM network.

19.    The Court issued the second Order on January 10, 2025, finding Paramount in civil contempt. As part of that Order, the Court found non-party Daryl Heller in contempt of Court and entered an Order making him jointly and severally liable with Paramount Management Group, LLC for the sum of $2,050,000.

20.    Through the contempt proceedings, the Funds learned that Daryl Heller is sole remaining officer/employee of Paramount: all other officers and employees were discharged by Paramount.

21.    Shortly before the Court's final contempt Order, Paramount's then-counsel filed a petition to withdraw, which this Court granted on January 10, 2025.

22.    Also, shortly before the final contempt Order, the Funds filed a Motion to Compel Answers to Interrogatories in Aid of Execution, which this Court granted on January 10, 2025.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

23.    Specifically, the Court directed Paramount to answer the Interrogatories in Aid of Execution within 20 days from the date of the Order or suffer sanctions. *See* Exhibit D.

24.    Because Daryl Heller is the sole remaining representative of Paramount, the Funds served the January 10 Order on Daryl Heller's personal counsel on January 14, 2025. *See* Exhibit E.

25.    The deadline for compliance with the January 10 Order was January 30, 2025.

26.    On January 30, the Funds sent an email to Mr. Heller's counsel, soliciting answers to the Interrogatories and advising that the Funds intended to move for sanctions if answers were not received. *See* Exhibit F.

27.    Mr. Heller's counsel responded by acknowledging receipt and committing to send the communication to Mr. Heller. *See* Exhibit G.

28.    Despite the above, the deadline for compliance, came and went and Paramount, once again, failed to answer the Interrogatories in Aid of Execution.

29.    Paramount did not request an extension or seek a protective order.

30.    It simply did not respond.

31.    In sum, despite Paramount being represented by *two different* law firms (DLA Piper and Montgomery McCraken) during the time when these Interrogatories were outstanding, and despite Paramount's sole remaining officer having personal counsel who was also served with the Interrogatories, neither Paramount nor Daryl Heller have supplied a single Interrogatory answer.

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

32.     Accordingly, the Funds now bring the present Motion for Sanctions and Attorneys' Fees.

## III.   ARGUMENT

33.     If a party "fails to serve answers … to written interrogatories," this Court may enter an order for sanctions at a party's request. Pa.R.Civ.P. 4019(a)(1).

34.     Notably, a failure to serve answers to written interrogatories "may not be excused on the ground that the discovery sought is objectionable" unless the party has filed an appropriate objection or has applied for a protective order. Pa.R.Civ.P. 4019(a)(2).

35.     Paramount has not filed an objection or applied for a protective order but, rather, willfully ignored (1) its obligation under the Rules of Civil Procedure to timely respond to the Interrogatories in Aid of Execution, and (2) its obligation under this Court's January 10 Order to respond to the Interrogatories.

36.     The Funds have no other avenue to receive the information requested from Paramount in the Interrogatories related to Paramount's assets, liabilities, and financial information.

37.     Without this information, the Funds are significantly hindered in collecting on the Consent Judgment.

38.     With each passing day without answers to the Interrogatories in Aid of Execution, the risk grows that Daryl Heller moves funds and dissipates assets so that there will be nothing left to satisfy the Consent Judgment.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

39.    Rule 4019 authorizes this Court to take various actions when issuing
an order granting sanctions against a party refusing to comply with discovery,
including refusing to allow the noncompliant party to support its claims or defenses,
prohibiting the refusing party from introducing certain documents into evidence,
striking pleadings or parts thereof until the order is obeyed, entering a judgment of
*non pros*, or issuing an order imposing contempt, or ordering any other just relief.
Pa.R.Civ.P. 4019(c).

40.    Because this litigation ended with the Consent Judgment, few of these
potential remedies provide the Funds with what they really seek: meaningful
answers to the Interrogatories in Aid of Execution.

41.    But the Court is "afforded great discretion in fashioning remedies or
sanctions for violations of discovery rules and orders." *City of Philadelphia v.
Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1269 (Pa. 2009).

42.    In determining "the general severity and vitality of a discovery
sanction," the Court may consider:

> (1) the prejudice, if any, endured by the non-offending
> party and the ability of the opposing party to cure any
> prejudice; (2) the noncomplying party's willfulness or
> bad faith in failing to provide the requested discovery
> materials; (3) the importance of the excluded evidence in
> light of the failure to provide the discovery; and (4) the
> number of discovery violations by the offending party.

*Id.* at 1270.

43.    In light of the foregoing considerations, the Funds seek an order,
consistent with the terms set forth in the proposed order attached hereto,

Prothonotary E-Filed - 31 January 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

compelling Paramount and Daryl Heller to answer the Funds' Interrogatories in Aid
of Execution.

44.    Taking the relevant factors in turn, each one weighs in favor of
imposing sanctions.

45.    *First*, the Funds have been prejudiced for over two months now as they
seek to collect on the Consent Judgment while Paramount willfully fails to provide
answers to the Interrogatories that will aid in execution of the same.

46.    *Second*, Paramount's noncompliance with its requirements under the
Rules of Civil Procedure and this Court's January 10 Order to answer the
Interrogatories cannot be explained as anything other than willful. Indeed, this is
simply the latest in a repeated pattern of Paramount's continuous disregard of this
Court's Orders and Paramount's legal obligations since November 21, 2024.[1]

47.    Despite Paramount's various changes in counsel, it had more than
adequate notice of these outstanding discovery requests through its counsel of
record at the time and even Daryl Heller's personal counsel.

48.    Paramount has never answered, requested an extension, or even
sought to explain and defend its lack of answers.

49.    *Third*, the answers sought to these Interrogatories in Aid of Execution
are vital to the Funds' ability to execute on the Consent Judgment. Crucially, the
answers to the outstanding discovery are a critical way that the Funds can receive

---

[1] As it relates to the Funds, Paramount's failure to honor its obligations
under law, contract, and Court Order spans all the way back to at least April 2024
when Paramount failed to make its required payment under the MSAs.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

this information about Paramount's assets, liabilities, and finances. Because the Funds' case on the merits has ended, there is no other remedy than to demand compliance and levy a daily fine until the answers are received.

50.     *Fourth*, although this is Paramount's only discovery violation, that is solely because the case ended with a Consent Judgment before discovery in the underling litigation began in earnest. Paramount's failure to comply with its obligations under the Consent Judgment and contempt Orders that followed, however, are more than indicative of Paramount's prior violations in this action. Paramount has shown nothing but disregard for its obligations under the Orders of this Court, including the January 10 Order compelling answers to the Interrogatories that brings the Funds to Court for sanctions.

51.     Because Paramount has represented to this Court that it laid off all of its officers and employees and because this Court has recognized that Daryl Heller can be held jointly liable for Paramount's contempt, Daryl Heller should also be jointly and severally liable for the daily fines incurred until he and/or Paramount complies. *See N. Strabane Twp. v. Majestic Hills LLC*, No. 958 C.D. 2023, 2024 WL 5148461 (Pa. Cmwlth. Dec. 18, 2024) (determining nonparty individuals who owned an LLC were jointly and severally liable with the LLC in contempt).

52.     All four factors warrant fashioning a remedy that directs both Paramount and Heller to answer the Interrogatories in Aid of Execution and holding them both jointly and severally liable for a daily fine until the answers are served.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

53.     Finally, the Funds ask this Court to award the Funds attorneys' fees.

54.     Where the Court has previously entered an order compelling a party's compliance with their discovery obligations, the Court may grant a motion for sanctions and require the party whose conduct necessitated the motion to pay the moving party "reasonable expenses, including attorney's fees, incurred in obtaining the order of compliance and the order for sanctions[.]" Pa.R.Civ.P. 4019(g)(1).

