**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Daryl Fred Heller,<br><br>      Debtor.<br><br>PINNACLE ASSET MANAGEMENT, LLC,<br><br>      Plaintiff,<br>v.<br><br>DARYL FRED HELLER,<br><br>      Defendant. | Chapter 11<br><br>Case No. 25-11354 (JNP)<br><br><br><br>Adv. Proc. No.: _____ |

## **COMPLAINT**

AND NOW, comes Plaintiff Pinnacle Asset Management, LLC ("Plaintiff") by and through its undersigned counsel, files this Complaint against Daryl Fred Heller (the "Debtor" or "Defendant") to determine the dischargeability of certain debts owed by Debtor to the Plaintiff, and respectfully states as follows:

  1.  Debtor, Daryl Heller, is an adult individual and businessman who resides and conducts business in Lancaster County, Pennsylvania. Debtor is the CEO of Heller Capital Group, LLC, a limited liability company and the manager of Heller Investment Holdings, LLC. These entities maintain offices at 415 North Prince Street, Lancaster, PA 17603.

  2.  Plaintiff is a limited liability company existing under the laws of the State of Delaware.

  3.  On February 10, 2025, Defendant filed a voluntary petition (the "Chapter 11

1

Petition") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States District Court for the District of New Jersey (the "Court").

4. Plaintiff is a creditor of the Debtor as reflected in duly filed proofs of claim filed in Debtor's bankruptcy case.

## JURISDICTION AND VENUE

5. The preceding paragraphs are fully incorporated herein by reference as if set forth herein.

6. This is an adversary proceeding commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to determine the dischargeability of certain debts under Section 523(a) of the Bankruptcy Code, owed by Defendant to the Plaintiff as a result of Defendant's conduct associated with solicitation of purported investments/loans, misappropriation of the Plaintiff's property, and other willful and malicious conduct.

7. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334(b) and 28 U.S.C. Section 157.

9. Venue is proper in this Court pursuant to 28 U.S.C. Section 1409.

## FACTUAL BACKGROUND

10. The preceding paragraphs are incorporated herein by reference as if set forth herein.

11. Debtor, Daryl Heller, is an individual and the chief executive officer of Heller Capital Group, LLC and Heller Investment Holdings ("Heller Capital" and "HIH" respectively).

Upon information and belief, Debtor and/or Heller Capital or HIH is the controlling member of Project Catapult LLC ("Project Catapult").

12. Debtor requested that Plaintiff make a loan of $500,000.00 to Project Catapult for a period of nine months to meet its short-term financial needs.

13. On or about December 29, 2023, pursuant to the terms of a Promissory Note, Creditor provided a loan in the amount of $500,000 for use by Project Catapult. The maturity date of the loan was September 29, 2024. The loan is in default. Interest accrues at the rate of 12% per annum. The Promissory Note is attached hereto as Exhibit "A."

14. At the time of the loan and capital infusion, Debtor and his related entities were under substantial financial pressure and Debtor was using any means necessary to acquire cash to finance his collapsing businesses. See *Prestige Fund A, LLC et. al. v. Paramount Management Group, LLC*, No. CI-24-06012 (the "Fund Action")(C.P. Lancaster) and *Prestige Fund A, LLC et. al. v. Daryl Heller, et al.*, No. CI-25-00491(C.P. Lancaster) (the "Second Fund Action").

15. Likewise, Debtor was directly or through entities under his ownership or control ("Heller Entities"), diverting loans and investment funds from their intended use to the use of Debtor and/or Heller Entities for reasons never disclosed to Creditor. It is believed that none of the funds provided via loan or capital infusion were ever used for their intended purpose and that Debtor's actions constitute fraud in the inducement and fraudulent misrepresentation.

16. Upon information and belief, Debtor induced multiple other individuals to provide loans at or around the time of Plaintiff's loan and has defaulted on most or all such loans. Debtor was aware, at all times, that he lacked the economic wherewithal to repay the loan and lied about the need for funding from Plaintiff.

17. Likewise, Debtor was directly or through entities under this ownership or control, diverting loans and investment funds from their intended use to the use of Debtor and/or Heller Entities for reasons never disclosed to Plaintiff.

18. At no point did Debtor disclose the financial circumstances of the businesses owned and controlled by Debtor and Heller Capital or that Debtor was operating a Ponzi scheme.

19. Debtor is liable to Creditor in the amount of $1,648,543.59 consisting of (i) the loan amount, $500,000, and interest of $67,754.06, plus ongoing interest at 10%, and (ii) Creditor's principal investment of $1,000,000.00, and interest of $80,789.59 through April 2025 plus ongoing interest at 6% per annum.

