# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Daryl Fred Heller,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |
| DAVID ZOOK,<br><br>Plaintiff,<br>v.<br><br>DARYL FRED HELLER,<br><br>Defendant. | Adv. Proc. No.: _____ |

## COMPLAINT

AND NOW, comes Plaintiff David Zook ("Plaintiff") by and through his undersigned counsel, files this Complaint against Daryl Fred Heller (the "Debtor" or "Defendant") to determine the dischargeability of certain debts owed by Debtor to the Plaintiff, and respectfully states as follows:

1. Debtor, Daryl Heller, is an adult individual and businessman who resides and conducts business in Lancaster County, Pennsylvania. Debtor is the CEO of Heller Capital Group, LLC, a limited liability company and the manager of Heller Investment Holdings, LLC. These entities maintain offices at 415 North Prince Street, Lancaster, PA 17603.

2. Plaintiff is an adult individual.

3. On February 10, 2025, Defendant filed a voluntary petition (the "Chapter 11 Petition") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

1

Code") in the United States District Court for the District of New Jersey (the "Court").

4. Plaintiff is a creditor of the Debtor as reflected in duly filed proofs of claim filed in Debtor's bankruptcy case.

## JURISDICTION AND VENUE

5. The preceding paragraphs are fully incorporated herein by reference as if set forth herein.

6. This is an adversary proceeding commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to determine the dischargeability of certain debts under Section 523(a) of the Bankruptcy Code, owed by Defendant to the Plaintiff as a result of Defendant's conduct associated with solicitation of purported investments/loans, misappropriation of the Plaintiff's property, and other willful and malicious conduct.

7. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334(b) and 28 U.S.C. Section 157.

9. Venue is proper in this Court pursuant to 28 U.S.C. Section 1409.

## FACTUAL BACKGROUND

10. The preceding paragraphs are incorporated herein by reference as if set forth herein.

11. Debtor is an individual and the chief executive officer of Heller Capital Group, LLC and Heller Investment Holdings ("Heller Capital" and "HIH").

12. It is believed and therefore averred that Debtor requested Plaintiff make a personal loan of $1,000,000.00 to Heller Capital for a period of seven (7) days ("Loan"). Debtor

2

asserted that the Loan was necessitated by pressure on Heller Capital's credit position arising from a recent acquisition.

13. On or about April 3, 2024, pursuant to the terms of a Promissory Note ("Note"), Plaintiff provided a loan in the amount of $1,000,000.00 for use by Heller Capital. The maturity date of the Loan was April 10, 2024, as evidenced by the Note. The Note is attached hereto as Exhibit "A."

14. Debtor has not paid on the Loan pursuant to the terms of the Note and therefore is in default.

15. It is believed and therefore averred that Debtor has unlawfully diverted funds from these entities to himself and the use of other entities under his ownership and/or control.

16. At the time the loans were made, Debtor and his related entities were under substantial financial pressure due to the unravelling of a Ponzi scheme involving Paramount Management Group, LLC, an entity owned by Heller Capital and controlled by Debtor. See *Prestige Fund A, LLC et. al. v. Paramount Management Group, LLC*, No. CI-24-06012 (the "Fund Action")(C.P. Lancaster) and *Prestige Fund A, LLC et. al. v. Darry Heller, et al.*, No. CI-25-00491(C.P. Lancaster) (the "Second Fund Action").

17. Upon information and belief, Debtor induced multiple other individuals to provide loans at or around the time of Creditor's loan and has defaulted on most or all such loans. Debtor was aware, at all times, that he lacked the economic wherewithal to repay the loan and lied about the need for funding from Creditor in order to obtain cash to prevent the discovery of the impending collapse of Paramount's business as described in the Fund Action and Second Fund Action. Debtor did not intend to repay the loan at the time it was made.

18. At no point did Debtor disclose the financial circumstances of the businesses owned and controlled by Debtor and Heller Capital or that Debtor was operating a Ponzi scheme.

19. Plaintiff reasonably relied on Debtor's misrepresentations to his detriment and has suffered damages in the principal amount of $1,000,000.00.

