## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>Daryl Fred Heller,<br><br>          Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |
| KAREN L. PARREIRA 2023 IRREVOCABLE TRUST, DAVID L. PARREIRA 2023 IRREVOCABLE TRUST, AND PAUL AND DEBORAH PARREIRA FAMILY 2005 IRREVOCABLE TRUST,<br><br>          Plaintiffs,<br><br>v.<br><br>DARYL FRED HELLER,<br><br>          Defendant. | Adv. Proc. No.: _____ |

## <u>COMPLAINT</u>

The Karen L. Parreira 2023 Irrevocable Trust, the David L. Parreira 2023 Irrevocable Trust, and the Paul and Deborah Parreira Family 2005 Irrevocable Trust (collectively, the "<u>Trusts</u>**"** and each a "<u>Plaintiff</u>") by and through their undersigned counsel, hereby file this complaint against Daryl Fred Heller (the "<u>Debtor</u>" or "<u>Defendant</u>") to determine the dischargeability of certain debts owed by Debtor to each of the Trusts and respectfully state as follows:

1.    Debtor, Daryl Heller, is an adult individual and businessman who resides and conducts business in Lancaster County, Pennsylvania. Debtor is the CEO of Heller Capital Group, LLC, a limited liability company and the manager of Heller Investment Holdings, LLC. These entities maintain offices at 415 North Prince Street, Lancaster, PA 17603.

2.      Plaintiffs are trusts formed in California.

3.      On February 10, 2025, Defendant filed a voluntary petition (the "Chapter 11 Petition") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States District Court for the District of New Jersey (the "Court").

4.      Plaintiffs are creditors of the Debtor as reflected in duly filed proofs of claim filed in Debtor's bankruptcy case.

## JURISDICTION AND VENUE

5.      Each of the matters and allegations set forth herein are made on behalf of each Plaintiff.

6.      This is an adversary proceeding commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to determine the dischargeability of certain debts under Section 523(a) of the Bankruptcy Code, owed by Defendant to the Plaintiffs as a result of Defendant's conduct associated with solicitation of purported investments/loans, misappropriation of the Plaintiffs' property, and other willful and malicious conduct.

7.      This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334(b) and 28 U.S.C. Section 157.

9.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1409.

## FACTUAL BACKGROUND

10.     Debtor is believed to be the architect of widescale fraudulent schemes involving entities under his ownership and/or control including Paramount Management Group, LLC,

Heller Investment Holdings, LLC, Heller Capital Group, LLC and Glorious Cannabis Co. ("Glorious") a Michigan based cannabis grower.

11.     Heller Investment Holdings is, on information and belief, the controlling member of Glorious.

12.     As part of these schemes, Debtor pitched investment in Glorious in the form of convertible debt instruments that Debtor represented would be used to finance a working capital line of credit, capital expenditures, equipment acquisition, the financing of pre-revenue operations and the like.

13.     In addition to the foregoing, to further induce Plaintiffs to make funds available for the Glorious financing scheme, Debtor advised Plaintiffs that loans would pass through Heller Capital and be provided to Glorious in accordance with the convertible debt investment scheme.

14.     Because of and in reliance on Debtor's fraudulent representations regarding the Glorious scheme, the Plaintiffs provided loans in the amounts set forth below subject to the terms of Promissory Notes dated April 17, 2024:

| | |
|---|---|
| Paul and Deborah Parreira Family 2005 Irrevocable Trust | $1,000.000.00 |
| David L. Parreira 2023 Irrevocable Trust | $500,000.00 |
| Karen L. Parreira 2023 Irrevocable Trust | $500,000.00 |

Copies of form Promissory Notes are attached as Exhibits "A," "B" & "C."  DocuSign executed versions of the Promissory Notes are in the possession of Debtor.

15.     The date of maturity for the loans made by Plaintiffs was April 17, 2024. Interest accrues at the rate of 17% per annum.

16.     The loans made by Plaintiffs have not been repaid and are in default.

17.     None of the funds provided by the Plaintiffs, however, were ever provided to Glorious and were, instead, retained and/or diverted by Debtor for his benefit and/or the benefit of entities under his ownership and control.

18.     At the time the loans were made, Debtor and his related entities were under substantial financial pressure due to the unravelling of a Ponzi scheme involving Paramount Management Group, LLC, an entity owned by Heller Capital and controlled by Debtor.

19.     Upon information and belief, Paramount was insolvent in April 2024 and Debtor was using any means necessary to acquire cash to finance his collapsing businesses and prevent the discovery of the scheme.

20.     At no point did Debtor disclose the financial circumstances of the businesses owned and controlled by Debtor and Heller Capital or that Debtor was operating a Ponzi scheme.

