| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>HAYNES AND BOONE, LLP<br>30 Rockefeller Plaza<br>26th Floor<br>New York, NY 10112<br>Telephone: 212.659.7300<br>Richard Kanowitz (richard.kanowitz@haynesboone.com)<br>Lauren Sisson (lauren.sisson@haynesboone.com)<br>*Counsel to Chicago Atlantic Admin, LLC* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>Debtor. | Case No. 25-11354 (JNP)<br><br>Chapter 11 |

**CHICAGO ATLANTIC ADMIN, LLC'S OBJECTION TO MOTION FOR AN ORDER APPROVING THE AGREEMENT BETWEEN THE DEBTOR, CHARLENE R. HELLER, AND ORRSTOWN BANK PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Chicago Atlantic Admin, LLC ("Chicago Atlantic") files this Objection (the "Objection") to the *Motion for an Order Approving the Agreement Between the Debtor, Charlene R. Heller, and Orrstown Bank Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "9019 Motion"). In support of the Objection, Chicago Atlantic respectfully states as follows:

**Preliminary Statement**

1. Through the 9019 Motion,[1] the Debtor seeks to distribute estate funds from the sale of the principal asset in this bankruptcy case to select unsecured creditors prior to the filing of a chapter 11 plan.

---

[1] On May 20, 2025, the Debtor filed another motion to approve settlement and compromise with Deerfield Capital, LLC that also seeks to distribute estate assets to an unsecured creditor outside of a confirmed plan. [D.I. 258]. Chicago Atlantic will be filing an objection to that motion on substantially the same bases.

1

2. The Debtor fails to meet his burden to show that the Settlement Agreement is fair and equitable and fails to adequately address the *Martin* factors that the Court will use to determine whether to approve or reject the Settlement Agreement.

3. The proposed Settlement Agreement filed by the Debtor violates the absolute priority rule and is a *sub rosa* plan.

4. The 9019 Motion should be denied.

## Background[2]

5. On February 10, 2025, Daryl Fred Heller ("Heller" or the "Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

6. On February 24, 2025, the Debtor filed his schedules of assets (as amended, the "Schedules") and statement of financial affairs (as amended, the "Statements"). [D.I. 59].[3] According to the Schedules, the Debtor has the following main assets:

- A single-family home co-owned with his wife, Charlene Heller, with the address 909 Greenside Drive, Lititz, Pennsylvania, 17543 [D.I. 59 at p. 4].
    - The Debtor claims a $27,900 exemption for this property. *Id.* at p. 11.
    - Orrstown Bank has a mortgage on this property for $1,550,000. *Id.* at p. 14.
    - This property is the Debtor's current family residence. *See* Adv. P. No. 25-01092, D.I. 7-3 pp. 2–3.

- A single-family home co-owned with Randall Leaman, with the address of 7605 Pleasure Avenue, Sea Isle City, New Jersey, 08243 (the "Sea Isle Property") [D.I. 59 at p. 5].
    - The Debtor does not claim an exemption for the Sea Isle Property.
    - Fulton Bank has a mortgage on the Seal Isle Property for $3,850,000. *Id.* at p. 13.
    - The Debtor declared and the clerk of court entered a remark that **the Sea Isle Property is the "Debtor's principal asset."** *See* D.I. 1 (Petition, p. 2); Docket Entry, Feb. 11, 2025.

---

[2] In the interest of brevity this Objection assumes familiarity with the proceedings thus far, and therefore this section only includes information relevant to Chicago Atlantic's Objection to the 9019 Motion.
[3] The amendments include: D.I. 72, 79, & 129.

2

- $79,500 of personal and household items, such as clothes, sports equipment, and appliances [D.I. 59 at pp. 6–7].

7. The Schedules also claim a grossly inflated and unreliable amount relative to the Debtor's businesses. The Debtor asserts that those businesses "don't have a lot of tangible assets" and "the valuation lies in IP, contracted revenue, [and] multiples of EBITDA." [D.I. 59 at p. 8].

- For example, the Debtor asserts that his interest in Heller Capital Group is worth $160 million. [D.I. 59 at p. 7] (the "Heller Capital Interest"). The Debtor provides this number as the alleged value of what Heller Capital Group, LLC "would sell for in the open market." The Debtor initially provided a book value of $35,000 (later amended to $35 million) which "reflects the actual equity." [D.I. 72 at p. 4]. The Debtor has "not done a valuation recently." *Id.*

- The Debtor asserts that his interest in Heller Investments Holdings, LLC is worth $60 million [D.I. 59 at p. 8] (the "Heller Investment Interest," and with the Heller Capital Interest, the "Debtor Corporate Interests"). The Debtor provides this number as the alleged value of what Heller Investments Holdings, LLC "would sell for in the open market." He initially provided a book value of $28,000 (later amended to $28 million) which "reflects the actual equity." [D.I. 72 at p. 5]. The Debtor has "not done a valuation recently."

