| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** |
| **SAXTON & STUMP LLC** <br> Joshua J. Voss, Esq. <br> 280 Granite Run Drive, Suite 300 <br> Lancaster, PA 17601 <br> (717) 556-1072 <br><br> **STARK & STARK, PC** <br> Marshall T. Kizner, Esq. <br> Joseph H. Lemkin, Esq. <br> 100 American Metro Blvd. <br> Hamilton, NJ 08619 <br> Telephone (609) 791-7022 <br> *Attorneys for Prestige* |
| In re: <br><br> DARYL FRED HELLER, <br><br>        Debtor. |

Chapter 11

Case Nos. 25-11354 (JNP)

**OBJECTION TO DEBTOR'S MOTION FOR AN ORDER APPROVING THE AGREEMENT AMONGST THE DEBTOR, HELLER CAPITAL GROUP, LLC, HELLER INVESTMENMT HOLDINGS, LLC AND DEERFIELD CAPITAL, LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige") submit this Objection to Debtor's Motion for an Order Approving

1

the Agreement Amongst the Debtor, Heller Capital Group, LLC, Heller Investment Holdings, LLC and Deerfield Capital, LLC pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion").

**PRELIMINARY STATEMENT**

1. The 9019 Motion is yet another step by Darryl Heller ("Debtor") to advance his massive Ponzi scheme and shell game, while avoiding true disclosure to his creditors. Debtor seeks approval of a settlement (the "Settlement") whereby he plans to distribute significant estate assets to a preferred creditor and to benefit his family members, all outside of a plan of reorganization. Debtor seeks approval of the Settlement, while also refusing to comply with rudimentary disclosure obligations and stiff-arming creditors efforts in this case.

2. By way of brief background, without belaboring the numerous pleadings filed by Prestige and other creditors, this Debtor cannot and should not be trusted. Prestige has filed a Motion to Appoint a Chapter 11 Trustee (the "Trustee Motion"). The Trustee Motion also seeks to amend the Order appointing the Examiner and ensure his continued service, pending the appointment of a trustee.

3. Prestige, and fourteen other creditors, have filed complaints commencing adversary proceedings pursuant to 11 U.S.C. § 523(a), pleading, with specificity, the nature of Debtor's fraudulent conduct. To summarize these adversary proceedings succinctly, the Debtor engaged in a massive Ponzi scheme and campaign of conduct whereby he defrauded creditors out of over $800,000,000.

4. Post-bankruptcy, the Debtor's conduct has not been better. At Debtor's 341(a) meeting of creditors, the Debtor stonewalled creditors' efforts to question him about affiliated entities in which he has a substantial interest. Throughout the meeting of creditors, Debtor's

counsel repeated numerous times that inquiries about non-debtor affiliated entities should be made via Rule 2004 subpoenas, and that Debtor would be made available further questioning in that context. Instead, in response to Prestige's Rule 2004 Subpoena, the Debtor filed a motion to quash.

5. Next, the Debtor's post-petition conduct and refusal to fully disclose his financial affairs has been recently drawn into sharp relief. Indeed, Prestige just received discovery responses from Venmo, which revealed a Venmo account in Debtor's name. **Attached as Exhibit "A"** (fields without data have been removed). Debtor failed to disclose the Venmo account with his required disclosures. *See* Doc. 72 at 4, question 17 (Official Form 106A/B). As equally important, analysis of the Venmo discovery reveals numerous transfers of cash by Debtor within the last two years over the sum of $600, at least some of which appear to be gifts that should have been disclosed by Debtor both in his disclosure forms and at the 341 Meeting of Creditors, which was under oath, including the following:

| Txn ID | Created Date | Amount | Counterparty Name | Notes |
|---|---|---|---|---|
| 13542681941 | 1/1/2024 | 1,600.00 | Adam Park | Dinner and tip |
| 12253157108 | 8/3/2023 | 2,659.00 | ariyah baby | Landscaping |
| 12420329348 | 8/23/2023 | 2,500.00 | ariyah baby | NS |
| 13853960084 | 2/9/2024 | 1,998.00 | Ayanna Emerson | Rentals |
| 14126638084 | 3/11/2024 | 1,069.00 | Dodi Henry | BF |
| 13475881793 | 12/23/2023 | 1,000.00 | Gabriell Kauffman | Wishing you peace, love, and happiness over the holidays! Please spend this on something that will bring fulfillment to your life! Thank you for sharing time with your mom with me. |
| 14412409765 | 4/13/2024 | 1,000.00 | Gabriell Kauffman | Happy bday! |
| 14663064439 | 5/11/2024 | 1,500.00 | Gavin Horning | Yo |

