| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** |
| **SAXTON & STUMP LLC** <br> Joshua J. Voss, Esq. <br> 280 Granite Run Drive, Suite 300 <br> Lancaster, PA 17601 <br> (717) 556-1072 <br><br> **STARK & STARK, PC** <br> Marshall T. Kizner, Esq. <br> Joseph H. Lemkin, Esq. <br> 100 American Metro Blvd. <br> Hamilton, NJ 08619 <br> Telephone (609) 791-7022 <br> *Attorneys for Prestige* |
| In re: <br><br> DARYL FRED HELLER, <br><br>     Debtor. |

Chapter 11

Case Nos. 25-11354 (JNP)

**OBJECTION TO DEBTOR'S MOTION FOR AN
ORDER TO QUASH 2004 SUBPOENA SERVED**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige") submit this Objection to Debtor's Motion for an Order The Motion to Quash 2004 Subpoena Served by Prestige Fund (the "Motion").

1

**PRELIMINARY STATEMENT**

1. Prestige is a creditor with twenty-five presumptively valid Proofs of Claim filed in this case. Among other things, the proofs of claim set forth direct fraud claims against the Debtor relating to a massive Ponzi scheme perpetrated by him, which defrauded Prestige's investors out of over $500 million.

2. While Prestige does have pending litigation against the Debtor and other entities which the Debtor controls, its Rule 2004 Subpoena (the "Subpoena") does not circumvent or interfere with those proceedings. Instead, the subpoena seeks distinct nonduplicative information that is essential for the administration of the Bankruptcy Case as whole.

3. The Subpoena seeks relevant testimony and documents concerning the financial affairs of the Debtor and matters affecting administration of the Debtor's estate, which are not related to any pending proceeding. Accordingly, the Motion should be denied.

**FACTUAL BACKGROUND**

4. The fundamental factual thesis behind the Motion is that Prestige's twenty-five Proofs of Claim (the "Proofs of Claim") solely relate to a pending litigation in Pennylvania (the "PA Action") and claims against Paramount Management Group, LLC ("Paramount"). *See* Doc. 193-1 at ¶ 2, ¶ 20. The Motion is further backed by the "factual" claim—one certified only by counsel and not Debtor himself—that Debtor "did not run the day-to-day affairs for Paramount." See Doc. 193-1 at ¶ 15; Doc. 193-2 at ¶ 4 (Placona Certification). As shown below, neither thesis withstands factual scrutiny.

5. Let's start with the former thesis first. The Proofs of Claim, numbering twenty-five in total, *see* Claims 13-1 to 38-1, are composed of, among other things, damages for Debtor's direct fraud against each Prestige fund. *See, e.g.*, Claim 13-1, Schedule to Proof of

4912-9034-0937, v. 1

Claim, at 1. Remarkably, not once in Debtor's Motion are the fraud claims mentioned or acknowledged in any way. This is astonishing since the fraud claims are set forth not only in the Proofs of Claim, but also the adversary proceeding that Debtor himself removed to this Court from the Lancaster County Court of Common Pleas. *See Heller v. Prestige Fund A, LLC*, No. 25-01128-JNP. Those fraud claims are also now (but were not at the time of Debtor's Motion) set forth in the Prestige's non-dischargeability complaint and are fully elaborated there. *See Prestige Fund A, LLC v. Heller*, No. 25-01199-JNP.

6. Next, Debtor's second thesis—that he did not operate Paramount—is also factually faulty. Analysis on this point can start with a basic corporate flow chart. Heller Capital Group, LLC is the majority owner of Paramount. *See* Doc. 203-1 at 23, transcript at 42:3-13 (deposition of Randall Leaman); Doc. 203-1 at 85, question 41 (deposition of Dennis Ream). Heller Capital, in turn, is 99% owned by Debtor. *See* Doc. 72 at 4, question 19 (Official Form 106A/B). Thus, the connection between Paramount and Debtor, on paper, is plain.

7. But the connection between Debtor, Paramount, and the Prestige's claims is not just on paper. As set forth at length in Prestige's prior briefing and exhibits on this matter, Debtor was wholly in control of Paramount and its financial dealings, in particular. *See* Doc. 203 at 5-8 (Prestige's Brief). Additional discovery further bears this out. For example, the former CFO of Paramount, Dennis Ream, supplied a supplemental set of written deposition responses. Attached as **Exhibit "A"** to the Certification of Joseph Lemkin ("Lemkin Cert."). Ream revealed, consistent with his prior testimony, that Debtor controlled transfers of money into and out of Paramount and sales of significant assets, saying directly: "our team considered Paramount's cash to be ultimately controlled by Daryl Heller and took his direction." *See id.* at ¶ 118

3

(emphasis added); *see also id.* at ¶¶ 102, 105, 107, 108, 109, 114, 115, 117, 120, 126, 161, 162, 168.

8. When describing the shortfalls of cash at Paramount in 2024, Ream testified Debtor fully acknowledged his direct role in Paramount's financial affairs: "Daryl Heller told everyone that there was not an issue and that he anticipated money coming into Paramount. He explained that the cash flow issues *were his fault and apologized*, but assured Paramount that there was no reason for concern." *See id.* at ¶ 161 (emphasis added).

9. Testimony from the former CFO of Heller Capital, Barry Rynearson, further demonstrates that Debtor controlled Paramount. Attached as **Exhibit "B"** to the Lemkin Cert. Rynearson testified that Paramount generated over 90% of Heller Capital's earnings. *See id.* at 22:18-23:1. For this 90-plus percent earner for Heller Capital, Debtor set its "strategic direction," meaning he decided "where the company is going tomorrow." *See id.* at 57:12-19. Rynearson also testified that "on a regular basis" Paramount made distributions to Heller Capital on Debtor's say so. *See id.* at 58:6-16, 58:25-59:2.

10. Debtor also demanded and received distributions from Paramount that were booked as loans, doing so perhaps 100 times or more. *See id.* at 60:25-61:12. Debtor also used Paramount as a piggy bank to fund other, unrelated businesses, seemingly siphoning off over $20 million to fund completely unrelated cannabis businesses in Michigan. *See id.* at 63:15-66:24, 72:19-73:25, 111:17-113:8. And, despite Debtor's claim that he did not run the day to day affairs of Paramount, he was somehow able to muster sufficient financial data about it to convince Rynearson that the company wasn't a Ponzi scheme, doing so with a profit and loss statement that Debtor generated and a presentation purporting to show that Paramount was able to make payments to investors based solely on the operations of ATMs. *See id.* at 38:19-45:18.

11. Next, text messages from Heller Capital's former Chief Operating Officer, Aaron Fogleman, to Debtor, attached as **Exhibit "C"** to the Lemkin Cert., further fully confirm Debtor's complete control of Paramount's affairs, especially its finances. *See id.* at 8, 10, 13-18, 19, 22, 24, 28, 35, 39, 74, 80, 84, 99, 126, 127, 128, 140, 142.

12. Lastly, recent interrogatory answers from Debtor on behalf of Paramount further dispel the notion that he did not run its day-to-day affairs. Indeed, upon orders from both this Court and the Court of Common Pleas of Lancaster County, *see* Doc. 274 (Order), Debtor finally supplied answers to certain interrogatories in aid of execution served months ago on Paramount. Attached as **Exhibit "D"** to the Lemkin Cert. Debtor's response to every question, save for the one asking him to disclose his own name, was that "[o]n the advice of counsel, I invoke my fifth amendment privilege and respectfully decline to answer the question[.]" *See id.* at 9-29, interrogatories 2-49. In other words, Debtor cannot disclose a single fact about Paramount—no matter how banal, *see, e.g.*, *id.* at 10, interrogatory 5 ("Identify all members of Paramount.")—without exposing himself to criminal sanction. This certainly does not sound like the response of person who "did not run the day-to-day affairs for Paramount." *See* Doc. 193-1 at ¶ 15; Doc. 193-2 at ¶ 4; instead, it sounds just like the response of person who ran a massive fraudulent scheme that was perpetuated because of his day-to-day conduct at Paramount.

## LEGAL ARGUMENT

### A. Prestige Is a Party in Interest

13. Once a bankruptcy case is filed, any party in interest may seek a Rule 2004 examination to obtain information on the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

5

14. Although the rule does not specifically define who constitutes a "party in interest," courts have interpreted the phrase liberally to include the trustee, creditors, the debtor and related entities, and other parties who have an interest in the administration of the estate. *See, e.g.*, *In re Hammond*, 131 B.R. 78, 82 (Bankr. S.D. Ohio 1991); *In re Ecam Pubs.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *In re Summit*, 891 F.2d 1, 5 (1st Cir. 1989).

15. Here, there can be no question that Prestige is a party in interest, with its Proofs of Claim that have a value of over $500,000,000. Pursuant to section 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). Federal Rule of Bankruptcy Procedure 3001(f), provides that a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." A party objecting to a claim must present evidence sufficient to rebut the claim's presumptive validity. *In re Monroe Ctr. II Urban Renewal Co., LLC*, 2012 Bankr. LEXIS 3857 (Bankr. D.N.J. August 22, 2012) (citing *Cornell & Co. v. Seaway Painting (In re Cornell & Co.)*, 229 B.R. 97, 103 (Bankr. E.D. Pa. 1999)); *see also Promise Healthcare Grp., LLC v. Michaelson*, 130 F.4th 56 (3d. Cir. 2025).

16. Here while the Debtor has just recently filed a motion to expunge the Proofs of Claim, other than a hearsay certification of Debtor's Counsel with conclusory supporting statements (which certification, notably, does not purport to certify the bulk of the facts in the motion itself), Debtor provides no evidence whatsoever to rebut the Proofs of Claim.

17. Accordingly, Prestige is a party in interest in this bankruptcy case, entitled to seek discovery pursuant to Rule 2004.

4912-9034-0937, v. 1

### B. The Existence of a Pending Adversary Proceeding Does Not Bar Rule 2004 Discovery

18. Federal Rule of Bankruptcy Procedure 2004 provides for wide-ranging discovery. Specifically, Rule 2004 provides for the examination of an entity under this Rule 2004, or of a debtor relating to:

> (A) the debtor's acts, conduct, or property;
> (B) the debtor's liabilities and financial condition;
> (C) any matter that may affect the administration of the debtor's estate; or
> (D) the debtor's right to a discharge.
>
> (2) *Other Topics in Certain Cases*. In a Chapter 12 or 13 case, or in a Chapter 11 case that is not a railroad reorganization, the examination may also relate to:
>
> (A) the operation of any business and the desirability of its continuing;
> (B) the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered; and
> (C) any other matter relevant to the case or to formulating a plan.

Fed. R. Bankr. P. 2004(b).

19. Rule 2004 was designed to "show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." *In re Drexel Burnham Lambert, Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991). To meet this objective, discovery under Rule 2004 is broader than discovery under the Federal Rules of Civil Procedure; in fact, it is often compared to a "fishing expedition." *See In re Drexel*, 123 B.R. at 711 (instructing that Rule 2004 examination "can be legitimately compared to a fishing expedition." (citing *In re Vantage Petroleum, Corp*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)).

20. While the "pending proceeding rule" presents limitations on an interested party from using discovery obtained pursuant to Rule 2004 examination in a concurrent adversary proceeding, it is not a bar to such discovery. *In re Enron*, 281 B.R. 836, 841-42 (Bankr. S.D.N.Y. 2002). Rather, Courts must simply assess whether the subpoena is being used to circumvent

discovery limitations in the adversary proceedings. *Id.* The pending proceeding rule does not extend to issues that are not raised in the adversary proceeding. *See In re Buick*, 174 B.R. 299, 306 (Bankr. D. Colo. 1994).

21. Here, the Subpoena is directed to broad issues of financial conduct and estate administration beyond the narrower claims in the pending adversary proceeding. It is not duplicative and does not seek discovery prohibited in the adversary proceeding. Rather, it seeks disclosure of financial information to which all creditors should be entitled. In the context of a Debtor who is the mastermind of a massive Ponzi scheme which defrauded multiple parties out of over $800,000,000, it is critically important that Prestige be entitled to proceed with its Rule 2004 discovery efforts.

**CONCLUSION**

For the foregoing reasons Prestige requests that the Court deny the Motion and grant such other and further relief as the Court deems appropriate.

>Respectfully submitted,
>
>STARK & STARK
>A Professional Corporation
>
>By:/s/ *Marshall T. Kizner*
>  MARSHALL T. KIZNER, ESQ.
>
>By:/s/ *Joseph H. Lemkin*
>  JOSEPH H. LEMKIN, ESQ.
>  100 American Metro Blvd.
>  Hamilton, NJ 08619
>  (609) 791-7922 (direct)
>  (609) 896-9060 (main)
>  (609) 895-7395 (facsimile)
>
>  -and-
>
>  SAXTON & STUMP LLC
>  Joshua J. Voss, Esq.
>  280 Granite Run Drive, Suite 300
>  Lancaster, PA 17601
>  (717) 556-1072 (direct)
>  (717) 441-3810 (facsimile
>
>  *Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC*