| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| **SAXTON & STUMP LLC**<br>Joshua J. Voss, Esq.<br>280 Granite Run Drive, Suite 300<br>Lancaster, PA 17601<br>(717) 556-1072<br><br>**STARK & STARK, PC**<br>Marshall T. Kizner, Esq.<br>Joseph H. Lemkin, Esq.<br>100 American Metro Blvd.<br>Hamilton, NJ 08619<br>Telephone (609) 791-7022<br>*Attorneys for Prestige* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>    Debtor. | Chapter 11<br><br>Case Nos. 25-11354 (JNP) |

**OBJECTION TO MOTION FOR AN ORDER STAYING OR SUSPENDING EXAMINER AND JOINDER TO SILVERVIEW OBJECTION**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige") submit this Objection (the "Objection") to Deerfield Capital, LLC's Motion for an Order Staying and/or Suspending the Examiner (the "Suspension Motion")

1

and Joinder to Silverview Credit Partners LP'S (I) Omnibus Objection to (A) Debtor's Motion to Approve Compromise or Settlement Under Rule 9019, and (B) Deerfield's Motion for an Order Staying and/or Suspending the Examiner; and (II) Statement In Support of Prestige's Motion to Appoint Trustee (the "Silverview Objection").

## PRELIMINARY STATEMENT

1.  The Suspension Motion was filed by one creditor - Deerfield Capital, LLC ("Deerfield") - at the behest of Darryl Heller (the "Debtor"), to continue the cloak over his financial affairs, and to advance an improper settlement with Deerfield which endeavors to effectuate *sub rosa* plans in this case and in the yet to be filed case of Heller Capital Group, LLC ("HCG").

2.  By way of brief background, without belaboring the numerous pleadings filed by Prestige and other creditors, this Debtor cannot and should not be trusted. Prestige has filed a Motion to Appoint a Chapter 11 Trustee (the "Trustee Motion") [D.I. 265] and an objection to the 9019 Motion to approve the proposed settlement with Deerfield (the "Deerfield Objection") [D.I. 290]. The Trustee Motion also seeks to amend the Order appointing the Examiner and to ensure his continued service, pending the appointment of a trustee. By way of opposition to the Suspension Motion, Prestige incorporates by reference the Trustee Motion and the Deerfield Objection as if set forth herein at length.

3.  The appointment of the Examiner by this Court was to serve the interests of the estate and all stakeholders, not merely the interests of Deerfield and the Debtor. Numerous creditors were involved in the decision to appoint the Examiner. None – other than Deerfield – have supported the Suspension Motion.

4928-0017-8761, v. 1

4. The Examiner's role is independent, impartial, and designed to provide transparency and accountability – fundamental values of the bankruptcy process. The Examiner should not be suspended due to the self-serving efforts of one creditor and an untrustworthy Debtor.

## LEGAL ARGUMENT

5. Deerfield provides no legal authority whatsoever for the Suspension Motion.

6. Section 1104(c) of the Bankruptcy Code mandates the appointment of an examiner if: "(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

7. Once appointed, the examiner's duties may include investigating "the acts, conduct, assets, liabilities, and financial condition of the debtor" as well as "any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(b).

8. An examiner is not appointed to represent or advocate for any individual creditor or stakeholder. Everything that an examiner does must be done with loyalty to the creditors, shareholders, and the judicial process. *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 435-436 (6th Cir. 2004).

9. While the Examiner's appointment may have been initially triggered by a Deerfield filing—one joined and participated in by *multiple* other creditors—the Examiner's function is not limited to Deerfield's interests. Rather, the Examiner serves a broader oversight function, providing impartial investigations and reports to the Court to ensure fairness, integrity, and transparency.

4928-0017-8761, v. 1

10. Here, the Suspension Motion solely seeks to benefit Deerfield and the Debtor along with their effort to wrest control of Debtor's estate and to control a soon to be filed bankruptcy of HCG. The Motion describes Debtor and Deerfield's settlement as one by which control of HCG and the Debtor's assets are being pledged to Deerfield, purportedly with nothing left behind in this case but an administratively insolvent estate. *See Suspension Motion* at paragraphs 19 – 23. Glaringly, the Suspension Motion is in sharp contrast to the Deerfield's 9019 Motion, which alleges that Deerfield will "release its forty-nine percent (49%) of Heller's remaining interests in HIH, which Heller can use to fund a Plan." *See* Doc. No. 258-1, at paragraph 26, sub-paragraph 6. This is in stark contrast to Deerfield's allegation in the Suspension Motion that the estate will be left administratively insolvent with nothing around which to reorganize.

11. Deerfield and Debtor's efforts to suspend the Examiner are not to benefit the estate, creditors, or the judicial process, but rather simply to advance Deerfield's and Debtor's selfish purposes. The Examiner should be permitted to continue to investigate the massive Ponzi scheme perpetrated by the Debtor. Creditors have been working to support the Examiner and have provided significant information that will reveal substantial misconduct by the Debtor. In addition, the Examiner has issued numerous subpoenas to advance his investigation. [D.I. Nos.: 180, 183, 184, 185, 187, 190, 191, 232 and 261]. The Examiner must continue his investigation to determine if based upon the Debtor's misconduct his numerous entities should be collapsed into this bankruptcy estate for the benefit of all creditors, rather than tied up with a ribbon to benefit Deerfield.

12. Indeed, based upon recent discovery secured by Prestige, the overwhelming majority of funds that capitalized Debtor's massive fraudulent enterprise were from Paramount,

4

with over 90% of all funds "earned" by Heller Capital sourced to Paramount. *See* Doc. 297-3, at page 8 (Barry Rynearson deposition). Paramount was the center of Debtor's Ponzi scheme where hundreds of millions of dollars were invested by Prestige and other investors. To allow Debtor and Deerfield the opportunity to wrest control of all assets likely derived through the Ponzi scheme will not serve to benefit creditors, particularly the investors who Debtor defrauded, but will continue Debtor's misconduct and improperly direct estate assets to Deerfield.

13. Moreover, prematurely discharging the Examiner on the basis that Deerfield triggered the appointment of the Examiner mischaracterizes the participation of the other creditors, the role of the Examiner, and the scope of the Court's oversight. Once the Examiner is appointed, the issue is no longer about who moved for the appointment; the inquiry turns to whether the Examiner's duties have been completed, whether there remains a need for impartial investigation or oversight, and whether the continued appointment serves the interests of the estate.

14. The Bankruptcy Code does not condition the appointment or continuation of an examiner upon ongoing support by the party who originally moved for the appointment. Accordingly, the Examiner should be permitted to continue to fulfill the duties assigned by the Court until such time as the Court determines that those duties have been completed or are no longer necessary. That time has not been reached yet.

## **JOINDER**

15. In further response to the Suspension Motion, Prestige adopts and joins the Silverview Objection as if fully set forth herein at length. *See* Doc. 296.

4928-0017-8761, v. 1

## CONCLUSION

16. For the foregoing reasons Prestige requests that the Court deny the Suspension Motion and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

        STARK & STARK
        A Professional Corporation

        By:/s/ *Marshall T. Kizner*
          MARSHALL T. KIZNER, ESQ.

        By:/s/ *Joseph H. Lemkin*
        JOSEPH H. LEMKIN, ESQ.
        100 American Metro Blvd.
        Hamilton, NJ 08619
        (609) 791-7922 (direct)
        (609) 896-9060 (main)
        (609) 895-7395 (facsimile)

        -and-

        SAXTON & STUMP LLC
        Joshua J. Voss, Esq.
        280 Granite Run Drive, Suite 300
        Lancaster, PA 17601
        (717) 556-1072 (direct)
        (717) 441-3810 (facsimile

*Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC*

Dated: June 3, 2025