| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>HAYNES AND BOONE, LLP<br>30 Rockefeller Plaza<br>26th Floor<br>New York, NY 10112<br>Telephone: 212.659.7300<br>Richard Kanowitz (richard.kanowitz@haynesboone.com)<br>Lauren Sisson (lauren.sisson@haynesboone.com)<br>*Counsel to Chicago Atlantic Admin, LLC* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>                    Debtor. | Case No. 25-11354 (JNP)<br><br>Chapter 11<br><br>Ref. D.I. 258 & 290 |

## CHICAGO ATLANTIC ADMIN, LLC'S (I) OBJECTION TO DEERFIELD CAPITAL, LLC SETTLEMENT MOTION AND (II) JOINDER TO PRESTIGE OBJECTION

Chicago Atlantic Admin, LLC ("Chicago Atlantic") files this Objection (the "Objection") to the *Motion for an Order Approving the Agreement Amongst the Debtor, Heller Capital Group, LLC, Heller Investment Holdings, LLC, and Deerfield Capital, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "9019 Motion") [D.I. 258] and joinder to Prestige's objection to the 9019 Motion [D.I. 290]. In support of the Objection, Chicago Atlantic respectfully states as follows:

### Preliminary Statement[1]

1.      Through the 9019 Motion and the earlier filed settlement motion [D.I. 213], the Debtor seeks to distribute estate funds from the sale of the principal asset in this bankruptcy case

---

[1] Capitalized terms used in this preliminary statement but not otherwise defined have the meanings given to such terms below.

1

to select unsecured creditors prior to the filing of a chapter 11 plan. The Court should deny this 9019 Motion.

2. The Debtor fails to meet his burden to show that the Settlement Agreement is fair and equitable and fails to adequately address the *Martin* factors that the Court will use to determine whether to approve or reject the Settlement Agreement.

3. The proposed Settlement Agreement filed by the Debtor violates the absolute priority rule and is a *sub rosa* plan.

## Background[2]

### A.  Incorporation of Background in Chicago Atlantic Orrstown 9019 Objection.

4. Chicago Atlantic recites and integrates as if fully set forth herein the background paragraphs five through nine and paragraph eleven in *Chicago Atlantic Admin, LLC's Objection to Motion for an Order Approving the Agreement Between the Debtor, Charlene R. Heller, and Orrstown Bank Pursuant to Rule 9019 the Federal Rules of Bankruptcy Procedure* [D.I. 282] (the "Chicago Atlantic Orrstown 9019 Objection"). Capitalized terms used but otherwise defined have the meanings given to them in the Chicago Atlantic Orrstown 9019 Objection.

### B.  Problematic provisions with the Deerfield Agreement.

5. On May 20, 2025, the Debtor filed the 9019 Motion, seeking approval of an agreement [D.I. 258-2] (the "Deerfield Agreement") which purports to resolve numerous disputed matters between and among the Debtor, Deerfield Capital ("Deerfield") Heller Capital Group, LLC ("Heller Capital") and Heller Investment Holdings, LLC ("Heller Investment"). The purported disputed matters include:

---

[2] In the interest of brevity this Objection assumes familiarity with the proceedings thus far, and therefore this section only includes information relevant to Chicago Atlantic's Objection to the 9019 Motion.

2

- Deerfield filed a secured proof of claim for $9,150,367.12 for "Judgment and Money Loaned. Claim No. 38. Deerfield's asserted security interest is real estate and "pledge as to Heller Investment Holding, LLC & Heller Capital." Deerfield's addendum says the security is only as to the interest in the companies and "the amount that is secured versus unsecured is unknown."

- The Debtor, however, is challenging Deerfield's liens. 9019 Mot. ¶ 6(a). Indeed, the Debtor filed an adversary proceeding against Deerfield asserting that Deerfield "does not hold a mortgage" on the Debtor's Pennsylvania residence or the Sea Isle Property. Adv. P. 25-01092, D.I. 1 ¶ 9. Moreover, the Debtor alleges that Deerfield has not domesticated its judgment in New Jersey. *Id.* at ¶ 11. The Debtor also alleges that Deerfield's UCC-1 filing is limited to "Heller Investment Holdings, LLC" and does not mention the Sea Isle Property, the Pennsylvania property, or the Debtor's personal assets. *Id.* at ¶¶ 12–13.

- The Debtor and Deerfield are also involved in a removed cause of action at Adv. P. No. 25-01038. Pursuant to this cause of action, Deerfield seeks to execute on the Debtor's assets as an alleged judgment creditor. Adv. P. No. 25-01038, D.I. 1 at ¶ 6. The Debtor contends he "filed bankruptcy to stave of Deerfield's collection actions(s) to protect his property and address all creditors' claims in an orderly and restructured manner." *Id.*

6. Under the Deerfield Agreement, without determining the validity of Deerfield's purported liens, the Debtor seeks to, among other things:

- Provide Deerfield with $350,000 from the Sea Isle proceeds (9019 Mot. ¶ 26, 15.a), despite an admission that "Deerfield agrees that it does not have a lien on the sales proceeds of the Beach House or the proceeds thereof" (*id.* at ¶ 26, 1);

- Stipulate that Deerfield has a claim of $8,916,414.44 (*id.* at ¶ 26, 1), despite pending litigation disputing Deerfield's claims;

- Waive any defenses or counterclaims to Deerfield's liens or claims (*id.* at ¶ 26, 2);

- Affirm Deerfield's interests in and distribute to Deerfield various interests in the Debtor's companies, including Heller Investment and GCC Investment Holdings LLC (*id.* at ¶ 26, 3–8);

- Provide Deerfield a security interest in certain notes held by a holding company, Glorious, owned by Heller Investment (*id.* at ¶ 26, 9);

- Authorize Heller Investment to pay Deerfield $15,000 per month from an undisclosed source (*id.* at ¶ 26, 10);

3

- Pay Deerfield's legal fees associated with the "litigation with GCC Investment Holdings and Glorious Cannabis Company Multi State Operator" from Heller Investment (*id.* at ¶ 26, 12);

- Commence a chapter 11 liquidating bankruptcy for Heller Capital Group, LLC, with a pre-arranged structure for how Deerfield will receive recoveries from this bankruptcy case (*id.* at ¶ 26, 14.a–b);

- Pay Deerfield an additional $300,000 from non-Debtor real property sales (*id.* at ¶ 26, 15.b); and

- Release claims against various non-debtors (*id.* at ¶ 26, 16).

7. At best, the Deerfield Agreement requires Deerfield to release certain of its interests in Heller Investment which the Debtor "can use to fund a Plan." *Id.* at ¶ 26, 6. The Debtor represents that Heller Investment "is valued at approximately $20,000,000 to $30,000,000" and proposes to distribute various equity interests therein to Deerfield. *Id.* at ¶ 29. This value is speculative, Heller Investment is subject to various litigation, and the Debtor has no plan on file explaining on how to liquidate these interests for the benefit of creditors. The Debtor, however, also represents that "the interest in [Heller Investment] and the $350,000 cash is the only guaranteed money to Deerfield." *Id.* at ¶ 32. Thus, there remains an inherent tension in how the value of Heller Investment could benefit the estate if Deerfield is not even guaranteed a recovery therefrom. Stated simply, the Debtor does not quantify the benefits the Deerfield Agreement will bring to the estate or to other creditors.

8. On May 30, 2025, Prestige Fund A, LLC and various affiliates (collectively, "Prestige") filed their objection to the 9019 Motion [D.I. 290] (the "Prestige Deerfield Objection"). Chicago Atlantic fully supports and joins the Prestige Deerfield Objection.

**Objection**

A. **The 9019 Motion is Not Fair and Equitable and Fails to Properly Address the *Martin* Factors.**

    i. **Applicable Law.**

9. A bankruptcy court may approve a compromise or settlement on motion of a trustee after notice and hearing as provided in Federal Rule of Bankruptcy Procedure 2002. FED. R. BANKR. P. 9019(a).

10. The trustee (or debtor-in-possession) bears the burden to show that the settlement is in the best interests of the estate. *In re NJ Affordable Homes Corp.,* No. 05-60442(DHS), 2007 WL 4300153, at *2 (Bankr. D.N.J. Dec. 5, 2007).

11. In assessing whether the trustee has met this burden, courts must decide that the settlement is "fair and equitable" and analyze "the value of rights relinquished by the debtor versus the value received in return." *In re Biolitec, Inc.,* 528 B.R. 261, 266 (Bankr. D.N.J. 2014); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 804 (E.D. Pa.1986).

12. "[A] settlement's fidelity to the requirements of the Bankruptcy Code will generally be the most important factor is determining whether a settlement is fair and equitable." *In re Energy Future Holdings Corp.,* 648 F. App'x 277, 283 (3d Cir. 2016).

13. Courts should also examine whether the rights of creditors not participating in the settlement are unduly prejudiced. *In re Med. Asset Mgmt., Inc.,* 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000).

14. "In determining whether to approve a proposed settlement, a court is permitted to take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *In re NJ Affordable Homes Corp.,* 2007 WL 4300153, at *2 (citation and quotations omitted); *see* FED. R. EVID. 201.

15. Additionally, the Third Circuit set forth the following factors (the "*Martin* factors") to consider when analyzing a proposed settlement in *In re Martin,* 91 F.3d 389, 393 (3d Cir.1996).

- The probability of success in litigation;

- The likely difficulties in collection;

- the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

- the paramount interest of the creditors.

**ii.    As Applied to the Deerfield Agreement.**

16. Under the Deerfield Agreement, the value recovered by the estate is minimal, while Deerfield and other non-debtors receive significant monetary and legal benefits. As explained above, Deerfield would receive an allowed, agreed claim for $8,916,414.44, guaranteed cash of $350,000 from the Sea Isle Property (which does not secure Deerfield's debt), interests in Heller Investment (which according to the Debtor, have significant value), monthly cash payments of $15,000, and proceeds from non-debtor real property sales, among other material benefits.

17. The non-debtor benefits include, among others:

- Deerfield's forbearance from exercising rights against Heller Investment (9019 Mot. ¶ 26, 5);

- Releases for the benefit of "the Debtor's spouse, Debtor's son, Debtor's daughter, Accordo, L.P., Brigantine Group, Inc., and Brookfield L.P" (*id.* at ¶ 26, 16); and

- A standstill for all litigation against these various non-debtors (*id.* at ¶ 26, 19.a).

18. The purported benefits to the Debtor include:

- Deerfield's agreement to make certain interests in Heller Investment available to fund the Debtor's "plan of reorganization" (*id.* at 26, 5). It is unclear what actual benefit this is to the estate, particularly since Heller Investment is involved in various pre-petition litigation and is of a speculative value (Chicago Atlantic Orrstown Obj. ¶ 7).

- Deerfield will "suspend all existing actions and potential claims" pending the settlement or a subsequent default (9019 Mot. ¶ 26, 17).

- Deerfield will withdraw subpoenas (*id.* at ¶ 26, 19.c).

- Deerfield will support the Debtor's plan (which does not exist as of this pleading) (*id.* at ¶ 26, 19.d).

- Deerfield will seek to stop the examiner from performing his work (*id.* at ¶ 26, 19.e–f).

19. The 9019 Motion does not quantify these benefits to the Debtor or the estate. Indeed, any benefit apparently hinges on the Debtor confirming a plan of reorganization. That premise is extremely questionable given that the Debtor's plan relies on interests in non-debtor property of an unknown, speculative value that is subject to various pre-prepetition litigation (i.e., Heller Investment). Moreover, the Debtor asserts a significant benefit is "eliminating the cost and fees of the Examiner and his counsel." *Id.* at ¶ 21. It is inappropriate for the Debtor to dictate that unilaterally removing the Examiner is a benefit for the estate, particularly when the Examiner exists for the benefit of the estate in the first place and creditors want an independent fiduciary due to a lack of distrust of the Debtor (e.g., Prestige's motion to appoint a trustee, D.I. 265).

20. Deerfield's proposed benefits, however, are significant. Deerfield will receive an agreed claim amount (despite the Debtor's pending litigation seeking to avoid purported liens), guaranteed payments from estate property ($350,000 in Sea Isle Property proceeds, despite no lien on such proceeds), interest in various non-estate property, payments from non-debtors, and pre-arranged recoveries in a future Heller Capital Group, LLC bankruptcy.

21. As discussed further below, the Deerfield Agreement allows the Debtor to impermissibly give special treatment to a creditor he alleges is not secured, in exchange for Deerfield's support of a future hypothetical reorganization plan, and Deerfield's release of certain non-debtors.

22. The Debtor gives the *Martin* factors scant attention in the 9019 Motion and addresses them in two paragraphs within the 14-page brief. 9019. Mot. ¶ 18–19. As to the first two factors, the Debtor concludes that "the probability of success is unknown" and "the likelihood of collection is not foreseeable." *Id.* ¶ 19.

23. As to the complexity of the litigation, the Debtor argues that "[t]he litigations have spanned over a year and are very complex." *Id.* That may very well be true, but the current active litigation not stayed by the Debtor's bankruptcy consists of an adversary proceeding he filed, removed litigation against Deerfield (Adv. P. No. 25-11354), and Deerfield's discharge action (Adv. P. No. 25-01211). The disputes boil down to whether Deerfield properly perfected its liens under state law, which is not complicated. No further evidence is offered to support the Debtor's contention that the current litigation is complex other than mentioning that "[d]epositions and discovery will be needed." *Id.*

24. Finally, the Debtor barely alludes to the last factor, the "paramount interest of creditors," by claiming that the Deerfield Agreement "will allow the Debtor to move towards confirmation of his reorganization plan." *Id.* The details of this reorganization plan are currently unknown since the Debtor has not filed a plan. The 9019 Motion does not explain how it is in the interest of creditors other than Deerfield to distribute at least $350,000 in estate funds to one creditor or remove the Examiner. The Debtor fails to explain how the dismissal of the Deerfield adversary proceedings (with approximately twenty others pending) will move the Debtor toward a reorganization. The Debtor's apparent reorganization plan relies on interests in Heller Investment, which are of an unknown and speculative value. The only concrete, known asset is the Sea Isle Property—the proceeds of which will be largely diminished by distributions to Deerfield and Orrstown.

25. The Settlement Agreement is neither fair nor equitable to the other unsecured creditors of the Debtor, and the 9019 Motion utterly fails to satisfy even the admittedly low bar set forth by the *Martin* factors. As such, the 9019 Motion should be denied.

**B.    The Settlement Agreement is an Impermissible *Sub Rosa* Plan that Violates the Absolute Priority Rule.**

    **i.    Applicable law.**

26. "A debtor . . . cannot short circuit the requirements of 11 U.S.C. § 1101 *et seq.* for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets." *In re Braniff Airways Inc.,* 700 F.2d 935 (5th Cir.1983).

27. Concerns about a *sub rosa* plan usually occur in situations where a debtor proposed to sell all or most of their assets prior to the confirmation of a plan. *In re Decora Indus., Inc.,* No. 00-4459 JJF, 2002 WL 32332749, at *8 (D. Del. May 20, 2002).

28. When considering whether a settlement is a *sub rosa* plan, courts look to whether the recovery of other creditors is impacted and whether any requirement of plan confirmation is subverted. *In re Energy Future Holdings Corp.,* 648 F. App'x 277, 284–85 (3d Cir. 2016); *see also In re Capmark Fin. Grp. Inc.,* 438 B.R. 471, 513–14 (Bankr. D. Del. 2010) ("[Courts] of this Circuit have also acknowledged and applied the [*sub rosa*] doctrine to…settlements under Bankruptcy Rule 9019 to ensure they do not impermissibly dictate the terms of eventual reorganization plans or bypass the Code's procedural safeguards.").

29. "The priority system applicable to . . . distributions has long been considered fundamental to the Bankruptcy Code's operation." *Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, 464–65 (2017).

### ii. As Applied to the Deerfield Agreement.

30. The Debtor has already sold the primary asset of the bankruptcy estate, leaving only membership interests with speculative value. The Debtor now seeks, through this 9019 Motion (and a first filed at D.I. 213), to distribute the funds from the Sea Isle Property sale to select creditors at the expense of the rest of the unsecured creditor body, who are unable to rely on a creditor's committee to protect their rights.

31. It is indisputable that paying certain unsecured creditors large sums of money while expecting others to share in the leftovers pro-rata is a violation of the absolute priority rule.

32. Additionally, should this 9019 Motion and the motion at D.I. 213 be approved, there would appear to be nothing of substance to support a reorganization plan. The Debtor is seeking to avoid the hurdles of plan confirmation through these two motions. The 9019 Motion is an unabashed attempt to avoid the rules of priority and represents a *sub rosa* plan. The 9019 Motion should be denied.

### Conclusion

WHEREFORE, Chicago Atlantic requests that the Court enter an order (i) denying the 9019 Motion, and (ii) granting Chicago Atlantic Admin such other and further relief as the Court deems appropriate.

Dated: June 3, 2025

Respectfully submitted,

By: */s/ Richard S. Kanowitz*
Richard S. Kanowitz
Lauren M. Sisson
HAYNES AND BOONE, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: 212.659.7300
Email: richard.kanowitz@haynesboone.com
Email: lauren.sisson@haynesboone.com

Counsel to Chicago Atlantic Admin, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on June 3, 2025.

                                      */s/ Richard S. Kanowitz*
                                      Richard S. Kanowitz