UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

JERROLD S. KULBACK
DOUGLAS G. LENEY
ARCHER & GREINER
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ  08043
Tel: (856) 795-2121
jkulback@archerlaw.com
dleney@archerlaw.com
*Attorneys for Steward Capital Holdings LP and Avenaero Holdings, LLC*

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br>                Debtor. | Chapter 11<br><br>Case No. 25-11354-JNP |

**OBJECTION AND JOINDER OF (I) STEWARD CAPITAL HOLDINGS LP, AND (II) AVANAERO HOLDINGS, LLC TO (A) DEBTOR'S MOTION TO APPROVE COMPROMISE AMONG DEBTOR, CHARLENE R. HELLER, AND ORRSTOWN BANK, (B) DEBTOR'S MOTION TO APPROVE COMPROMISE AMONG DEBTOR, HELLER CAPITAL GROUP, LLC, HELLER INVESTMENT HOLDINGS, LLC, AND DEERFIELD CAPITAL, LLC PURSUANT TO FED. R. BANKR. P. 9019, AND (C) MOTION OF DEERFIELD CAPITAL, LLC FOR AN ORDER <u>STAYING AND/OR SUSPENDING THE EXAMINER</u>**

Steward Capital Holdings LP ("<u>Steward</u>") and Avenaero Holdings, LLC ("<u>Avenaero</u>") (collectively, "<u>Obectors</u>"), by and through their undersigned attorneys, Archer & Greiner, P.C., hereby files this (i) objection to (a) the *Motion to Approve Compromise Among Debtor, Charlene R. Heller, and Orrstown Bank* [D.I. 213] (the "<u>Orrstown 9019 Motion</u>") and (b) the *Motion to Approve Compromise Among Debtor, Heller Capital Group, LLC, Heller Investment Holdings, LLC, and Deerfield Capital* [D.I. 258] (the "<u>Deerfield 9019 Motion</u>," and collectively with the

Orrstown 9019 Motion, the "<u>Settlement Motions</u>") filed by the above-captioned debtor, Daryl

Fred Heller (the "<u>Debtor</u>"); (ii) objection to the *Motion for an Order Staying and/or Suspending*

*the Examiner* [D.I. 271] (the "<u>Examiner Motion</u>") filed by Deerfield Capital, LLC; and (iii)

joinder to the various other objections filed to the Settlement Motions and Examiner Motion[1],

and in support thereof, respectfully alleges as follows:

## **RELEVANT FACTUAL BACKGROUND**

1.       On February 10, 2025 (the "<u>Petition Date</u>"), the Debtor filed a joint voluntary

petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et*

*seq.* (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of New

Jersey (the "<u>Bankruptcy Court</u>"), Case Number 25-11354-JNP (the "<u>Bankruptcy Case</u>").

## A.       <u>The Steward Loan</u>

2.       Golden Gate Investment Company, LLC ("<u>Golden Gate</u>"), is a limited liability

company organized under the laws of the State of Pennsylvania.  Paramount Management

---

[1] The objections to which the within Objectors join by way of this Objection and Joinder include, without limitation: (i) *Objection to Motion for an Order Approving the Agreement Between the Debtor, Charlene R. Heller, and Orrstown Bank Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure filed by Chicago Atlantic Admin, LLC* [D.I. 282]; (ii) *Objection to Debtor's Motion For An Order Approving The Agreement Amongst the Debtor, Heller Capital Group, LLC, Heller Investment Holdings, LLC and Deerfield Capital, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure filed by Prestige Fund A II, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund A, LLC, Prestige Fund B BTM I, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B, LLC, Prestige Fund D BTM I, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC, WF Velocity Fund VII, LLC, WF Velocity I, LLC* [D.I. 290]; (iii) *Objection to Motion to Approve Compromise or Settlement under Rule 9019 filed by Silverview Credit Partners LP* [D.I. 296]; and (iv) *Objection to (I) Deerfield Capital, LLC Settlement Motion and (II) Joinder to Prestige Objection to Motion to Approve Compromise or Settlement under Rule 9019 filed by Chicago Atlantic Admin, LLC* [D.I. 301] (collectively, the "<u>Settlement Objections</u>"); as well as *Objection to Motion for an Order Staying and/or Suspending the Examiner* [D.I. 298] filed by *Prestige Fund A II, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund A, LLC, Prestige Fund B BTM I, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B, LLC, Prestige Fund D BTM I, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI,*

Group, LLC ("Paramount"), is a limited liability company organized under the laws of the State of Pennsylvania.  At all times relevant hereto, Heller Capital Group, LLC ("HCG") was a member and authorized signatory of both Golden Gate and Paramount.  At all times relevant hereto, the Debtor was the CEO and authorized signatory of HCG.

3.      On February 13, 2024, Golden Gate and Paramount (collectively, the "Obligors"), being indebted to Steward in the principal amount of $4,000,000 (the "Steward Loan") executed and delivered to Steward a Promissory Note and Security Agreement (the "Steward Note"). Under the terms of the Steward Note, Obligors agreed to pay interest-only payments on the Steward Loan at eighteen percent (18%) per annum, beginning April 1, 2024, and continuing thereafter on the 1st day of each month thereafter until the Steward Loan was paid in full. Barring an Event of Default under the Steward Note, the Steward Loan was to be paid in full either upon sixty (60) calendar days written demand by Steward or, if no demand was made, by February 13, 2026.

4.      The Steward Note provides that Obligors' failure to make the interest-only payments or any other payment required thereunder shall be deemed an "Event of Default" if such payment is not cured within 15 days of receiving written notice from Steward.  See, ¶ 6(b)(i) of the Steward Note.  In the Event of Default, the Steward Note provides that the outstanding principal balance of the Steward Loan, and all accrued and unpaid interest thereon shall be accelerated and become immediately due and payable, and the Steward Loan will bear interest at the default rate of interest of twenty percent (20%) per annum.

---

*LLC, Prestige Fund D, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC, WF Velocity Fund VII, LLC, WF Velocity I, LLC (the "Examiner Motion Objection").*

5.     Obligors failed to make the required interest-only payment on the Steward Loan on July 1, 2024.  As a result of this default, on July 11, 2024, Steward issued a written Notice of Default to Obligors, demanding that Obligors cure the default within 15 days.  Obligors failed to cure the aforementioned default within 15 days.

6.     On August 6, 2024, Steward, through its counsel, issued a written Notice of Acceleration, Demand for Payment, and Demand for Turnover and Reservation of Rights to Obligors demanding payment in full.  Obligors failed to pay the Steward Loan in full as demanded.

7.     As of the Petition Date, the following sums are due and owing on the Steward Loan:

| | |
|---|---|
| Principal: | $4,000,000.00 |
| Accrued Unpaid Interest: | $383,671.23 |
| Late Fee: | $10,094.64 |
| Exit Fee (5%) per 3 of the Steward Note: | $20,000.00 |
| **TOTAL:** | **$4,413,765.87** |

**B.     The Avenaero Loan**

8.     On February 13, 2024, Obligors, being indebted to Avenaero in the principal amount of $1,000,000 (the "Avenaero Loan") executed and delivered to Avenaero a Promissory Note and Security Agreement (the "Avenaero Note").  Under the terms of the Avenaero Note, Obligors agreed to pay interest-only payments on the Avenaero Loan at eighteen percent (18%) per annum, beginning April 1, 2024, and continuing thereafter on the 1st day of each month thereafter until the Avenaero Loan was paid in full.  Barring an Event of Default under the

Avenaero Note, the Avenaero Loan was to be paid in full either upon sixty (60) calendar days written demand by Avenaero or, if no demand was made, by February 13, 2026.

9.      The Avenaero Note provides that Obligors failure to make the interest-only payments or any other payment required thereunder shall be deemed an "Event of Default" if such payment is not cured within 15 days of receiving written notice from Avenaero.  See, ¶ 6(b)(i) of the Avenaero Note.

10.     In the Event of Default, the Avenaero Note provides that the outstanding principal balance of the Avenaero Loan, and all accrued and unpaid interest thereon shall be accelerated and become immediately due and payable, and the Avenaero Loan will bear interest at the default rate of interest of twenty percent (20%) per annum.  Obligors failed to make the required interest-only payment on the Avenaero Loan on July 1, 2024.  As a result of this default, on July 11, 2024, Avenaero issued a written Notice of Default to Obligors, demanding that Obligors cure the default within 15 days.  Obligors failed to cure the aforementioned default within 15 days.

11.     On August 6, 2024, Avenaero, through its counsel, issued a written Notice of Acceleration, Demand for Payment, and Demand for Turnover and Reservation of Rights to Obligors demanding payment in full.  Obligors failed to pay the Avenaero Loan in full as demanded.

12.     As of the Petition Date, the following sums are due and owing on the Avenaero Loan:

| | |
|---|---|
| Principal: | $1,000,000.00 |
| Accrued Unpaid Interest: | $211,863.00 |
| Exit Fee (5%) per 3 of the Avenaero Note: | $5,000.00 |
| **TOTAL:** | **$1,216,863.00** |

**C.**   **Debtor's Misrepresentations Regarding Collateral for the Loans**

13.    As security for the indebtedness due under the Steward Note and Avenaero Note (collectively, the "Notes"), Golden Gate granted to each of the Objectors a security interest in approximately 584 digital currency kiosk machines ("DCMs"), as well as the cash in each DCM, as more fully identified in the Notes (the "Collateral").  The Debtor signed both of the Notes on behalf of the respective Obligors.

14.    The Debtor specifically represented to the Objectors that the DCMs were owned by Golden Gate, and were not then subject to any security interest except as created by the Notes.  Neither of the Objectors would have made their respective Loan to Obligors without the grant of the security interest in the Collateral as represented by Debtor.

15.    Steward's security interest in the DCMs was properly perfected by the filing if a UCC-1 Financing Statement with the Commonwealth of Pennsylvania, Department of State, Bureau of Corporations and Charitable Organizations on March 6, 2024, as File No. 20240306045680.

16.    Similarly, Avenaero's security interest in the DCMs was properly perfected by the filing if a UCC-1 Financing Statement with the Commonwealth of Pennsylvania, Department of State, Bureau of Corporations and Charitable Organizations on March 6, 2024, as File No. 20240306045671.

17.    As a result of the Obligors' defaults described hereinabove, on November 22, 2024, the Objectors filed a Complaint in the United States District Court for the Eastern District of Pennsylvania (the "District Court"), captioned as *Steward Capital Holdings LP, et al. v. Golden Gate Investment Company, LLC, et al.*, Case No. 24-cv-06257, against Obligors seeking, *inter alia*, judgment on the Note and replevin of the Collateral (the "District Court Action").

6

18.     On January 2, 2025, the District Court entered an Order (the "Receiver Order")

appointing Steven J. Mitnick, Esquire as receiver over the DCMs and cash therein (the

"Receiver").  The Receiver Order specifically required the Obligors, and their officers, and all

other persons in active concert of participation with them, who receive actual notice of the Order,

to cooperate with the Receiver, including, but not limited to, providing the Receiver with

information regarding and access to the DCMs.

19.     The Receiver Order was served upon the Obligors, care of the Debtor, on January

3, 2025, by e-mail and Federal Express.  Neither the Obligors nor the Debtor complied with the

Receiver Order.  Subsequently, it was discovered that the majority of the DCMs that were

pledged by Golden Gate to the Objectors as Collateral had previously been pledged in or around

December 2023, by PowerCoin, LLC to Chicago Atlantic Admin, LLC, as administrative agent,

for a loan made by that creditor to PowerCoin, LLC.

## OBJECTION AND JOINDER

20.     The Objectors hereby object to both of the Settlement Motions and the Examiner

Motion, and join in the various Settlement Objections and the Examiner Motion Objection (each

as defined hereinabove) already filed by similarly situated creditors of the Debtor's bankruptcy

estate, for all of the reasons more fully set forth therein.

21.     First, the "settlement" sought to be approved through the Deerfield 9019 Motion

is problematic for a number of reasons, and does not meet the required standards articulated in In

re Martin, 91 F.3d 389 (3d Cir. 1996) (where bankruptcy courts must consider (i) the probability

of success in litigation; (ii) any likely difficulties in collection; (iii) the complexity of the

claims/litigation involved, and the expense and delay associated with prosecuting same; and (iv)

*the paramount interest of the creditors*. Id. at 393 (emphasis added).

7

Case 25-11354-JNP    Doc 307    Filed 06/05/25    Entered 06/05/25 19:11:25    Desc Main
                    Document      Page 8 of 11

22.     Under the Deerfield 9019 Motion, the Debtor proposes to provide Deerfield with an agreed claim of nearly $9 million, when that very claim is presently the subject of an adversary proceeding initiated by the Debtor to contest its nature, extent, and validity. Moreover, the Debtor seeks releases for multiple nondebtor parties, including individual family members of the Debtor, while at the same time proposes to distribute $350,000 in estate cash to Deerfield outside any confirmed chapter 11 plan (*and from the proceeds of an asset which does not serve to collateralize any of Deerfield's alleged claims*).  These infirmities are indicative of a *sub rosa* plan, and plainly violate the absolute priority rule.

23.     The "settlement" presented for consideration in the Orrstown 9019 Motion is no better, and in some respects, runs even more egregiously afoul of the <u>Martin</u> factors set forth above.  Like the Deerfield 9019 Motion, the Orrstown 9019 Motion seeks approval of a "settlement" whereby Orrstown would receive, among other benefits, nearly $1.5 million in payments of bankruptcy estate cash (again, outside any confirmed plan) and dismissal of the Debtor's adversary proceeding challenging the extent, nature, and validity of Orrstown's liens. At the same time, the primary "benefits" being conferred by Orrstown as part of the proposed deal *all inure to the benefit of the Debtor's wife, who is not a debtor in these chapter 11 proceedings*.

24.     Once again, given the current posture of this bankruptcy case, the Debtor's proposal as presented in the Orrstown 9019 Motion would constitute an end run around the standards prescribed for confirmation of a chapter 11 plan, do not satisfy the <u>Martin</u> factors, and therefore should be denied by the Court, particularly at a time during which the examiner remains in place, and the assets and affairs of the Debtor continue to be investigated in light of what appears to be numerous instances of fraudulent conduct on the part of the Debtor.  There is

nothing about the settlements proposed in the Orrstown 9019 Motion or the Deerfield 9019

Motion that could be said to be in the "paramount interest of the creditors" in this case generally,

beyond of course Orrstown and Deerfield, the intended recipients of these "sweetheart deals"

brokered by the Debtor and his family.

25.     Finally, the Examiner Motion should be likewise denied.  Deerfield argues that

staying or suspending the examiner's role is appropriate here because "as part of the [Deerfield

settlement] Agreement, Deerfield and Debtor agreed to seek to stay and/or suspend the Examiner

Order for a period of thirty (30) days to permit [Heller Capital Group, LLC] HCG to file its

chapter 11 liquidating bankruptcy." See, Examiner Motion, ¶ 18.

26.     It is unclear what bankruptcy purpose would be served for the estate and creditors

to stay or suspend the examiner in the Debtor's chapter 11 case simply because another of the

Debtor's business entities intends (but has not yet) to file its own bankruptcy.  The bankruptcy

contemplated by HCG is a chapter 11 – not chapter 7 – and absent appointment of a chapter 11

trustee or other fiduciary, presumably the Debtor will remain in control of the assets and affairs

of HCG during that case as well.  There is good reason that Objectors (and other creditors) are

skeptical of the Debtor's ability to do so, particularly where the Debtor has been embroiled in an

FBI investigation, and the Lancaster County Court of Common Pleas opining, "In what appears

to be a sophisticated shell game orchestrated by Daryl Heller, assets represented under oath to

the court did not exist. Paramount, controlled by Heller, failed to comply, or timely comply, with

numerous court orders."[2]

---

[2] See, https://www.wgal.com/article/lancaster-county-court-finds-paramount-management-group-and-owner-in-civil-contempt/63414021

27.    The Debtor is also presently faced with over a dozen nondischargeability adversary proceedings, each alleging the same general pattern of fraud, deception, and defalcation by the Debtor.  This chapter 11 case (as well as any bankruptcy case filed or to be filed by HCG) is the quintessential case requiring a neutral third-party investigator such as the examiner.  The Debtor's assets and affairs must be put under the microscope in order to best serve the estate and all creditors, rather than pledged piecemeal as part of "settlements" with preferred creditors who in turn propose to grant releases to the Debtor's family members.  It is telling that the only parties of record in favor of the Examiner Motion are Deerfield (which filed the Examiner Motion) and the Debtor (who filed a letter in support of same [D.I. 304]).  They (and Orrstown) should not be permitted to flout the chapter 11 process and short-circuit the examiner's investigation for their own self-interests.

28.    It is also noted that the Order appointing the Examiner was not limited to HCG. At specific request of Steward and Avenaero, it also includes investigation into Golden Gate and Paramount given the obvious fraud that was committed by the Debtor in connection with the loans made by Steward and Avenaero.  The settlements referenced in the Settlement Motions have absolutely no bearing on resolving the frauds perpetrated against Steward and Avenaero and don't concern Golden Gate at all.  There is no reason to stay the Examiner.

## <u>CONCLUSION AND RESERVATION OF RIGHTS</u>

**WHEREFORE**, the Objectors respectfully request that the Court enter an order (i) denying the Deerfield 9019 Motion; (ii) denying the Orrstown 9019 Motion; (iii) denying the Examiner Motion; and (iiv) granting such other and further relief as the Court deems appropriate.  Objectors expressly reserve their right to amend, modify, and/or supplement this Objection and Joinder as may be necessary, and to make such other and further arguments in support thereof, in

10

accordance with the timelines prescribed by the Court's *Order Shortening Time Period for*

*Notice, Setting Hearing, and Limiting Notice* [D.I. 291].


| | | ARCHER & GREINER |
|---|---|---|
| Dated: | June 5, 2025 | A Professional Corporation |
| | Voorhees, New Jersey | |

By:   */s/  Jerrold S. Kulback*
       Douglas G. Leney
       Jerrold S. Kulback
       1025 Laurel Oak Road
       Voorhees, NJ  08043
       Tel: (856) 795-2121
       jkulback@archerlaw.com
       dleney@archerlaw.com
       *Attorneys for Steward Capital Holdings*
       *LP; and Avenaero Holdings, LLC*

230567023 v2