| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br>MacElree Harvey, Ltd.<br>17 W. Miner Street, P.O. Box 660<br>West Chester, PA 19381-0660<br>(610) 436-0100<br>Natalie R. Young, Esquire (nyoung@macelree.com)<br>Leo M. Gibbons, Esquire (lgibbons@macelree.com)<br>(Admitted Pro Hac Vice)<br>Counsel to Charlene Heller |
| In re:<br><br>DARYL FRED HELLER,<br><br>　　　　　　　　　　Debtor. |

Case No. 25-11354 (JNP)

Chapter 11

### MEMORANDUM OF LAW OF CHARLENE HELLER IN SUPPORT OF MOTION FOR AN ORDER APPROVING THE AGREEMENT BETWEEN THE DEBTOR, CHARLENE R. HELLER, AND ORRSTOWN BANK PURSUAN TO 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Charlene Heller, hereby submits this memorandum of law in support of the Motion before this Court for the approval of the Agreement (defined in the Motion) between the Debtor and Charlene R. Heller[1] ("Mrs. Heller" and collectively with the Debtor, the "Obligors") and Orrstown Bank ("Orrstown") pursuant to 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"). In support of the Motion, it is respectfully stated as follows:

### I.    BACKGROUND

The Debtor filed a voluntary Chapter 11 bankruptcy proceeding on February 10, 2025. ECF 1. The Debtor and Orrstown have the following pending matters in the Debtor's bankruptcy case:

　　a.　　Adversary Proceeding No. 25-01092 (JNP) captioned Daryl Fred Heller v.

---
[1] Mrs. Heller is the wife of the Debtor.

1

        Deerfield Capital LLC and Orrstown Bank, pursuant to which the Debtor is challenging, among other things, the extent, validity, and priority of Orrstown's liens (the "Adversary Proceeding");

b. Motion of the Bank to Transfer Venue (ECF 115) pursuant to Orrstown is seeking to have venue of the Bankruptcy Case transferred to the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Venue Motion"); and

c. Beach House Sale Proceeds Dispute. Pursuant to an Order of the Bankruptcy Court dated April 3, 2025 (the "Sale Order") [ECF 169], net proceeds of the sale of the Debtor's interest in certain real property located at 7605 Pleasure Avenue, Sea Isle City, New Jersey (the "Beach House") in the approximate amount of $1,563,231.69 were placed in escrow with the Debtor's law firm, MSB's Escrow Account (the "MSB Escrow") pending further order of the Bankruptcy Court so as to permit the sale of the Beach House to occur while preserving the claims of certain objecting parties to the net proceeds. Orrstown, by virtue of among other things, the judgment on the 2020 Loan (defined below), and Mrs. Heller, pursuant to, among other things, an asserted marital property interest, were among the parties claiming an interest in the net proceeds. See Certification in Support of Motion ("SBP Cert."), at ¶ 4.

Orrstown filed the following proof of claims against the Debtor's estate:

a. Proof of claim 48 for $1,673,872.17;

b. Proof of claim 49 for $319,374.77;

c. Proof of claim 50 for $ 715,385.21;

    d. Proof of claim 51 for $801,561.28;

    e. Proof of claim 52 for $1,437,313.03;

    f. Proof of claim 53 for $1,558,543.77; and

    g. Proof of claim 62 for $194,516.02 (collectively the "Claims"). Id., at ¶ 5.

The Claims filed by Orrstown are pursuant to certain loans issued to or guaranteed by the Debtor. Id., at ¶ 6, Exh A. The loans as defined in the Agreement are as follows: (i) The 2020 Cash Ventures III Loan; (ii) the 2023 Cash Ventures III Loan; (iii) the Heller Capital Loan; (iv) the First Regents Loan; (v) the Premier Prince Street Loan; (vi) the H2 Loan; and (vii) the Residential Mortgage Loan (collectively, the "Loans"). Id.[2]

In connection with events of defaults of the Loans ("Events of Default"), the following judgments (collectively, the "Judgments") have been entered in favor of Orrstown against the Obligors:

    a. <u>Judgment on the 2023 Cash Ventures III Loan</u>: Judgment entered August 22, 2024 in the case of Orrstown Bank v. Daryl F. Heller and Charlene R. Heller, (CI-24-6081 Lancaster County) in the amount of $3,053,244.82 plus per diem interest of $595.57 from and after August 7, 2024 (the "2023 Cash Ventures Judgment"). This Judgment was subsequently transferred to and recorded in Tioga County, Pennsylvania;

    b. <u>Judgment on the Heller Capital Loan</u>. Judgment entered September 4, 2024 in the case of Orrstown Bank v. Daryl F. Heller, (CI-24-6401 Lancaster County) in the amount of $305,293.13 plus per diem interest of $81.87 from and after August 22, 2024;

---

[2] Orrstown did not file a claim for the H2 Loan and the Agreement does not address that loan.

3

  c. <u>Judgment on the 2020 Cash Ventures III Loan</u>: Judgment entered December 2, 2024 in the case of Orrstown Bank v. Daryl F. Heller and Charlene R. Heller, (CI-24-08600 Lancaster County) in the amount of $828,293.96 plus per diem interest of $162.57 from and after December 2, 2024 (the "2020 Cash Ventures Judgment"). This Judgment was subsequently transferred to and recorded in the State of New Jersey; and

  d. <u>Judgment on the First Regents Loan</u>: Judgment entered on January 16, 2025 in the case of Orrstown Bank v. Daryl F. Heller and Charlene R. Heller, (CI-25-00331 Lancaster County) in the amount of $1,314,310.13 plus per diem interest of $166.63 from and after January 13, 2025 (the "First Regents Judgment"). <u>Id.</u>, at ¶ 7.

The Obligors and Orrstown have reached a consensus on the terms of the Agreement in order to address certain of the Loans, Judgments, and pending litigation in the Debtor's bankruptcy case as well as Orrstown and Mrs. Heller's asserted entitlements to the proceeds of the Beach House sale and Orrstown Bank's rights vis a vis Mrs. Heller.

## II. QUESTION PRESENTED

Should the Court approve the Agreement between the Obligors and Orrstown Bank pursuant to 9019 of the Federal Rules of Bankruptcy Procedure?

*Suggested Answer: Yes*

### III. LEGAL ARGUMENT

#### A. Legal Standard for Bankruptcy Settlement Agreements

Pursuant to Fed. R. Bankr. P. 9019, as set forth below, it is submitted the Agreement should be authorized and approved because it is in the best interest of the estate, represents the sound business judgment of the Debtor, and is fair and reasonable under the circumstances. Fed. R. Bankr. P. 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bank. P. 9019(a). Fed. R. Bankr. P. 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). In fact, settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Accordingly, the Court is authorized to approve the settlement, on the terms set forth in the Agreement. Bankruptcy law favors settlement of disputes. See, e.g., Will v. Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006); see also TMT Trailer Ferry, 390 U.S. at 424 ("[I]n administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts."); Tindall v. Mavrode (In re Mavrode), 205 B.R. 716, 719–20 (Bankr. D.N.J. 1997) (noting that the Third Circuit favors settlement in bankruptcy cases). Thus, under Fed. R. Bankr. P. 9019(a), upon motion and after notice and a hearing, a bankruptcy court may approve a compromise or settlement. In determining whether to approve a settlement, a bankruptcy court should consider four criteria: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of litigation involved and

the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors. Martin v. Myers (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

In making its determination, a court must not substitute its judgment for that of the Parties. It is a decision to be made in the board room, not the court room. Indeed, under normal circumstances, the court should defer to the Debtor's business judgment so long as legitimate business justification for the settlement exists. Moreover, the settlement need not qualify as the best possible compromise. Instead, the court need find only that the settlement is fair, reasonable, and in the best interest of the estate. Next, the court should not decide questions of law and fact raised by any objections. Rather, the court should only canvas the issues to determine whether the settlement falls "below the lowest point in the range of reasonableness." Martin, 91 F.3d at 393.

Applying this standard, bankruptcy courts in this District routinely approve settlements in bankruptcy cases. See, e.g., In re Grand Prix Assocs. Inc., 2009 WL 1850966 at **6-8 (Bankr. D.N.J. June 26, 2009) (approving settlement because, among other reasons, litigation was certain to be extremely costly and time consuming and parties could not demonstrate whether there would be sufficient monetary collection that would benefit estate); In re McDermott, 2008 WL 877964 at *6 (granting chapter 7 trustee's motion to approve settlement of debtors' state court action asserting fraud, mismanagement, and other claims, where trustee had undertaken extensive due diligence when she evaluated probability of success; trial issues were complex; there was no guarantee of favorable outcome on merit; administration costs would likely consume any potential recovery by unsecured creditors unless recovery was well in excess of $1 million; and serious issues as to collectability of any money judgment existed because defendants resided in Florida); In re NJ Affordable Homes Corp., 2007 WL 4300153 at **3-4 (Bankr. D.N.J. Dec. 5, 2007) (approving chapter 7 trustee's settlement providing for transfer of certain real properties to title

6294501v1
081844.79803

insurance company, where proposed settlement would net for estate $20,000.00 per property, and thus, $900,000.00 for forty-five properties; such recovery represented significant consideration in exchange for release of claims which might eventually have no value, given lack of equity remaining in properties; such recovery was far more beneficial than possibility of zero recovery plus accumulation of significant professional fees in litigation; management of properties had ceased; and real estate market had deteriorated); In re NJ Affordable Homes Corp., 2007 WL 3166950 at **8-11 (Bankr. D.N.J. Oct. 22, 2007) (approving chapter 7 trustee's settlement whereby chapter 7 trustee would pursuant to certain procedures enter into consent judgments with Ponzi scheme investors, where litigation was complex and expensive, continuing litigation would require extensive discovery with large number of defendants, collection efforts against defendants would likely be fruitless, and requiring defendants to litigate, rather than cut their losses, would be punitive and unfair); In re NJ Affordable Homes Corp., 2007 WL 2713046 at **8-10 (Bankr. D.N.J. Sept. 13, 2007) (approving chapter 7 trustee's settlement providing for transfer of certain real properties to certain institutional lenders, where adversary proceedings at issue were complex and litigious, litigation expenses were enormous, settlement would neither affect nor prejudice rights of competing mortgage holders in properties, individual investors in case sought finality, and settlement was designed to minimize claims against estate).

B. **Application of the Martin Factors**

In the present case, four (4) Martin factors are addressed or have been satisfied. The controversy between the Obligors and Orrstown is a contractual dispute arising out the Loans. The probability of success is unknown. The dispute centers around Loans that the Obligors personally guaranteed. The likelihood of collection is not foreseeable. The litigations have spanned several years and are very complex. SBP Cert., at ¶ 4. Depositions and discovery will be needed, and costs

7

will continue to accrue. Lastly, considering the interest of creditors, resolving this dispute will allow the Debtor to move towards confirmation of his reorganization plan. For these reasons, the time and expense of getting to that point would diminish any benefit to the estate due to the administrative fees which would be incurred based upon the pending litigation. Third, the complexity and time involved in litigating the matter and resulting recovery for creditors would be speculative at best. Id.

As to the Venue Motion, Orrstown takes the position that venue is best had in Reading, Pennsylvania due to, among other things, the residence and domicile of the Debtor and many of his creditors. The Debtor contends, among other things, that venue is proper in New Jersey given the location of the Beach House and that transfer would be costly and disrupt the administration of the estate. As to the lien litigation, the Debtor contends, among other things, that Judgments are not valid and that, as to the Beach House, the 2023 Cash Ventures Judgment, the Judgment on the Heller Capital Loan and the First Regents Judgment were not perfected in New Jersey as there was no execution against the personal property of the Debtor. Orrstown responds that all of the Judgments were validly perfected and operate as liens in Pennsylvania. See 42 Pa.C.S.A §4303(a),(c). In addition, the 2020 Cash Ventures Judgment was transferred to New Jersey and operated as a lien against real property in the State. See New Brunswick Sav. Bank v. Markowski, 123 N.J. 402, 411, 587 A.2d 1265, 1269 (1991). Moreover, because there were prepetition attempts to levy on the Debtor's property and Orrstown was acting on potentially misleading financial information, a fact question exists as to whether Orrstown Bank's lien claim primes other asserted liens. See In re Mariano, 338 B.R. 344 (Bankr. D.N.J. 2006). See also Posanowksi v. Loscalzo, 127 N.J. 240 (1992) (deposition, in which judgment debtor provided negative or evasive answers to creditor's inquiries regarding location of personal property, constituted sufficient reasonable

6294501v1
081844.79803

efforts by judgment creditors to pursue personal property/assets. Court Noted that further inquiries would have been futile).

The Debtor strongly disputes the positions taken by Orrstown but notes that the Agreement resolves the Venue Motion and the lien litigation as to the Beach House and the net proceeds of the sale. Accordingly, the Debtor submits the Agreement is fair and equitable and falls within the range of reasonableness. Martin, 91 F.3d at 393. The relief requested by the Debtor in the Motion is also consistent with this Court's equitable powers pursuant to Section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). As one court acknowledged, Section 105 of the Bankruptcy Code confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of [section] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction . . . .

Davis v. Davis (In re Davis), 170 F.3d 475, 492 (5th Cir. 1999) (internal citations and quotations omitted); see also In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3rd Cir. 2006). Under Section 105(a) of the Bankruptcy Code, this Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of the debtor's assets. See Coie v. Sadkin (In re Sadkin), 36 F.3d 473, 478 (5th Cir. 1994). The facts of this case further Section 105's purpose.

C. **Application of Marital Property Rights and Bankruptcy Law**

As a general rule, state law determines property interests. Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "N.J.Stat.Ann. 2A:34–23.1 creates a 'rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the

9

acquisition of income and property while the party was married.'" In re Howell, 311 B.R. 173, 178 (Bankr. D.N.J. 2004). "[P]rinciples of equitable distribution generally attribute little or no significance to which of the parties holds legal title to marital property". Id. (explaining in context of bankruptcy legal title assumes significance if a creditor of the title holder obtains a judicial lien on his or her interest in the property before the judgment of divorce).

Title 23, Chapter 35, Section 3501(a) of the Pennsylvania General Assembly ("PGA") defines "marital property" as all property acquired by either party during the marriage. Title 23, Chapter 35, Section 3501(b) of the PGA sets forth there is a presumption all real and personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. In Tschilin v. Barzilayev, the Superior Court of Pennsylvania clarified the difference between equitable interest in martial property versus having one's name on the title of property. Tschilin v. Barzilayev, 272 A.3d 491 (2022). In Barzilayev, a spouse owned real property 50/50 with a third party. Id. During a divorce proceeding the spouse's husband was entitled to an equitable interest in the martial estate, which included the real property, on the grounds equitable interest equaled legal interest under family law. Id. Pursuant to Title 23, Chapter 35, Section 3501(a) and (b), the Beach House was acquired during Obligors' marriage and therefore is martial property, and there is a presumption it is marital property regardless of the form of ownership. SBP Cert., at ¶ 18.

The Bankruptcy Code defines a claim as the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5)(A). Here, Mrs. Heller has a claim in the proceeds from the sale of the Beach House based upon her equitable interest in the

10

Beach House. The equitable interest of a nondebtor spouse arising under state law from such spouse's contribution to the acquisition of property titled in the debtor gives rise to a monetary claim if the property itself cannot be transferred to the nondebtor because bankruptcy has occurred. In re Ruitenberg, 469 B.R. 203, 205 (Bankr.D.N.J.2012). The nondebtor spouse's equitable interest in property titled in the debtor gives rise to a monetary claim against the bankruptcy estate. Id.;11 U.S.C. § 101(5)(A); In re Polliard, 152 B.R. 51, 54 (Bankr.W.D.Pa.1993); Perlow v. Perlow, 128 B.R. 412, 415 (E.D.N.C.1991). This is not inequitable to other creditors who typically must accept less than full payment from a pro rata share of an estate because implicit in the concept of equitable distribution is that but for the contribution of the nondebtor spouse in the acquisition of the subject property, the other creditors would have no estate against which to assert claims. In re Ruitenberg, 469 B.R. at 205-6.

The Third Circuit has adopted a broad interpretation of what constitutes a claim, including to allow a pending equitable distribution claim as a prepetition debt. In re Ruitenberg, 469 B.R. at 206. In its holding in In re Kane, the Third Circuit allowed a wife's claim for equitable distribution as a claim against the husband's bankruptcy estate, as the equitable distribution claim was an asset of the wife under bankruptcy code § 541. 628 F.3d 631, 643 (3d. Cir. 2010). In Kane, both husband and wife filed for divorce and then subsequently filed for bankruptcy. 628 F.3d at 634. Wife made a claim under husband's bankruptcy estate based upon her right to equitable distribution. Id. The Third Circuit held that the wife had "*an interest* in an equitable distribution of marital property— namely, by virtue of being married to Mr. Kane," and also "by virtue of having initiated a divorce action in which she was seeking equitable distribution." Id. at 641. (emphasis added). Applying the holding of In re Kane, the Bankruptcy Court for the District of New Jersey allowed the non-debtor spouse's claim for equitable distribution as a claim against the estate pursuant to bankruptcy

11

6294501v1
081844.79803

code § 101(5).

The Obligors have been married for thirty years. The Beach House was purchased with funds during the marriage in 2022, thus making it marital property. Butner, 440 U.S. at 48; Howell, 311 B.R. at 178. Furthermore, regardless of whether Mrs. Heller's name is on the title of the Beach House, she has an equitable interest in the Beach House as martial property, which equates to a legal interest under family law. Barzilayev, 272 A.3d at 491. Mrs. Heller's contribution to the purchase of the Beach House gives rise to a claim in the Debtor's bankruptcy estate. In re Ruitenberg, 469 B.R. at 205. While Mrs. Heller may not have made a direct financial contribution to the purchase of the Beach House, Mrs. Heller indirectly contributed to the purchase by caring for the Obligor's children and maintaining the household as a stay-at-home mother, as Debtor was able to work freely at this time. Mrs. Heller also worked as a nurse during the early part of the marriage before she and Debtor had children. Based upon these contributions, Mrs. Heller has an interest and a right to her share of the proceeds of the sale of the Beach House. Mrs. Heller's interest would be improperly extinguished if the proceeds of the sale were to be distributed solely to address the claims of Debtor's creditors. Further, if Mrs. Heller were to have filed for divorce and a claim for equitable distribution, her claim for equitable distribution would be allowed against Debtor's estate. It would be inequitable to deprive Mrs. Heller of her interest in the marital property to which she has a valid claim, just because she remains married and has not chosen to divorce and seek equitable distribution, especially as the Beach House has been sold and Mrs. Heller's share of the proceeds are easily distributable. In re Ruitenberg, 469 B.R. at 205. As such, for the foregoing reasons, it is respectfully requested that the Motion be granted in its entirety. Id., at ¶ 19.

6294501v1
081844.79803

## IV. CONCLUSION

As set forth in the above paragraphs, by allowing the Agreement to be approved, it will benefit the Debtor's estate and creditors. As such, the Debtor respectfully submits that an Order approving the Agreement is in the best interest of the Debtor and his estate and should be granted. It appears that the Agreement is fair and equitable and in the best interest of the estate, approval of the Agreement meets the criteria set forth in Fed. R. Bankr. P. 9019 and the applicable case law, and therefore the proposed order approving the Agreement should be granted. It is respectfully requested that this Court enter an Order in form similar to that attached to the Motion.

MacELREE HARVEY, LTD.

By: *Natalie R. Young*
Natalie R. Young, Esquire
Leo M. Gibbons, Esquire
(Admitted Pro Hac Vice)
Counsel for Charlene Heller

Date: June 6, 2025