MARTIN J. WEIS, ESQUIRE
**DILWORTH PAXSON LLP**
1650 MARKET STREET, SUITE 1200
PHILADELPHIA, PA 19103
TELEPHONE:   (215) 575-7000
FACSIMILE:   (215) 575-7200
EMAIL:   mweis@dilworthlaw.com
*Counsel for Orrstown Bank*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**REPLY OF ORRSTOWN BANK IN SUPPORT OF MOTION FOR AN ORDER APPROVING THE AGREEMENT BETWEEN THE DEBTOR, CHARLENE R. HELLER AND ORRSTOWN BANK PURSUANT TO 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Orrstown Bank hereby submits this reply in support of motion for an order approving the Agreement between Daryl Fred Heller ("Mr. Heller" or the "Debtor"), Charlene R. Heller and Orrstown Bank pursuant to 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"). The Motion resolves multiple disputes pending before this Court, is fair and equitable, and does not dictate the outcome of this bankruptcy case such that it would be considered a *sub rosa* plan. As such, the Motion should be approved.

BACKGROUND.

In order to understand the context in which the Orrstown settlement was reached, a brief review of the case might be helpful.

The pre-petition judgments.

1

As set forth in greater detail in the Debtor's Brief in Support of the Motion for An Order Approving the agreement (the "Debtor's Brief") [D.I. 213-1], four judgments were entered pre-petition in favor of Orrstown Bank and against the Debtor: the 2023 Cash Ventures Judgment; the 2020 Cash Ventures Judgment; the First Regents Judgment; and a judgment entered on September 4, 2024 in the case of Orrstown Bank v. Daryl Heller (CI-24-06401 Lancaster County) (the "Heller Capital Judgment").[1]

In connection with the 2023 Cash Ventures Judgment, Orrstown Bank caused writs of execution to be issued and served on certain financial institutions which had been identified in a personal financial statement provided to the bank by Mr. Heller. The responses by these institutions to garnishment interrogatories revealed that they had, at best, the minimal assets of Mrs. Heller and no assets of Mr. Heller.[2]

Prior to the bankruptcy filing, the 2023 Cash Ventures Judgment was transferred to Tioga County, Pennsylvania and the 2020 Cash Ventures Judgment was transferred to New Jersey. MER-DJ-020567-25.

Subsequent to the bankruptcy filing, the Debtor, on February 18, 2025, commenced an adversary proceeding against Orrstown Bank contesting three judgments entered against him. On February 26, 2025, Mr. Heller filed a motion to sell his interest in a beach house located in Sea Isle City, New Jersey. On March 11, 2025, Orrstown Bank filed a motion seeking to change venue of the bankruptcy case from the District of New Jersey.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Debtor's Brief or the Agreement.

[2] It would be learned, at the 341 meeting, that at least some of these institutions held funds in corporate names.

2

#125041257v2

(a) <u>Beach House Sale Motion</u>.

On February 26, 2025, the Debtor filed his motion (the "Sale Motion") seeking to Approve The Sale (D.I. 73] of Certain Real Property Located at 7605 Pleasure Avenue, Sea Isle City, New Jersey (the "Beach House") in which the Debtor was asserting a 76% ownership under circumstances where Randall Leaman was asserting a 30% ownership. Objections to the sale were filed by Mrs. Heller [D.I. 146]; Deerfield Capital LLC ("Deerfield") [D.I. 147]; Orrstown Bank [D.I. 148]; and Randall Leaman, each contending, among other things, an entitlement to some or all of the proceeds of the sale. No other parties, including Chicago Atlantic (which was served with the Sale Motion[3]) objected to the sale. A hearing on the Sale Motion was held on April 2, 2025.

By agreement of the parties, the Beach House was sold and the sum of $1,563,231.69 was placed in an interest bearing escrow with Debtor's counsel (the "MS&B Escrow"), subject to the claims of the estate and the four objectors. See Order entered April 3, 2025 authorizing sale. [D.I. 169].

(b) <u>The Orrstown Venue Motion</u>.

On March 11, 2025, Orrstown Bank filed a motion to transfer venue of the bankruptcy case to the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Orrstown Venue Motion"). [D.I. 115]. As set forth in the Orrstown Venue Motion, the Debtor's residence and domicile are in Lititz, Pennsylvania, which is approximately 35 miles from the Reading Courthouse and 80 miles from the Camden Courthouse. Moreover, the Debtor, in his schedules, identified assets worth hundreds of millions of dollars, in addition to his interest in the

---

[3] See D.I. 77, p. 3.

#125041257v2

Beach House. None of these other assets were located in New Jersey. The schedules and statements identified many connections to Pennsylvania and failed to identify creditors or other connections to New Jersey. Orrstown further contends that there is little in the way of assets for a trustee to administer in New Jersey.

The Debtor's position is that the Beach House is the Debtor's principal asset and that transfer of venue would be disruptive and inappropriate. The hearing on the Orrstown Venue Motion is scheduled for June 12, 2025. If this settlement motion is granted and the initial payments made, the Orrstown Venue Motion will be withdrawn with prejudice.

(c)     <u>Adversary Proceeding.</u>

On February 18, 2025, the Debtor filed, among other things, an adversary proceeding (Adv. No. 25-01092-JNP) against Orrstown Bank and Deerfield in which, among other things, he challenges certain judgments obtained by Orrstown Bank against the Debtor's property (the "Adversary Proceeding"). Specifically, the adversary complaint identifies the 2023 Cash Ventures Judgment (adversary complaint, ¶17); the Heller Capital Judgment (adversary complaint, ¶18); and the First Regents Judgment (adversary complaint, ¶14) as the judgments in dispute.

The complaint does not identify the 2020 Cash Ventures Judgment, which was entered in the amount of $828,293.96, as a challenged judgment. Significantly, the 2020 Cash Ventures Judgment is the only judgment which was transferred by Orrstown Bank by New Jersey.

(d)     <u>The Settlement.</u>

Negotiations with the Debtor and Charlene R. Heller had been ongoing since prior to the petition and were re-energized once the Adversary Proceeding, the Orrstown Venue Motion and the Beach House Sale Motion were filed. These disputes provided additional incentives to resolve multiple objections.

4

At a conference on April 2, 2025, counsel for several of the parties to the bankruptcy case were advised generally that a settlement had been reached between Orrstown Bank, Mrs. Heller and the Debtor regarding a number of pending matters as part of the resolution of Orrstown Bank's objection to the Sale Motion and that a motion seeking approval of that settlement would be forthcoming.[4]  On April 22, 2025, the parties executed the Agreement and on April 29, 2025, the Debtor filed the Motion.  The hearing on the Motion, initially scheduled for June 2, 2025 was continued, due to Debtor's counsel's unavailability, to June 10, 2025.

(e)    <u>The Payment</u>.

The Agreement contemplates the payment of a total of $1.2 million to the bank in three installments:

• The first installment is to occur within three days of approval of the Agreement by a final and non-appealable Order from this Court.  By this installment, Orrstown Bank will receive $450,000 from two existing escrows.  $200,000 will be received from funds in escrow with Mrs. Heller's counsel.  Orrstown Bank has been advised that these funds are not estate property. See Agreement, p. 8-12, ¶4 (a) and p. 8-14, ¶8. Orrstown Bank is also scheduled to receive $250,000 from the MS&B Escrow (the "Beach House Payment").

• On September 19, 2025, Orrstown Bank will receive a second installment, which shall be in the amount of $600,000 (which sum is inclusive of the Beach House Payment).

• On December 19, 2025, Orrstown Bank is to receive the sum of $400,000.

---

[4] Obviously, no creditor was required to take a position on the settlement at that time.

5

#125041257v2

Significantly, with the exception of the Beach House Payment, none of the $950,000 in payments to the bank are required to be from the bankruptcy estate and the estate is not obligating itself to make these other payments.

(f)     The Estate Gets Multiple Benefits.

The Agreement is a sixteen page tri-party agreement which benefits and burdens of each of the parties. It resolves multiple disputes before the Court and between the parties and reduces claims against the estate. As to the estate, its multiple benefits include:

a. The Agreement resolves the Orrstown claim to $828,293.86 to the MS&B Escrow without the need to file and litigate a new adversary proceeding to address the 2020 Cash Ventures Judgment.

b. The Agreement resolves Charlene R. Heller's asserted interest in the MS&B Escrow (50% of the funds in the escrow would be $781,618.84).

c. Subsequent to the entry of the Agreement, on May 8, 2025, on consent of the Debtor and his counsel, the Court entered an Order that the sum of $835,000 will remain in the MS&B escrow pending resolution of Orrstown Bank's claim to the Beach House proceeds. [D.I. 230]. Approval of the Agreement and the making of the initial payments under the Agreement will release that restriction.

d. The First Regents Judgment (face amount $1,313,310.13) will be released as to the Debtor.

e. Proof of claim No. 51 (approximately $800,000) will be withdrawn. [5]

---

[5] Claim No. 51 is based on the First Regents Judgment. The Agreement contemplates the satisfaction of the First Regents Judgment as to the Debtor and hence Orrstown will withdraw Claim 51.

#125041257v2

    f.  The Agreement contemplates a forbearance arrangement for Orrstown Bank's loan with an entity known as Premier Prince Street LLC, and for which Orrstown Bank has submitted proof claim no. 52 in the amount of $1,437,313.03 on account of the Debtor's guarantee of that loan. If Premier Prince Street performs in accordance with the proposed forbearance agreement, claim no. 52 will be satisfied in or about October 2025, thereby removing an additional $1,437,313.03 in claims against the estate. [6]

    g.  The Orrstown Venue Motion will be withdrawn, thereby saving the expense of litigating the motion and, if Orrstown Bank were successful, the expense of the case being transferred to another jurisdiction.

    h.  The Agreement resolves or severely limits the Adversary Proceeding insofar as it pertains to Orrstown Bank.

    i.  Payments by Mrs. Heller under this agreement will further reduce the outstanding claims against the estate. By way of examples, the $250,000 Beach House Payment will be applied against proof of claim no. 50 and receipts by Orrstown Bank pursuant to the contemplated charging order against Mrs. Heller will be credited against proofs of claim nos. 48 and 50.

  (g)  <u>The Objection</u>.

  On May 27, 2025, Chicago Atlantic Admin LLC timely filed its objection to the Motion.[7] [D.I. 282].[8] Chicago Atlantic contends that first, the Agreement does not satisfy the

---

[6] To be clear, while Orrstown has offered a forbearance agreement to Premier Prince Street, it has not as of yet been accepted.

[7] The Prestige Investors filed a joinder to the Chicago Atlantic objection [D.I. 302].

[8] According to its proof of claim filed on March 27, 2025, Chicago Atlantic has a claim against the estate in the amount of $16,963,009.84 based on a personal guarantee by the Debtor of a loan from Chicago Atlantic to Power Coin LLC. The Chicago Atlantic proof of claim [Claim 11-1] is comprised of, in part, a claim to principal and cash interest due of $9,571,133.74. The remainder of the claim is based on asserted rights to PIK interest ($25,052.64); default interest

7

#125041257v2

Martin standard and, second, the Agreement is an impermissible *sub rosa* plan. Because the settlement is fair and equitable and in the best interest of the estate, Orrstown Bank submits that this settlement should be approved.

DISCUSSION.

As summarized in the Genesis Health Ventures case:

> Settlements are favored in bankruptcy because they serve to minimize litigation, provide a means for efficient resolution of disputes and help to expedite the administration of the bankruptcy estate. In re Martin, 91 F.3d 389, 393 (3d Cir.1996); In re Edwards, 228 B.R. 552, 568-69 (Bankr.E.D.Pa.1998); In re Mavrode, 205 B.R. 716, 719 (Bankr.D.N.J. 1997). In determining whether or not to approve a settlement, the court must consider whether the settlement is "fair and equitable" and in the "best interests of the estate." In re Martin, 212 B.R. 316, 319 (8th Cir. BAP 1997). In the normal course, "the court [will] defer to the trustee's judgment so long as there is a legitimate business justification." In re Martin, 91 F.3d at 395; see also In re Dow Corning Corp., 198 B.R. 214 (Bankr. E.D.Mich.1996); In re Sanner Contracting Co., 184 B.R.465 (Bankr.D.Ariz.1995). If the settlement "falls below the lowest point in the range of reasonableness," it should be rejected. In re Edwards, 228 B.R. at 569.

In re Genesis Health Ventures, Inc., 266 B.R. 591, 619-20 (Bankr. D. Del. 2001) (Wizmur, J.).

This Court's role in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or a mini-trial on the merits, this Court should only "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re Jasmine Ltd., 258 B.R. 119, 124 (D.N.J. 2000) (citations and internal quotation marks omitted.)

The Settlement Agreement Satisfies the Martin Standard.

Each of the four Martin factors weighs in favor of approving the Agreement.

---

($561,158.73); collateral monitoring fees ($128,000); a make work premium ($3,240,164.74); and a warrant put price ($3,437,500). On information and belief, and not unlike Orrstown or other creditors in this case, Chicago Atlantic has been taking steps to collect amounts due it from non-debtor third parties.

8

#125041257v2

1. <u>The likelihood of success on the merits by the Debtor is not clear</u>.

The Agreement is resolving multiple distinct pieces of litigation, the results of which are not entirely clear. And while some might contend that the outcome of one piece of litigation is more favorable to one side as opposed to another, Orrstown Bank submits the Court should recognize that there are multiple litigations which are being packaged into this Agreement and that the Court is charged with canvassing all of the issues and determining whether the settlement falls below the lowest point in the range of reasonableness.

Further, and while the Debtor has always advocated strongly that his position is correct, Orrstown Bank submits it has legitimate claims that the Court should consider:

• With regard to the Adversary Proceeding, even if the Debtor is correct that the three judgments identified in the complaint do not attach to the Beach House or its proceeds, the question remains unanswered (indeed, it is Orrstown's position that it is unasked) as to whether the 2020 Cash Ventures Judgment, which was in fact transferred to New Jersey, does. (It should also be noted that there is no allegation that any of the four judgments are invalid in Pennsylvania.)

• As to the 2020 Cash Ventures Judgment, and as set forth in greater detail in the Motion, a claim exists as to its validity in New Jersey.

• In addition, Orrstown has a claim against any interest which Mrs. Heller may have in the proceeds by virtue of its judgment against her.

• As set forth in their Brief, Mrs. Heller has her own claim to a portion of the proceeds and Chicago Atlantic points to no restriction on her ability to transfer her rights to those proceeds to Orrstown Bank.

• With regard to the Orrstown Venue Motion, as set forth above, Orrstown Bank submits that the facts and law support the transfer.

2. <u>The interest of creditors served by the settlement</u>.

Unlike other motions in this case which have drawn significant ire from the creditor body, only one objection was filed to this Motion.

#125041257v2

Resolving these claims against the estate at this time is in the best interest of and consistent with the interest of creditors. With the exception of releasing 16%[9] of a disputed escrow (under circumstances where the estate maintains its rights against 84% of the remainder) the settlement has eliminated two of the four competing claimants to it which, combined, could have exceeded the amounts in the escrow, and the estate is not required to make any payments to Orrstown Bank under this arrangement. Moreover, as set forth below, there are no additional restrictions placed on the estate as a result of this settlement.

On the other hand, this settlement provides the estate certainty as to pending litigation and avoids disruption and expense in the event that the case is transferred. Further the settlement will shrink the size of the claim pool.

3.   The Risk of Collectability is on non-debtors.

The risk of collection the sums due under the Agreement is on Orrstown Bank. The estate is only obligated to make the Beach House Payment, and that Payment is in the Debtor's counsel's escrow account. Thus, there is little risk to the estate that those sums will not be paid.[10]

The second and third installments under the Agreement are the obligation of Mrs. Heller. The Debtor has not backstopped these payments and hence the collectability risk belongs to Orrstown.

4.  The Various Litigations Being Resolved Have Their Own Complexities, Delay, and Inconveniences Associated with Them.

---

[9] Beach House Payment   $  250,000.00   = .1599
   MSB Escrow              $1,563,231.69

[10] Similarly, the $200,000 initial payment due is in escrow with counsel for Mrs. Heller.

10

#125041257v2

As set forth in greater detail above and in the Motion and filings in support of the Motion, the various litigations being resolved all have their own complexities, delay attendant thereto, expense and inconveniences associated with them. Each of these involve contested issues which will likely need discovery and trial time if they are to be adjudicated. In the case of Adversary Proceeding, the trial date has been set for February 2026. No pleading has been filed or date has been set to determine the remainder of the issues associated with Orrstown Bank and Mrs. Heller's claims to Beach House proceeds.

Several of the recent pleadings in the case note that the Debtor has between 15 and 20 adversary proceedings filed by or against him. As the Court is aware, the key to a successful reorganization often includes dispute resolution. Stated differently, it is extremely difficult (but not impossible) to confirm a plan under circumstances where every issue in the case is hotly litigated. And so long as the Debtor here is not permitted to resolve disputes, he will continue to have 20 adversary proceedings. And so long as the Debtor is not permitted to resolve proofs of claim, he will always have 88 unsatisfied proofs of claim.[11]

### The Settlement is Not a *Sub Rosa* Plan.

Chicago Atlantic argues that the agreement should not be approved as it constitutes an impermissible *sub rosa* plan. Because the agreement does little to impinge upon the Debtor's and creditors' rights regarding a proposed plan or otherwise in the bankruptcy case, the objection should be overruled.

Where a settlement does not bypass the confirmation process, the settlement is not a *sub rosa* plan. See, e.g. In re Marvel Entertainment Group Inc., 229 B.R. 243 (D. Del. 1998); In re

---

[11] As of June 3, 2025, the claims register is showing 89 filed proofs of claim with a total amount asserted due of $825,750,375.35. (One proof of claim was withdrawn.)

#125041257v2

Boy Scouts of America, __F.3d____ (3d Cir. 2025). If, however, the transaction dictates the terms of the future plan of reorganization, it should not be approved. Braniff, 700 F.3d at 939-40 (finding that transaction which dictated the terms of a future reorganization plan and required the release of claims against the debtor, its officers and directors and certain secured creditors was an impermissible plan *sub rosa*).

Here, the Agreement involves a payment to Orrstown Bank from an escrow created in response to Orrstown Bank and Mrs. Heller's objections to a sale. The objection included Orrstown Bank's assertion of rights as a secured creditor and Mrs. Heller's objection ground on her asserted spousal property rights. The results of the Settlement Agreement, if approved, will include the resolution of two claimants' claims against the escrow; the resolution of a lien priority adversary proceeding; the withdrawal of an $800,000 proof of claim against the estate; and provisions for non-debtor third parties to make payments of joint obligations (which would result in additional reductions of claims against the estate).

Of note, this Agreement does not:

- Require the debtor to file a plan within a time period;
- Dictate any plan treatment for Orrstown Bank;
- Require the Debtor to release claims against Orrstown Bank;
- Require the estate to make any payments outside of the escrowed funds which are subject to Orrstown Bank's claims;
- Contain a most favored nation clause as to any other settlement; or
- Require the Debtor to pay Orrstown Bank's fees.

In short, the Agreement resolves discreet issues in the bankruptcy case and does nothing to limit rights of the Debtor or creditors in the plan formulation and confirmation process. If anything, it enhances the plan process as it eliminates certain pending litigation, reduces claims

against the estate, and permits the Debtor to focus on reorganizing. Because the agreement does not dictate the outcome of the bankruptcy case, it is not a *sub rosa* plan and should be approved.

    Additional Considerations.

  (a) The absence of a committee should not hinder approval of the Agreement.

Several of the recent pleadings suggests that the absence of a committee is a detriment to these proceedings. Without getting to the merits of that position, Orrstown submits that a committee is not necessary for the evaluation of the Agreement.

The creditors in this case, including Chicago Atlantic, are commercially sophisticated. Such creditors have an affirmative obligation to police their claims.  See In re Szostek, 886 F.2d 1405, 1415 (3d Cir.1989).  The creditors have not suggested to the Court that they are incapable of evaluating the Agreement.  In addition, by virtue of their own collection and underwriting efforts and as evidenced by the level of detail included in these objections, these creditors have a level of sophistication and working knowledge of the Debtor and his financial affairs sufficient to evaluate this Agreement.

  (b) The Motion provided full disclosure and a full opportunity for consideration.

The Motion and Payment, which were not filed under seal or contained any redactions, were filed on April 30, 2025 on notice to creditors and did not seek expedited consideration. Rather, at this point, given the adjournment, creditors have had in excess of one month to file objections to the Agreement.  In short, it cannot be said that creditors did not have a meaningful opportunity to evaluate the Motion or that disclosure was inadequate.

  (c) The Steward Objection should be overruled.

On June 5, 2025, an objection (the "Steward Objection") to the Motion was filed by Steward Capital Holdings LP ("Steward") and Avanaero Holdings LLC ("Avanaero" and,

#125041257v2

collectively with Steward, the "Steward Objectors"). The Steward Objectors contend that they have claims arising out of loans made by them to affiliates of Heller Capital Group. Orrstown Bank submits, in the first instance, that the Court should not consider the Steward Objection as it is untimely.

In addition, the Steward Objection is based on a misinterpretation of the Agreement. As set forth above, the estate receives multiple benefits from the Agreement and the estate does not obligate itself, as suggested by the Steward Objectors, to make $1.5 million in payments to Orrstown Bank. In actuality, Orrstown Bank is to receive $1.2 million under the Agreement, and the only payment coming from the estate is the $250,000 Beach House Payment which is in the MS&B Escrow and to which Orrstown Bank and Charlene Heller have made claims. And to be clear, the only Heller family member potentially being released under the Agreement is Mrs. Heller, and that is for certain defined obligations and only if she makes the payments contemplated by the Agreement.

Finally, the Steward Objection attempts to tie the Agreement and the motion of Deerfield requesting to stay the Examiner. As acknowledged by the Stewart Objectors, Orrstown Bank is not a party to that motion and has not advocated for the stay of the Examiner.[12] It is unclear how the Agreement, which does not materially impact estate assets, impairs the work of the Examiner such that the relief requested in the Motion should be denied.

CONCLUSION.

After canvassing the issues and considering the Agreement in its entirety, Orrstown Bank submits that the Agreement, which resolves claims against the estate and two parties' claims to an

---

[12] See Steward Objection, ¶27.

14

#125041257v2

escrow fund and pending motions, does not fall below the lowest range of reasonableness. As such the Motion to approve it should be granted.

|  |  |
|---|---|
| Date: June 6, 2025 | /s/ *Martin J. Weis*<br>Martin J. Weis<br>Dilworth Paxson LLP<br>1650 Market Street, Suite 1200<br>Philadelphia, PA 19103<br>(215) 575-7000<br>mweis@dilworthlaw.com<br>Attorney for Orrstown Bank |

#125041257v2