|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for Daryl Fred Heller, the Chapter 11*<br>*Debtor and Debtor-in-Possession* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>    Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**DEBTOR'S OPPOSITION TO PRESTIGE FUNDS MOTION FOR THE APPOINTMENT OF CHAPTER 11 TRUSTEE AND TO MODIFY EXAMINER'S ORDER**

Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession (the "Debtor"), by and through his counsel, McManimon, Scotland & Baumann, LLC, respectfully submits this opposition (the "Opposition") to Prestige Funds ("Prestige")[1] Memorandum of Law in Support of Motion for the Appointment of Chapter 11 Trustee and to Modify Examiner's Order (the "Motion"). ECF 265. The Debtor submits as follows:

**STATEMENT OF FACTS**

**Debtor's Bankruptcy**

1.    The Debtor filed a voluntary Chapter 11 petition on February 10, 2025 (the "Petition Date").  ECF 1.

---

[1] Prestige consists of the following entities: Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A IX, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A, LLC; Prestige Fund B BTMI, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B, LLC; Prestige Fund D BTM I, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; and Prestige Fund D, LLC, WF Velocity I,LLC, WF Velocity IV, LLC, WF Velocity V, LLC, WF Velocity VI, LLC, and WF Velocity VII, LLC.

2. On February 11, 2025, Deerfield Capital, LLC ("Deerfield") filed a Motion for Relief From the Automatic Stay to Continue the State Court Proceedings Against the Debtor in Pennsylvania and New Jersey, Prohibit use of Cash Collateral, Transfer Venue and Expedited Discovery. ECF 9.

3. On February 18, 2025, Deerfield filed a Motion to Appoint a Chapter 11 Trustee ("First Motion"). ECF 30.

4. On February 25, 2025, Silverview Credit Partners LP ("Silverview") filed a Statement in Support of Deerfield's Motion for the Appointment of Chapter 11 Trustee ("Silverview's Statement in Support First Motion"). ECF 63.

5. On February 26, 2025, Orrstown Bank ("Orrstown") filed a Response in Support of First Motion ("Orrstown's Response in Support First Motion"). ECF 66.

6. On February 26, 2025, Steven Mitnick, Receiver (the "Golden Gate Receiver") of Golden Gate Investment Company, LLC and Paramount Group, LLC ("Paramount") filed a Statement in Support of Deerfield's First Motion ("Golden Gate Receiver's Response in Support First Motion"). ECF 80.

7. On February 28, 2025, Prestige filed a Statement in Support of Deerfield's First Motion ("Prestige's Response in Support First Motion"). ECF 85.

8. In Prestige's Motion, at pages 1-2, it incorporated by reference the contents of the First Motion, Silverview's Statement in Support First Motion, Orrstown's Response in Support First Motion, Receiver's Response in Support First Motion, and Prestige's Response in Support First Motion. ECF 30, 63, 66, 80, 85.

9. The issue of appointment of a Chapter 11 trustee pursuant to the First Motion was already contemplated and mooted by the Order Directing the Appointment of an Examiner

("Examiner Order"). ECF 99. Pursuant to paragraph 1 of the Examiner Order, the First Motion was to "remain pending until either the earlier of (a) thirty (30) days after the submission of the Examiner Report or (b) a date set by the Court within five (5) days of a Notice of Non-Compliance filed by the Examiner (defined herein). Once the Examiner submits a Non-Compliance Notice to the parties and the court rules on such Non-Compliance, nothing in this Order shall prevent the Movant from relisting the Motion or any other party from filing a separate Motion for Appointment of a Trustee at any time. The Examiner shall provide a preliminary report or status within sixty (30) [sic] days of entry of this Order." Id. The Examiner is not in compliance with the Examiner Order. Furthermore, the Examiner has not filed a Non-Compliance Notice.

10. The Examiner Order was reached as a compromise between the Debtor and Deerfield, amongst the other parties, who filed supporting papers in support of the First Motion, in place of appointing a chapter 11 trustee pursuant to Deerfield's First Motion. See Certification of Sari B. Placona, Esq., in Support of Opposition ("Placona Cert."), at ¶ 3.

11. Although the Examiner Order stated Deerfield or any other party may file a separate motion for appointment of a trustee, the issues presented in the Examiner Order are still ongoing and therefore, appointment of a Chapter 11 trustee would be premature at this time until the Examiner issues his preliminary report. See ECF 99, see also Debtor's Opp., at ¶ 4.

12. Moreover, there should be no amendment to the Examiner Order because the substance of the Examiner Order was reached after deliberations with Deerfield's counsel, and both parties consented to the language included therein. See Debtor's Opp., at ¶ 5.

13. Prestige's request to amend the Examiner's Order to allow for the Examiner to disclose responses from his Rule 2004 Examinations is not ripe, as the Examiner should first

comply with issuing the Examiner Report pursuant to paragraph 1 of the Examiner Order prior to any discussions of further disclosures. Id., at ¶ 6.

14. Regarding Prestige's reference of the Debtor submitting different personal financial statements to Deerfield than the Internal Revenue Service ("IRS"), this was due to clerical error. Id., at ¶ 7. When the Debtor's personal financial statement to the IRS was drafted, it was thought an entity he owned -- DHRL -- owned the real property located at 7605 Pleasure Avenue, Sea Isle City, New Jersey ("Beach House"). Id. The Beach House was listed on the Debtor's personal financial statement to the IRS as owned by DHRL. Id. The Debtor subsequently discovered the Beach House was owned by him individually and not through DHRL. Id.

15. Also, the Debtor's personal financial statement provided to Deerfield was via a Fair Market Value accounting method ("FMV Accounting Method"). Id., at ¶ 8. The Debtor's personal financial statement provided to the IRS was via a "Book" valuation accounting method ("Book Accounting Method"). Id. FMV Accounting Method differs from a Book Accounting Method, as the former lists entities/ assets at the valuations said assets would sell for on an open market, not by the equity on a balance sheet, and the latter sets forth only the equity on a business-entities' balance sheet. Id.

16. It is common to show a personal financial statement based on the Book Accounting Method. Id., at ¶ 9. Moreover, for the Debtor, it is more common to utilize a fair market value ("FMV") Accounting Method given most of his business-entities do not have many tangible assets on balance sheets, rather the valuation lies in the intellectual property, contracted revenue, and multiple of Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA"), among other things. Id. Therefore, the personal financial statement to Deerfield and the personal financial

statement to the IRS depict the same assets, but the valuation of said assets are different based on different accounting methods. Id.

## LEGAL ARGUMENT

**I.  THE MOTION FAILS TO DEMONSTRATE CAUSE SUFFICIENT TO WARRANT IMPOSITION OF A CHAPTER 11 TRUSTEE**

17. Pursuant to the Bankruptcy Code, a Chapter 11 trustee shall be appointed upon a showing of cause or in the interests of creditors, any equity security holders and other interests of the estate. Section 1104(a) of the Bankruptcy Code provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee -
>
> (l) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs or the debtor by current management, either before or after the commencement of the case . . . ; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate ...

11 U.S.C. § 1104(a)(1) and (2).

18. The burden of proof is the same under either Section 1104(a)(l) or 1104(a)(2): the party seeking the appointment of a Chapter 11 trustee has the burden of proving the need for a trustee by *clear and convincing evidence*. In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989); In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998); see also Official Committee of Asbestos Claimants v. G-1 Holdings, Inc. (In re G-1 Holdings, Inc.), 385 F.3d 313, 315-18 (3d Cir. 2004). This is a substantial burden, which Prestige cannot and has not met under either section of the statute. The appointment of a Chapter ll trustee is extraordinary relief and is the "exception, rather than the rule," Marvel, at 471 (quoting Sharon Steel, at 1225), because "current management is generally best suited to orchestrate the process of rehabilitation for the

benefit of creditors and other interests of the estate." In re Savino Oil & Heating Co., 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989); Marvel, 140 F.3d at 471; Taub v. Taub (In re Taub), 427 B.R. 208, 225 (Bankr. E.D.N.Y. 2010) (finding that appointment of a trustee is an unusual remedy with a "very high" burden of proof). Because the debtor in possession is a fiduciary of all creditors and has an obligation to avoid conduct that would "damage the estate or hinder a successful reorganization," Petit v. New England Mort. Servs., 182 B.R. 64, 69 (D. Me. 1995), there is a "strong presumption against appointing an outside trustee." Marvel, 140 F.3d at 471; In re Sundale, ltd., 400 B.R. 890, 899 (Bankr. S.D. Fla. 2009); In re The 1031 Tax Group, LLC, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007). Moreover, there has been no report submitted by the examiner suggesting that the Debtor has not complied with any of the Examiner's requests.

19. The debtor in possession's familiarity with the operations and business of the debtor "often [makes] it the best party to conduct operations" during the Chapter 11 process. Marvel, 140 F.3d at 47l (emphasis added); Sharon Steel, 871 F.2d at l 226 (noting the House Report's conclusion that "very often creditors will be benefitted by continuation of the debtor in possession" because of the debtor's familiarity with the business and the avoidance of the expense of a trustee). "The appointment of a trustee imposes a substantial financial burden on a debtor's estate which can preclude the possibility of reorganization." In the Matter of Century Glove, Inc., 73 B.R. 528, 537 (Bankr. D. Del. 1987) (citing In re Crescent Beach Inn, Inc., 22 B.R. 155, 160 (Bankr. D. Me. 1982) (denied the motion, noting that the administration expense of a trustee should be considered).

20. Prestige has failed to meet its burden by clear and convincing evidence to establish cause exists for appointment of a Chapter11 trustee under Section 1104(a) of the Bankruptcy Code. See Sharon Steel Corp., 871 F.2d at 1226 (3d Cir. 1989); Marvel, 140 F.3d at 471; see also (In re

G-1 Holdings, Inc., 385 F.3d at 315-18. As established throughout this Opposition and the Debtor's Cert., the Debtor is a sophisticated business-person who is, "the best party to conduct operations" during the Chapter 11 process. Marvel, 140 F.3d at 47l. Appointment of a Chapter 11 trustee will lead to a depletion of the Debtor's estate – which means less to possibly no return for Prestige and other creditors – as appointment of a, "trustee imposes a substantial financial burden on a debtor's estate which can preclude the possibility of reorganization." Century Glove, Inc., 73 B.R. at 537 (citing Crescent Beach Inn, 22 B.R. at 160 (denied the motion, noting that the administration expense of a trustee should be considered)). When considering the appointment of the Examiner has already caused extensive fees to accrue in this case as well as oversight, it makes it even less reasonable and compelling to appoint a chapter 11 trustee. Id.

21. Prestige argues that since Prestige and fourteen (14) other creditors filed complaints commencing adversary proceedings pursuant to 11 U.S.C. § 523(a) as to alleged fraudulent conduct by the Debtor, this serves as a basis for appointment of a trustee. See Motion, at paragraph B, pgs. 4-19. Prestige's reasoning in support of the Motion – that creditor filed adversary complaints – is flawed, as just because one alleges causes of actions does not mean those causes of action are valid. "[T]he [debtor's counsel's] process in advancing their bribery allegations was "suspect," . . . [which was in their] filed [] Adversary Complaint . . .". In re Prosser, 777 F.3d 154, 163 (3d Cir. 2015). "[T]he [debtor's counsel] repeated filings based on a single fact that did not substantiate the bribery accusation". Id., 777 F.3d at 163.

22. Thus, as Prestige asserts the fifteen (15) nondischargeability actions – filed between May 15 and May 19 – does not serve as a basis in support of appointment of a chapter 11 trustee. The nondischargeability actions may prove, as the Debtor contends, to be baseless and the actions may be dismissed. Id., 777 F.3d at 163. Therefore, to appoint a chapter 11 trustee which will cause

7

a "substantial financial burden on a debtor's estate which can preclude the possibility of reorganization[]" is a dire measure, which is unreasonable before adjudication of the merits on the nondischargeability actions. See Century Glove, Inc., 73 B.R. at 537.

23. Lastly, although the Debtor has not yet filed his Form 426 pursuant to Rule 2015.3, this does not arise to establishing "cause" as Prestige assets in support of appointment of a chapter 11 trustee. See Motion, at pg. 19. The Debtor has filed Monthly Operating Reports for February 2025[ECF 179], March 2025 [ECF 200], and April 2025[ECF 285]. See Placona Cert., at ¶ 10. Although the Debtor has not yet filed the Form 426, the Debtor has not totally neglected his filing requirements. Id. Counsel for the Debtor was reviewing due diligence to fully comply with Form 426. Failure to file a Form 426 by itself is not sufficient to establish cause, by clear and convincing evidence, to appoint a chapter 11 trustee. Id.

II. **Prestige Fails to Establish Sufficient Cause to Warrant Mandatory Appointment of a Chapter 11 Trustee**

24. Under Section 1104(a)(l), once the court determines that cause exists, the appointment of a Chapter 11 trustee is mandatory. Sharon Steel, 871 F.2d at 1226. The determination of cause, however, is within the discretion of the court. Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 242 (4th Cir. 1987); 1031 Tax Group, 374 B.R. at 86. This discretion is subject to "the various interests involved in the bankruptcy proceeding," including the protection of creditors. The level of mismanagement is relative and must be properly considered so as to not "frustrate" the policies of the Bankruptcy Code. The consequences of the alleged conduct must also be considered such that the appointment of a Chapter 11 trustee is "harmonious with the [Code] in its entirety" thereby entrusting Bankruptcy courts with discretionary authority to determine if cause exists under Section 1104(a)(1). A.H. Robbins, 838 F.2d at 242.

25.     The determination of whether cause exists under Section 1104(a)(1) must be made on a case-by-case basis.  Marvel, 140 F.3d at 472; Sharon Steel, 871 F.2d at 1226, 1228 (decisions under both provisions of Section 1104(a) are made on a case by case basis and the court should consider the "totality of the circumstances"); Sundale, 400 B.R. at 900 ("the decision to appoint a trustee is fact intensive and the determination must be made on a case by case basis").

26.     Here, the facts offered by Prestige do not justify the extraordinary relief of appointing a Chapter 11 trustee because cause is not established by clear and convincing evidence. Prestige cites to the fifteen (15) nondischargeability complaints filed under 11 U.S.C. § 523 as support for a finding of "cause" under Section 1104(a)(l), and as a reason why the Debtor has an inability to effectively manage his estate. See Motion, at pgs. 18-20. As established above, the filing of an adversary complaint does not mean the contents of the adversary complaints are true or accurate. See Prosser, 777 F.3d at 163. The mere filing of an adversary complaint is not enough to meet the high burden of clear and convincing evidence needed to support appointment of a chapter 11 trustee. See Sharon Steel Corp., 871 F.2d at 1226.

27.     Therefore, the reasons supporting Prestige's Motion for appointment of a chapter 11 trustee do not even establish the appointment as necessary by a preponderance of the evidence, let alone by clear and convincing evidence.

### III.    Prestige Fails to Prove That the Appointment of a Trustee is in the Best Interests of Creditors, Equity Security Holders and Other Interests of the Estate

28.     Unlike Section 1104(a)(l) which mandates the appointment of a Chapter 11 trustee once the Bankruptcy Court determines that cause exists, Section 1104(a)(2) of the Bankruptcy Code "'envisions a flexible standard' [whereby the court] has discretion to appoint a trustee 'when to do so would serve the parties' and the estates' interests.'" Marvel, 140 F.3d at 474 (quoting Sharon Steel, 871 F.2d at 1226); 1031 Tax Group, 374 B.R. at 90-91. The flexible, discretionary

standard is premised upon the Court's consideration of certain factors which give rise to a cost/benefit analysis. Sundale, 400 B.R. at 909.

29. The factors were developed in light of Congress' intent, when formulating Section 1104(a)(2), to protect the public interest and the interests of creditors and to facilitate "a reorganization that will benefit both the creditors and the debtors." 1031 Tax Group, 374 B.R. at 91, quoting from the House Report, 124 Cong. Rec. H 11, 11 (daily ed. Sep. 28 1978) (emphasis added). The factors to be considered are:

> (i) the debtor's trustworthiness;
>
> (ii) the debtor's past and present performance and prospects of rehabilitation;
>
> (iii) the confidence in the debtor's current management; and
>
> (iv) the benefits derived from, as compared to, cost incurred by the appointment.

1031 Tax Group, at 91. The factors are "amorphous, diverse, and necessarily involve a deal of judicial discretion." Savino Oil, 99 B.R. at 527 n.11.

30. Here, the four (4) factors support maintaining the Debtor's management, instead of installing a Chapter 11 trustee. First, there has been no demonstration that the Debtor is incapable of managing the Debtor's business in a trustworthy manner. Even *assuming arguendo* this position had any credibility, the Debtor is now in bankruptcy and has many overseeing attorneys and creditors reviewing his case, as well as the Examiner. ECF 99. This level of oversight is enough to make sure the Debtor's bankruptcy is handled legitimately. Moreover, as established above, Prestige cannot establish that the benefit of a Chapter 11 trustee being appointed outweigh the cost associated with the appointment, especially in light of the fact the Examiner has already accrued substantial fees in similar role. See Debtor's Cert., at ¶ 6. Therefore, the added administrative

expense of a chapter 11 trustee will only unnecessarily erode the value to creditors, including Prestige, when this case already has substantial oversight by the Examiner and counsel to creditors.

31. Additionally, the plain language of Section 1104(a)(2) does not support the appointment of a trustee. Section 1104(a)(2) requires that the appointment of a trustee be "in the interests of creditors, any equity security holders, *and* other interests of the estate." (Emphasis added.) The statute is written in the conjunctive thereby requiring that the Court find that a Chapter 11 trustee is in the interests of all of the Debtor's constituent groups, including the Debtor's creditors equity security holders and other estate interests. In re St. Louis Globe Democrat, Inc., 63 B.R. 131, l38, n. 9 (Bankr. E.D. Mo. 1985) (finding that although the appointment of a trustee is in the interests of creditors and other interests of the estate, it was not in the interest of any equity security holders). "[A] creditor group, *no matter how dominant*, cannot justify the appointment of a trustee simply by alleging it would be in its interest. It must show that the appointment the interests of all those with a stake in the estate, which [like here] . . . would include the debtors." Slettland, 260 B.R. at 672 (emphasis added); see also Bergeron, at *8. To grant Prestige's Motion for its own purposes disenfranchises other creditors and the Debtor. See 7 Collier, Bankruptcy, 1104.02[3][d][i] (Resnick and Sommer eds, 16th ed.). This cannot be permitted, and it is clear this is what Prestige's intentions were in seeking the appointment of a Chapter 11 trustee.

32. The mere fact that one particular party is unhappy with current management is thus clearly insufficient cause to appoint a trustee under Section 1104(a)(2). See, e.g., In re Stein and Day, Inc., 87 B.R. 290, 295 (Bankr. S.D.N.Y. 1988) (refusing to appoint trustee on motion of single aggrieved creditor where other creditors felt management was competent). Here, Prestige is nothing more than a single aggrieved creditor attempting to thwart the Debtor's reorganization efforts, especially when considering the First Motion was addressed with appointment of the

Examiner in lieu of a chapter 11 trustee. ECF 99. The best option for the Debtor – and all stakeholders – is to continue operating without the costs of a Chapter 11 trustee to further deplete the Debtor's estate. The enormous financial burden of a trustee's commissions and professional fees would prevent any chance for a successful reorganization, especially when considering the Examiner has already accrued substantial fees. See Debtor's Cert., at ¶ 6.

### IV. The Examiner's Order Must Not be Amended to Allow for Rule 2004 Examination Subpoena Responses to be Disclosed

33. The Examiner Order must not be amended at this time, because it was reached after extensive negotiations between Deerfield and the Debtor to resolve the First Motion. ECF 99. Deerfield and the Debtor bargained for the language in the Examiner Order, and specifically language regarding allowing the Examiner to expressly share information received from Rule 2004 Examination subpoenas was omitted. Id. The Examiner is yet to issue his preliminary report – as required in the Examiner Order – and thus releasing any info from the Rule 2004 Examination subpoenas is premature at this time. Id. Furthermore, a Rule 2004 Subpoena is inappropriate. Once an adversary proceeding is filed, the plaintiff must look to Fed.R.Civ.P. 45 regarding discovery. As stated, "[M]oreover, once an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F.R.Civ.P. rather than the broader bounds of R2004." In re Valley Forge Plaza Associates, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted). "Many courts have expressed distaste for efforts of parties to utilize R2004 examinations to circumvent the restrictions of the F.R.Civ.P. in the context of adversary proceedings or contested matters." Id. (citations omitted). "The admonition that the F.R.Civ.P. in general apply to discovery in adversary proceedings and contested matters has been specifically applied to prevent attempts to avoid the proscriptions of F.R.Civ.P. 26(b)(4) by the use of R2004." Id. (citations omitted).

12

34. Prestige needs to withdraw its Rule 2004 Subpoena to the Examiner.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests this Court deny the Motion, and grant such other and further relief as the Court deems just and equitable.

Dated: June 6, 2025

**McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel for Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession*

By: */s/ Sari B. Placona*
    Sari B. Placona