| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession* |

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br>      Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**DEBTOR'S REPLY TO (1) SILVERVIEW CREDIT PARTNERS LP'S (I) OMNIBUS OBJECTION TO (A) DEBTOR'S MOTION TO APPROVE COMPROMISE OR SETTLEMENT UNDER RULE 9019, AND (B) DEERFIELD'S MOTION FOR AN ORDER STAYING AND/OR SUSPENDING THE EXAMINER; AND (II) STATEMENT IN SUPPORT OF PRESTIGE'S MOTION TO APPOINT TRUSTEE; AND (2) CHICAGO ATLANTIC ADMIN, LLC'S (I) OBJECTION TO DEERFIELD CAPITAL, LLC SETTLEMENT MOTION AND (B) JOINDER TO PRESTIGE OBJECTION**

Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession (the "Debtor"), by and through his counsel, McManimon, Scotland & Baumann, LLC, respectfully submits his reply ("Reply") to (1) Silverview Credit Partners LP's ("Silverview") (I) Omnibus Objection to (A) Debtor's Motion to Approve Compromise or Settlement Under Rule 9019, and (B) Deerfield's Motion for an Order Staying and/or Suspending the Examiner; and (ii) Statement in Support of Prestige's[1] Motion To Appoint Trustee ("Silverview Objection"); and (2) Chicago Atlantic Admin, LLC's ("Chicago

---

[1] Prestige consists of Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige" or "Prestige Fund").

Atlantic") (I) Objection to Deerfield Capital, LLC Settlement Motion ("Deerfield Settlement Motion")[2] and (ii) Joinder To Prestige Objection ("Chicago Atlantic Objection"). ECF 296, 301. The Debtor respectfully submits as follows:

I. **Debtor Disputes (i) the Silverview Objection Preliminary Statement and Statement in Support and (ii) Further Support Why the Examiner Must be Terminated**

The Debtor filed a Reply to Prestige's Objection to Debtor's Motion for an Order Approving the Agreement Amongst the Debtor, Heller Capital Group, LLC ("HCG"), Heller Investment Holdings, LLC ("HIH") and Deerfield Capital, LLC ("Deerfield") Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Prestige Objection") [ECF 303] (the "Debtor's Reply to Prestige"). Silverview's Preliminary Statement appears to be, in part, a recitation of Prestige's preliminary statement in the Prestige Objection. Silverview cites to a "massive Ponzi scheme . . . [as an] inescapable conclusion drawn from the growing mountain of evidence" which is a conclusory statement without supporting facts. See Silverview Objection, at ¶ 2. Silverview references the "fifteen adversary proceeding complaints" as evidence of said scheme, which are facts that do not support the conclusion drawn. Id. Thus, the Debtor adopts all statements and arguments in the Debtor's Reply to Prestige, which are incorporated herein by reference as if fully set forth herein and applies same to Silverview's identical arguments.

Silverview cites to "active investigations by both the Securities and Exchange Commission ("SEC") and Department of Justice ("DOJ")" as proof of a scheme and fraud. Id. The Debtor notes he has been in full compliance and in active communications with the SEC and DOJ, which investigations remain open. Silverview is prematurely accusing the Debtor of running a Ponzi scheme based solely on the existence of DOJ and SEC investigations, without acknowledging that an investigation is not equivalent to a finding of guilt—whether beyond a reasonable doubt in a criminal case, or by clear and

---

[2] All capitalized terms in Debtor's Motion for an Order Approving the Agreement Amongst the Debtor, HCG, HIH, and Deerfield pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [ECF 258] are incorporated herein.

convincing evidence or a preponderance of the evidence in a civil proceeding. In doing so -- Silverview is putting the cart before the horse -- which not only misrepresents the legal process but also suggests a bad-faith attempt to tarnish the Debtor's reputation without due process.

To the extent Silverview and Chicago Atlantic reference that the Debtor and Deerfield seek termination of the Examiner as a negative, this is objectively untrue. On February 18, 2025, Deerfield filed a Motion to Appoint a Chapter 11 Trustee (the "Deerfield Trustee Motion"). ECF 30. The appointment of the Examiner was reached as a compromise between Deerfield and the Debtor, in support of the Deerfield Trustee Motion, in place of appointing a chapter 11 trustee pursuant to Deerfield's Trustee Motion. The reason Deerfield and the Debtor agreed on the Examiner Order, was because the Debtor wanted to avoid the excess time and costs of litigating the Trustee Motion which would continue to drain the estate and jeopardize the Debtor's chances at reorganization. Thus, the parties agreed on the terms of the Examiner Order, which was limited in scope to avoid excessive Examiner fees. Unfortunately, the opposite came true. The Examiner filed a budget estimating total fees in the amount of $1,416,195 and his attorneys' fees in the amount of $350,005. See Deerfield's Examiner Termination Motion, at ¶ 8. With Deerfield and the Debtor reaching the Agreement, pending approval by the Court pursuant to the Deerfield Settlement Motion [ECF 258], the necessity of the Examiner is diminished.

Deerfield concurs with, which is evident from its Motion for an Order Staying and/or Suspending the Examiner ("Deerfield's Examiner Termination Motion"), filed on May 22, 2025. ECF 271. The Debtor concurs with Deerfield, "the Agreement between the Debtor and Deerfield structurally changes this case, resolves Deerfield's Trustee Motion, and the ultimate scope of the Examiner's role." See Deerfield's Examiner Termination Motion, at ¶ 19. Moreover, the Debtor agrees, "[the Examiner's budget cost of] $1.5 million dollars in fees . . . will overwhelm the estate. Id., at ¶ 26.

Pursuant to paragraph 1 of the Examiner Order, Deerfield's Trustee Motion was to:

3

remain pending until either the earlier of (a) thirty (30) days after the submission of the Examiner Report or (b) a date set by the Court within five (5) days of a Notice of Non-Compliance filed by the Examiner (defined herein). Once the Examiner submits a Non-Compliance Notice to the parties and the court rules on such Non-Compliance, nothing in this Order shall prevent the Movant from relisting the Motion or any other party from filing a separate Motion for Appointment of a Trustee at any time. The Examiner shall provide a preliminary report or status within sixty (30) [sic] days of entry of this Order. ECF 99.

The Examiner has failed to comply with paragraph 1 of the Examiner Order. See Deerfield's Examiner Termination Motion, at ¶ 28. Furthermore, the Examiner has not filed a Non-Compliance Notice. Id. The Examiner's failures to comply with the Examiner's Order warrants the Court terminating the Examiner's role in the Debtor's bankruptcy case. Ceasing the Examiner, his counsel and financial advisor's substantial fees from accruing is a net benefit to the Debtor's estate, and to creditors like Silverview and Chicago Atlantic. To the extent Silverview advances an argument in support of Prestige's position that a chapter 11 trustee should be appointed, a chapter 11 trustee should not be appointed for the same reasons why Deerfield and the Debtor settled the Deerfield Trustee Motion by appointment of the Examiner. See Silverview Objection, at ¶¶ 31-35. For the same reasons the need for the Examiner is diminished, the appointment of a chapter 11 trustee is unwarranted.

Silverview argues in support of Prestige, but it is Prestige who created the impairments to HCG and HIH and is culpable for the hundreds of millions of liabilities, which the Debtor will pursue in due course. Regarding HCG, the Debtor's Amended Schedule A and F (the "Schedule") [ECF 122] reflects a fair market value ("FMV") of $160,000,000 and a book value of $35,000,000. ECF 122. The Debtor included a disclosure regarding HCG's valuations:

> this has been downgraded from December 31, 2023 given impairment that occurred in the first six months of 2024. This reflects two different methodologies of valuation. First is "FMV valuation methodology" which reflects what the entities/assets would sell for in the open market, not the actual book value of assets. The "Book valuation methodology" reflects the actual equity on each company's balance sheet. Many of the companies don't have a lot of tangible assets on the balance sheet rather the valuation lies in IP, contracted revenue, multiples of

4

> EBITDA, etc. We have not done a valuation recently, however it would be less than defined below.

Id. Thus, given the HCG impairment that occurred since the first six (6) months of 2024 (June 30, 2024), and as of the February 10, 2025 petition date (the "Petition Date") [ECF 1], the value of HCG was significantly less as of the Petition Date. The Debtor did not declare HCG had a value of $160,000,000, but rather disclosed it on his Schedule for full transparency, with the disclaimer that the value was significantly less. As for Silverview citing to, "proofs of claims in this case totaling over $800 million"³ this inflated number is due to Prestige's erroneous claims, which the Debtor has filed the Motion Expunging Claims Nos. 13 Through 32 Filed by Prestige Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 ("Expungement Motion"). ECF 288. The Debtor eagerly awaits Prestige's response as to how it substantiated it's excess of $500,000,000 in claims.

As for Silverview raising the issue of Rule 2015.3 and Form 426, the Debtor has been conducting due diligence since the case's inception by compiling relevant information with his accountant to file an accurate Form 426 as it is a complex estate. See Silverview Objection, at ¶¶ 17, footnote 12, 33. HCG and HIH are non-debtor entities in which the Debtor has a controlling interest, but both HCG and HIH have many entities beneath them which takes time to properly account. The Debtor took requisite time to file Form 426, not due to bad faith, but rather due to the opposite. The Debtor had worked tirelessly to accumulate the requisite information of the non-debtor entities in which he has a controlling interest. Form 426 will be filed in short order. The Debtor was conducting due diligence in connection with the documents required with Form 426. As a side note, the Examiner has not cited one instance of the Debtor's misconduct, delay, or anything else untoward.

**II.     The Agreement is Fair and Equitable With the Martin Factors Favoring Approval**

Silverview argues in the Silverview Objection that the Agreement is not fair and equitable and

---

³ See Silverview Objection, at ¶ 18.

5

non-participating creditors are unduly prejudiced. See Silverview Objection, at ¶¶ 13-23. Chicago Atlantic argues the same. See Chicago Atlantic Objection, at ¶¶ 9-25. Both Silverview and Chicago Atlantic argue the factors set forth in In re Martin, 91 F.3d 389, 393 (3d Cir.1996) (the "Martin Factor(s)") do not weigh in favor of approval of the Agreement. Id.; Silverview Objection, at ¶¶ 13-23. To the extent the Martin Factors have been addressed in the Debtor's Reply to Prestige, as previously stated, said statements and arguments are incorporated herein by reference as if fully set forth herein, and applies same to the similar arguments advanced by Silverview and Chicago Atlantic.

In the Agreement, Deerfield releasing forty-nine percent (49%) of the Debtor's remaining interest in HIH[4] is beyond significant as the Debtor "*can use*[it] *to fund a Plan*." See Motion, at 25 (emphasis added). The Debtor's ability to fund a plan provides the greatest benefit to creditors possible, including Silverview and Chicago Atlantic. Deerfield's release of forty-nine (49%) of the Debtor's remaining interest in HIH is a material and substantial benefit that directly advances the paramount interests of creditors by enhancing the estate's ability to fund a Plan. Martin, 91 F.3d at 393. The Agreement enables avoidance of litigation risks, collection difficulties, and unnecessary administrative expense(s), and ensures a prompt, concrete benefit for the estate—all of which strongly support approval under the Martin Factors. Id. Ceasing litigation with Deerfield leads to ceasing substantial estate bearing costs from accruing and enables the Debtor to fund a Plan, the Martin Factors weigh in favor of such a beneficial result. Id.

### III.    The Agreement is not an Impermissible *Sub Rosa* Plan

Silverview argues in the Silverview Objection that the Agreement is an impermissible *sub rosa* plan. See Silverview Objection, at ¶¶ 10-12. Chicago Atlantic argues the same. See Chicago Atlantic Objection, at ¶¶ 26-29. To the extent the Debtor has addressed that the Agreement is not a *sub rosa* plan in the Debtor's Reply to Prestige, such statements and arguments are incorporated herein by

---

[4] To note, Deerfield is not receiving an interest in HCG, only HIH. See Silverview Objection, at ¶ 27.

reference as if fully set forth herein and applies same to the similar arguments advanced by Silverview and Chicago Atlantic. To the extent Silverview references liquidation events by Deerfield of HCG, and HCG not being a debtor in this bankruptcy which circumvents the bankruptcy process, that argument has no relevance to *this* bankruptcy. See Silverview Objection, at ⁋ 11. Whether parts of a non-debtor entity will be liquidated in the Agreement is not relevant to the consideration of whether the Agreement renders this Debtor's plan a *sub rosa* plan. Without approval of the Agreement, there will be no Plan, thus no circumvention of creditors' rights. Id., at ⁋ 10. The Agreement is fair and equitable and is a necessity to fund the Debtor's plan. Therefore, because the Agreement is not a substitute for, but a prerequisite to, the Plan, it cannot be considered a *sub rosa* plan. The ultimate treatment of creditors and distribution of assets will occur only through a confirmed Plan, which is enabled by the Agreement.

Therefore, with the Silverview Objection and Chicago Atlantic Objection having been sufficiently addressed, the Debtor submits the Motion and underlying Agreement should be approved by the Court.

Dated: June 6, 2025

**McMANIMON, SCOTLAND
& BAUMANN, LLC**
*Counsel for Daryl Fred Heller, the Chapter 11 Debtor
and Debtor-in-Possession*

By: */s/ Sari B. Placona*
        Sari B. Placona

7

4921-3842-6187, v. 1