| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for Daryl Fred Heller, the Chapter 11*<br>*Debtor and Debtor-in-Possession* |

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br>                     Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**REPLY TO CHICAGO ATLANTIC ADMIN, LLC'S OBJECTION TO MOTION FOR AN ORDER APPROVING THE AGREEMENT BETWEEN THE DEBTOR, CHARLENE R. HELLER, AND ORRSTOWN BANK PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Daryl Fred Heller (the "Debtor"), the Chapter 11 Debtor and Debtor-in-Possession, by and through his counsel, McManimon, Scotland & Baumann, LLC, respectfully submits his reply ("Reply") to Chicago Atlantic Admin, LLC's ("Chicago Atlantic") Objection to the Motion for an Order Approving the Agreement Between the Debtor, Charlene R. Heller, and Orrstown Bank Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion")[1] [ECF 213] (the "Objection"). ECF 282. The Debtor respectfully submits as follows:

**I.    Debtor Dispute Chicago Atlantic's Background in the Objection and Chicago Atlantic is in a Better Position Than Other Creditors**

First, Chicago Atlantic seized Heller Capital Group, LLC's[2] ("HCG") most valuable asset Premier Technology Group ("PTG") and liquidated it for below market value on or about February 14, 2024, receiving what we believe to be approximately $16,000,000, however they have refused after multiple attempts to provide the final account. This number does need to be verified however we are

---

[1] Undefined capitalized terms herein shall have the same meaning as ascribed in the Motion.
[2] HCG is a limited liability company in which the Debtor owns a ninety-nine and a half percent (99.5%) member interest.

without that information. PTG should have sold for substantially higher, likely closer to $25,000,000. Moreover, Chicago Atlantic also sold AVAIL Technology ("AVAIL") for an unknown amount as Chicago Atlantic has refused to disclose the sale price of AVAIL. Upon information and belief, Chicago Atlantic is in the process of selling another business segment of AVAIL a PTG customer with the acronym ICS ("ICS")[3] which should sell for approximately $3,000,000 to $4,000,000 if receive market value. Thus, subtracting the amounts Chicago Atlantic has received for PTG, AVAIL, and ICS, Chicago Atlantic should have received approximately $20,000,000, and if it had sold at market price, they would have received in excess of $25,000,000. Chicago Atlantic's initial debt was $22,000,000 and after receipt of the aforementioned entities it is still alleging it is owed $16,963,009.84. See Claim 11. Upon information and belief, Chicago Atlantic has already received significant payback and cost the Debtor's estate $5,000,000 to $7,000,000 based on orchestrated short sale(s) placing them in a better position than other creditors. See Objection, ¶ 9.

Moreover, Chicago Atlantic claims the Debtor's "Schedules also claim a grossly inflated and unreliable amount relative to the Debtor's businesses." See Objection, at ¶ 7. Regarding HCG, the Debtor's Amended Schedule A and F (the "Schedule") [ECF 122] reflects a fair market value ("FMV") of $160,000,000 and a book value of $35,000,000. ECF 122. The Debtor included a disclosure regarding HCG's valuations:

> this has been downgraded from December 31, 2023 given impairment that occurred in the first six months of 2024. This reflects two different methodologies of valuation. First is "FMV valuation methodology" which reflects what the entities/assets would sell for in the open market, not the actual book value of assets. The "Book valuation methodology" reflects the actual equity on each company's balance sheet. Many of the companies don't have a lot of tangible assets on the balance sheet rather the valuation lies in IP, contracted revenue, multiples of EBITDA, etc. We have not done a valuation recently, however it would be less than defined below.

---

[3] The Debtor does not know what the acronym ICS stands for, but upon information and belief ICS was separated from PTG to be sold to another buyer.

<u>Id.</u> Thus, given the HCG impairment that occurred since the first six (6) months of 2024 (June 30, 2024), and as of the February 10, 2025 petition date (the "Petition Date") [ECF 1], the value of HCG was significantly less as of the Petition Date. The Debtor did not declare HCG had a value of $160,000,000, but rather disclosed it on his Schedule for full transparency, with the disclaimer that the value was significantly less.

## II. **The Agreement is Fair and Equitable With the Martin Factors Favoring Approval**

Chicago Atlantic argues in its Objection that the Agreement is not fair and equitable and non-participating creditors are unduly prejudiced. <u>See</u> Objection, at ¶¶ 12-17. Moreover, Chicago Atlantic argues the factors set forth in <u>In re Martin</u>, 91 F.3d 389, 393 (3d Cir.1996) (the "Martin Factor(s)") do not weigh in favor of approval of the Agreement. <u>Id.</u>, at ¶¶ 18- 28. Chicago Atlantic purports the value recovered by the estate is minimal and frames the benefits primarily only advantage Orrstown and Mrs. Heller. <u>Id.</u>, at ¶ 19. First, Orrstown withdrawing the Venue Motion is a material benefit to the Debtor. <u>See</u> Motion, at ¶ 34. If the case was transferred to a different venue, there would be a big learning curve for the new court. The sale of the Sea Isle Property enables significant funds to flow to the estate and resolving Orrstown's lien – rather than litigating same – provides funds for the estate. <u>Id.</u>, at ¶ 22. Furthermore, Orrstown satisfying the First Regents Judgment against the Debtor allows for the satisfaction of a significant judgment – $1,314,310.13 – against the Debtor. <u>Id.</u>, at ¶ 28.

In the context of the Martin Factors, Orrstown's Venue Motion being withdrawn with prejudice, removes a significant procedural hurdle and litigation risk for the Debtor. Avoiding a venue fight increases the certainty that the case will proceed efficiently in the current forum, eliminating the risk and uncertainty inherent in litigating a venue transfer, which could delay or even derail the Debtor's reorganization efforts. Next, the sale of the Sea Isle Property, coupled with the resolution of Orrstown's lien, ensures that substantial funds will flow directly to the estate. By settling the lien dispute rather than litigating, the estate avoids the risk that, even if successful in litigation, collecting

3

the proceeds could be delayed or complicated. The settlement provides for immediate, tangible recovery for the estate, which is always preferable to the uncertainty of future collection.

Resolving Orrstown's lien through the Agreement, rather than through protracted litigation, avoids significant legal expense, administrative burden, and delay. Litigation over lien validity and priority can be complex, fact-intensive, and costly. The settlement streamlines the process, conserves estate resources, and accelerates the timeline for distributing funds to creditors. The settlement directly serves the interests of creditors by maximizing the funds available for distribution. The sale proceeds of the Sea Isle Property and satisfaction of the First Regents Judgment ($1,314,310.13) represent substantial recoveries that would otherwise be subject to litigation risk and delay. Creditors benefit from the certainty and immediacy of these funds, rather than facing the prospect of uncertain, delayed, or diminished recoveries if litigation were to proceed.

Chicago Atlantic's focus on the benefits to Mrs. Heller, being a non-debtor in this bankruptcy, and Orrstown are an attempt to divert the Court away from the fact the Agreement is fair and equitable, and the Martin Factors support same. See Objection, at ¶¶ 19-28.

### III. The Agreement is not an Impermissible *Sub Rosa* Plan and Does Not Violate the Absolute Priority Rule

Chicago Atlantic argues in its Objection that the Agreement is an impermissible *sub rosa* plan and violates the absolute priority rule. See Objection, at ¶¶ 29-35. Chicago Atlantic on the one hand argues "the Debtor has already sold the primary asset of the bankruptcy estate [net proceeds Sea Isle Property for $1,563,231.69], leaving only membership interests with speculative value[]" of which Chicago Atlantic has received more payback of debt than another other creditor to date, yet on the other cites to the Debtor's Schedules, with valuations of HCG at $35,000,000, Heller Investment Holdings, LLC at $28,000,000. Id., at ¶¶ 7, 33. When considering the valuation of HCG alone being approximately thirty-five (35) times the value of the Sea Isle Property, the Seal Isle Property is far from the Debtor's "primary asset". Id., at ¶ 33. With the Debtor Schedules reporting significant assets

4

and income, Chicago Atlantic's statement that, "there would appear to be nothing of substance to support a reorganization plan[]" could not be farther from the truth. Id., at ¶ 35.

Thus, the Agreement is not a *sub rosa* plan, as recovery by other creditors is by no way impacted by the Agreement and plan confirmation is not subverted. Approval of the Agreement will (i) enable significant funds to become available to creditors by way of Sea Isle Property proceeds, (ii) reduce litigation costs that would be borne in defense of the Venue Motion, and (iii) eliminate the First Regents Judgment ($1,314,310.13) against the Debtor's estate. See Motion, at ¶¶ 22, 28, 34. Chicago Atlantic professes the Agreement violates the absolute priority rule yet cites no caselaw in support of this position. See Objection, at ¶ 34.

Therefore, with Chicago Atlantic's Objection having been sufficiently addressed, the Debtor submits the Motion and underlying Agreement should be approved by the Court.

Dated: June 9, 2025

                                                          **McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel for Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession*

By: */s/ Sari B. Placona*
      Sari B. Placona