| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Reed Smith LLP<br>Kurt F. Gwynne, Esq.<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br>Email: kgwynne@reedsmith.com<br><br>*Counsel for Edward A. Phillips, as Examiner* | |
| In re: <br><br>DARYL FRED HELLER,<br><br>Debtor. | Case No. 25-11354 (JNP)<br><br>Judge Jerrold N. Poslusny Jr.<br><br>Chapter 11 |

## NOTICE OF FILING OF
## STATUS REPORT OF EXAMINER, EDWARD A. PHILLPS

**PLEASE TAKE NOTICE** that, on June 9, 2025, Edward A. Phillips, the court appointed examiner in this chapter 11 case, by and through his undersigned counsel, has filed the attached *Status Report of Examiner, Edward A. Phillips*.

Date: June 9, 2025

Respectfully submitted,

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne, Essquire
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Wilmington, DE 19801
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
Email: kgwynne@reedsmith.com

*Counsel for Edward A. Phillips, as Examiner*

| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| Reed Smith LLP<br>Kurt F. Gwynne, Esq.<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br>Email: kgwynne@reedsmith.com<br><br>*Counsel for Examiner* |
| In re*:*<br><br>DARYL FRED HELLER,<br><br>                    Debtor. |

Case No. 25-11354 (JNP)

Judge Jerrold N. Poslusny Jr.

Chapter 11

# STATUS REPORT OF EXAMINER, EDWARD A. PHILLIPS

June 9, 2025

 

Edward A. Phillips, CPA, CFF, CFE, CTP, CIRA
Email: ephillips@getzlerhenrich.com

# STATUS REPORT

Upon my appointment as Examiner, I conducted conferences with representatives of the following parties in interest: (i) Deerfield Capital, LLC, (ii) Silverview Credit Partners LP, (iii) Orrstown Bank, (iv) Steward Capital Holdings LP, (v) Avenaero Holdings, LLC, (vi) the Receiver of Golden Gate Investment Company, LLC, (vii) Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC, and WF Velocity Fund VII, LLC (collectively, "Prestige Funds"), and (viii) other interested parties, and I have held an in-person meeting or additional follow-up conferences as needed. In addition, I have had multiple calls with counsel to Daryl Fred Heller (the "Debtor"). On March 26, 2025, I conducted a video conference meeting with the Debtor and his counsel.

The Debtor provided an initial set of documents that included prior year (2023) tax return data for the Debtor, limited bank statements and other information. Additionally, counsel for the debtor's spouse and children provided limited banking information. Based on the myriad of allegations of wrongdoing, the breadth of the Investigation,[1] the amount of funds that traveled through accounts owned or controlled by the Debtor or the Debtor Entities, and the number of entities related to the Debtor (more than 100), I caused my counsel (Reed Smith LLP) to issue more than 35 subpoenas (to entities across the United States) as part of the Investigation to track the sources and uses of funds of the Debtor and his related entities, some of which operated in other states. [*See* Docket Nos. 183, 184, 185, 187, 190, 191, 232, & 261]. The vast majority of those subpoenas were issued to entities that I personally identified as being a transferee of funds from, or a transferor of funds to, an account owned by the Debtor or a Debtor Entity. Other entities were subpoenaed to obtain necessary tax or other business records of the Debtor and the Debtor Entities. Notably, the information provided by the Debtor was the basis for many of the initial subpoenas that were served on financial institutions and intermediaries. My review of banking records as they were produced resulted in the issuance of additional subpoenas to other financial institutions.

To date, I have received responses from 26 financial institutions or intermediaries and revolving credit providers. Approximately 8.5 gigabytes of data, or over 11,600 files, have been produced, many of which include multiple documents within a single file. Those files include (among other things) bank statements, covering at least 188 separate accounts, wire transfer and other funds transfer information and canceled check copies from some institutions. This amounts

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order Directing the Appointment of an Examiner, entered March 7, 2025 [Docket No. 99].

to 42,555 pages, or just over 85 reams of paper, which, if printed, equates to roughly 426 lbs. of paper. As of May 20, 2025, I have received 1,472 account statements totaling 4,374 .PDF pages for just accounts in the name of Heller Capital, Paramount Management Group, and the Prestige Funds.

Although certain financial institutions, intermediaries or other entities are still producing documents (and a few additional subpoenas will be served as necessary), I believe most of what is going to be produced is now in my possession.

Additionally, I have reviewed certain prepetition litigation files relating to the Debtor or the Debtor Entities, which contain allegations of wrongdoing and related information relevant to the Investigation.

My firm, Getzler Henrich & Associates, LLC, has been retained as my financial advisor. To date, I have been utilizing the resources of the firm's data engineer. The data engineer has assisted my analysis of the allegations concerning duplicate (or more) sales of the same ATMs and my work on other aspects of the Investigation, including analyzing insider and inter-company transactions. The Court should be aware that a significant portion and what I consider to be the most important banking data arrived only 30 days ago. This was data from a single financial institution that had 62 relevant accounts. The bulk of the data engineer's time is currently spent on the data extraction and analysis process.

The format in which the data has been delivered from the various financial and other institutions has varied. Without going into unnecessary detail, certain financial institutions, instead of providing a separate bank statement for each month of activity, lumped all statements for a single account in one file, making the data extraction process more difficult and time consuming. Other institutions have provided all banking data, even with multiple accounts, in a single PDF file, also making the data extraction process more difficult and time consuming.

The *First Interim Report (Regarding Multiple Sales of the Same Automated Teller Machines to the Same or Multiple Purchasers)*, filed contemporaneously herewith, focuses on the allegation that Paramount Management Group LLC, a debtor-controlled entity, sold the same Automated Teller Machines ("ATMs") more than once to various Prestige Funds. In connection with that Investigation, I analyzed 48 invoices that Paramount issued to the Prestige Funds from 2021 through 2023.

I also am working on two other interim reports. One such report relates to the allegations that the Debtor operated a "Ponzi" scheme. A second such report relates to the allegations of Silverview Credit Partners, LP, Deerfield Capital LLC, Steward Capital Holdings, LP and

Avenaero Holdings LLC that Paramount wrongfully pledged the same equipment to multiple lenders.

                        EXAMINER:

                        *Edward A. Phillips*

Date:  June 9, 2025          By: Edward A. Phillips, CPA, CFF, CFE, CTP, CIRA