| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Reed Smith LLP<br>Kurt F. Gwynne, Esq.<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br>Email: kgwynne@reedsmith.com<br><br>*Counsel for Edward A Phillips, as Examiner* | |
| In re*:*<br><br>DARYL FRED HELLER,<br><br>                Debtor. | Case No. 25-11354 (JNP)<br><br>Judge Jerrold N. Poslusny Jr.<br><br>Chapter 11 |

**NOTICE OF FILING OF
FIRST INTERIM REPORT OF EXAMINER, EDWARD A. PHILLIPS
(REGARDING MULTIPLES SALE OF THE SAME AUTOMATED TELLER
MACHINES TO THE SAME OR MULTIPLE PURCHASERS)**

TO THE COURT AND PARTIES IN INTEREST:

      **PLEASE TAKE NOTICE** that, on June 9, 2025, Edward A. Phillips, the court-appointed examiner in this chapter 11 case, by and through his undersigned counsel, hereby files the attached *First Interim Report of Examiner, Edward A. Phillips (Regarding Multiple Sales of the Same Automated Teller Machines to the Same or Multiple Purchasers)*.

| | |
|---|---|
| Date: June 9, 2025 | Respectfully submitted,<br><br>By: */s/ Kurt F. Gwynne*<br>Kurt F. Gwynne, Esquire<br>**REED SMITH LLP**<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>Wilmington, DE 19801<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br>Email: kgwynne@reedsmith.com<br><br>*Counsel for Edward A. Phillips, as Examiner* |

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| Reed Smith LLP<br>Kurt F. Gwynne, Esq.<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>Telephone:  (609) 987-0050<br>Facsimile:  (609) 951-0824<br>Email:  kgwynne@reedsmith.com<br><br>*Counsel for Examiner* |

| | |
|---|---|
| In re: | Case No. 25-11354 (JNP) |
| DARYL FRED HELLER, | Judge Jerrold N. Poslusny Jr. |
| Debtor. | Chapter 11 |

# FIRST INTERIM REPORT OF EXAMINER, EDWARD A. PHILLIPS

## (REGARDING MULTIPLE SALES OF THE SAME AUTOMATED TELLER MACHINES TO THE SAME OR MULTIPLE PURCHASERS)

June 9, 2025

Edward A. Phillips, CPA, CFE, CFF, CIRA, CTP
Email: ephillips@getzlerhenrich.com

## I. BACKGROUND

### A. The Examiner

Edward A. Phillips (the "Examiner") is a Certified Public Accountant (CPA) who is Certified in Financial Forensics (CFF) and is a Certified Fraud Examiner (CFE), Certified Turnaround Professional (CTP), and a Certified Insolvency & Restructuring Advisor (CIRA). The Examiner is the past President of the Philadelphia/Wilmington Chapter of the Turnaround Management Association and previously served on the executive committee of TMA Global. He is also a member of the Association of Certified Fraud Examiners, the Association of Insolvency & Restructuring Advisors, the American Bankruptcy Institute, and the American Institute of Certified Public Accountants.

### B. The Chapter 11 Case

1. On February 10, 2025, Heller filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor continues to manage his affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[1]

### C. Appointment of the Examiner and the Scope of his Examination

3. On February 18, 2025, Deerfield Capital, LLC ("Deerfield") filed the *Motion for Appointment of Chapter 11 Trustee* [Docket No. 30] (the "Trustee Motion") in which Deerfield

---

[1] On January 21, 2025, Silverview Credit Partners LP ("Silverview") filed involuntary petitions against Blackford ATM Ventures, LLC ("Blackford") and certain of its affiliates (together with Blackford, the "Blackford Entities") under Chapter 7 of the Bankruptcy Code. *Blackford ATM Ventures Fund D, LLC*, Case No. 25-10105 (MFW) (Bankr. D. Del. Jan 21, 2025). In the *Addendum in Support of Involuntary Petition*, the petitioners allege that the Debtor controls Blackford and is the guarantor to certain obligations the Blackford Entities owed to Silverview, named a tranche term loan of $18,000,000.00 and a second tranche term loan of $7,000,000.00, totaling $25,000,000.00.

sought an order appointing a Chapter 11 Trustee. Several creditors filed statements in support of the Trustee Motion (collectively, the "Statements of Support"). *See Silverview Credit Partners LP's Statement in Support of Deerfield Capital, LLC's Motion for the Appointment of Chapter 11 Trustee,* filed February 25, 2025 [Docket No. 63]; *Response of Orrstown Bank In Support of Motion to Appoint Chapter 11 Trustee,* filed February 26, 2025 [Docket No. 66]; *Receiver's Statement In Support of Deerfield Capital, LLC's Motion for the Appointment of Chapter 11 Trustee,* filed February 27, 2025 [Docket No. 80]; *Prestige's Statement in Support of Deerfield Capital, LLC's Motion for Appointment of Chapter 11 Trustee,* filed February 28, 2025 [Docket No. 85].

4. On March 6, 2025, the Court entered the *Consent Order Preserving Status Quo* [Docket No. 96] in which Deerfield, the Debtor, the Heller Entities (as defined therein) and the Heller Individuals (as defined therein) agreed to entry of a consent order requiring them, the Debtor, and others to cooperate with an examiner to be appointed by the Court.

5. On March 7, 2025, upon the agreement of the Debtor and other parties in interest, the Court entered the *Order Directing the Appointment of an Examiner* [Docket No. 99] (the "Examiner Order") pursuant to section 1104(c) of the Bankruptcy Code. Pursuant to the Examiner Order, the Examiner, among other things, shall investigate the following matters (collectively the "Investigation"):

- "investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity, if any, in the management of the affairs of the Debtor or in any entity or entities owned or controlled by the Debtor, either directly or indirectly, or through any intermediate entity including but not limited to Heller Capital Group, LLC, Heller Investment Holdings, LLC, Accordo Limited

3

        Partnership, Brookfield LP, Brigantine Group, L.P., DHRC, LLC, I Employee Services, LLC, and RAW Ventures, LLC, Golden Gate Investment Company, LLC, or Paramount Management Group, LLC, (collectively "Debtor Entities"),"

- "investigate any and all transfers by the Debtor and any Debtor Entities including, but not limited to, all transfers or allegations referenced in the Removed Litigation," and

- "investigate the accuracy and completeness of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, including, but not limited to, the stated value of assets included therein, (d) otherwise perform the duties of an examiner set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code."

*Examiner Order,* ¶ 3.

      6.      On March 18, 2025, the Court entered the *Order Approving the Appointment of a Chapter 11 Examiner by United States Trustee* [Docket No. 131] which approved the appointment of Edward A. Phillips as Examiner in this Chapter 11 Case.

      7.      Pursuant to the Examiner Order, the Examiner engaged a financial advisor and counsel.  On April 10, 2025, the Court entered the *Order Authorizing Retention of Getzler Henrich & Associates LLC as Financial Advisor to the Examiner, Effective as of March, 28, 2025* [Docket No. 177], authorizing the retention of Getzler Henrich & Associates LLC ("Getzler Henrich") as the Examiner's Financial Advisor.  Additionally, on May 14, 2025, the court entered the *Order Authorizing Retention of Reed Smith LLP, as Proposed Counsel to the Examiner, Effective as of March 18, 2025* [Docket No. 235] authorizing the retention of Reed Smith LLP ("Reed Smith") as the Examiner's counsel.

4

### D. The Examiner's Investigation

8. As part of the Investigation, the Examiner received certain information from the Debtor and issued more than thirty-five (35) subpoenas on institutions believed to conduct business with the Debtor or an entity affiliated with the Debtor. [*See* Docket Nos. 183, 184, 185, 187, 190, 191, 232, & 261]. As of May 20, 2025, the Examiner has received 1,472 account statements totaling 4,374 .PDF pages for just accounts in the name of Heller Capital, Paramount Management, LLC ("Paramount") and the Prestige Funds (as defined below).

9. The Examiner continues to review those account statements, and a large number of other documents received pursuant to the Subpoenas, as well as the information received from the Debtor. Based on the representations of the Examiner's counsel to the Bankruptcy Court, the Examiner submits this First Interim Report on an issue for which the Examiner has concluded his investigation.

## II. THE EXAMINER'S FIRST INTERIM REPORT

### A. Subject of Interim Report

10. On January 24, 2025, Prestige Fund A, LLC and other funds (collectively, the "Prestige Funds") filed a complaint against the Debtor and Heller Capital Group, LLC in the Court of Common Pleas of Lancaster County, Pennsylvania (the "Prestige Complaint"), thereby commencing Case No. CI-25-00491.

11. In the Prestige Complaint, the Prestige Funds alleged that "Heller, as CEO of Heller Capital, instituted a widescale fraudulent scheme for the sale and operation of ATM units owned by the [Prestige] Funds." (Prestige Complaint ¶ 1). The Prestige Funds further alleged that Heller made countless fraudulent representations to the Prestige Funds and their investors regarding the

ATMs he purchased, the operation of those ATMs, the viability of the Funds' investments, and the profits being earned. (Prestige Complaint ¶ 3).

12. This report will focus on the allegation made in paragraph 100 of the Prestige Complaint, which alleged that "Heller issued multiple bills of sale to individual [Prestige] Funds that reflected serial numbers already on bills of sale to other [Prestige] Funds, meaning he was double-selling ATM units over and over." (Prestige Complaint ¶ 100).

A.  **Methodology, Analysis and Documents Relied Upon**

13. The Examiner reviewed 48 invoices for automated teller machines ("ATM") sales to the Prestige Funds from 2021 through 2023 (the "Invoices").

14. The Invoices were issued between 2021 and 2023 by Paramount to the Prestige Funds. Each Invoice identified the ATMs by serial number sold in each transaction with each Prestige Fund and contained the price for each ATM. A list of the Invoices is attached as **Exhibit 1**.

15. Collectively, the Invoices included 24,187 individual ATM serial number entries.

B.  **ANALYSIS AND FINDINGS**

16. The Examiner's analysis of the Invoices identified duplicate and triplicate sales of individual ATMs to separate Prestige Funds.[2] In total, 794 ATM serial numbers appeared on more than one Invoice, indicating that they were sold more than once to *separate* purchasers in *separate* transactions. Of those 794 ATMs, 752 ATMs were sold *twice*, and 42 were sold *three* times to different Prestige Funds. The Prestige Funds to which ATMs were sold in the duplicate or triplicate sales included the following:

---

[2] Notably, on October 31, 2024, at 11:43 a.m., Evan Leaman of Paramount sent an email to the Debtor (with a copy to Randall Leaman and Brandon Hall of Paramount) summarizing Invoices for 2016-2023 and indicated that "*[a]ll duplicate serial numbers* were removed from the report." (emphasis added).

- Prestige Fund A, IV
- Prestige Fund A, V
- Prestige Fund A, VI
- Prestige Fund A, VII
- Prestige Fund B, V
- Prestige Fund D
- Prestige Fund D, IV
- Prestige Fund D, V
- Prestige Fund D, VI

17. The duplicate and triplicate sales are identified in the table attached as **Exhibit 2**.

18. The purchase price for the ATMs "re-sold" in the duplicate (second) and triplicate (third) sales totaled $20,848,531.00.

19. In addition, the Examiner's analysis of the Invoices identified duplicate sales of individual ATMs to the *same* Prestige Fund on the *same* Invoice. In total, 48 ATM serial numbers appeared multiple times on the same Invoice, indicating that they were sold two or more times to the same Prestige Fund in the same transaction. The duplicate, triplicate and quadruplicate sales on the same Invoices are identified in the table attached as **Exhibit 3**.

20. The purchase price for the ATMs "re-sold" in the subsequent sales in the same invoices totaled $1,123,200.00.

21. In conclusion, the sales of the same ATMs multiple times, as reflected in **Exhibits 2 and 3**, totaled $21,971,731.00.

EXAMINER:

Date: June 9, 2025     By: *Edward A. Phillips, CPA, CFF, CFE, CIRA, CTP*

7