| |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY** | |
| **MCMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Suite 201<br>Roseland, NJ 07068<br>(973) 622-1800<br>Anthony Sodono III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel to Daryl Fred Heller*<br>*Chapter 11 Debtor and Debtor-in-Possession* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>                Debtor. | Case No. 25-11354 (JNP)<br><br>Chapter 11 |

**DEBTOR'S RESPONSE TO FIRST INTERIM REPORT OF EXAMINER, EDWARD A. PHILLIPS (REGARDING MULTIPLE SALES OF THE SAME AUTOMATED TELLER MACHINES TO THE SAME OR MULTIPLE PURCHASERS)**

Daryl Fred Heller (the "Debtor"), the Chapter 11 Debtor and Debtor-in-Possession, by and through his counsel, McManimon, Scotland & Baumann, LLC, hereby files this response (the "Response") to the First Interim Report of Examiner, Edward A. Phillips (the "Examiner") (Regarding Multiple Sales of the Same Automated Teller Machines to the Same or Multiple Purchasers) (the "First Interim Report").[1] ECF 329. Debtor's counsel has reached out to meet with the Examiner and his counsel to address certain allegations in the First Interim Report. In support of this Response, the Debtor respectfully states as follows:

## RESPONSE

1. Regarding paragraph 12 of the First Interim Report, the Examiner did not annex bills of sales ("BOS") or empirical data or documentation to corroborate where the Examiner found

---

[1] Undefined capitalized terms used herein shall have the same meaning as ascribed in the First Interim Report. ECF 329.

duplicate ATM serial numbers. Without that data, it is impossible to fully audit and correct the assumptions in the First Interim Report. The Debtor is confident the Examiner is not referring to the *final audited BOS* (since it was not attached or requested) where these discrepancies were corrected after preliminary submission. There were audit filters at Paramount and audit filters at Prestige to capture duplicates and the Debtor is positive the Examiner's First Interim Report is not based on the final corrected BOS, as many get reissued after initial submission and the report will need to be amended. In the Debtor's cursory review of the First Interim Report, some of the ATMs the Examiner is suggesting are duplicates or triplicates must be examined in more detail. The Debtor, however, has already sourced data and will show the duplicates/triplicates have been corrected during the audit filter process or subsequently with the re-issuance of final BOS.

2. Moreover, although the Examiner has significant experience in the field of accounting and possesses many certifications,[2] the examination and analysis of an ATM business requires specific industry knowledge of the ATM business in general but also, an understanding of ATM systems, procedures, policies, and banking regulations. Furthermore, the Examiner needs to understand the industry knowledge of how ATM serial numbers, terminal identification numbers ("TID"), and placeholder numbers ("PH") were assigned and the limitations of such when Paramount or its affiliate acquired a company.

3. In addition, the Prestige Fund managers were aware that BOS included TID, PH numbers, and serial numbers, with TID reference being denoted on the BOS. Thus, the Debtor will provide clarity and context to the Examiner once given the opportunity to correct certain flawed assumptions.

---

[2] See Background, Section "A" of the First Interim Report. Id.

4.      Debtor's counsel will contact the Examiner to analyze the forty-eight (48) BOS referenced in the First Interim Report and provide clarity on the discrepancies regarding serial numbers, TIDs, and PH numbers. The Debtor will also provide precision and coherence to the Examiner to understand the process of assignments and how they work regarding acquisitions of new companies. The Debtor remains steadfast that once the Examiner provides the Debtor with an opportunity to explain the intricacies of the ATM Business, the Examiner will file an amended First Interim Report to correct/amend and/or amplify certain findings in his report.

5.      Regarding footnote two in the First Interim Report, it refers to removal of duplicate serial numbers in the October 31, 2024, email from Evan Leaman of Paramount. The footnote and reference therein are taken out of context and requires clarity. Mr. Leaman's email regarding the report removed duplicate serial numbers that were either reissued or removed, and therefore, there was no "hiding" ATMs or duplicates as suggested. The intention was to provide an accurate accounting and transparency.

6.      Regarding paragraph 19 of the First Interim Report and Exhibit 3, there are references to duplicate ATM sales on Invoices, which were likely corrected in the final reporting. It is uncertain whether the Examiner reviewed the final reports. It is unclear which subpoenas the Examiner relied on to obtain certain information, however, once that information is shared with the Debtor, we will be able to provide clarification and context.

## RESERVATION OF RIGHTS

7.      The Debtor preserves all of his claims, causes of actions and rights to address any additional issues in the First Interim Report or any reports thereafter.

4914-3342-2157, v. 1

**CONCLUSION**

**WHEREFORE,** the Debtor respectfully requests that the Court and parties in interest refrain from prematurely judging the Debtor before the First Interim Report has been vetted and the issues addressed.

                                        **McMANIMON, SCOTLAND**
                                        **& BAUMANN, LLC**
                                          *Counsel to Daryl Fred Heller*
                                          *Chapter 11 Debtor and Debtor-in-Possession*

Dated: June 13, 2025                    By:  */s/ Sari B. Placona*
                                                Sari B. Placona