| |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| **SAXTON & STUMP LLC** <br> Joshua J. Voss, Esq. <br> 280 Granite Run Drive, Suite 300 <br> Lancaster, PA 17601 <br> (717) 556-1072 <br><br> **STARK & STARK, PC** <br> Marshall T. Kizner, Esq. <br> Joseph H. Lemkin, Esq. <br> 100 American Metro Blvd. <br> Hamilton, NJ 08619 <br> Telephone (609) 791-7022 <br> *Attorneys for Prestige* | |
| In re: <br><br> DARYL FRED HELLER, <br><br>        Debtor. | Chapter 11 <br><br> Case Nos. 25-11354 (JNP) |

**OBJECTION TO DEBTOR'S MOTION FOR AN
ORDER TO QUASH 2004 SUBPOENA SERVED
BY PRESTIGE ON EDWARD A. PHILLIPS, AS EXAMINER**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige") submit this Objection to Debtor's Motion for an Order The

1

Motion to Quash 2004 Subpoena Served by Prestige Funds on Edward A. Phillips, As Examiner (the "<u>Motion</u>").

**<u>PRELIMINARY STATEMENT</u>**

1. As is par for the Debtor's course, the Motion is replete misinformation about Prestige's claims and improperly seeks to block from Prestige securing information it is entitled to, while shirking Debtor's long promised transparency in this case. It is undeniable that Prestige is a creditor with twenty-five presumptively valid Proofs of Claim filed in this case. Among other things, the proofs of claim set forth with detail and particularity direct fraud claims against the Debtor relating to a massive Ponzi scheme perpetrated by him, which defrauded Prestige's investors out of over $500 million.

2. While Prestige does have pending litigation against the Debtor and other entities which the Debtor controls, its Rule 2004 Subpoena issued to the Examiner (the "<u>Subpoena</u>") does not circumvent or interfere with those proceedings. Instead, the subpoena seeks distinct nonduplicative information that is essential for the administration of the Bankruptcy Case as whole. Indeed, the information is generic information secured by the Examiner relating to his investigation of the Debtor's financial affairs to which all creditors are entitled, much of which should have been disclosed in Debtor's petition, schedules and statement of financial affairs. The Subpoena is not tailored whatsoever to claims and causes of action by Prestige.

3. The Debtor has been screaming from the roof-top, starting with his 341(a) meeting of creditors through the current date, that his bankruptcy would be transparent process and that he has nothing to hide. Information he refused to answer at his meeting of creditors, we were told by his counsel, would be made available upon issuance of Rule 2004 Subpoenas. The claim of transparency cannot be further from the truth. The Debtor has: (i) filed two motions to

quash subpoenas issued by Prestige; (ii) sought to retain criminal counsel without full disclosure of the nature of services provided; (iii) invoked the Fifth Amendment against self-incrimination in response to all but one interrogatory (the one which asked for his name!) propounded by Prestige, relating to a litigation pending in Pennsylvania litigation (the "PA Action"); (iv) has sought to terminate the Examiner; and (v) objected to the Examiner's request to be paid. This conduct does not reflect a transparent Debtor looking to work with his creditors – but is akin to behavior of a criminal trying to cover his tracks and avoid disclosure.

4. Moreover, the Subpoena seeks nothing more than to have the Examiner share information relating to the overall financial affairs of the Debtor. Information that is in the Examiner's possession and would simply be turned over to Prestige and any other creditor, all of whom have been denied disclosure and transparency in this case. There would be no hardship to the Debtor or the Examiner since (a) the subpoena is not directed to the Debtor; and (b) the Examiner is already in possession of this information and can likely produce this information electronically with a few clicks of a button.

5. Finally, Prestige filed a motion to appoint a trustee which is pending and scheduled for an evidentiary hearing. It is important that Prestige be provided with information secured by the Examiner before the motion to appoint a Chapter 11 Trustee. Without this information, Prestige is limited in what the Court can learn and see at the hearing. Thus, any effort to continue to fight disclosure of this information is simply debtor's attempt to shield the court from having all available facts and proofs in deciding that critical motion.

6. The Motion should be denied.

## FACTUAL BACKGROUND

7. As with Prestige's objection to his prior motion to quash relating to the subpoena issued to the Debtor himself, the fundamental factual assertion behind the Motion is that Prestige's twenty-five Proofs of Claim (the "Proofs of Claim") solely relate to the PA Action and claims against Paramount Management Group, LLC ("Paramount"). *See* Doc. 299-2 at ¶1.

8. Nothing could be further from the truth. Prestige's twenty-five Proofs of Claim, *see* Claims 13-1 to 38-1, are composed of, among other things, damages for Debtor's direct fraud against each Prestige fund. *See, e.g.*, Claim 13-1, Schedule to Proof of Claim, at 1. Remarkably, not once in Debtor's Motion are the fraud claims acknowledged. This is astonishing since the fraud claims are set forth not only in the Proofs of Claim, but also the adversary proceeding that Debtor himself removed to this Court from the Lancaster County Court of Common Pleas. *See Heller v. Prestige Fund A, LLC*, No. 25-01128-JNP. Those fraud claims are also now (but were not at the time of Debtor's Motion) set forth in the Prestige's non-dischargeability complaint and are fully elaborated there. *See Prestige Fund A, LLC v. Heller*, No. 25-01199-JNP.

## LEGAL ARGUMENT

### A. Prestige Is a Party in Interest

9. Once a bankruptcy case is filed, any party in interest may seek a Rule 2004 examination to obtain information on the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

10. Although the rule does not specifically define who constitutes a "party in interest," courts have interpreted the phrase liberally to include the trustee, creditors, the debtor

4

and related entities, and other parties who have an interest in the administration of the estate. *See, e.g.*, *In re Hammond*, 131 B.R. 78, 82 (Bankr. S.D. Ohio 1991); *In re Ecam Pubs.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *In re Summit*, 891 F.2d 1, 5 (1st Cir. 1989).

11. Here, there can be no question that Prestige is a party in interest, with its Proofs of Claim that have a value of over $500,000,000. Pursuant to section 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). Federal Rule of Bankruptcy Procedure 3001(f), provides that a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." A party objecting to a claim must present evidence sufficient to rebut the claim's presumptive validity. *In re Monroe Ctr. II Urban Renewal Co., LLC*, 2012 Bankr. LEXIS 3857 (Bankr. D.N.J. August 22, 2012) (citing *Cornell & Co. v. Seaway Painting (In re Cornell & Co.)*, 229 B.R. 97, 103 (Bankr. E.D. Pa. 1999)); *see also Promise Healthcare Grp., LLC v. Michaelson*, 130 F.4th 56 (3d. Cir. 2025).

12. Here while the Debtor filed a motion to expunge the Proofs of Claim, that motion has been consolidated with the pending adversary proceeding filed by Prestige.

13. Prestige is thus a party in interest in this bankruptcy case, entitled to seek discovery under Rule 2004.

**B. The Existence of a Pending Adversary Proceeding Does Not Bar Rule 2004 Discovery**

14. Federal Rule of Bankruptcy Procedure 2004 provides for wide-ranging discovery. Rule 2004 provides for the examination of an entity under this Rule 2004, or of a debtor relating to:

> (A) the debtor's acts, conduct, or property;
> (B) the debtor's liabilities and financial condition;
> (C) any matter that may affect the administration of the debtor's estate; or
> (D) the debtor's right to a discharge.

>  (2) *Other Topics in Certain Cases*. In a Chapter 12 or 13 case, or in a Chapter 11 case that is not a railroad reorganization, the examination may also relate to:
>
>  (A) the operation of any business and the desirability of its continuing;
>  (B) the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered; and
>  (C) any other matter relevant to the case or to formulating a plan.

Fed. R. Bankr. P. 2004(b).

15. Rule 2004 was designed to "show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." *In re Drexel Burnham Lambert, Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991). To meet this objective, discovery under Rule 2004 is broader than discovery under the Federal Rules of Civil Procedure; in fact, it is often compared to a "fishing expedition." *See In re Drexel*, 123 B.R. at 711 (instructing that Rule 2004 examination "can be legitimately compared to a fishing expedition." (citing *In re Vantage Petroleum, Corp*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)).

16. While the "pending proceeding rule" presents limitations on an interested party from using discovery obtained under Rule 2004 examination in a concurrent adversary proceeding, it is not a bar to such discovery. *In re Enron*, 281 B.R. 836, 841-42 (Bankr. S.D.N.Y. 2002). Rather, Courts must simply assess whether the subpoena is being used to circumvent discovery limitations in the adversary proceedings. *Id.* The pending proceeding rule does not extend to issues that are not raised in the adversary proceeding. *See In re Buick*, 174 B.R. 299, 306 (Bankr. D. Colo. 1994).

17. Here, the Subpoena is not directed to the Debtor and does not seek any information related to the pending adversary proceedings. Instead, it simply seeks financial information subpoenaed by the Examiner addressing broad issues of financial conduct and estate administration beyond the narrower claims in the pending adversary proceeding. It is not

6

duplicative and does not seek discovery prohibited due to the adversary proceeding. Rather, it seeks disclosure of financial information to which all creditors should be entitled. In the context of a Debtor who is the mastermind of a massive Ponzi scheme which defrauded multiple parties out of over $800,000,000, it is critically important that Prestige be entitled to proceed with its Rule 2004 discovery efforts.

18. Glaringly, through its own subpoenas Prestige has uncovered hundreds of transfers, including large gifts to families, friends and other relations of the Debtor, through Venmo and other financial accounts, which should have been disclosed in the debtor's petition and Statement of Financial Affairs. While the Debtor has made excuses for this error – the Debtor has yet to amend his Statement of Financial Affairs to correct the error. It is unclear what other financial accounts, transfers and supposed errors the Debtor has made. Prestige and other creditors are entitled to disclosure of such information. The path to such information is through examination of the documents secured by the Examiner from financial institutions.

19. Prestige also filed a motion to appoint a trustee and the Court scheduled an evidentiary hearing on the motion. It is important that Prestige be provided with information secured by the Examiner before hearing to appoint a Chapter 11 Trustee. Without this information, Prestige is limited in what the Court can learn and see at the hearing. Thus, any effort to continue to fight disclosure of this information is simply debtor's attempt to shield the court from having all available facts and proofs in deciding this important motion.

4931-2262-8944, v. 1

**CONCLUSION**

For the foregoing reasons Prestige requests that the Court deny the Motion and grant such other and further relief as the Court deems appropriate.

        Respectfully submitted,

        STARK & STARK
        A Professional Corporation

        By:/s/ *Marshall T. Kizner*
          MARSHALL T. KIZNER, ESQ.

        By:/s/ *Joseph H. Lemkin*
          JOSEPH H. LEMKIN, ESQ.
          100 American Metro Blvd.
          Hamilton, NJ 08619
          (609) 791-7922 (direct)
          (609) 896-9060 (main)
          (609) 895-7395 (facsimile)

        -and-

        SAXTON & STUMP LLC
        Joshua J. Voss, Esq.
        280 Granite Run Drive, Suite 300
        Lancaster, PA 17601
        (717) 556-1072 (direct)
        (717) 441-3810 (facsimile

        *Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC*

Dated: June 24, 2025

4931-2262-8944, v. 1