55.     This is now the second time the Funds have come to this Court to demand that Paramount answer their Interrogatories in Aid of Execution, necessitated by Paramount's utter silence and its willful violation of the Court's Order.

56.     As of the date of this filing, the Funds' incurred $4803.50 in reasonable attorneys' fees preparing this Motion.

57.     Accordingly, the Funds ask the Court to award them their attorneys' fees incurred in preparing this Motion.

## IV.   CONCLUSION

WHEREFORE, the Funds respectfully request this Court grant their Motion and enter the Order in the form attached.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

Respectfully submitted,

Dated: January 31, 2025

_____
Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com
*Attorneys for Plaintiffs*

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit A

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

## Joshua Voss

| | |
|---|---|
| **From:** | Joshua Voss |
| **Sent:** | Thursday, November 21, 2024 1:01 PM |
| **To:** | Heller, Nathan; Joseph.Roselius@us.dlapiper.com; Jeffrey.Torosian@us.dlapiper.com |
| **Cc:** | Matt Haverstick; Samantha Zimmer |
| **Subject:** | Prestige Fund A v. Paramount (CP Lancaster)--Interrogatories in Aid of Execution |
| **Attachments:** | Plaintiffs' ROGs in Aid of Execution (11.21.24).pdf |

Counsel,

Attached for service are Interrogatories in Aid of Execution in the above matter.

Regards,

Josh



Joshua J. Voss
**Kleinbard LLC**

**BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.**

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W | www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
*Attorneys for Plaintiffs*

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

| | |
|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : |
| Plaintiffs, | : No. CI-24-06012 |
| | : |
| v. | : Hon. Leonard G. Brown, III |
| | : |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : |
| Defendant. | : |

## PLAINTIFFS' INTERROGATORIES IN AID OF EXECUTION
## DIRECTED TO DEFENDANT

Plaintiffs hereby request that Defendant answer the following interrogatories

under oath within thirty (30) days of service thereof in accordance with

Pennsylvania Rules of Civil Procedure 3117, 4005, and 4006.

## DEFINITIONS AND GENERAL INSTRUCTIONS

1.      "Asset" means any property or thing of value you owned, claimed, or

held any interest in, in whole or in part, including any and all real property,

tangible personal property including cash, vehicles, aircraft, boats or other water

vessels, goods, inventory, machinery, equipment, trade fixtures, office equipment,

supplies, and computer systems and networks, and intangible personal property

including good will, contracts, accounts receivable, notes receivable, stocks, bonds,

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

and other securities, ownership interest in any other entities such as subsidiary corporations, general or limited partnerships, and joint ventures, intellectual property rights including copyrights, patents, trademarks, and trade names, and insurance policies which you own or which name you as an insured.

2.      "Communications" means all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, telexes, e-mails, texts, advertisements, or any other form of written or verbal intercourse.

3.      "Date" shall mean the exact day, month, and year, if ascertainable, or if not, the best approximation thereof, including relationship to other event.

4.      "Defendant," "Paramount," "you" and "your" shall refer to Paramount Management Group, LLC and its agents, officers, directors, employees, attorneys, accountants, assignees, and all other persons acting on its behalf.

5.      "Describe", "explain" and "state" mean to detail fully by reference to underlying facts, rather than to ultimate facts or conclusions of fact or law, and to particularize as to time, place, and manner.

6.      "Document" means the original and all copies of any written, printed, typed, electronic or other graphic matter of any kind or nature, in hard copy or machine readable form, and any other tangible thing in your possession, custody or control, wherever located. Any copy containing thereon or having attached thereto, any alterations, notes, comments, or other material not included in the originals or

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition. The term "documents" includes but it is not limited to:

    a.     all contracts, agreements, letter agreements, representations, warranties, certificates, and opinions;

    b.     all letters or other forms of communications or communication, including envelopes and notes, telegrams, cables, facsimiles, e-mails, texts, telex messages and other messages, including reports, notes, notations, and memoranda of or relating to telephone conversations or conferences;

    c.     all memoranda, reports, test results, financial statements or reports, notes, scripts, transcripts, tabulations, studies, analyses, evaluations, projections, work papers, corporate records, or copies thereof, expressions or statements of policy, lists, comparisons, questionnaires, surveys, charts, graphs, summaries, extracts, statistical statements or records, compilations and opinions or reports of consultants;

    d.     all desk calendars, appointment books and diaries;

    e.     all minutes, records or transcripts of meetings and conferences and lists of persons attending meetings or conferences;

    f.     all reports and summaries of interviews and negotiations;

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

g.   all books, articles, press releases, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, instructions, and manuals;

h.   all motion pictures and photographs (whether developed or undeveloped), tape recordings, microfilms, phonographs, tapes or other records, punch cards, magnetic tapes, discs, backup tapes, data cells, drums, printouts, and other data compilations from which information can be obtained;

i.   all drafts of any document, revisions of drafts of any document and original or preliminary notes; and

j.   all electronically stored information.

This definition shall not be construed in any way to limit or constrict the definition of "document" contained in the Pennsylvania Rules of Civil Procedure.

7.   "Each" includes the word "every," and "every" includes the word "each." "Any" includes the word "all," and "all" includes the word "any." "And" includes the word "or," and "or" includes the word "and."

8.   "Funds" shall refer to Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC;

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

Prestige Fund D V, LLC; Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC;
WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF
Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC.

9.      "Fund" shall refer to any of the Funds individually.

10.     "MSA" refers to a Management Services Agreement.

11.     "Refer to," "referring to," "relate to," "relating to," or "evidencing" shall
mean, without limitation, referring to, relating to, evidencing, demonstrating,
concerning, involving, constituting, or discussing.

12.     "Revenue" or "Income" means any and all money, earnings, revenue, or
payments of any kind that you received in any form, whether in cash or by check,
credit or debit card, electronic transfer, or otherwise, including but not limited to
payments for goods and services, payments on accounts receivable, loan
repayments, interest income, rents, royalties, license fees, commissions, dividends,
distributions, payments relating to sales of assets, equipment, or inventory,
payments on contracts, or any other payment or remuneration you received in
connection with the operation of your business.

13.     Terms in the plural include the singular, and terms in the singular
include the plural.

14.     The masculine form of any noun or pronoun includes the feminine and
neuter form.

15.     In answering these interrogatories, furnish all information available to
you, including information in the possession of your attorneys, investigators,

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

employees, or agents and all other persons acting on your behalf and not merely such information that is within your personal knowledge.

16.    If you or your attorneys cannot answer the interrogatories in full after exercising due diligence to secure the information requested, so state and answer to the extent possible, specifying the inability to answer the remainder and stating whatever information or knowledge you and/or your attorneys have concerning the unanswered portions. You and/or your attorneys are required to supplement any response to these interrogatories as necessary.

17.    In each interrogatory wherein you and/or your attorneys are asked to "identify" a person, state the following information with respect to each such person:

a.    Name;

b.    Last known address and telephone number;

c.    Last known business address and telephone number; and

d.    Job title.

18.    In each interrogatory wherein you and/or your attorneys are asked to "identify" and/or "describe" any document, state with respect to each such document either the Bates/production number or the:

a.    Date of the document;

b.    Person originating the document;

c.    Present location of the document;

d.    Person in whose possession or under whose control the document presently is and the relationship of this person to you, if any; and

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

e.      The contents or substance of the document.

19.     If any document specified herein can be identified but is no longer in
the possession or control of you and/or your attorneys, identify the document by
describing its substance and stating the date on which it was created, the names of
any and all persons involved in creating it, the present location of the document,
and the names and addresses of any and all persons who currently possess the
document. If the document was lost, destroyed, or transferred voluntarily or
involuntarily to others, please so state. In each instance, state the document's date
of creation, subject matter in detail, author, the date of the document's loss,
destruction, or transfer and the reason for its loss, destruction, or transfer. Unless
expressly notified otherwise in writing, Defendants will assume the failure to
produce any documents requested herein means that such items do not exist.

20.     If you claim a privilege with regard to any document responsive to an
interrogatory herein, state the following in a privilege log:

a.      The nature of the privilege claimed;

b.      The person who created or originated the document;

c.      All recipients of the document;

d.      The present location of the document;

e.      The subject matter of the document in sufficient to detail to permit
        Defendants to file a motion to compel production, if appropriate; and

f.      the person in whose possession or under whose control the document
        presently is and the relationship of this person to Plaintiffs, if any.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

21.     If you claim a privilege with regard to any information responsive to an interrogatory herein, state the following:

a.     The nature of the privilege claimed;

b.     The person in possession of such information; and

c.     The nature and substance of such information.

22.     If you encounter any ambiguity in construing an interrogatory, definition, or instruction, state the matter deemed "ambiguous" and set forth the construction used in responding.

23.     These Definitions and General Instructions shall not in any way be construed to limit your obligations to answer these interrogatories under the Pennsylvania Rules of Civil Procedure.

24.     These interrogatories are continuing, and in the event that your answers become incomplete or inaccurate, you are under a continuing obligation to supplement your answers.

25.     Unless otherwise stated, the relevant time period for these interrogatories is January 1, 2024 to the date of your response.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

## INTERROGATORIES

1.      Identify the individual(s) answering these interrogatories. Include in your answer the individual's title, job description, responsibilities, and length of employment, and state whether the individual is acting as an agent of Paramount in responding to these Interrogatories.

**ANSWER**


2.      Identify and produce any documents you relied on in answering these interrogatories.

**ANSWER**


3.      Identify and describe all of your affiliates, subsidiaries, parent companies, or any other company that has or claims an interest in Paramount, including the name, address or location, and state or country of incorporation organization of any such entity, and the nature of your affiliation or corporate or other organizational relationship with any such entity.

**ANSWER**


4.      Identify all corporations, subsidiaries, limited liability companies, trusts, partnerships, or other business entity of any kind or nature in which you currently own, hold, or claim an interest in, in whole or in part, or owned, held, or claimed an interest in, in whole or in part, during the relevant time period, and describe that relationship.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

**ANSWER**


5.      Identify all members of Paramount.

**ANSWER**


6.      For the period of January 1, 2023 to March 31, 2024, identify all
financial institutions used by Paramount to pay any Monthly Revenue Remittance
to the Funds. Identify the account number for each.

**ANSWER**


7.      For the period of April 1, 2024 to the date of your response to this
interrogatory, identify all financial institutions where Paramount deposited
revenues generated by ATMs owned by the Funds. Identify the account number for
each.

**ANSWER**


8.      For the period of April 1, 2024 to the date of your response to this
interrogatory, identify all persons or entities that had access to the financial
account containing revenues generated by ATMs owned by the Funds.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

9.      For the period of April 1, 2024 to the date of your response to this interrogatory, identify the recipient of any funds from the financial account containing revenues generated by ATMs owned by the Funds, including the date and amount the funds were received and the purpose of the transfer.

**ANSWER**


10.     As of the date of your response to this interrogatory, identity the total amount of cash in all financial accounts that are accessible to Paramount or any entity owned or controlled, directly or indirectly by Paramount.

**ANSWER**


11.     Identify any recorded liens or judgments against Paramount since January 1, 2023, including the amount. State whether any recorded lien or judgment has been satisfied and if so, when.

**ANSWER**


12.     Identify any recorded liens or judgments against any entity owned or controlled, directly or indirectly, by Paramount since January 1, 2023, including the amount. State whether said recorded lien has been satisfied and if so, when.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

13.    Identify all cell phone numbers used by Daryl Heller to communicate on behalf of Paramount.

**ANSWER**


14.    Identify all email addresses used by Daryl Heller to communicate on behalf of Paramount.

**ANSWER**


15.    Provide all of the following information regarding each of the Funds' ATM Units:

      i.     ATM TID;

           1.    Which Fund the ATM Belongs To;

      ii.    Location Name;

           1.    Contact Name;

           2.    Physical Address;

           3.    Physical City;

           4.    Physical State;

           5.    Physical Zip;

           6.    Physical Phone;

           7.    Mailing Address;

           8.    Mailing City;

           9.    Mailing State;

           10.    Mailing ZIP;

           11.    Mailing Phone;

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

12.     Locations Revenue Split;

13.     Whether Split is Daily or Monthly;

14.     Last Date Paid;

iii.     Processor;

iv.     Sponsoring Bank;

v.     Cash Supplier;

    1.     Contact;

    2.     Address;

    3.     City;

    4.     State;

    5.     Zip;

    6.     Phone;

    7.     Billing Type (per transaction or interest);

vi.     Cash In Transit;

    1.     Contact;

    2.     Address;

    3.     City;

    4.     State;

    5.     Zip;

    6.     Phone;

    7.     Billing Type (per transaction or per delivery);

vii.     1st Line Maintenance Provider;

    1.     Contact;

    2.     Address;

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

       3.     City;

       4.     State;

       5.     Zip;

       6.     Phone;

       7.     Billing Type (per transaction, monthly or per occurrence);

viii.   2nd Line Maintenance Provider;

       1.     Contact;

       2.     Address;

       3.     City;

       4.     State;

       5.     Zip;

       6.     Phone;

       7.     Billing Type (per transaction, monthly or per occurrence);

ix.   Portfolio Acquired From;

       1.     Contact;

       2.     Address;

       3.     City;

       4.     State;

       5.     Zip;

       6.     Phone;

x.   ATM Make;

xi.   ATM Model;

xii.   Serial Number;

xiii.   Date Installed;

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

    xiv.    ATM Password; and

    xv.    Last Transaction Date.

**ANSWER**


    16.    Identify all persons or entities to whom Fund assets have been pledged by you as collateral. Provide the dates of any such pledge and identify the instruments through which any such pledge was made.

**ANSWER**


    17.    For the relevant time period, describe how Paramount used revenue generated by the ATMs subject to the MSAs between the Funds and Paramount.

**ANSWER**


    18.    If Paramount has used revenue generated by the ATMs subject to the MSAs between the Funds and Paramount for the benefit of Paramount's member(s) or subsidiaries, then describe the basis for such use and the circumstances surrounding such use.

**ANSWER**


    19.    For the period of April 1, 2024 to the date of your response to this interrogatory, describe what happened to the revenue generated by the ATMs subject to the MSAs between the Funds and Paramount.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

20.     Identify and describe your revenue during the relevant time period, including but not limited to:

(a)     All sources of income, revenue, or remuneration of any kind, including payments for goods and services, interest income, operating income, payments on accounts receivables, commissions, agency fees, loan repayments, rents, royalties, license fees, dividends, distributions, payments relating to sales of assets, equipment, or inventory, payments on contracts, or any other payment or remuneration you received in connection with the operation of your business.

(b)     Income declared on state and federal income tax returns, and all related forms and schedules (including all amended returns, forms, and schedules) filed during or relating to the relevant time period.

(c)     Income identified on financial statements, balance sheets, income statements, cash flow statements, and loan applications prepared or submitted by you or on your behalf during the relevant time period.

**ANSWER**


21.     Identify and produce all documents evidencing your revenue referenced in foregoing interrogatory.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

22.    Identify and describe your routine expenses, including but not limited

to:

(a)    Operating costs.

(b)    Rental obligations.

(c)    Payroll and benefits.

(d)    Outstanding loans.

(e)    Installment payments.

(f)    Mortgage payments.

(g)    Loan payments and financing charges on vehicles, boats, aircraft,

equipment, and supplies.

(h)    Payments due under contracts.

(i)    Royalty payments and license fees.

(j)    Commissions owed to brokers, dealers, or representatives.

(k)    Legal, accounting, and other professional fees.

(l)    Advertising and marketing costs.

(m)    Other routine debts and expenses that occur on a regular basis.

**ANSWER**


23.    Identify and produce all documents evidencing your routine expenses

referenced in the foregoing interrogatory.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

24.     Identify and describe all debts and liabilities you owed or incurred during the relevant time period, including:

(a)     The name, address, and telephone number of the creditor.

(b)     The amount owed.

(c)     When the debt was incurred and for what reason.

(d)     Whether all or any portion of the debt is paid.

(e)     When all or any portion was paid.

(f)     Whether the debt is secured and, if so, how it is secured.

(g)     Any remaining balance on all such debts.

**ANSWER**


25.     Identify and produce all documents evidencing your debts and liabilities referenced in the foregoing interrogatory.

**ANSWER**


26.     Identify all efforts to collect any debt from you by any creditor, collection agency, attorney, or other party acting on behalf of any creditor, including receiving demand letters, default notices, forbearance agreements, collection letters, liens, *lis pendens*, lawsuits, judgments, petitions, complaints, summonses, or other legal process.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

27.    Identify all legal actions in which you have been or are a party during

the relevant time period, including:

(a)    The title of the case.

(b)    The name of the court where the action is or was pending.

(c)    The docket number of the case.

(d)    A description of the case.

(e)    The outcome of the case, if applicable (for example, a judgment for

money damages against you or the other party).

**ANSWER**


28.    Identify all individuals, institutions, and other entities that owe you

debts or liabilities, including:

(a)    The name, address, and telephone number of the debtor.

(b)    The amount of the debt or liability as of the date of your response to

this interrogatory.

(c)    Whether the debt is secured, and if so, how.

(d)    The maturity date of the debt.

(e)    Whether any debt has become uncollectable.

**ANSWER**


29.    Identify and produce all documents evidencing all debts and liabilities

owed to you, as referenced in the foregoing interrogatory.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

**ANSWER**

30.    Identify and describe all real property you currently own, hold, or claim any type of interest in, directly or indirectly, in whole or in part, or owned, held, or claimed any interest in, directly or indirectly, in whole or in part, during the relevant time period, including:

(a)    The property's address.

(b)    The purchase price.

(c)    The current fair market value.

(d)    The type of real property.

(e)    How the property is currently titled.

(f)    How the property was titled when first purchased.

(g)    Your interest in the property.

(h)    The identity of any third parties who possess or claim to possess an ownership interest in the property.

(i)    Any debts, liabilities, liens, or other encumbrances against the property.

**ANSWER**

31.    Identify and produce all documents evidencing your interest in real property, referenced in the foregoing interrogatory.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

32.     Identify all banks, brokerage firms, investment firms, or other financial institutions for any account which you currently own, hold, or claim an interest in, in whole or in part, or owned, held, or claimed an interest in, in whole or in part, during the relevant time period, including:

(a)     The bank, investment firm, or other financial institution name, address, and telephone number.

(b)     The name under which the account is titled.

(c)     The account number.

(d)     The account type.

(e)     The account balance as November 21, 2024.

(f)     The identity of any third parties who possess or claim to possess an ownership interest in the property.

(g)     Any debts, liabilities, liens, or other encumbrances against the accounts.

**ANSWER**


33.     Identify and produce all documents evidencing your interest in any accounts at banks, brokerage firms, investment firms, or other financial institutions, referenced in the foregoing interrogatory.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

34.     Identify and describe all vehicles, aircraft, boats, or other water vessels you currently own, hold, or claim an interest in, directly or indirectly, in whole or in part, or owned, held, or claimed an interest in, directly or indirectly, in whole or in part, during the relevant time period, including:

(a)     The property's current location.

(b)     The property's purchase price.

(c)     The current fair market value.

(d)     The type of property.

(e)     How you acquired an ownership interest or claim in the property.

(f)     Your current ownership interest or claim in the property.

(g)     The identity of any third parties who possess or claim to possess an ownership interest in the property.

(h)     Any debts, liabilities, liens, or other encumbrances against the property.

**ANSWER**


35.     Identify and produce all documents evidencing your interest in any vehicles, aircraft, boats, or other water vessels, referenced in the foregoing interrogatory.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

36.    Identify and describe any and all other tangible corporate property with a value over $100 which you currently own, hold, or claim an interest in, directly or indirectly, in whole or in part, or owned, held, or claimed an interest in, directly or indirectly, in whole or in part, during the relevant time period, including:

(a)    The type of property, including, but not limited to:

    i.    Goods.

    ii.    Equipment and machinery.

    iii.    Inventory.

    iv.    Trade fixtures.

    v.    Tools.

    vi.    Office equipment and furniture.

    vii.    Computer equipment and networks.

    viii.    Household furnishings, appliances, electronics, computer equipment, televisions, stereos, audiovisual equipment, and fixtures.

    ix.    Jewelry, artwork, antiques, and collectibles.

    x.    Clothing.

    xi.    Cash.

    xii.    Precious metals.

(b)    The property's current location.

(c)    The property's purchase price.

(d)    The current fair market value.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

(e)    How you acquired an ownership interest or claim in the property.

(f)    Your current ownership interest or claim in the property.

(g)    The identity of any third parties who possess or claim to possess an
ownership interest in the property.

(h)    Any debts, liabilities, liens, or other encumbrances against the
property.

**ANSWER**


37.    Identify and produce all documents evidencing your interest in any
and all other tangible corporate property, referenced in the foregoing interrogatory.

**ANSWER**


38.    Identify and describe all intangible property with a value over $100
you currently own, hold, or claim any type of interest in, directly or indirectly, in
whole or in part, or owned, held, or claimed any type of interest in, directly or
indirectly, in whole or in part, during the relevant time period, including:

(a)    The type of intangible property, including but not limited to any and
all:

    i.   Contracts.

    ii.  Security agreements.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

     iii.  Stocks, bonds, or other evidence of ownership, equity, or investment in any business entity, including number of units owned.

     iv.  Patents, copyrights, trademarks, or other evidence of intellectual property rights.

     v.  Accounts receivable.

     vi.  Notes receivable.

     vii.  Corporate goodwill.

     viii.  Research and development.

     ix.  Retirement, pension, 401(k), and IRA accounts.

     x.  Annuities.

(b)    A description of the property.

(c)    The property's purchase price (if applicable).

(d)    The current fair market value.

(e)    How you acquired an ownership interest or claim in the property.

(f)    Your current ownership interest or claim in the property.

(g)    The identity of any third parties who possess or claim to possess an ownership interest in the property.

(h)    Any debts, liabilities, liens, or other encumbrances against the property.

**ANSWER**

Cumberland Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

39.    Identify and produce all documents evidencing your interest in any and all intangible property, referenced in the foregoing interrogatory.

**ANSWER**


40.    Identify all policies of insurance you currently own, hold, or claim any type of interest in, directly or indirectly, in whole or in part, or were covered under during the relevant time period, including:

    (a)    The name, address, and telephone number of the insurance company.

    (b)    The policy number.

    (c)    The policy amount.

    (d)    The type of policy.

    (e)    The present cash or surrender value.

    (f)    The amount of accumulated dividends, if any.

    (g)    The time period covered under the policy.

**ANSWER**


41.    Identify and produce all documents regarding any and all policies of insurance, referenced in the foregoing interrogatory.

**ANSWER**


42.    Identify any safe deposit boxes you either rent or have access to currently or during the relevant time period, including:

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

(a)     The name, address, and telephone number of the entity or person
under whose name the safe deposit box is rented.

(b)     The name, address, and telephone number of the financial institution
or other entity at which the safe deposit box is located.

(c)     A description of the contents of the safe deposit box as of November 21,
2024.

**ANSWER**


43.     Identify all revenue, income, or assets you claim exempt from
judgment enforcement in this action and state the basis for the exemption.

**ANSWER**


44.     As to each asset identified by you in response to these interrogatories,
identify any third party that currently possesses, owns, or controls that asset, in
whole or in part, such as:

(a)     Corporate affiliates, subsidiaries, parent companies, partners, or any
other related corporate entity.

(b)     Banks, financial institutions, and brokerage firms.

(c)     Accountants.

(d)     Business partners.

(e)     Friends, family members, and associates with whom you conducted
business during the relevant time period.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

(f)    Other individuals, institutions, and entities that hold your assets.

**ANSWER**

45.    Identify the asset or assets possessed, owned, or controlled, in whole or in part, by the third parties referenced in the foregoing interrogatory.

**ANSWER**

46.    Identify and produce all documents evidencing the asset or assets possessed, owned, or controlled, in whole or in part, by the third parties referenced in the foregoing interrogatory.

**ANSWER**

47.    Identify all transferees of any of your income or assets over the value of $100, in whole or in part, during the relevant time period, or that are transferees of an ownership interest in any of your income or assets over the value of $100, in whole or in part, during the relevant time period, including:

(a)    Banks, financial institutions, brokerage firms, and investment firms.

(b)    Accountants.

(c)    Business partners.

(d)    Friends, family members, and associates.

(e)    Other individuals, institutions, and entities.

**ANSWER**

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

48.    Identify the income or assets transferred to any third party, referenced in the foregoing interrogatory.

**ANSWER**


49.    Identify and produce all documents evidencing transfers of your income or assets to any third party, referenced in the foregoing interrogatory.

**ANSWER**


Dated: November 21, 2024          /s/ Joshua J. Voss

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
*Attorneys for Plaintiffs*          szimmer@kleinbard.com

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number CI-24-06012
CI-24-06012

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I caused a true and correct copy

of Plaintiffs' Interrogatories in Aid of Execution Directed to Defendant to be

served upon the following counsel of record by email:

> Nathan P. Heller, nathan.heller@us.dlapiper.com;
> Joseph Roselius, joseph.roselius@us.dlapiper.com; and
> Jeffrey S. Torosian, jeffrey.torosian@us.dlapiper.com.

Dated: November 21, 2024                    /s/ Joshua J. Voss

Cumberland County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit B

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

**Joshua Voss**

| | |
|---|---|
| **From:** | Joshua Voss |
| **Sent:** | Monday, December 9, 2024 5:34 PM |
| **To:** | Carson B. Morris; Turner, Brenna L. |
| **Cc:** | Matt Haverstick; Samantha Zimmer; Christopher P. Coval, Esquire; Mark C. Labrum, Esquire |
| **Subject:** | Prestige Fund A v. Paramount Management (CP Lancaster)--interrogatories |
| **Attachments:** | Plaintiffs' ROGs in Aid of Execution (11.21.24).pdf |

Carson and Brenna,

Copied on this email are Chris Coval and Mark Labrum, who entered their appearances this afternoon as co-counsel for Plaintiffs in the above matter. Chris and Mark are pursuing collection of the financial aspects of the Consent Judgment. As you ingest new information from Paramount, please be advised that Plaintiffs served interrogatories in aid of execution on prior counsel before they withdrew. Those interrogatories are attached.

Regards,

Josh



Joshua J. Voss
**Kleinbard LLC**

## BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W| www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

Passaic County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit C

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

## Joshua Voss

| | |
|---|---|
| **From:** | Morris, Carson B. <CMorris@mmwr.com> |
| **Sent:** | Monday, December 23, 2024 5:02 PM |
| **To:** | Joshua Voss |
| **Cc:** | Matt Haverstick; Christopher P. Coval, Esquire; Mark C. Labrum, Esquire |
| **Subject:** | RE: Prestige Fund A v. Paramount Management (CP Lancaster)--interrogatories |

**This message was received from an external sender.**

Hello Josh

Paramount, which as you know laid off all its staff over a week ago, has not prepared answers to the interrogatories and will not be sending them today.

Thanks
Carson



**Carson B Morris** | Of Counsel
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7614 | Fax: 215-772-7620 | cmorris@mmwr.com | Attorney Profile



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you

**From:** Joshua Voss <jvoss@kleinbard.com>
**Sent:** Monday, December 23, 2024 2:09 PM
**To:** Morris, Carson B. <CMorris@mmwr.com>
**Cc:** Matt Haverstick <mhaverstick@kleinbard.com>; Christopher P. Coval, Esquire <ccoval@fsdc-law.com>; Mark C. Labrum, Esquire <mlabrum@fsdc-law.com>
**Subject:** FW: Prestige Fund A v. Paramount Management (CP Lancaster)--interrogatories

**\*\*CAUTION\*\* External Email**

Carson—I am following up on the communication below and the attached. Answers are due today. Will Paramount be sending them? Please advise.

Josh

**From:** Joshua Voss
**Sent:** Monday, December 9, 2024 5:34 PM
**To:** Carson B. Morris <CMorris@mmwr.com>; Turner, Brenna L. <BTurner@mmwr.com>
**Cc:** Matt Haverstick <mhaverstick@kleinbard.com>; Samantha Zimmer <szimmer@kleinbard.com>; Christopher P. Coval,

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

Esquire <ccoval@fsdc-law.com>; Mark C. Labrum, Esquire <mlabrum@fsdc-law.com>
**Subject:** Prestige Fund A v. Paramount Management (CP Lancaster)--interrogatories

Carson and Brenna,

Copied on this email are Chris Coval and Mark Labrum, who entered their appearances this afternoon as co-counsel for Plaintiffs in the above matter. Chris and Mark are pursuing collection of the financial aspects of the Consent Judgment. As you ingest new information from Paramount, please be advised that Plaintiffs served interrogatories in aid of execution on prior counsel before they withdrew. Those interrogatories are attached.

Regards,

Josh



Joshua J. Voss
**Kleinbard LLC**

**BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.**

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W| www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

Cumberland County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit D

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

|  |  |  |
|---|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : | No. CI-24-06012 |
| Plaintiffs, | : | |
| v. | : | Hon. Leonard G. Brown, III |
| | : | |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : | |
| Defendant. | : | |

## ORDER

AND NOW, this ___10th___ day of ___January___, 2025, upon

consideration of Plaintiffs' Motion to Compel Answers to Interrogatories in Aid of

Execution, it is hereby ORDERED AND DECREED that Defendant, Paramount

Management Group, LLC, shall fully and completely answer Plaintiffs'

Interrogatories in Aid of Execution, without objection, within twenty (20) days from

the date of this Order, or suffer sanctions upon further application and cause

shown.

BY THE COURT:

_____

**LEONARD G. BROWN III, JUDGE**

ATTEST:

Copies to:    Matthew H. Haverstick, Esq. (w)
              Joshua J. Voss, Esq. (w)
              Samantha G. Zimmer, Esq. (w)
              Carson B. Morris, Esq. (w)

01/13/2025

Lancaster Co Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

**CONTINUANCE OF DISTRIBUTION LIST:**

CARDTRONICS USE INC (1)

FIRST NATIONAL BANK OF PENNSYLVANIA (1)

JONESTOWN BANK AND TRUST COMPANY (1)

BELCO COMMUNITY CREDIT UNION (1)

PEOPLES BANK (1)

TRUIST BANK NA (1)

FIRST COMMONWEALTH BANK (1)

JP MORGAN CHASE BANK NA (1)

FIRST REGENTS HOLDINGS LLC (1)

POWERQUEST FINANCIAL LLC (1)

CASH VENTURES III LLC (1)

APOLLO INVESTMENT HOLDINGS (1)

GOLDEN GATE INVESTMENT COMPANY LLC (1)

HELLER CAPITAL GROUP LLC (1)

HELLER INVESTMENTS HOLDING (1)

PREMIER MANAGEMENT GROUP INC (1)

H2 VENTURES LLC (1)

SHARENET LLC (1)

PARAMOUNT MGR LLC (1)

BLACKFORD HOLDINGS LLC (1)

BLACKFORD ATM VETURES LLC (1)

ATM OPS INC D/B/A BITSTOP (1)

POWERCOIN LLC (1)

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 1-3-25

Cumberland County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit E

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

## Joshua Voss

| | |
|---|---|
| **From:** | Joshua Voss |
| **Sent:** | Tuesday, January 14, 2025 3:26 PM |
| **To:** | Freese, Heidi; Zemlock, Barbara; Morris, Carson B. |
| **Cc:** | Matt Haverstick; Samantha Zimmer |
| **Subject:** | Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order |
| **Attachments:** | ORDER re interrogatories (1.14.25).pdf |

Counsel,

I am sending you an Order entered in the above matter regarding Plaintiffs' interrogatories in aid of execution.
The Order was signed by Judge Brown on January 10, and it appeared on the docket today. Please ensure that
Plaintiffs receive timely answers to the discovery referenced in the Order.

Regards,

Josh



Joshua J. Voss
**Kleinbard LLC**

**BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.**

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W| www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may
contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for
delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this
message from your system.

Berks County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit F

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

**Joshua Voss**

| | |
|---|---|
| **From:** | Joshua Voss |
| **Sent:** | Thursday, January 30, 2025 11:57 AM |
| **To:** | Freese, Heidi; Zemlock, Barbara |
| **Cc:** | Matt Haverstick; Edward Butkovitz; Samantha Zimmer |
| **Subject:** | FW: Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order |
| **Attachments:** | ORDER re interrogatories (1.14.25).pdf; Plaintiffs' ROGs in Aid of Execution (11.21.24).pdf |

Counsel,

I am following up on my email below and the attached January 10 Order. Today is the deadline for Paramount to respond to the Interrogatories, per the January 10 Order. Since Daryl Heller is the sole remaining officer/employee of Paramount, and since Paramount does not have counsel, I am sending this to you. If someone other than you should be receiving this communication, kindly let me know. If you'd like me to Mr. Heller directly by email, in his capacity as an officer of Paramount, I am happy to do so.

Please advise if we will be receiving answers to the Interrogatories today. If we do not receive the answers, please be aware that we intend to file a motion for sanctions, as soon as tomorrow, seeking sanctions against both Paramount and Mr. Heller personally. This email shall serve as our attempt to meet and confer about the motion for sanctions. If you'd like, we will make ourselves available by phone to discuss this matter with you today.

Lastly, for your reference, I've attached the Interrogatories, served on November 21, 2024.

Regards,

Josh

---

**From:** Joshua Voss
**Sent:** Tuesday, January 14, 2025 3:26 PM
**To:** Freese, Heidi <hfreese@tuckerlaw.com>; Zemlock, Barbara <bzemlock@tuckerlaw.com>; Morris, Carson B. <CMorris@mmwr.com>
**Cc:** Matt Haverstick <mhaverstick@kleinbard.com>; Samantha Zimmer <szimmer@kleinbard.com>
**Subject:** Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order

Counsel,

I am sending you an Order entered in the above matter regarding Plaintiffs' interrogatories in aid of execution. The Order was signed by Judge Brown on January 10, and it appeared on the docket today. Please ensure that Plaintiffs receive timely answers to the discovery referenced in the Order.

Regards,

Josh

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012



Joshua J. Voss
**Kleinbard LLC**

**BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.**

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W| www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

Cumberland County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# Exhibit G

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

## Joshua Voss

| | |
|---|---|
| **From:** | Freese, Heidi <hfreese@tuckerlaw.com> |
| **Sent:** | Thursday, January 30, 2025 2:34 PM |
| **To:** | Joshua Voss; Zemlock, Barbara; Pappas, Evan |
| **Cc:** | Matt Haverstick; Edward Butkovitz; Samantha Zimmer |
| **Subject:** | RE: Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order |

**This message was received from an external sender.**

Received. We will forward to Mr. Heller now.

Best,
Heidi





**From:** Joshua Voss <jvoss@kleinbard.com>
**Sent:** Thursday, January 30, 2025 11:57 AM
**To:** Freese, Heidi <hfreese@tuckerlaw.com>; Zemlock, Barbara <bzemlock@tuckerlaw.com>
**Cc:** Matt Haverstick <mhaverstick@kleinbard.com>; Edward Butkovitz <ebutkovitz@kleinbard.com>; Samantha Zimmer <szimmer@kleinbard.com>
**Subject:** FW: Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order

Counsel,

I am following up on my email below and the attached January 10 Order. Today is the deadline for Paramount to respond to the Interrogatories, per the January 10 Order. Since Daryl Heller is the sole remaining officer/employee of Paramount, and since Paramount does not have counsel, I am sending this to you. If someone other than you should be receiving this communication, kindly let me know. If you'd like me to send it to Mr. Heller directly by email, in his capacity as an officer of Paramount, I am happy to do so.

Please advise if we will be receiving answers to the Interrogatories today. If we do not receive the answers, please be aware that we intend to file a motion for sanctions, as soon as tomorrow, seeking sanctions against both Paramount and Mr. Heller personally. This email shall serve as our attempt to meet and confer about the motion for sanctions. If you'd like, we will make ourselves available by phone to discuss this matter with you today.

Lastly, for your reference, I've attached the Interrogatories, served on November 21, 2024.

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

Regards,

Josh

---

**From:** Joshua Voss
**Sent:** Tuesday, January 14, 2025 3:26 PM
**To:** Freese, Heidi <hfreese@tuckerlaw.com>; Zemlock, Barbara <bzemlock@tuckerlaw.com>; Morris, Carson B. <CMorris@mmwr.com>
**Cc:** Matt Haverstick <mhaverstick@kleinbard.com>; Samantha Zimmer <szimmer@kleinbard.com>
**Subject:** Prestige Fund A v. Paramount Management Group (CP Lancaster)--discovery order

Counsel,

I am sending you an Order entered in the above matter regarding Plaintiffs' interrogatories in aid of execution. The Order was signed by Judge Brown on January 10, and it appeared on the docket today. Please ensure tha[t] Plaintiffs receive timely answers to the discovery referenced in the Order.

Regards,

Josh



Joshua J. Voss
**Kleinbard LLC**

**BIG FIRM EXPERIENCE. SMALL FIRM ATTENTION.**

Three Logan Square | 1717 Arch Street, 5th Floor | Philadelphia, PA 19103
D | 267.443.4114
F | 215.568.0140
E | jvoss@kleinbard.com
W| www.kleinbard.com



This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

## CERTIFICATION PURSUANT TO L.C.R.C.P. No. 208.2(e)

I hereby certify, in accordance with Lancaster County Rule of Civil Procedure 208.2(e) that, after reasonable effort, the parties are unable to resolve the current discovery dispute.

Dated: January 31, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access*

*Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate*

*and Trial Courts* that require filing confidential information and documents

differently from non-confidential information and documents.


Dated: January 31, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012
CI-24-06012

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused a true and correct copy of

Plaintiffs' Motion for Sanctions and Attorneys' Fees to be served as follows:

| | |
|---|---|
| Via U.S. Mail & Email to:<br><br>Paramount Management Group, LLC<br>415 North Prince Street, Suite 202<br>Lancaster, PA 17603<br>dheller@hellercg.com | Via U.S. Mail & Email to:<br><br>Heidi R. Freese, Esq.<br>Barbara A. Zemlock, Esq.<br>TUCKER ARENSBURG, P.C.<br>300 Corporate Center Drive, Suite 200<br>Camp Hill, PA 17011<br>hfreese@tuckerlaw.com<br>bzemlock@tuckerlaw.com<br><br>*Counsel for Daryl Heller* |
| Via U.S. Mail & Email to:<br><br>Edmond George, Esq.<br>Nicholas Poduslenko, Esq.<br>Michael Vagnoni, Esq.<br>OBERMAYER REBMANN MAXWELL<br>& HIPPEL LLP<br>Centre Square West<br>1500 Market Street, Suite 3400<br>Philadelphia, PA 19102<br>Edmond.George@obermayer.com<br>Nicholas.Poduslenko@obermayer.com<br>Michael.Vagnoni@obermayer.com<br><br>*Counsel for Intervenor Customers Bank* | Via U.S. Mail & Email to:<br><br>Sean E. Summers, Esq.<br>SUMMERS NAGY LAW OFFICES<br>35 South Duke Street<br>York, PA 17401<br>ssummers@summersnagy.com<br><br>*Counsel for Intervenor Traditions Bank* |

Dated: January 31, 2025

Joshua J. Voss (No. 306853)

# EXHIBIT F

Lancaster County Prothonotary E-Filed - 20 Feb 2025 02:19:21 PM
Case Number: CI-24-06012

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140          *Attorneys for Plaintiffs*

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

|  |  |  |
|---|---|---|
| | : | |
| PRESTIGE FUND A, LLC, ET AL., | : | No. CI-24-06012 |
| Plaintiffs, | : | |
| v. | : | Hon. Leonard G. Brown, III |
| | : | |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : | |
| Defendant. | : | |
| | : | |

## PRAECIPE TO ATTACH ALTERNATIVE PROPOSED ORDER TO PLAINTIFFS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES

TO THE PROTHONOTARY:

Please kindly attach the alternative proposed order submitted herewith to Plaintiffs' Motion for Sanctions and Attorneys' Fees (filed on January 31, 2025). This alternative order is necessary in light of the bankruptcy filing by non-party Daryl Heller.

Dated: February 20, 2025

Joshua J. Voss (No. 306853)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: jvoss@kleinbard.com
*Attorneys for Plaintiffs*

Lancaster Prothonotary E-Filed - 20 Feb 2025 02:19:21 PM
Case Number: CI-24-06012

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

| | |
|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : |
| Plaintiffs, | : |
| | : |
| v. | : No. CI-24-06012 |
| | : |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : |
| | : |
| Defendant. | : |
| | : |

## ORDER

AND NOW, this _____ day of _____, 2025, upon consideration of Plaintiffs' Motion for Sanctions and Attorneys' Fees, it is hereby ORDERED the Motion is GRANTED.

It is further ORDERED that a fine of $50,000 per day shall be immediately assessed against Paramount Management Group, LLC for each day that Paramount fails to fully and completely answer Plaintiffs' Interrogatories in Aid of Execution.

It is further ORDERED that if Paramount has not served answers to Plaintiffs' Interrogatories in Aid of Execution on Plaintiffs within seven (7) days of the date of this Order, the daily fine against Paramount shall increase to $100,000 per day.

It is further ORDERED that if Paramount has not served answers to Plaintiffs' Interrogatories in Aid of Execution on Plaintiffs within fourteen (14) days of the date of this Order, the daily fine against Paramount shall increase to $200,000 per day.

Prothonotary E-Filed - 20 Feb 2025 02:19:21 PM
Case Number: CI-24-06012
CI-24-06012

It is further ORDERED that upon Plaintiffs' receipt of answers to Plaintiffs' Interrogatories in Aid of Execution from Paramount, Plaintiffs shall submit to the Court an accounting of the total daily fines incurred before such service and the Court shall enter the same as an additional judgment against Paramount.

It is further ORDERED that Plaintiffs are entitled attorneys' fees in amount of $4803.50, associated with the preparation of Plaintiffs' Motion for Sanctions and Attorneys' Fees. If any further proceedings are necessary to compel answers to Plaintiffs' Interrogatories in Aid of Execution, Plaintiffs may submit a renewed application for additional attorneys' fees.

BY THE COURT:

_____

LEONARD G. BROWN III, JUDGE

ATTEST:

Copies to:    Matthew H. Haverstick, Esq.; Joshua J. Voss, Esq; Samantha G.
              Zimmer, Esq.; Heidi R. Freese, Esq.; Barbara A. Zemlock, Esq.;
              Paramount Management Group, LLC; Edmond George, Esq.; Nicholas
              Poduslenko, Esq.; Michael Vagnoni, Esq.; Sean E. Summers, Esq.

Prothonotary E-Filed - 20 Feb 2025 02:19:21 PM
Case Number: CI-24-06012
CI-24-06012

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access*

*Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate*

*and Trial Courts* that require filing confidential information and documents

differently from non-confidential information and documents.


Dated: February 20, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 20 Feb 2025 02:19:21 PM
Case Number: CI-24-06012

CI-24-06012

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused a true and correct copy of

Plaintiffs' Praecipe to Attach Alternative Proposed Order to Plaintiffs' Motion for

Sanctions and Attorneys' Fees to be served as follows:

| | |
|---|---|
| Via U.S. Mail to:<br><br>Paramount Management Group, LLC<br>415 North Prince Street, Suite 202<br>Lancaster, PA 17603<br><br>and<br><br>Paramount Management Group, LLC<br>c/o Heller Capital Group, LLC<br>415 North Prince Street, Suite 200<br>Lancaster, PA 17603 | Via U.S. Mail & Email to:<br><br>Heidi R. Freese, Esq.<br>Barbara A. Zemlock, Esq.<br>TUCKER ARENSBURG, P.C.<br>300 Corporate Center Drive, Suite 200<br>Camp Hill, PA 17011<br>hfreese@tuckerlaw.com<br>bzemlock@tuckerlaw.com<br><br>*Counsel for Daryl Heller* |
| Via U.S. Mail & Email to:<br><br>Edmond George, Esq.<br>Nicholas Poduslenko, Esq.<br>Michael Vagnoni, Esq.<br>OBERMAYER REBMANN MAXWELL<br>& HIPPEL LLP<br>Centre Square West<br>1500 Market Street, Suite 3400<br>Philadelphia, PA 19102<br>Edmond.George@obermayer.com<br>Nicholas.Poduslenko@obermayer.com<br>Michael.Vagnoni@obermayer.com<br><br>*Counsel for Intervenor Customers Bank* | Via U.S. Mail & Email to:<br><br>Sean E. Summers, Esq.<br>SUMMERS NAGY LAW OFFICES<br>35 South Duke Street<br>York, PA 17401<br>ssummers@summersnagy.com<br><br>*Counsel for Intervenor Traditions Bank* |

Dated: February 20, 2025

Joshua J. Voss (No. 306853)

# EXHIBIT G

Prothonotary E-Filed - 21 Feb 2025 09:29:44 AM
Case Number: CI-24-06012

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140          *Attorneys for Plaintiffs*

### IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
### CIVIL ACTION-LAW

|  |  |
|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : |
| Plaintiffs, | : No. CI-24-06012 |
| v. | : |
|  | : Hon. Leonard G. Brown, III |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : |
| Defendant. | : |

## PRAECIPE FOR DISPOSITION

TO THE PROTHONOTARY:

Per L.R. 208.3(a)(A), please send to Judge Brown for disposition Plaintiffs'
Motion for Sanctions and Attorneys' Fees (filed January 31, 2025) and alternative
proposed order (filed February 19, 2025). Because non-party Daryl Heller filed for
bankruptcy protection, Plaintiffs seek disposition of the Motion solely as against
Defendant Paramount Management Group, LLC and not against Mr. Heller.

Dated: February 21, 2025

Joshua J. Voss (No. 306853)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: jvoss@kleinbard.com

*Attorneys for Plaintiffs*

Prothonotary E-Filed - 21 Feb 2025 09:29:44 AM
Case Number: CI-24-06012

# <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently from non-confidential information and documents.

Dated: February 21, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 21 Feb 2025 09:29:44 AM
Case Number: CI-24-06012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, I caused a true and correct copy of

Plaintiffs' Praecipe for Disposition to be served as follows:

| Via U.S. Mail to: | Via U.S. Mail & Email to: |
|---|---|
| Paramount Management Group, LLC<br>415 North Prince Street, Suite 202<br>Lancaster, PA 17603<br><br>and<br><br>Paramount Management Group, LLC<br>c/o Heller Capital Group, LLC<br>415 North Prince Street, Suite 200<br>Lancaster, PA 17603 | Heidi R. Freese, Esq.<br>Barbara A. Zemlock, Esq.<br>TUCKER ARENSBURG, P.C.<br>300 Corporate Center Drive, Suite 200<br>Camp Hill, PA 17011<br>hfreese@tuckerlaw.com<br>bzemlock@tuckerlaw.com<br><br>*Counsel for Daryl Heller* |
| Via U.S. Mail & Email to:<br><br>Edmond George, Esq.<br>Nicholas Poduslenko, Esq.<br>Michael Vagnoni, Esq.<br>OBERMAYER REBMANN MAXWELL<br>& HIPPEL LLP<br>Centre Square West<br>1500 Market Street, Suite 3400<br>Philadelphia, PA 19102<br>Edmond.George@obermayer.com<br>Nicholas.Poduslenko@obermayer.com<br>Michael.Vagnoni@obermayer.com<br><br>*Counsel for Intervenor Customers Bank* | Via U.S. Mail & Email to:<br><br>Sean E. Summers, Esq.<br>SUMMERS NAGY LAW OFFICES<br>35 South Duke Street<br>York, PA 17401<br>ssummers@summersnagy.com<br><br>*Counsel for Intervenor Traditions Bank* |

Dated: February 21, 2025

Joshua J. Voss (No. 306853)

# EXHIBIT H

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

|  |  |  |
|---|---|---|
| PRESTIGE FUND A, LLC, ET AL., | : |  |
| Plaintiffs, | : |  |
| v. | : | No. CI-24-06012 |
| PARAMOUNT MANAGEMENT GROUP, LLC, | : |  |
| Defendant. | : |  |

2025 MAR 12 AM 9:03
PROTHONOTARY'S OFFICE
LANCASTER, PA.

ENTERED AND FILED

## ORDER

AND NOW, this ___11th___ day of ___March___, 2025, upon

*and without response by defendant*

consideration of Plaintiffs' Motion for Sanctions and Attorneys' Fees, it is hereby

ORDERED the Motion is GRANTED.

*upon personal service of this order on Daryl Heller*

It is further ORDERED that a fine of $~~60,000~~ *500* per day shall be immediately

assessed against Paramount and Daryl Heller, jointly and severally, for each day

that Paramount fails to fully and completely answer Plaintiffs' Interrogatories in

Aid of Execution. *Plaintiffs shall file proof of personal service with the court.*

It is further ORDERED that if Paramount and Daryl Heller have not served

answers to Plaintiffs' Interrogatories in Aid of Execution on Plaintiffs within seven

(7) days of the date of *service of* this Order, the daily fine against Paramount and Daryl

Heller, payable jointly and severally, shall increase to $~~100,000~~ *1,000* per day.

It is further ORDERED that if Paramount and Daryl Heller have not served

answers to Plaintiffs' Interrogatories in Aid of Execution on Plaintiffs within

fourteen (14) days of the date of *service of* this Order, the daily fine against Paramount and

Daryl Heller, payable jointly and severally, shall increase to ~~200,000~~ *2,000* per day.

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

CI-24-06012

It is further ORDERED that if Paramount and Daryl Heller have not served

answers to Plaintiffs' Interrogatories in Aid of Execution on Plaintiffs within

fourteen (14) days of the date of ~~service of~~ this Order, upon notice from Plaintiffs ~~to~~ *filed with* the Court,

the Court shall schedule a hearing where Paramount and Daryl Heller shall show

cause why Mr. Heller should not be held in civil contempt and incarcerated until

such time as Paramount serves answers to Plaintiffs' Interrogatories in Aid of

Execution. All daily fines assessed under this Order shall continue until such time

as Paramount and Daryl Heller serve answers to the Interrogatories.

It is further ORDERED that upon Plaintiffs' receipt of answers to Plaintiffs'

Interrogatories in Aid of Execution from Paramount and Daryl Heller, Plaintiffs

shall submit to the Court an accounting of the total daily fines incurred before such

service and the Court shall enter the same as an additional judgment against

Paramount and Daryl Heller, payable jointly and severally.

It is further ORDERED that Plaintiffs are entitled attorneys' fees in amount

of $4803.50, associated with the preparation of Plaintiffs' Motion for Sanctions and

Attorneys' Fees. If any further proceedings are necessary to compel answers to

Plaintiffs' Interrogatories in Aid of Execution, Plaintiffs may submit a renewed

application for additional attorneys' fees.

BY THE COURT:

_____

LEONARD G. BROWN III, JUD

ATTEST: _____

2

Lancaster County Prothonotary E-Filed - 31 Jan 2025 09:09:52 AM
Case Number: CI-24-06012

Copies to:  Matthew H. Haverstick, Esq.; Joshua J. Voss, Esq; Samantha G.
Zimmer, Esq.; Heidi R. Freese, Esq.; Barbara A. Zemlock, Esq.;
Paramount Management Group, LLC; Edmond George, Esq.; Nicholas
Poduslenko, Esq.; Michael Vagnoni, Esq.; Sean E. Summers, Esq.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 3-12-25

KLEINBARD LLC

MATTHEW H. HAVERSTICK, ESQ.

JOSHUA J. VOSS, ESQ.

SAMANTHA G. ZIMMER, ESQ.


TUCKER ARENSBERG PC

HEIDI R. FREESE, ESQ.

BARBARA A. ZEMLOCK, ESQ.


OBERMAYER REDMANN MAXWELL & HIPPEL LLP

NICHOLAS PODUSLENKO, ESQ.

EDMOND GEORGE, ESQ.

MICHAEL D. VAGNONI, ESQ.


SUMMERS NAGY LAW OFFICES

SEAN E. SUMMERS, ESQ.