20. Debtor's actions are unlawful, constitute fraud in the inducement and fraudulent misrepresentations, and Debtor is liable to Plaintiff in the full amount invested plus ongoing interest.

## COUNT I

**Non-Dischargeability of Debts Pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(2)(B)**

21. The preceding paragraphs are incorporated herein by reference as if set forth herein.

22. Plaintiff is a creditor of Debtor as reflected in the proof of claim filed in the Debtor's bankruptcy case.

23. Debtor is indebted to the Plaintiff for money obtained by false pretenses, false representations, and actual fraud.

24. Debtor represented that Plaintiff's loaned funds would be provided to the aforementioned entity for the use of the entity as set forth above.

25. The representations were material to Plaintiff, who made the loans based on the

4

Debtor's representations.

26. These representations were false because Debtor (1) did not provide any of the loaned funds to the aforementioned entity; and (2) was attempting to prop up an illegal Ponzi scheme and used Plaintiff's funds for the benefit of Debtor and/or entities under his ownership and/or control other than the aforementioned entity.

27. Moreover, at the time that Defendant made the representations, he knew they were false and intended to fraudulently induce Plaintiff to make the loans.

28. Plaintiff reasonably relied on those representations from Debtor.

29. As a direct and proximate result of Debtor's representations, the Plaintiff has suffered substantial damages.

30. Debtor knew or should have known that the Plaintiff would reasonably rely on his misrepresentations and omissions.

31. The Plaintiff in fact, reasonably relied upon Debtor's misrepresentations to its detriment and Debtor's benefit.

32. Debtor is thus indebted to the Plaintiff for money Debtor obtained from the Plaintiff as a result of false pretenses, false representations, and actual fraud perpetrated by Debtor.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debts owed by Debtor to the Plaintiff are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT II

### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(4)

33. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

34. Debtor was entrusted with the loaned funds.

35. Despite this trust, Debtor, with the intent to defraud the Plaintiff, knowingly and intentionally converted the Plaintiff's loans/investments for purposes other than represented.

36. Debtor acted with the intent to permanently deprive the Plaintiff of its investments.

37. As a direct and proximate result of Defendant's embezzlement the Plaintiff has suffered damages, collectively, exceeding $1,648,543.59 plus ongoing interest.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debts owed by Debtor to the Plaintiff are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT III
### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(6)

38. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

39. Debtor's actions were willful and malicious.

40. Debtor's actions caused harm to the property of the Plaintiff.

41. As a direct and proximate result of Defendant's embezzlement the Plaintiff has suffered damages, collectively, exceeding $1,648,543.59 plus ongoing interest.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debts owed by Debtor to the Plaintiff are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

### COUNT IV
### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(13)

42. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

43. Upon information and belief, Debtor may be subject to criminal prosecution for his actions with regard to the Plaintiff and otherwise.

44. Upon information and belief, if Debtor is subject to criminal prosecution for his actions relating to the Plaintiff, he may be required to make payment to Plaintiff under an order of restitution issued under title 18 of the United States Code.

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment that the debts owed by Debtor to the Plaintiff are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## CONCLUSION

**WHEREFORE**, the Plaintiff herein respectfully requests that the Court enter judgment in its favor on the causes of action set forth above, and enter judgment providing, *inter alia,* that the debts detailed above, owed by Debtor to the Plaintiff, are non-dischargeable in the Debtor's pending Chapter 11 case.

Respectfully submitted,

SAXTON & STUMP LLC

Dated: May 16, 2025

Lane E. Brody, Esquire
NJ I.D. 010032006
lb@saxtonstump.com
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Telephone: (717) 216-5505

*Counsel to Plaintiff*

# EXHIBIT "A"

# PROMISSORY NOTE

**$500,000.00**                                                                               **December 29, 2023**

      **FOR VALUE RECEIVED, PROJECT CATAPULT, LLC**, a Delaware limited liability company ("Payor") promises to pay to the order of **PINNACLE ASSET MGT, LLC**, a Wyoming limited liability company, its endorsees, successors and assigns (the "Payee"), the principal amount of **Five Hundred and 00/100 Dollars ($500,000.00)** in lawful money of the United States of America, and such other amounts as set forth in this Promissory Note (this "Note").

      1.    **Interest.** Commencing on the date hereof, interest shall accrue on the unpaid principal balance due under this Note at a rate of 12.00% per annum (the "Interest Rate"). Interest shall be computed on the basis of actual days elapsed in a year of 360 days and shall accrue at the Interest Rate on the outstanding principal of this Note from and after the date hereof until the payment in full of the principal balance, together with all accrued interest.

      2.    **Payment; Maturity Date.** Payor shall pay all amounts owed hereunder to Payee on or before nine (9) months after the date hereof (subject to the extension set forth in this Section 2, the "**Maturity Date**"). The parties hereto acknowledge and agree that Payor, in its sole discretion, may extend the nine (9) month Maturity Date by giving Payee written notice of such extension at least five (5) business days prior to the Maturity Date, for a period not to exceed ninety (90) days.

      3.    **Prepayment.** Payor shall have the right to prepay the unpaid principal balance in whole or in part without penalty or premium.

      4.    **Events of Default; Remedies.**

      (a)    Event of Default. Each of the following events shall constitute an "**Event of Default**" under this Note: (i) Payor fails to make any payment of principal or any other sum required to be made under this Note within fifteen (15) days after the due date; (ii) Payor fails to observe or perform any other covenant, agreement, condition or term of this Note which remains uncured fifteen (15) days after receipt by Payor of written notice thereof by Payee (provided, that if such cure shall require more than fifteen (15) days, then Payor shall not be in default if Payor shall commence such cure with the fifteen (15) day period and shall diligently prosecute the same to completion within forty-five (45) days following Payee's written notice of default); (iii) Payor becomes insolvent or makes an assignment for the benefit of creditors; or (iv) if (A) a court shall enter a decree or order for relief in respect of Payor in an involuntary case under the Federal Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Payor or for any of the property of Payor, and such decree or order shall remain unstayed and in effect for a period of sixty (60) days; or (B) Payor shall commence an action in bankruptcy, insolvency, or under any other similar law now or hereinafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of Payor or for any part of its property.

      (b)    Remedies. Upon the occurrence of any Event of Default, Payee may, at its sole option, declare the entire unpaid principal balance of this Note, with all accrued interest thereon, to be immediately due and payable. Any failure of the Payee to exercise such option to

1

accelerate this Note at any time shall not constitute a waiver of the right to exercise the same right to acceleration at any subsequent time during the continuance of an Event of Default.

(c) **Waiver by Payor**. Payor waives presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and all other notices (not expressly provided for in this Note) in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note.

(d) **No Waiver by Payee**. Payee shall not be deemed, by any act of omission or commission, to have waived any rights or remedies hereunder unless such waiver is in writing and signed by Payee. Such a written waiver signed by Payee shall waive Payee's rights and remedies only to the extent specifically stated in such written waiver. A waiver as to one or more particular events or defaults shall not be construed as continuing or as a bar to or waiver of any right or remedy as to another or subsequent event or Event of Default.

5. **Choice of Law**. This Note is to be construed and governed by the laws of the State of Delaware (without giving effect to principles of conflicts of laws).

6. **Binding Effect**. This Note shall inure to the benefit of Payee and Payee's successors and assigns and shall be binding upon Payor and its successors and assigns.

7. **Entire Agreement**. This Note shall constitute the entire agreement and understanding between the parties on the matters contained herein.

8. **Amendment**. This Note shall not be amended without a writing signed by the parties hereto.

9. **Notices**. All notices, requests, demands and other communications given pursuant to any provision of this Note shall be given in writing by U.S. certified or registered mail with return receipt requested and postage prepaid, or by any nationally recognized 24-hour courier service with proof of delivery, addressed to the party for which it is intended at the respective address set forth in the Purchase Agreement. Any such mail notice shall be deemed to have been given three (3) days after the notice is deposited in the U.S. mail. Any such courier notice shall be deemed to have been given on the following business day.

10. **Severability**. To the extent that any provision herein is found to be unlawful, such provision shall be severable from the remainder of this Note and as such shall not affect the validity of the remaining provisions of this Note.

11. **Counterparts**. This Note may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. Delivery of an executed signature page of this Note by facsimile or other customary means of electronic submission (e.g., .pdf) shall be deemed binding for all purposes hereof, without delivery of an original signature page being thereafter required.

**[SIGNATURE APPEARS ON NEXT PAGE]**

2

4883-6153-9947, v. 1

**IN WITNESS WHEREOF,** the parties have executed this Note on the day written above.

**PAYOR:**

PROJECT CATAPULT, LLC,
By:   Heller Capital Group, LLC,
      its Managing Member

By: _____
Name: Daryl F. Heller
Title:   CEO

**PAYEE:**

PINNACLE ASSET MGT, LLC

By: _____
Name: David R. Zook
Title:   Manager

*(Signature Page to Promissory Note)*