20. Debtor's actions are unlawful, constitute fraud in the inducement and fraudulent misrepresentations and Debtor is liable to Plaintiff in the full amount invested plus ongoing interest.

## **COUNT I**

**Non-Dischargeability of Debts Pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(2)(B)**

21. The preceding paragraphs are incorporated herein by reference as if set forth herein.

22. Plaintiff is a creditor of Debtor as reflected in the proof of claim filed in the Debtor's bankruptcy case.

23. Debtor is indebted to the Plaintiff for money obtained by false pretenses, false representations, and actual fraud.

24. Debtor represented that Plaintiff's loaned funds would be provided to the aforementioned entity for the use of the entities as set forth above.

25. The representations were material to Plaintiff, who made the loans based on the Debtor's representation.

26. These representations were false because Debtor (1) did not provide any of the loaned funds to the entities; and (2) was attempting to prop up an illegal Ponzi scheme and used Plaintiff's funds for the benefit of Debtor and/or entities under his ownership and/or control other than the aforementioned entity.

27. Moreover, at the time that Defendant made the representations, he knew they were false and intended to fraudulently induce Plaintiff to make the loans.

28. Plaintiff reasonably relied on those representations from Debtor.

29. As a direct and proximate result of Debtor's representations, the Plaintiff has suffered substantial damages.

30. Debtor knew or should have known that the Plaintiff would reasonably rely on his misrepresentations and omissions.

31. The Plaintiff in fact, reasonably relied upon Debtor's misrepresentations to his detriment and Debtor's benefit.

32. Debtor is thus indebted to the Plaintiff for money Debtor obtained from the Plaintiff as a result of false pretenses, false representations, and actual fraud perpetrated by Debtor.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debts owed by Debtor to the Plaintiff are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT II

### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(4)

33. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

34. Debtor was entrusted with the loaned funds.

35. Despite this trust, Debtor, with the intent to defraud the Plaintiff, knowingly and intentionally converted the Plaintiff's loans/investments for purposes other than represented.

5

36. Debtor acted with the intent to permanently deprive the Plaintiff of his investments.

37. As a direct and proximate result of Defendant's embezzlement the Plaintiff has suffered damages, collectively, exceeding $1,000,000.00 plus ongoing interest.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debt owed by Debtor to the Plaintiff is not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT III
### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(6)

38. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

39. Debtor's actions were willful and malicious.

40. Debtor's actions caused harm to the property of the Plaintiff.

41. As a direct and proximate result of Defendant's embezzlement the Plaintiff has suffered damages, collectively, exceeding $1,000,000.00 plus ongoing interest.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment that the debt owed by Debtor to the Plaintiff is not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT IV
### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(13)

42. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

43. Upon information and belief, Debtor may be subject to criminal prosecution for his actions with regard to the Plaintiff and otherwise.

44. Upon information and belief, if Debtor is subject to criminal prosecution for his actions relating to the Plaintiff, he may be required to make payment to Plaintiff under an order of restitution issued under title 18 of the United States Code.

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment that the debt owed by Debtor to the Plaintiff is not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## **CONCLUSION**

**WHEREFORE**, the Plaintiff herein respectfully requests that the Court enter judgment in his favor on the causes of action set forth above, and enter judgment providing, *inter alia,* that the debt detailed above, owed by Debtor to the Plaintiff, is non-dischargeable in the Debtor's pending Chapter 11 case.

Respectfully submitted,

SAXTON & STUMP LLC

Dated: May 16, 2025

_____
Lane E. Brody, Esquire
NJ I.D. 010032006
lb@saxtonstump.com
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Telephone: (717) 216-5505

*Counsel to Plaintiff*

# EXHIBIT "A"

# PROMISSORY NOTE

$1,000,000                                                                                                   April 3, 2024

      FOR VALUE RECEIVED, **Heller Capital Group, LLC** ("**Payor**") promises to pay to the order of **Dave Zook** its endorsees, successors and assigns (the "**Payee**"), the principal amount of **$1,000,000 and 00/100 Dollars** in lawful money of the United States of America, and such other amounts as set forth in this Promissory Note (this "**Note**").

      1.    **Interest**. Commencing on the date hereof, interest shall accrue on the unpaid principal balance due under this Note at a rate of 10% per annum (the "**Interest Rate**"). Interest shall be computed on the basis of actual days elapsed in a year of 360 days and shall accrue at the Interest Rate on the outstanding principal of this Note from and after the date hereof until the payment in full of the principal balance, together with all accrued interest.

      2.    **Payment; Maturity Date**. Payor shall pay all amounts owed hereunder to Payee on or before April 10, 2024 (the "**Maturity Date**").

      3.    **Prepayment**. Payor shall have the right to prepay the unpaid principal balance in whole or in part without penalty or premium.

      4.    **Events of Default; Remedies**.

          (a)    Event of Default. Each of the following events shall constitute an "**Event of Default**" under this Note: (i) Payor fails to make any payment of principal or any other sum required to be made under this Note within fifteen (15) days after the due date; (ii) Payor fails to observe or perform any other covenant, agreement, condition or term of this Note which remains uncured fifteen (15) days after receipt by Payor of written notice thereof by Payee (provided, that if such cure shall require more than fifteen (15) days, then Payor shall not be in default if Payor shall commence such cure with the fifteen (15) day period and shall diligently prosecute the same to completion within forty-five (45) days following Payee's written notice of default); (iii) Payor becomes insolvent or makes an assignment for the benefit of creditors; or (iv) if (A) a court shall enter a decree or order for relief in respect of Payor in an involuntary case under the Federal Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Payor or for any of the property of Payor, and such decree or order shall remain unstayed and in effect for a period of sixty (60) days; or (B) Payor shall commence an action in bankruptcy, insolvency, or under any other similar law now or hereinafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of Payor or for any part of its property.

          (b)    Remedies. Upon the occurrence of any Event of Default, Payee may, at its sole option, declare the entire unpaid principal balance of this Note, with all accrued interest thereon, to be immediately due and payable. Any failure of the Payee to exercise such option to accelerate this Note at any time shall not constitute a waiver of the right to exercise the same right to acceleration at any subsequent time during the continuance of an Event of Default.

1

4883-6153-9947, v 1

DocuSign Envelope ID: 3DC3726F-EFDD-4BB2-AD40-975843A7112E

(c) <u>Waiver by Payor</u>. Payor waives presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and all other notices (not expressly provided for in this Note) in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note.

(d) <u>No Waiver by Payee</u>. Payee shall not be deemed, by any act of omission or commission, to have waived any rights or remedies hereunder unless such waiver is in writing and signed by Payee. Such a written waiver signed by Payee shall waive Payee's rights and remedies only to the extent specifically stated in such written waiver. A waiver as to one or more particular events or defaults shall not be construed as continuing or as a bar to or waiver of any right or remedy as to another or subsequent event or Event of Default.

5. **Choice of Law**. This Note is to be construed and governed by the laws of the State of Delaware (without giving effect to principles of conflicts of laws).

6. **Binding Effect**. This Note shall inure to the benefit of Payee and Payee's successors and assigns and shall be binding upon Payor and its successors and assigns.

7. **Entire Agreement**. This Note shall constitute the entire agreement and understanding between the parties on the matters contained herein.

8. **Amendment**. This Note shall not be amended without a writing signed by the parties hereto.

9. **Notices**. All notices, requests, demands and other communications given pursuant to any provision of this Note shall be given in writing by U.S. certified or registered mail with return receipt requested and postage prepaid, or by any nationally recognized 24-hour courier service with proof of delivery, addressed to the party for which it is intended at the respective address set forth in the Purchase Agreement. Any such mail notice shall be deemed to have been given three (3) days after the notice is deposited in the U.S. mail. Any such courier notice shall be deemed to have been given on the following business day.

10. **Severability**. To the extent that any provision herein is found to be unlawful, such provision shall be severable from the remainder of this Note and as such shall not affect the validity of the remaining provisions of this Note.

11. **Counterparts**. This Note may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. Delivery of an executed signature page of this Note by facsimile or other customary means of electronic submission (e.g., .pdf) shall be deemed binding for all purposes hereof, without delivery of an original signature page being thereafter required.

**[SIGNATURE APPEARS ON NEXT PAGE]**

4883-6153-9947, v. 1

**IN WITNESS WHEREOF,** the parties have executed this Note on the day written above.

PAYOR:

**Heller Capital Group, LLC**

By: _/s/ DocuSigned_____
Name: Daryl F. Heller
Title: CEO

PAYEE:

**Dave Zook**

By: _/s/ DocuSigned_____
Name: Dave Zook

*(Signature Page to Promissory Note)*

**DocuSign**

## Certificate Of Completion

Envelope Id 3DC3726FEFDD4BB2AD40975843A7112E
Subject. Zook Promissory Note
Source Envelope
Document Pages 3
Certificate Pages 5
AutoNav Enabled
EnvelopeId Stamping Enabled
Time Zone (UTC-05 00) Eastern Time (US & Canada)

Signatures 2
Initials 0

Status Completed

Envelope Originator
David Zook
100 Clearwater Drive
100 Clearwater Drive
Gap, PA 17527
info@therealassetinvestor com
IP Address 69 242 124 129

## Record Tracking

Status Original
4/3/2024 2 24 55 PM

Holder David Zook
info@therealassetinvestor com

Location DocuSign

## Signer Events

**David Zook**
dave@therealassetinvestor com
Security Level Email, Account Authentication (None)

**Signature**

Signature Adoption Drawn on Device
Using IP Address 50.221 3 154
Signed using mobile

**Timestamp**

Sent 4/3/2024 2 31 04 PM
Viewed 4/3/2024 2 33 20 PM
Signed 4/3/2024 2 33 27 PM

**Electronic Record and Signature Disclosure:**
Accepted 4/3/2024 2 33 20 PM
ID d2b5b575-0ef4-4dd1-9e68-f147adc9a385

**Daryl Heller**
dheller@hellercg com
CEO
Security Level Email, Account Authentication (None)

Signature Adoption Drawn on Device
Using IP Address 174 175 119 210

Sent. 4/3/2024 2 33 28 PM
Viewed 4/3/2024 2 51 08 PM
Signed 4/3/2024 2 51 15 PM

**Electronic Record and Signature Disclosure:**
Accepted 4/3/2024 2 51 08 PM
ID 7b0dc242-d186-482c-9c8d-9dc2da468469

| In Person Signer Events | Signature | Timestamp |
|---|---|---|
| **Editor Delivery Events** | **Status** | **Timestamp** |
| **Agent Delivery Events** | **Status** | **Timestamp** |
| **Intermediary Delivery Events** | **Status** | **Timestamp** |
| **Certified Delivery Events** | **Status** | **Timestamp** |
| **Carbon Copy Events** | **Status** | **Timestamp** |

**Deb Gillenwater**
deb@therealassetinvestor com
Security Level Email, Account Authentication (None)

**COPIED**

Sent. 4/3/2024 2 51 16 PM

**Electronic Record and Signature Disclosure:**
Accepted 11/30/2023 8 03 24 AM
ID 4400bd3c-d4b8-435d-b9ad-a694b687e0af

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/3/2024 2 31 04 PM |
| Certified Delivered | Security Checked | 4/3/2024 2 51 08 PM |
| Signing Complete | Security Checked | 4/3/2024 2 51 15 PM |
| Completed | Security Checked | 4/3/2024 2 51 16 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on 9/25/2023 8:50:35 AM
Parties agreed to: David Zook, Daryl Heller, Deb Gillenwater

### ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, The Real Asset Investor (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact The Real Asset Investor:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: info@therealassetinvestor.com

**To advise The Real Asset Investor of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at info@therealassetinvestor.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from The Real Asset Investor**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to info@therealassetinvestor.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with The Real Asset Investor**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to info@therealassetinvestor.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify The Real Asset Investor as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by The Real Asset Investor during the course of your relationship with The Real Asset Investor.