21.     Funds procured via the Ponzi scheme were, on information and belief, used to finance the operations of Glorious.

22.     Had Debtor disclosed any of the foregoing information or that the funds loaned by Plaintiffs for the benefit of Glorious were to be used to attempt to prop up other collapsing businesses, Plaintiffs would not have entered into the convertible debt transactions and would not have funded the loans.

23.     Plaintiffs reasonably relied on Debtor's misrepresentations to their detriment and have suffered damages in the principal amount of $2,000,000 plus interest due under the terms of the Promissory Notes.

**COUNT I**
**Non-Dischargeability of Debts Pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(2)(B)**

24.     The foregoing paragraphs are incorporated by reference as if set forth in full herein.

25.     Plaintiffs are each creditors of the Debtor as reflected in each of their proofs of claim filed in the Debtor's bankruptcy case.

26.     Debtor is indebted to each of the Plaintiffs for money obtained by false pretenses, false representations, and actual fraud.

27.     Debtor represented that Plaintiffs' loaned funds would be provided to Glorious for the use of Glorious as set forth above.

28.     These representations were material to Plaintiffs, who made loans based on Debtor's representations.

29.     These representations were false because Debtor (1) did not provide any of the loaned funds to Glorious; and (2) was attempting to prop up an illegal Ponzi scheme and used Plaintiff's funds for the benefit of Debtor and/or entities under his ownership and/or control other than Glorious.

30.     Moreover, at the time that Heller made the representations, he knew they were false and intended to fraudulently induce Plaintiffs to make the loans.

31.     Plaintiffs reasonably relied on those representations from Debtor.

32.     As a direct and proximate result of Debtor's representations, the Plaintiffs have suffered substantial damages.

33.     Debtor knew or should have known that the Plaintiffs would reasonably rely on his misrepresentations and omissions.

34.     Each of the Plaintiffs in fact, reasonably relied upon Debtor's misrepresentations to their detriment and Debtor's benefit.

35.    Debtor is thus indebted to the Plaintiffs for money Debtor obtained from each of the Plaintiffs as a result of false pretenses, false representations, and actual fraud perpetrated by Debtor.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment that the debts owed by Debtor to each of the Plaintiffs are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

### COUNT II
### Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(4)
### (Embezzlement / Larceny)

36.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

37.    Debtor was entrusted with the loaned funds.

38.    Despite this trust, Debtor, with the intent to defraud the Plaintiffs, knowingly and intentionally converted the Plaintiffs' loans/investments for purposes other than represented.

39.    Debtor acted with the intent to permanently deprive the Plaintiffs of their investments.

40.    As a direct and proximate result of Defendant's embezzlement, the Plaintiffs have suffered damages, collectively, exceeding $2,000,000.00 plus ongoing interest.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment that the debts owed by Debtor to each of the Plaintiffs are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT III
## <u>Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(6)</u>

41.     The foregoing paragraphs are incorporated by reference as if set forth in full herein.

42.     Debtor's actions were willful and malicious.

43.     Debtor's actions caused harm to the property of each of the Plaintiffs.

44.     As a direct and proximate result of Defendant's embezzlement the Plaintiffs have suffered damages, collectively, exceeding $2,000,000.00 plus ongoing interest.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment that the debts owed by Debtor to each of the Plaintiffs are not dischargeable, as well as for interest, costs of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## COUNT IV
## <u>Non-Dischargeability of Debts Pursuant to 11 U.S.C. Section 523(a)(13)</u>

45.     The foregoing paragraphs are incorporated by reference as if set forth in full herein.

46.     Upon information and belief, Debtor may be subject to criminal prosecution for his actions with regard to the Plaintiffs and otherwise.

47.     Upon information and belief, if Debtor is subject to criminal prosecution for his actions relating to the Plaintiffs, he may be required to make payment to Plaintiffs under an order of restitution issued under title 18 of the United States Code.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment that the debts owed by Debtor to each of the Plaintiffs are not dischargeable, as well as for interest, costs

of suit and attorneys' fees as may be authorized by law or otherwise, and for any other relief that the Court deems just and proper.

## **CONCLUSION**

**WHEREFORE**, the Plaintiffs herein respectfully request that the Court enter judgment in their favor on the causes of action set forth above, and enter judgment providing, *inter alia,* that the debts detailed above, owed by Debtor to each of the Plaintiffs, are non-dischargeable in the Debtor's pending chapter 11 case.

Respectfully submitted,

SAXTON & STUMP LLC

Dated:  May 19, 2025

_____
Lane E. Brody, Esquire
NJ I.D. 010032006
lb@saxtonstump.com
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Telephone:  (717) 216-5505

*Counsel to Plaintiffs*

# EXHIBIT "A"

## PROMISSORY NOTE

**$500,000.00**                                                    **Effective Date:  April 17, 2024**
                                                                   **Maturity Date:  April 16, 2025**

**FOR VALUE RECEIVED**, **HELLER INVESTMENT HOLDINGS, LLC**, a Pennsylvania limited liability company, with an address at 415 N. Prince Street, Lancaster, Pennsylvania 17603 (the "Maker"), promises and agrees to pay to the order of **Karen L Parreira 2023 Irrevocable Trust** (the "Holder"), with an address at PO Box 1384, Los Banos, CA 9363, in lawful money of the United States of America, **Five Hundred Thousand 00/100 Dollars** (the "Principal Amount") together with interest pursuant to Section 1 (collectively, the "Obligations").

1.      **Interest.**  The unpaid balance of the Principal Amount outstanding from time to time ("Outstanding Principal Balance") shall bear interest at a simple rate (computed on the basis of a year of 365 days and actual number of days elapsed) of sixteen percent (17%) per annum (the amount of interest, the "Accrued PIK Interest").

2.      **Payments.**

        (a)      No payments shall be due and payable until the Maturity Date.  Unless Holder provides written notice to Maker within sixty (60) days of the Maturity Date that there shall be no extension on the Maturity Date, the Maturity Date shall automatically extend for an additional twelve (12) months (the "Extended Maturity Date"). On the Maturity Date or respective Extended Maturity Date, as applicable, the Maker shall pay to Holder the then Outstanding Principal Balance together with such other amounts, including Accrued PIK Interest thereon, as shall then be due and owing from the Maker to Holder under this Note.

        (b)      All payments of principal and interest hereunder shall be in lawful money of the United States of America in cash, by wire transfer of immediately available funds to such account of Holder as Holder may from time to time designate in writing to the Maker.

3.      **Loan Fee.** Maker shall pay a loan fee (the "Loan Fee") to Holder in an amount equal to one and one-half percent (1.5%) of the Principal Amount on the earlier of i) the twelve (12) month anniversary of the Effective Date, or ii) repayment of Obligations in full.

4.      **Prepayment; Acceleration.**

        (a)      This Note may be prepaid in full or in part at any time, without penalty, premium or additional interest.

        (b)      In addition to an uncured Event of Default for which Holder provides written Notice to Maker triggering immediate repayment, in the event of a Change of Control or an Initial Public Offering of Issuer, the then Outstanding Principal Balance, plus any accrued or

unpaid interest, shall be paid in full at the time of such Change of Control or Initial Public Offering, as the case may be. For purposes of this Note:

      i.    A "<u>Change of Control</u>" means any transaction or series of related transactions involving (i) the sale of all or substantially all of Issuer's assets to another Person, (ii) the issuance and sale by Issuer or sale by one or more selling shareholders of Issuer of more than 50% of the outstanding equity securities of Issuer, or (iii) the merger, consolidation or other type of business combination transaction of Issuer with another Person under circumstances in which members or equity owners prior to the transaction holding, in the aggregate, more than 50% of the outstanding equity securities of Issuer hold less than 50% of such equity securities following the transaction, in each case in a transaction with an unrelated third party or parties.

      ii.    "<u>Initial Public Offering</u>" means the first underwritten public offering of equity of Issuer to the general public on any United States or Canadian national exchange that covers (together with prior effective registrations) not less than 25% of the then outstanding shares of equity of Issuer on a fully diluted basis.

**5.**    **Default Interest Rate.**  Following and during the continuation of an Event of Default, interest on the unpaid principal balance of the Note shall accrue at a simple rate (computed on the basis of a year of 365 days and actual number of days elapsed) of seventeen (17%) per annum or the maximum rate permissible by applicable law, whichever is less (the "<u>Default Interest Rate</u>").

**6.**    **Events of Default.**

    (a)    The occurrence of any of the following events will be deemed to be an "<u>Event of Default</u>**"** under this Note:

    (i)    a default in the payment when due of all or any part of any obligation payable by the Maker hereunder (whether on the stated maturity or at any other time provided for in this Note) if not cured within fifteen (15) calendar days after the Maker's receipt of written Notice from Holder;

    (ii)    the filing of any petition or the commencement of any case or proceeding by or against the Maker under any provision or chapter of the United States Bankruptcy Code, as amended, relating to insolvency, bankruptcy, or the reorganization (and, in the case of any such proceeding instituted against the Maker, such proceeding is not dismissed or stayed within sixty (60) days of the commencement thereof); or

    (iii)    the appointment of or the taking possession by a custodian, trustee, or receiver of all or any assets of the Maker.

    (b)    Upon the occurrence of an Event of Default, at Holder's option and upon written Notice to the Maker: (i) the then Outstanding Principal Balance and accrued and unpaid interest hereunder shall be accelerated and become immediately due and payable; and/or (ii) this Note will bear interest at the Default Interest Rate from the date of such written Notice from Holder

*Promissory Note*

to the Maker.

7.     **Unsecured Note.**  This Note is, and at all times shall be, a general unsecured obligation of the Maker.  Without limiting the generality of the immediately preceding sentence, Holder expressly acknowledges and agrees that this Note shall not be secured at any time in the future by a grant of a security interest in any assets of the Maker or any of its subsidiaries or affiliates (collectively, the "Maker Group"), whether or not those assets are owned by the Maker Group (taken as a whole) on the Effective Date or acquired by the Maker Group (taken as whole) on a date subsequent to the Effective Date.

8.     **Governing Law and Jurisdiction.**  This Note will be governed by and interpreted in accordance with the internal laws of the State of Delaware.  **EACH OF THE MAKER AND HOLDER HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF DELAWARE AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THE NOTE, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF THE FOREGOING.**

9.     **WAIVER OF JURY TRIAL.  EACH OF THE MAKER AND HOLDER HEREBY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS NOTE OR THE OBLIGATIONS HEREUNDER. THE MAKER AND HOLDER EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.**

10.     **Assignment.**  This Note shall be non-negotiable and non-transferable and neither party shall assign, pledge, hypothecate or otherwise transfer this Note or any of its rights or interests hereunder without the prior written consent of the other party, which consent may not be unreasonably withheld or delayed. Notwithstanding the foregoing, Holder may assign its rights and interests hereunder without Maker's prior written consent to (a) any corporation, partnership, limited liability company, or other entity of which a majority of the equity interests are owned (directly or indirectly) by [INSERT], their lineal descendants, and/or one of more trusts for the benefit of any or all of the foregoing; or (b) any trust for the benefit of [INSERT] and/or their lineal descendants.

11.     **Amendment.**  This Note may not be amended or modified other than pursuant to a written agreement executed by Maker and Holder.

12.     **Binding Effect.**  This Note shall be binding on and inure to the benefit of the Maker and Holder and their respective successors and permitted assigns.  This Note is not intended to confer any rights or remedies upon any person except the Maker and Holder.

13.     **Severability.**  If any provision or provisions of this Note are held by a court of competent jurisdiction, for any reason, to be invalid, void or unenforceable, such court is expressly empowered to reform such provision(s) to the minimum extent required to bring such provision(s) in compliance with applicable law, and such provision(s) shall be deemed so reformed to minimum

extent required to bring such provision(s), and the remaining provision or provisions will nevertheless be valid, enforceable and carried into effect.  For avoidance of doubt, the invalidity or unenforceability of any such provision as written herein shall not invalidate or render unenforceable the remaining provisions hereof, all of which shall nevertheless remain in full force and effect.

14.    **Notices.**  All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when delivered to the addressee if sent by a nationally recognized overnight courier; (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective parties at the addresses as set forth above (or at such other address for a party as shall be specified in a Notice given in accordance with this Section 14).

15.    **Miscellaneous.**  Unless the context clearly indicates otherwise, references to "Section" refers to the corresponding Section of this Note.  Section headings contained in this Note are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope or the intent of any of the provisions of this Note.  The words "hereof," "herein," "hereto" and "hereunder" and words of like import used in this Note refer to this Note as a whole and not to any particular provision of this Agreement.  This Note will be construed as if drafted jointly by the Maker and Holder and no presumption or burden of proof will arise favoring or disfavoring either of them by virtue of the authorship of any provision in this Note.

16.    **Entire Agreement**.  This Note and the Personal Guaranty constitute the entire agreement between the Holder and Maker with respect to the subject matter hereof as a complete and final integration thereof, and supersede all prior agreements and understandings (whether written or oral and whether express or implied) between the Holder and Maker with respect to the subject matter hereof.

17.    **Counterparts**.  This Note may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.  Counterparts of the signature pages to this Note may be delivered electronically and shall be deemed to have the same legal effect as delivery of an original signed Note.

*[Signatures follow on next page.]*

*Promissory Note*

**IN WITNESS WHEREOF**, the Maker and Holder have executed this Note as of [INSERT], 2024 to be effective as of the Effective Date.

<u>**MAKER**</u>:

**Heller Investment Holdings, LLC**


By:_____
Name: Daryl F. Heller
Its: Manager


<u>**HOLDER**</u>:

**Karen L Parreira 2023 Irrevocable Trust**


By:_____
Name: Karen L Parreira
Title: Trustee

# EXHIBIT "B"

**PROMISSORY NOTE**

**$500,000.00**                                                      **Effective Date:  April 17, 2024**
                                                                     **Maturity Date:  April 16, 2025**

**FOR VALUE RECEIVED**, **HELLER INVESTMENT HOLDINGS, LLC**, a Pennsylvania limited liability company, with an address at 415 N. Prince Street, Lancaster, Pennsylvania 17603 (the "Maker"), promises and agrees to pay to the order of **David L Parreira 2023 Irrevocable Trust** (the "Holder"), with an address at PO Box 1384, Los Banos, CA 9363, in lawful money of the United States of America, **Five Hundred Thousand 00/100 Dollars** (the "Principal Amount") together with interest pursuant to Section 1 (collectively, the "Obligations").

     **1.**     **Interest.**  The unpaid balance of the Principal Amount outstanding from time to time ("Outstanding Principal Balance") shall bear interest at a simple rate (computed on the basis of a year of 365 days and actual number of days elapsed) of sixteen percent (17%) per annum (the amount of interest, the "Accrued PIK Interest").

     **2.**     **Payments.**

         (a)     No payments shall be due and payable until the Maturity Date.  Unless Holder provides written notice to Maker within sixty (60) days of the Maturity Date that there shall be no extension on the Maturity Date, the Maturity Date shall automatically extend for an additional twelve (12) months (the "Extended Maturity Date"). On the Maturity Date or respective Extended Maturity Date, as applicable, the Maker shall pay to Holder the then Outstanding Principal Balance together with such other amounts, including Accrued PIK Interest thereon, as shall then be due and owing from the Maker to Holder under this Note.

         (b)     All payments of principal and interest hereunder shall be in lawful money of the United States of America in cash, by wire transfer of immediately available funds to such account of Holder as Holder may from time to time designate in writing to the Maker.

     **3.**     **Loan Fee.** Maker shall pay a loan fee (the "Loan Fee") to Holder in an amount equal to one and one-half percent (1.5%) of the Principal Amount on the earlier of i) the twelve (12) month anniversary of the Effective Date, or ii) repayment of Obligations in full.

     **4.**     **Prepayment; Acceleration.**

         (a)     This Note may be prepaid in full or in part at any time, without penalty, premium or additional interest.

         (b)     In addition to an uncured Event of Default for which Holder provides written Notice to Maker triggering immediate repayment, in the event of a Change of Control or an Initial Public Offering of Issuer, the then Outstanding Principal Balance, plus any accrued or

unpaid interest, shall be paid in full at the time of such Change of Control or Initial Public Offering, as the case may be. For purposes of this Note:

      i.    A "<u>Change of Control</u>" means any transaction or series of related transactions involving (i) the sale of all or substantially all of Issuer's assets to another Person, (ii) the issuance and sale by Issuer or sale by one or more selling shareholders of Issuer of more than 50% of the outstanding equity securities of Issuer, or (iii) the merger, consolidation or other type of business combination transaction of Issuer with another Person under circumstances in which members or equity owners prior to the transaction holding, in the aggregate, more than 50% of the outstanding equity securities of Issuer hold less than 50% of such equity securities following the transaction, in each case in a transaction with an unrelated third party or parties.

      ii.    "<u>Initial Public Offering</u>" means the first underwritten public offering of equity of Issuer to the general public on any United States or Canadian national exchange that covers (together with prior effective registrations) not less than 25% of the then outstanding shares of equity of Issuer on a fully diluted basis.

    **5.**    **Default Interest Rate.**  Following and during the continuation of an Event of Default, interest on the unpaid principal balance of the Note shall accrue at a simple rate (computed on the basis of a year of 365 days and actual number of days elapsed) of seventeen (17%) per annum or the maximum rate permissible by applicable law, whichever is less (the "<u>Default Interest Rate</u>").

    **6.**    **Events of Default.**

    (a)    The occurrence of any of the following events will be deemed to be an "<u>Event of Default</u>**"** under this Note:

      (i)    a default in the payment when due of all or any part of any obligation payable by the Maker hereunder (whether on the stated maturity or at any other time provided for in this Note) if not cured within fifteen (15) calendar days after the Maker's receipt of written Notice from Holder;

      (ii)    the filing of any petition or the commencement of any case or proceeding by or against the Maker under any provision or chapter of the United States Bankruptcy Code, as amended, relating to insolvency, bankruptcy, or the reorganization (and, in the case of any such proceeding instituted against the Maker, such proceeding is not dismissed or stayed within sixty (60) days of the commencement thereof); or

      (iii)    the appointment of or the taking possession by a custodian, trustee, or receiver of all or any assets of the Maker.

    (b)    Upon the occurrence of an Event of Default, at Holder's option and upon written Notice to the Maker: (i) the then Outstanding Principal Balance and accrued and unpaid interest hereunder shall be accelerated and become immediately due and payable; and/or (ii) this Note will bear interest at the Default Interest Rate from the date of such written Notice from Holder

*Promissory Note*

to the Maker.

**7.     Unsecured Note.**  This Note is, and at all times shall be, a general unsecured obligation of the Maker.  Without limiting the generality of the immediately preceding sentence, Holder expressly acknowledges and agrees that this Note shall not be secured at any time in the future by a grant of a security interest in any assets of the Maker or any of its subsidiaries or affiliates (collectively, the "Maker Group"), whether or not those assets are owned by the Maker Group (taken as a whole) on the Effective Date or acquired by the Maker Group (taken as whole) on a date subsequent to the Effective Date.

**8.     Governing Law and Jurisdiction.**  This Note will be governed by and interpreted in accordance with the internal laws of the State of Delaware.  **EACH OF THE MAKER AND HOLDER HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF DELAWARE AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THE NOTE, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF THE FOREGOING.**

**9.     WAIVER OF JURY TRIAL.  EACH OF THE MAKER AND HOLDER HEREBY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS NOTE OR THE OBLIGATIONS HEREUNDER. THE MAKER AND HOLDER EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.**

**10.     Assignment.**  This Note shall be non-negotiable and non-transferable and neither party shall assign, pledge, hypothecate or otherwise transfer this Note or any of its rights or interests hereunder without the prior written consent of the other party, which consent may not be unreasonably withheld or delayed. Notwithstanding the foregoing, Holder may assign its rights and interests hereunder without Maker's prior written consent to (a) any corporation, partnership, limited liability company, or other entity of which a majority of the equity interests are owned (directly or indirectly) by [INSERT], their lineal descendants, and/or one of more trusts for the benefit of any or all of the foregoing; or (b) any trust for the benefit of [INSERT] and/or their lineal descendants.

**11.     Amendment.**  This Note may not be amended or modified other than pursuant to a written agreement executed by Maker and Holder.

**12.     Binding Effect.**  This Note shall be binding on and inure to the benefit of the Maker and Holder and their respective successors and permitted assigns.  This Note is not intended to confer any rights or remedies upon any person except the Maker and Holder.

**13.     Severability.**  If any provision or provisions of this Note are held by a court of competent jurisdiction, for any reason, to be invalid, void or unenforceable, such court is expressly empowered to reform such provision(s) to the minimum extent required to bring such provision(s) in compliance with applicable law, and such provision(s) shall be deemed so reformed to minimum

extent required to bring such provision(s), and the remaining provision or provisions will nevertheless be valid, enforceable and carried into effect.  For avoidance of doubt, the invalidity or unenforceability of any such provision as written herein shall not invalidate or render unenforceable the remaining provisions hereof, all of which shall nevertheless remain in full force and effect.

14.    **Notices.**  All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when delivered to the addressee if sent by a nationally recognized overnight courier; (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective parties at the addresses as set forth above (or at such other address for a party as shall be specified in a Notice given in accordance with this Section 14).

15.    **Miscellaneous.**  Unless the context clearly indicates otherwise, references to "Section" refers to the corresponding Section of this Note.  Section headings contained in this Note are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope or the intent of any of the provisions of this Note.  The words "hereof," "herein," "hereto" and "hereunder" and words of like import used in this Note refer to this Note as a whole and not to any particular provision of this Agreement.  This Note will be construed as if drafted jointly by the Maker and Holder and no presumption or burden of proof will arise favoring or disfavoring either of them by virtue of the authorship of any provision in this Note.

16.    **Entire Agreement**.  This Note and the Personal Guaranty constitute the entire agreement between the Holder and Maker with respect to the subject matter hereof as a complete and final integration thereof, and supersede all prior agreements and understandings (whether written or oral and whether express or implied) between the Holder and Maker with respect to the subject matter hereof.

17.    **Counterparts**.  This Note may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement. Counterparts of the signature pages to this Note may be delivered electronically and shall be deemed to have the same legal effect as delivery of an original signed Note.

*[Signatures follow on next page.]*

**IN WITNESS WHEREOF**, the Maker and Holder have executed this Note as of [INSERT], 2024 to be effective as of the Effective Date.

**MAKER:**

**Heller Investment Holdings, LLC**


By:_____
Name: Daryl F. Heller
Its: Manager


**HOLDER:**

**David L Parreira 2023 Irrevocable Trust**


By:_____
Name: David L Parreira
Title: Trustee

# EXHIBIT "C"

**PROMISSORY NOTE**

**$1,000,000.00**                                  **Effective Date:  April 17, 2024**
                                                   **Maturity Date:  April 16, 2025**

**FOR VALUE RECEIVED**, **HELLER INVESTMENT HOLDINGS, LLC**, a Pennsylvania
limited liability company, with an address at 415 N. Prince Street, Lancaster, Pennsylvania
17603 (the "Maker"), promises and agrees to pay to the order of **Paul and Deborah Parreira
Family 2005 Irrevocable Trust** (the "Holder"), with an address at PO Box 1329, Los Banos,
CA 9363, in lawful money of the United States of America, **One Million and 00/100 Dollars**
(the "Principal Amount") together with interest pursuant to Section 1 (collectively, the
"Obligations").

     **1.**    **Interest.**  The unpaid balance of the Principal Amount outstanding from time to
time ("Outstanding Principal Balance") shall bear interest at a simple rate (computed on the basis
of a year of 365 days and actual number of days elapsed) of sixteen percent (17%) per annum (the
amount of interest, the "Accrued PIK Interest").

     **2.**    **Payments.**

         (a)    No payments shall be due and payable until the Maturity Date.  Unless
Holder provides written notice to Maker within sixty (60) days of the Maturity Date that there shall
be no extension on the Maturity Date, the Maturity Date shall automatically extend for an
additional twelve (12) months (the "Extended Maturity Date"). On the Maturity Date or respective
Extended Maturity Date, as applicable, the Maker shall pay to Holder the then Outstanding
Principal Balance together with such other amounts, including Accrued PIK Interest thereon, as
shall then be due and owing from the Maker to Holder under this Note.

         (b)    All payments of principal and interest hereunder shall be in lawful money
of the United States of America in cash, by wire transfer of immediately available funds to such
account of Holder as Holder may from time to time designate in writing to the Maker.

     **3.**    **Loan Fee.** Maker shall pay a loan fee (the "Loan Fee") to Holder in an amount
equal to one and one-half percent (1.5%) of the Principal Amount on the earlier of i) the twelve
(12) month anniversary of the Effective Date, or ii) repayment of Obligations in full.

     **4.**    **Prepayment; Acceleration.**

         (a)    This Note may be prepaid in full or in part at any time, without penalty,
premium or additional interest.

         (b)    In addition to an uncured Event of Default for which Holder provides
written Notice to Maker triggering immediate repayment, in the event of a Change of Control or
an Initial Public Offering of Issuer, the then Outstanding Principal Balance, plus any accrued or

unpaid interest, shall be paid in full at the time of such Change of Control or Initial Public Offering, as the case may be. For purposes of this Note:

> i.      A "<u>Change of Control</u>" means any transaction or series of related transactions involving (i) the sale of all or substantially all of Issuer's assets to another Person, (ii) the issuance and sale by Issuer or sale by one or more selling shareholders of Issuer of more than 50% of the outstanding equity securities of Issuer, or (iii) the merger, consolidation or other type of business combination transaction of Issuer with another Person under circumstances in which members or equity owners prior to the transaction holding, in the aggregate, more than 50% of the outstanding equity securities of Issuer hold less than 50% of such equity securities following the transaction, in each case in a transaction with an unrelated third party or parties.

> ii.      "<u>Initial Public Offering</u>" means the first underwritten public offering of equity of Issuer to the general public on any United States or Canadian national exchange that covers (together with prior effective registrations) not less than 25% of the then outstanding shares of equity of Issuer on a fully diluted basis.

**5.      Default Interest Rate.**  Following and during the continuation of an Event of Default, interest on the unpaid principal balance of the Note shall accrue at a simple rate (computed on the basis of a year of 365 days and actual number of days elapsed) of seventeen (17%) per annum or the maximum rate permissible by applicable law, whichever is less (the "<u>Default Interest Rate</u>").

**6.      Events of Default.**

(a)      The occurrence of any of the following events will be deemed to be an "<u>Event of Default</u>**"** under this Note:

> (i)      a default in the payment when due of all or any part of any obligation payable by the Maker hereunder (whether on the stated maturity or at any other time provided for in this Note) if not cured within fifteen (15) calendar days after the Maker's receipt of written Notice from Holder;

> (ii)      the filing of any petition or the commencement of any case or proceeding by or against the Maker under any provision or chapter of the United States Bankruptcy Code, as amended, relating to insolvency, bankruptcy, or the reorganization (and, in the case of any such proceeding instituted against the Maker, such proceeding is not dismissed or stayed within sixty (60) days of the commencement thereof); or

> (iii)      the appointment of or the taking possession by a custodian, trustee, or receiver of all or any assets of the Maker.

(b)      Upon the occurrence of an Event of Default, at Holder's option and upon written Notice to the Maker: (i) the then Outstanding Principal Balance and accrued and unpaid interest hereunder shall be accelerated and become immediately due and payable; and/or (ii) this Note will bear interest at the Default Interest Rate from the date of such written Notice from Holder

to the Maker.

**7.      Unsecured Note.**  This Note is, and at all times shall be, a general unsecured obligation of the Maker.  Without limiting the generality of the immediately preceding sentence, Holder expressly acknowledges and agrees that this Note shall not be secured at any time in the future by a grant of a security interest in any assets of the Maker or any of its subsidiaries or affiliates (collectively, the "Maker Group"), whether or not those assets are owned by the Maker Group (taken as a whole) on the Effective Date or acquired by the Maker Group (taken as whole) on a date subsequent to the Effective Date.

**8.      Governing Law and Jurisdiction.**  This Note will be governed by and interpreted in accordance with the internal laws of the State of Delaware.  **EACH OF THE MAKER AND HOLDER HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF DELAWARE AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THE NOTE, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF THE FOREGOING.**

**9.      WAIVER OF JURY TRIAL.  EACH OF THE MAKER AND HOLDER HEREBY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS NOTE OR THE OBLIGATIONS HEREUNDER. THE MAKER AND HOLDER EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.**

**10.      Assignment.**  This Note shall be non-negotiable and non-transferable and neither party shall assign, pledge, hypothecate or otherwise transfer this Note or any of its rights or interests hereunder without the prior written consent of the other party, which consent may not be unreasonably withheld or delayed. Notwithstanding the foregoing, Holder may assign its rights and interests hereunder without Maker's prior written consent to (a) any corporation, partnership, limited liability company, or other entity of which a majority of the equity interests are owned (directly or indirectly) by [INSERT], their lineal descendants, and/or one of more trusts for the benefit of any or all of the foregoing; or (b) any trust for the benefit of [INSERT] and/or their lineal descendants.

**11.      Amendment.**  This Note may not be amended or modified other than pursuant to a written agreement executed by Maker and Holder.

**12.      Binding Effect.**  This Note shall be binding on and inure to the benefit of the Maker and Holder and their respective successors and permitted assigns.  This Note is not intended to confer any rights or remedies upon any person except the Maker and Holder.

**13.      Severability.**  If any provision or provisions of this Note are held by a court of competent jurisdiction, for any reason, to be invalid, void or unenforceable, such court is expressly empowered to reform such provision(s) to the minimum extent required to bring such provision(s) in compliance with applicable law, and such provision(s) shall be deemed so reformed to minimum

extent required to bring such provision(s), and the remaining provision or provisions will nevertheless be valid, enforceable and carried into effect.  For avoidance of doubt, the invalidity or unenforceability of any such provision as written herein shall not invalidate or render unenforceable the remaining provisions hereof, all of which shall nevertheless remain in full force and effect.

**14.     Notices.**  All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when delivered to the addressee if sent by a nationally recognized overnight courier; (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective parties at the addresses as set forth above (or at such other address for a party as shall be specified in a Notice given in accordance with this Section 14).

**15.     Miscellaneous.**  Unless the context clearly indicates otherwise, references to "Section" refers to the corresponding Section of this Note.  Section headings contained in this Note are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope or the intent of any of the provisions of this Note.  The words "hereof," "herein," "hereto" and "hereunder" and words of like import used in this Note refer to this Note as a whole and not to any particular provision of this Agreement.  This Note will be construed as if drafted jointly by the Maker and Holder and no presumption or burden of proof will arise favoring or disfavoring either of them by virtue of the authorship of any provision in this Note.

**16.     Entire Agreement**.  This Note and the Personal Guaranty constitute the entire agreement between the Holder and Maker with respect to the subject matter hereof as a complete and final integration thereof, and supersede all prior agreements and understandings (whether written or oral and whether express or implied) between the Holder and Maker with respect to the subject matter hereof.

**17.     Counterparts**.  This Note may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.  Counterparts of the signature pages to this Note may be delivered electronically and shall be deemed to have the same legal effect as delivery of an original signed Note.

*[Signatures follow on next page.]*

*Promissory Note*

**IN WITNESS WHEREOF**, the Maker and Holder have executed this Note as of [INSERT], 2024 to be effective as of the Effective Date.

<u>**MAKER**</u>:

**Heller Investment Holdings, LLC**

By:_____
Name: Daryl F. Heller
Its: Manager

<u>**HOLDER**</u>:

**Paula and Deborah Parreira 2005Irrevocable Trust**

By:_____
Name: <u>Paul L Parreira</u>
Title: Trustee