- To date, the Debtor has presented no evidence of how he may utilize the Debtor Corporate Interests to pay creditors. And, without a recent third-party valuation, the Debtor's self-declared valuation provided in the Schedules is wholly unreliable. Moreover, the Debtor Corporate Interests are also tied up in various pre-petition litigation against the Debtor and his companies.

8. The Debtor listed Chicago Atlantic as his third largest creditor, with a contingent claim of $22,000,000.00. [D.I. 62].

9. On March 27, 2025, Chicago Atlantic filed its proof of claim in the amount of $16,963,009.84 based on a personal guaranty executed by the Debtor in relation to a loan and security agreement between Chicago Atlantic and Powercoin, LLC. As of the date of the execution of the guaranty, Heller was the CEO of Heller Capital Group, LLC, which had an 83% ownership interest in Powercoin, LLC.

3

10. On April 30, 2025, the Debtor filed the 9019 Motion, seeking approval of an agreement (the "Settlement Agreement") which purports to resolve numerous disputed matters between and among the Debtor, Orrstown Bank ("Orrstown") and Charlene R. Heller ("Mrs. Heller").

- Orrstown filed various proofs of claim.[4] Orrstown alleges that certain of its claims are secured pursuant to 42 Pa. C.S.A. § 4303, and that its security interest includes the Sea Isle Property, pursuant to various judgments. *See e.g.,* Claim Nos. 48-2, 50-1. Orrstown, however, has also represented that the only judgment it has recorded in New Jersey is the "2020 Cash Ventures Judgment," which was for $828,293.96, plus interest [D.I. 67 ¶ 9].

- According to the Debtor, however, Orrstown is the holder of an unperfected judgment lien with respect to the Sea Isle Property. 9019 Mot. ¶ 20. Indeed, the Debtor filed an adversary proceeding against Orrstown seeking a declaratory judgment that Orrstown does not hold a perfected judgment lien. *See generally* Adv. P. No. 25-01092.

- Under the settlement, without determining the validity of Orrstown's purported liens, the Debtor seeks to pay at least $250,000 from the Sea Isle Property's sale proceeds to Orrstown. 9019 Mot. ¶ 27(iv)(a).

11. As of the date of this filing, no committee of unsecured creditors has been appointed in this case.

**Objection**

**A. The 9019 Motion is Not Fair and Equitable and Fails to Properly Address the *Martin* Factors.**

12. A bankruptcy court may approve a compromise or settlement on motion of a trustee after notice and hearing as provided in Federal Rule of Bankruptcy Procedure 2002. FED. R. BANKR. P. 9019(a).

---

[4] Claim Nos. 48-1, 48-2, 49-1, 50-1, 51-1, 52-1, and 62-1. Some of the properties that purport to secure the Orrstown mortgages are not listed on the Debtor's schedules or owned by the Debtor directly. *E.g.*, Claim No. 52-1, p. 12 (while Mr. Heller signed the mortgage and provided a guaranty, the borrower is "Premier Prince Street, L.P." and the property subject to the mortgage is 415 North Prince Street, Units 2–7).

13. The trustee (or debtor-in-possession) bears the burden to show that the settlement is in the best interests of the estate. *In re NJ Affordable Homes Corp.,* No. 05-60442(DHS), 2007 WL 4300153, at *2 (Bankr. D.N.J. Dec. 5, 2007).

14. In assessing whether the trustee has met this burden, courts must make a determination that the settlement is "fair and equitable" and analyze "the value of rights relinquished by the debtor versus the value received in return." *In re Biolitec, Inc.,* 528 B.R. 261, 266 (Bankr. D.N.J. 2014); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 804 (E.D. Pa.1986).

15. "[A] settlement's fidelity to the requirements of the Bankruptcy Code will generally be the most important factor is determining whether a settlement is fair and equitable." *In re Energy Future Holdings Corp.,* 648 F. App'x 277, 283 (3d Cir. 2016).

16. Courts should also examine whether the rights of creditors not participating in the settlement are unduly prejudiced. *In re Med. Asset Mgmt., Inc.,* 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000).

17. "In determining whether to approve a proposed settlement, a court is permitted to take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *In re NJ Affordable Homes Corp.,* 2007 WL 4300153, at *2 (citation and quotations omitted); *see* FED. R. EVID. 201.

18. Additionally, the Third Circuit set forth the following factors (the "*Martin* factors") to consider when analyzing a proposed settlement in *In re Martin,* 91 F.3d 389, 393 (3d Cir.1996).

- The probability of success in litigation;
- The likely difficulties in collection;
- the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
- the paramount interest of the creditors.

5

19. Here, an analysis of the Settlement Agreement demonstrates that the value being recovered by the estate is minimal, while Mrs. Heller and Orrstown receive significant monetary and legal benefits. The benefits to Orrstown include:

- The obligations for the loans and judgments remain outstanding with the exception of "certain payments received by Orrstown from non-parties to the Agreement." 9019 Mot. ¶ 26. It is unclear if this reference is to the payments made by Mrs. Heller or another party.

- The adversary proceeding commenced by the Debtor to challenge the extent, validity, and priority of Orrstown's liens will presumably be dismissed by the Debtor (the Settlement Agreement simply states that it will be resolved).

- Orrstown will receive $250,000 from the proceeds of the Sea Isle Property sale. 9019 Mot. ¶ 27.iii.

- Orrstown will receive additional payments totaling $1,200,000. 9019 Mot. ¶ 27.iv. It is unclear, but it appears this amount does not include the $250,000 from the Sea Isle Property sale. The origins of the initial $200,000 payment mentioned in ¶ 27.iv.a of the 9019 Motion are also unclear. Paragraph 8 of Ex. A to the agreement[5] states that Mrs. Heller's counsel is holding $200,000 "in connection with the transaction contemplated by this Agreement." This would seem to indicate that these funds may be proceeds of the Sea Isle Property sale. Regardless, there is no explanation from the Debtor as to why he does not have an interest in the (at least) $1,000,000.00 that Mrs. Heller apparently is in possession of and will pay to Orrstown under the Settlement Agreement. This is particularly confounding since the 9019 Motion seems to argue that Mrs. Heller has an unspecified "equitable" legal interest in the Sea Isle Property as marital property[6] despite the fact that she: i) does not appear on the deed, ii) is still legally married to the Debtor, and iii) has presented no evidence that a property settlement has been adjudicated by any family court in relation to a divorce proceeding.

- Mrs. Heller will pay Orrstown a $15,000 forbearance fee which will be waived if all payments are made in a timely manner. 9019 Mot. ¶ 33.

20. The benefits to Mrs. Heller, who is not a debtor in this bankruptcy proceeding, include:

- Upon timely receipt of the payments—and provided no default has occurred under the Settlement Agreement—Mrs. Heller will cease to owe any obligations to

---

[5] D.I. 213-2 at p. 23.
[6] 9019 Mot. ¶¶ 37–45.

6

> Orrstown and Orrstown will vacate the various judgments and charging orders *as to Mrs. Heller only.* Additionally, Mrs. Heller's liability for the Heller Capital Loan will be deemed satisfied. 9019 Mot. ¶¶ 12–14.

- Any recovery by Orrstown on the charging order will be credited against payments being made by Mrs. Heller to Orrstown. 9019 Mot. ¶ 27.iv.d.

21. Finally, the benefits to the Debtor include:

- Orrstown will withdraw the venue motion with prejudice.[7] 9019 Mot. ¶ 34.

- The lien litigation related to the Sea Isle Property and the sale proceeds will be resolved as between Orrstown and the Debtor. Presumably the Debtor will request that the adversary proceeding (which he initiated) be dismissed. 9019 Mot. ¶ 22.

- Upon timely receipt of the $200,000 payment being held in escrow by Mrs. Heller's counsel, Orrstown will satisfy the First Regents Judgment against the Debtor. 9019 Mot. ¶ 28.

22. While the 9019 Motion attempts to conflate the significant benefits received by Mrs. Heller with benefits to the Debtor—even arguing that "the Agreement should be approved by the Court, because Orrstown shall hereby forebear from exercising remedies available to it…against Mrs. Heller"[8]—it bears repeating that **Mrs. Heller is not the debtor in this bankruptcy proceeding**. Yet she receives a robust release in the event certain payments are made to Orrstown. The origin of those funds, as well as the Debtor's interest in them, is woefully unclear.

23. The benefits received by Orrstown are even more significant. Despite the Debtor "strongly disput[ing] the positions taken by Orrstown [as to their liens]" the Settlement Agreement treats Orrstown as a secured creditor, paying them $1,450,000, of which a minimum of $250,000 is property of the bankruptcy estate. They also retain many of their pre-bankruptcy rights while having the litigation regarding their liens dismissed by the Debtor.

---

[7] Despite the assertion in the 9019 Motion that the venue motion will be withdrawn with prejudice upon receipt of certain payments, the 9019 Motion also states that all parties reserve their rights as to the venue motion. 9019 Mot. ¶ 22.
[8] 9019 Mot. ¶ 25.

24. As discussed further below, the Settlement Agreement allows the Debtor to impermissibly give special treatment to a creditor he alleges is not secured, in exchange for a release for his wife and minimal (and unquantifiable) benefits to the estate. Both Orrstown's and Mrs. Heller's claims should be treated as the claims of every other unsecured creditor in this case.

25. The *Martin* factors receive scant attention in the 9019 Motion and are addressed in two paragraphs within a 15-page brief. 9019. Mot. ¶ 17–18. As to the first two factors, the Debtor concludes that "the probability of success is unknown" and "the likelihood of collection is not foreseeable." *Id.* ¶ 17.

26. As to the complexity of the litigation, the Debtor argues that "[t]he litigations have spanned several years and are very complex." *Id.* That may very well be true, but the current active litigation not stayed by the Debtor's bankruptcy consists of an adversary proceeding he filed, and Orrstown's motion to transfer that same proceeding to another bankruptcy court. The dispute is whether or not Orrstown properly perfected its liens under state law. No further evidence is offered to back up the Debtor's contention that the current litigation is complex other than mentioning that "[d]epositions and discovery will be needed." *Id.*

27. Finally, the Debtor barely alludes to the last factor, the "paramount interest of creditors," by claiming that the Settlement Agreement "will allow the Debtor to move towards confirmation of his reorganization plan." *Id.* The details of this reorganization plan are currently unknown since the Debtor has not filed a plan. The 9019 Motion does not explain how it is in the interest of creditors other than Orrstown to distribute at least $250,000 in estate funds to one creditor, nor how the dismissal of one adversary proceeding (with approximately 20 others pending) will move the Debtor toward a reorganization. Given that the Debtor has stated that the Sea Isle Property is "[his] principal asset," it's unclear what the Debtor will reorganize around.

8

The Debtor's only other assets are membership interests in LLCs, and the value of those interests is speculative at best.

28.     The Settlement Agreement is neither fair nor equitable to the other unsecured creditors of the Debtor, and the 9019 Motion utterly fails to satisfy even the admittedly low bar set forth by the *Martin* factors. As such, the 9019 Motion should be denied.

**B.  The Settlement Agreement is an Impermissible *Sub Rosa* Plan that Violates the Absolute Priority Rule.**

29.     "A debtor…cannot short circuit the requirements of 11 U.S.C. § 1101 *et seq.* for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets." *In re Braniff Airways Inc.,* 700 F.2d 935 (5th Cir.1983).

30.     Concerns about a *sub rosa* plan usually occur in situations where a debtor proposed to sell all or the substantial majority of their assets prior to the confirmation of a plan. *In re Decora Indus., Inc.,* No. 00-4459 JJF, 2002 WL 32332749, at *8 (D. Del. May 20, 2002).

31.     When considering whether a settlement is a *sub rosa* plan, courts look to whether the recovery of other creditors is impacted and whether any requirement of plan confirmation is subverted. *In re Energy Future Holdings Corp.,* 648 F. App'x 277, 284–85 (3d Cir. 2016); *see also In re Capmark Fin. Grp. Inc.,* 438 B.R. 471, 513–14 (Bankr. D. Del. 2010) ("[Courts] of this Circuit have also acknowledged and applied the [*sub rosa*] doctrine to…settlements under Bankruptcy Rule 9019 to ensure they do not impermissibly dictate the terms of eventual reorganization plans or bypass the Code's procedural safeguards.").

32.     "The priority system applicable to…distributions has long been considered fundamental to the Bankruptcy Code's operation." *Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, 464–65 (2017).

33. Here, the Debtor has already sold the primary asset of the bankruptcy estate, leaving only membership interests with speculative value. The Debtor now seeks, through this 9019 Motion (and a second filed at D.I. 258), to distribute the funds from the Sea Isle Property sale to select creditors at the expense of the rest of the unsecured creditor body, who are unable to rely on a creditor's committee to protect their rights.

34. It is indisputable that paying certain unsecured creditors large sums of money while expecting others to share in the leftovers pro-rata is a violation of the absolute priority rule.

35. Additionally, should this 9019 Motion and the motion at D.I. 258 be approved, there would appear to be nothing of substance to support a reorganization plan. The Debtor is seeking to avoid the hurdles of plan confirmation through these two motions. The 9019 Motion is an unabashed attempt to avoid the rules of priority and represents a *sub rosa* plan. The 9019 Motion should be denied.

## Conclusion

WHEREFORE, Chicago Atlantic requests that the Court enter an order (i) denying the 9019 Motion, and (ii) granting Chicago Atlantic Admin such other and further relief as the Court deems appropriate.

Dated: May 27, 2025

Respectfully submitted,

By: */s/ Richard S. Kanowitz*
Richard S. Kanowitz
Lauren M. Sisson
HAYNES AND BOONE, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: 212.659.7300
Email: richard.kanowitz@haynesboone.com
Email: lauren.sisson@haynesboone.com

Counsel to Chicago Atlantic Admin, LLC

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on May 27, 2025.

                                       */s/ Richard S. Kanowitz*
                                       Richard S. Kanowitz