3

| Txn ID | Created Date | Amount | Counterparty Name | Notes |
|---|---|---|---|---|
| 13475893028 | 12/23/2023 | 1,000.00 | Gavin Kauffman | Wishing you peace, love, and happiness over the holidays! Please spend this on something that will bring fulfillment to your life! Thank you for sharing time with your mom with me. |
| 13920534776 | 2/16/2024 | 1,000.00 | Gavin Kauffman | Haircut |
| 14010615048 | 2/27/2024 | 700.00 | Gavin Kauffman | Wine |
| 14543823531 | 4/28/2024 | 2,600.00 | Gavin Kauffman | Taxes - more to come |
| 14667529504 | 5/11/2024 | 1,500.00 | Gavin Kauffman | Yo yo |
| 10936957047 | 2/23/2023 | 2,500.00 | Gerrylynne hutton | K |
| 11685589899 | 5/26/2023 | 2,350.00 | Gerrylynne hutton | K |
| 12000736794 | 7/3/2023 | 750.00 | Gerrylynne hutton | Electric |
| 12280924799 | 8/6/2023 | 1,000.00 | Gerrylynne hutton | Donations for kids backpacks |
| 12484779178 | 8/31/2023 | 700.00 | Gerrylynne hutton | Please forward to Jacob |
| 12526214595 | 9/5/2023 | 975.00 | Gerrylynne hutton | Racing sponsorship |
| 13475910089 | 12/23/2023 | 1,000.00 | Grant Kauffman | Wishing you peace, love, and happiness over the holidays! Please spend this on something that will bring fulfillment to your life! Thank you for sharing time with your mom with me. |
| 12696536713 | 9/24/2023 | 869.00 | Janell Kauffman | PC |
| 12812102759 | 10/7/2023 | 2,069.00 | Janell Kauffman | BIC |
| 12904219926 | 10/18/2023 | 5,069.00 | Janell Kauffman | BIC |
| 13099624167 | 11/10/2023 | 2,532.00 | Janell Kauffman | Design/furnishing |
| 13159326903 | 11/17/2023 | 3,000.00 | Janell Kauffman | IWTRYWS |
| 13182390150 | 11/19/2023 | 1,069.00 | Janell Kauffman | Food |

4921-4332-8072, v. 1

| Txn ID | Created Date | Amount | Counterparty Name | Notes |
|---|---|---|---|---|
| 13212668763 | 11/23/2023 | 2,100.00 | Janell Kauffman | K |
| 14009148624 | 2/27/2024 | 1,569.00 | Janell Kauffman | Bic |
| 14222851965 | 3/22/2024 | 2,416.00 | Janell Kauffman | Pine straw |
| 10896549207 | 2/18/2023 | 700.00 | Justin Clark | Bday party and gifts |
| 13702986396 | 1/22/2024 | 1,239.00 | Justin Clark | Krystals phone payoff 989.00 and taxes activation on 3, iPhone 14 for the kids. |
| 15342489303 | 7/27/2024 | 600.00 | Justin Clark | Food etc |
| 14110191591 | 3/9/2024 | 1,000.00 | Kassidi Campbell | Nest |
| 14163842658 | 3/16/2024 | 669.00 | kelly s | Bic |
| 11308639339 | 4/10/2023 | 800.00 | Kris Kishpaugh | Supplies |
| 12516425430 | 9/3/2023 | 1,500.00 | Kris Kishpaugh | Supplies |
| 13326582764 | 12/6/2023 | 1,000.00 | Kris Kishpaugh | Supplies |
| 13558104875 | 1/3/2024 | 2,037.00 | Kris Kishpaugh | Rental |
| 14075138587 | 3/5/2024 | 750.00 | Kris Kishpaugh | Medical resource |
| 13102507100 | 11/10/2023 | 669.00 | Krystal Groff | K |
| 13435132553 | 12/18/2023 | 1,100.00 | Krystal Groff | kidz |
| 14037248262 | 3/1/2024 | 1,000.00 | Krystal Groff | shopping |
| 12559983882 | 9/8/2023 | 869.00 | Laci Tuttle | Conner trip |
| 13832875264 | 2/6/2024 | 2,500.00 | Laci Tuttle | house |
| 12324416293 | 8/12/2023 | 1,550.00 | Marie Clark | School shopping |
| 13432395567 | 12/18/2023 | 2,400.00 | Marie Clark | Xmas for Gavin, gella and Ella. |
| 15602955888 | 8/25/2024 | 1,200.00 | Marie Clark | Kids School Clothes |
| 13688737405 | 1/20/2024 | 3,000.00 | Mason Fassnacht | Yo |
| 12435213741 | 8/25/2023 | 1,069.00 | Megan Strong | Consult |
| 11300273230 | 4/9/2023 | 2,517.00 | Natalia Zilberstein | K |
| 11526267323 | 5/6/2023 | 1,969.00 | Natalia Zilberstein | K |
| 11696136020 | 5/27/2023 | 1,177.00 | Natalia Zilberstein | Marketing |

5

| Txn ID | Created Date | Amount | Counterparty Name | Notes |
|---|---|---|---|---|
| 11919230975 | 6/23/2023 | 3,969.00 | Natalia Zilberstein | Art decor |
| 11545157921 | 5/8/2023 | 750.00 | Nate Hosie | Tip |
| 11457498661 | 4/28/2023 | 2,800.00 | Never Giveup | Donation |
| 11457569055 | 4/28/2023 | 799.00 | Never Giveup | Donation |
| 11457577116 | 4/28/2023 | 769.00 | Never Giveup | Donation |
| 13243740040 | 11/27/2023 | 1,775.00 | Rachel Wagner | Flights |
| 13271216275 | 11/30/2023 | 750.00 | Samantha Cox | Cleaning |
| 13489854059 | 12/25/2023 | 700.00 | Samantha Cox | Cleaning |
| 11219983247 | 3/30/2023 | 4,997.00 | Sarah Giehl | Car |
| 11299876863 | 4/9/2023 | 699.00 | Sarah Giehl | K |
| 12206324455 | 7/29/2023 | 998.00 | Sarah Giehl | RT |
| 12485782161 | 8/31/2023 | 1,000.00 | Sarah Giehl | R |
| 13283115351 | 12/1/2023 | 1,069.00 | Sarah Giehl | R |
| 13558114511 | 1/3/2024 | 737.00 | Sarah Giehl | Bic |
| 13905201634 | 2/15/2024 | 1,000.00 | Sarah Giehl | 🏠 |
| 15171545667 | 7/7/2024 | 3,000.00 | Taite Heller | School costs |
| 15171569615 | 7/7/2024 | 3,225.00 | Taite Heller | School costs |

6. Continuing the Debtor's lack of transparency and campaign of non-disclosure, he has failed to followed Rule 2015.3 as well. Under this Rule "[i]n a Chapter 11 case, the…debtor in possession must file periodic financial reports of the value, operations, and profitability of each entity in which the estate holds a substantial or controlling interest—unless the entity is a publicly traded corporation or a debtor in a bankruptcy case. The reports must be prepared as prescribed by Form 426 and be based on the most recent information reasonably available to the filer." Rule 2015.3(a). The "first report must be filed at least 7 days before the first date set for the meeting of creditors under §341." Rule 2015.3(b).

7. Debtor has not filed any reports on behalf of the 140 entities he holds a substantial or controlling interest in. In the 9019 Motion Debtor acknowledges that he owns ninety nine percent (99%) of Heller Capital Group, LLC ("HCG") and eighty-five percent (85%) of Heller

6

Investment Holdings, LLC ("HIH"). He also acknowledges he is the CEO of both entities. Yet, he has not filed any required reports concerning HCG or HIH.

8. Further, recent interrogatory answers from Debtor on behalf of Paramount Management Group, LLC ("Paramount") further supports the lack of disclosure by the Debtor as well as that fact that he cannot be trusted. Upon orders from both this Court and the Court of Common Pleas of Lancaster County [D.I. 274], Debtor finally supplied answers to certain interrogatories in aid of execution served months ago on Paramount. **Attached as Exhibit B.** Debtor's response to every question, save for the one asking him to disclose his own name, was that "[o]n the advice of counsel, I invoke my fifth amendment privilege and respectfully decline to answer the question[.]" *See id.* at 9-29, interrogatories 2-49. In other words, Debtor cannot disclose a single fact about Paramount—no matter how banal, *see, e.g., id.* at 10, interrogatory 5 ("Identify all members of Paramount.")—without exposing himself to criminal sanction. This certainly does not sound like the response of person whose business judgment should be trusted in connection with the Settlement Agreement, nor should he be trusted as a Debtor in control of his own estate. Instead, it sounds like the response of person who ran a massive fraudulent scheme. Indeed, Heller's responses compel the inference that all his assets are, in some way, derived from the Ponzi scheme. As such, his business judgment cannot be trusted as a Debtor in control of his own estate or with respect to any self-serving settlement for which stolen funds serve as consideration.

9. Finally, in an unabashed effort to avoid transparency, the Debtor seeks to use the 9019 Motion as a dagger to terminate the Examiner and prevent any credible investigation into the Debtor's conduct. The basis for this request is that it was Deerfield Capital LLC's ("Deerfield") Motion to Appoint a Trustee which was the impetus for the appointment of the

4921-4332-8072, v. 1

Examiner. The Debtor completely disregards other creditors who joined Deerfield's motion and were equally involved in the appointment and ignores *the Court's appointment* of the Examiner to benefit all creditors.

10. In the context of the fifteen (15) non-dischargeability complaints, and the Debtor's continued refusal to share and disclose information about his numerous controlled entities, the 9019 Motion seeks approval of the Settlement where significant transfers will be made to a preferred creditor without any cognizable benefit to the Debtor's estate.

11. Simply stated, the Debtor's business judgment cannot be trusted, and further investigation is warranted before any payments are made to creditors.

12. Aside from conclusory statements by the Debtor regarding the benefits of the settlement, the Debtor has completely failed to meet his burden that the settlement is fair and equitable and fails to satisfy the *Martin* Factors required to determine whether the settlement should be approved.

13. Finally, the settlement constitutes a *sub rosa* plan and should not be approved.

## BACKGROUND

14. Prestige adopts and incorporates by reference paragraphs four through seven of the Background paragraphs in Chicago Atlantic Admin, LLC's Objection to Motion for An Order Approving Agreement Between the Debtor, Charlene R. Heller, and Orrstown Bank Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Chicago Atlantic Objection") [DI 282].

15. By way of brief background, Debtor filed a voluntary petition relief for bankruptcy protection under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 10, 2025 (the Petition Date").

8

4921-4332-8072, v. 1

16. On February 24, 2025, the Debtor filed his schedules of assets (as amended, the "Schedules").

17. As summarized in the Chicago Atlantic Objection, the Debtor's primary assets include a home co-owned with his wife in Lititz, Pennsylvania and a home co-owned with Randall Leaman, in Sea Isle, New Jersey (the "Sea Isle Property"). The Debtor declared the Sea Isle Property to be his principal asset [DI 1, Petition p. 2].

18. Debtor's schedules also reflect "… a grossly inflated and unreliable amount relative to the Debtor's businesses…" *See Chicago Atlantic Objection,* paragraph 7.

19. On April 4, 2025, through April 7, 2025, Prestige filed a total of 25 proofs of claim in the total amount of over $500,000,000. These claims are presumptively valid and relate to, *inter alia*, Debtor's fraudulent connect perpetrated against Prestige's investors in furtherance of Debtor's Ponzi scheme.

20. On May 20, 2025, the Debtor filed the 9019 Motion requesting that the Court approve a Settlement Agreement (the "Settlement Agreement") which seeks to resolve several disputed matters between and among the Debtor, Heller Capital Group, LLC ("HCG"), Heller Investment Holdings, LLC ("HIH") and Deerfield Capital LLC ("Deerfield"):

- Adversary Proceeding No. 25-01092 where the Debtor has challenged the extent, validity and Priority of Deerfield's liens;
- Deerfield's stay relief motion to continue State Court Proceedings against the Debtor in Pennsylvania and New Jersey, Prohibit Use of Cash Collateral, Transfer Venue and Expedited Discovery;
- Deerfield's Motion to Appoint Trustee [DI 30]; and
- Purported dispute over Sea Isle Property Proceeds which funds are presently being held in escrow pursuant to an Order of the Court dated April 3, 2025 (the "Sale Order").

## LEGAL ARGUMENT

### A. The Settlement Agreement Is Not Fair and Equitable

4921-4332-8072, v. 1

21. Federal Rule of Bankruptcy Procedure 9019 authorizes a court to approve a settlement after notice and hearing. *Fed. R. Bankr. P. 9019(a)*.

22. While compromises are a normal part of bankruptcy, it is essential that settlement determinations must receive "informed independent judgment of the bankruptcy court." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968), quoting *National Surety Co. v. Coriell,* 289 U.S. 426 (1933).

23. The requirement that bankruptcy plans be both "fair and equitable" applies to compromises as well. *Id.*, citing Ashbach *v. Kirtley,* 289 F.2d.159 (8th Cir. 1961). "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. *Id*.

24. The trustee bears the burden to show that the settlement is in the best interests of the estate. *In re NJ Affordable Homes Corp.*, No. 05-60442(DHS), 2007 WL 4300153, at *2 (Bankr. D.N.J. Dec. 5, 2007). The ultimate inquiry is whether "the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D.Del.1997).

25. In analyzing whether a debtor has met this burden, courts must decide that the settlement is "fair and equitable" and analyze "the value of rights relinquished by the debtor versus the value received in return." *In re Biolitec, Inc.*, 528 B.R. 261, 266 (Bankr. D.N.J. 2014); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 804 (E.D. Pa.1986).

26. Courts should also examine whether the rights of creditors not participating in the settlement are unduly prejudiced. *In re Med. Asset Mgmt., Inc.*, 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000).

27. Finally, the Third Circuit requires consideration of the "*Martin* Factors" in determining the propriety of settlement, *In re Martin*, 91 F.3d 389, 393 (3d Cir.1996):

- The probability of success in litigation;
- The likely difficulties in collection;
- the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
- the paramount interest of the creditors.

28. Here, the 9019 Motion gives short shrift to the Martin Factors, with no in-depth analysis whatsoever. In conclusory fashion, Debtor's brief recites the *Martin* Factors and declares that they have been satisfied. 9019 Motion, at p. 19.

29. Specifically, regarding the probability of success, Debtor simply states that this factor "is unknown" – hardly a sufficient analysis to inform the Court's decision regarding the propriety of the Settlement. *Id.* In addressing the second factor, Debtor simply notes that the dispute involves loans guaranteed by the Debtor and the likelihood of collection "is not foreseeable" – again, completely lacking in any analysis or information from which the Court can make an informed decision as to the foreseeability of collection. *Id.* Regarding the complexity of the litigation, the entirety of Debtor's analysis reflects that "the litigations have spanned over a year and are very complex …" *Id.* Again, the conclusory repetition of this factor, is a far stretch from the required information needed for this Court to approve the Settlement. In addressing the final *Martin* Factor, Debtor simply notes "considering the interest of creditors, resolving this dispute will allow the Debtor to move towards confirmation of his reorganization plan …" *Id.* As with the first three *Martin* Factors, the Debtor provides no basis for this conclusion whatsoever. Without any detail provided, there is simply no basis upon which the Court can make an independent judgment that the Settlement is fair and equitable.

30. Beyond consideration of the *Martin* Factors, the benefits provided to Deerfield through the settlement far outweigh any speculative benefits purportedly received by the

11

Debtor's estate. Indeed, the largely indecipherable terms of the Settlement Agreement contemplate payment in full of Deerfield's $8.9 million dollar claim, including significant cash payments totaling $650,000 up front, along with $15,000 of monthly payments from undisclosed sources. Beyond payments, Deerfield's position is also bolstered with additional collateral and control over a yet-to-be-filed Chapter 11 Bankruptcy of HCG, with significant distributions from each of HCG's portfolio companies. *9019 Motion,* at P. 26.

31. The following is a list of certain additional benefits to be extracted by Deerfield, while other creditors are forced to sit on the sideline, receiving nothing:

- Debtor acknowledges loan of $5.9 million pursuant to a promissory note with a balance of over $8.9 million as of the petition date;
- Debtor waiving any defenses or counterclaims to Deerfield's liens and claims;
- Debtor confirming Deerfield has 15% interest in HIH and unexercised pledge of 85% of HIH and a valid pledge of membership interest in GCC Investment Holdings LLC (GCC);
- Debtor agrees that no defenses to pledges on interests in GCC and HIH;
- Deerfield to receive additional ten percent (10%) membership interest in HIH free and clear of liens;
- Deerfield to receive as collateral, free and clear of other claims, certain Notes held by HIH from Glorious, which can be used up to $8 million of their face value, but will be returned upon payment of Deerfield's $8.9 million claim in full;
- Payments of $15,000 per month thirty days following approval of the Settlement;
- Deerfield to receive certain dividends from HIH, which will not reduce Deerfield's claim;
- HCG's agreement to file a liquidating chapter 11 bankruptcy case which plan terms provide Deerfield to receive twenty-five percent of each portfolio company up to $5,000,000;
- Payment of $350,000 from the sale proceeds of the beach house; and
- Payment of $300,000 from a non-debtor non-disclosed entity upon the sale of certain real-estate.

32. The benefits of the Settlement to the estate are speculative at best. Primarily, coupled with certain forbearance and standstill agreements, Deerfield is "releasing" 49% of the Debtor's interests in HIH for the Debtor to fund a plan of reorganization. In addition, Deerfield

12

has agreed to a myriad of benefits for Debtor's wife, daughter, and son, including a release of claims against them, upon payment of $2 million by December 31, 2025. *Id.*

33.    The primary beneficiaries of the Settlement are Deerfield and the Debtor's family, with little if any cognizable benefit to the Debtor's estate. At a bare minimum, Deerfield will be receiving $650,000, of which $350,000 is derived from the Sea Isle Property. Notably, based upon testimony of Randall Leaman (former CEO of Paramount) and Barry Rynearson (former CFO of Heller Capital), *Paramount* paid for the Sea Isle Property and its expenses. Given that Paramount was the epicenter of the Ponzi scheme perpetuated by Debtor, proceeds from the Sea Isle Property should not be distributed whatsoever at this time.

34.    Moreover, an additional $300,000 is being disbursed from a completely undisclosed source, derived from the proceeds of an undisclosed property. *See* Doc. 258-1 at 10, ¶ 15.b; Doc. 258-2 at 6, ¶ 15.b; Doc. 258-2 at 16, ¶ 9.d. Neither Debtor nor Deerfield reveal who this unnamed third-party is that Debtor can call upon to produce more than a quarter million dollars on an as-is needed basis.

35.    In sum, the 9019 Motion must be denied. It fails to establish that the Settlement Agreement is fair or equitable to other creditors of the Debtor's estate and provides no support to satisfy the *Martin* Factors.

**B. The Settlement Agreement is an Impermissible Sub Rosa Plan**

36.    The Proposed Settlement Agreement should not be approved because it constitutes an impermissible *sub rosa* plan that seeks to dictate the terms of a Chapter 11 plan without the procedural safeguards required under the Bankruptcy Code. Glaringly, the terms of the Settlement Agreement seek to dictate the terms of the Debtor's bankruptcy case as well as the contemplated bankruptcy case of HCG.

4921-4332-8072, v. 1

37. A settlement which has the effect of restructuring the rights of creditors or reallocating estate value outside the confines of a confirmed plan under Section 1129 of the Bankruptcy Code violates fundamental provisions of Chapter 11. *Pension Benefit Guar Corp. v. Braniff Airways, Inc.,* 700 F.2d. 935, 940 (5th Cir. 1983). *See also*, *Official Comm of Insecured Creditors v. Cajun Elec. Power Co-Op, Inc.*, 119 F.3d 349, 354 (5th Cir. 1997) (settlements may not be used to short-circuit the requirements of Chapter 11 plan of reorganization).

38. In determining whether a settlement is an impermissible *sub rosa* plan, courts analyze whether the recovery of other creditors is impacted and whether any requirement of plan confirmation is subverted. *In re Energy Future Holdings Corp.,* 648 F. App'x 277, 284-85 (3d. Cir. 2016).

39. Here the Settlement Agreement proposes to distribute significant estate assets, including the Sea Isle Property proceeds to Deerfield. It also proposes to release claims and prioritize Deerfield's claims over all other creditors of the Debtor's estate, thereby circumventing the confirmation process and depriving affected parties of the protections afforded by Sections 1125 and 1129 of the Bankruptcy Code. The Debtor has already used his best efforts to avoid disclosing information to his creditor body – he should not be permitted to coerce a Settlement Agreement upon creditors so as to avoid the strict disclosure requirements in connection with a plan of reorganization.

4921-4332-8072, v. 1

## CONCLUSION

For the foregoing reasons Prestige requests that the Court deny the 9019 Motion and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: May 30, 2025

**STARK & STARK**
A Professional Corporation

By:/s/ *Marshall T. Kizner*
   MARSHALL T. KIZNER, ESQ.

By:/s/ *Joseph H. Lemkin*
  JOSEPH H. LEMKIN, ESQ.
  100 American Metro Blvd.
  Hamilton, NJ 08619
  (609) 791-7922 (direct)
  (609) 895-7395 (facsimile)

-and-

**SAXTON & STUMP LLC**

Joshua J. Voss, Esq.
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
(717) 556-1072 (direct)
(717) 441-3810 (facsimile

*Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC*