| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| **SAXTON & STUMP LLC**<br>Joshua J. Voss, Esq.<br>280 Granite Run Drive, Suite 300<br>Lancaster, PA 17601<br>(717) 556-1072<br><br>**STARK & STARK, PC**<br>Marshall T. Kizner, Esq.<br>Joseph H. Lemkin, Esq.<br>100 American Metro Blvd.<br>Hamilton, NJ 08619<br>Telephone (609) 791-7022<br>*Attorneys for Prestige* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>        Debtor. | Chapter 11<br><br>Case Nos. 25-11354 (JNP) |

**PRESTIGE FUNDS' MEMORANDUM OF LAW TO DETERMINE PRIVILEGE**

Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC (collectively, "Prestige" or "Movant") files a motion under seal asking the Court to determine whether a document contains privileged communications, and, if so, whether the privilege has

been waived by Daryl Heller's ("Debor") inadvertent disclosure, or in the alternative, whether the document is subject to the crime-fraud exception.

## PRELIMINARY STATEMENT

This motion stems from a comment made by the Debtor in a subpoena served by his counsel on Prestige by email, and then printed and mailed by Debtor's counsel, one-by-one, twenty-one times, to multiple creditors and the court-appointed Examiner (a non-attorney). This is at least twenty-two disclosures. In the subpoena, Debtor commented that the document supports Debtor's overall goal against Prestige: to harass and abuse the Bankruptcy Code to try to gain an advantage. Debtor stated in a comment contained in the subpoena: "█████████ ███████████████████████████" The fund managers referred to by Debtor are four individuals involved with different LLCs that manage Prestige, victims of Debtor's fraud. Debtor believes this comment is privileged, but Prestige does not agree, and the parties have not resolved this dispute. Prestige seeks entry of an Order ruling that the comment is not privileged, and if it is, it was not inadvertently disclosed, or the privilege was waived.

## STATEMENT OF FACTS

Debtor's comment goes to the heart of his abusive litigation strategy. By way of background, Debtor is hell bent on continuing to abuse his victims: the Funds and the management personnel attempting to seek recompense for Debtor's fraud, Buck Joffrey, Dave Zook, Jerry Hostetter and William Poole. The onslaught of baseless subpoenas commenced on May 19, 2025, when the Debtor first issued four Rule 2004 examination subpoenas ("First Set of Subpoenas"), which were overbroad, unduly burdensome and not reasonably calculated to lead

2

to the discovery of any information necessary for administration of his estate. See Kizner Cert., Exhibit "1." Only two days after sending the First Set of Subpoenas under Rule 2004, Debtor took the position, by way of a letter, that Rule 2004 Examination Subpoenas were not proper in the case when Prestige sought discovery from Debtor via the same rule. See Kizner Cert., Exhibit "2." Debtor went as far as articulating a legal position in the letter that "once an adversary proceeding is filed, the plaintiff must look to FED.R.CIV.P. 45 regarding discovery. As stated, '[M]oreover, once an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F.R.CIV.P. rather than the broader bounds of R2004.' *In re Valley Forge Plaza Associates*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted)." See Kizner Cert., Exhibit "2."

Yet despite taking the position that Rule 2004 Examination practice was not proper due to a pending adversary proceeding between the parties, *Prestige Fund A, LLC, et al., v. Daryl Heller, et al.*, Adv. Pro. No., 25- 01128-JNP ("AP Case"), the Debtor did not withdraw the First Set of Subpoenas.

On June 18, 2025, in response to Debtor's Motion to Quash Prestige's Rule 2004 Examination Subpoena, at 12:15 p.m., the Court entered an Order quashing Prestige's Rule 2004 Examination Subpoena directed to the Debtor on the ground that discovery between the parties should be conducted in the AP Case. [ECF No. 347]. Remarkably, at 2:24 p.m. that same day, Debtor sent four new Rule 2004 Examination Subpoenas to Prestige ("Second Set of Subpoenas"), directed to Buck Joffrey, Dave Zook, Jerry Hostetter and William Poole. See Kizner Cert., Exhibit "3." The Second Set of Subpoenas were sent to Prestige's counsel, as well as a service list comprised of *twenty-one other attorneys*. See Kizner Cert., Exhibit "3." The

3

subpoena directed to Buck Jeoffrey contained a comment from Debtor himself stating: "███

████████████████████████████████████████"[1] (Emphasis added.)

In addition to violating the Law-of-the-Case Doctrine and admittedly sent for an improper purpose, the Second Set of Subpoenas were overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of any information necessary for the administration of his estate.

Debtor never sought to claw back or otherwise withdraw the Second Set of Subpoenas, despite Debtor's comment contained in the Buck Joffrey subpoena and the Court's ruling on June 18th.

Thus, on June 26, 2025, Prestige raised the issue about Debtor's statement in the subpoena with the Court during a status conference. Debtor withdrew the Second Set of Subpoenas, presumably because the Court noted at the June 26th hearing that Rule 2004 examination subpoena practice was not proper in light of the prior ruling quashing Prestige's Rule 2004 subpoena.

Then, on June 27, 2025, Debtor issued four deposition notices in lieu of subpoenas ("Third Set of Subpoenas") to Buck Joffrey, Dave Zook, Jerry Hostetter and William Poole.[2] See Kizner Cert., Exhibit "4." Debtor sought to take all four depositions on the same day and at the

---

[1] This is the only comment Prestige has been able to elicit from the Debtor in the Bankruptcy Case. Debtor refused to engage in Rule 2004 Examination practice, even though he insisted he is an "open book" and his representations during the 341(a) that he would sit for an appropriate 2004. See 341(a) Tr. 77:18-20; 83:1-3; 94:17-19 and 117:19-21.

[2] The Third Set of Subpoenas were ostensibly issued under Rule 9014 in connection with the then pending evidentiary hearing on the appointment of a Chapter 11 Trustee. Yet, Prestige made it clear that it had no intention of calling Buck Joffrey, Dave Zook, Jerry Hostetter and William Poole to testify.

4

same time. See Kizner Cert., Exhibit "4." Prestige withdrew its Chapter 11 trustee motion for purposes of judicial economy on June 30, 2025. [ECF No. 367].

In response, on July 3, 2025, Debtor issued four Rule 45 subpoenas ("Fourth Set of Subpoenas") to Buck Joffrey, Dave Zook, Jerry Hostetter and William Poole. See Kizner Cert., Exhibit "5."

The Fourth Set of Subpoenas are nearly identical to the Second Set of Subpoenas, further evidencing Debtor's campaign to ████████ the victims of his fraud. Indeed, like the prior sets of subpoenas, Debtor seeks a document production on July 22, 2025 in the AP Case and then seeks *to take four depositions on the same date and at the same time*, on August 6, 2025. While Debtor intends to take the four contemporaneous depositions, there is also an evidentiary hearing scheduled before the Court on two 9019 motions *at the same time as the depositions*. [ECF 374].

Regardless of the impossibility of Debtor's counsel taking four depositions and attending an evidentiary hearing at the same time, the Subpoenas are procedurally invalid and improper. Rule 45 subpoenas are not proper until discovery commences under Federal Rule 26: "A party *may not seek discovery from any source before the parties have conferred as required by Rule 26(f)*, except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FED.R.CIV.P. 26(d)(1) (emphasis added). A subpoena issued before the parties have conferred under Rule 26(f) is subject to quash. *See Jones v. Mirza*, No. CV 15-1017-RGA, 2016 WL 4203814, at *4 (D. Del. Aug. 8, 2016) (quashing subpoena issued before parties' Rule 26(f) conference); *see also NRA Grp., LLC v. Durenleau*, 340 F.R.D. 94, 97 (M.D. Pa. 2021) (holding subpoena issued before Rule 26(f) conference "would have been subject to quash" had recipient not already complied; citing multiple cases noting subpoenas issued before Rule 26(f) conference are invalid). Further,

5

Debtor knows the Fourth Set of Subpoenas are illegal and improper since he researched this very issue and included a reference to Rule 26 in the letter sent to Prestige's counsel on May 21, 2025. See Kizner Cert., Exhibit "2."

Prestige sought clarification regarding the comment in the Second Set of Subpoenas at issue in this motion on July 14, 2025. See Kizner Cert., Exhibit "6." Debtor now suddenly seeks to claw back the comment *despite the passage of nearly a month* since the comment was provided to Prestige and twenty-one other parties. Despite seeking to clawback the subpoena from Prestige, as of the filing of this motion, Prestige has received no notice from Debtor that he is also trying to clawback the nearly two-dozen, individually mailed disclosures that he made to multiple parties. Thus, as it stands, Debtor only wants Prestige to avert its eyes from his improper purpose in issuing his four sets of subpoenas, but no one else. The foregoing forces Prestige into the position of filing the instant motion.

Prestige seeks an order from the Court regarding whether the comment is privileged, whether the privilege is waived due to its inadvertent disclosure, or subject to the crime-fraud exception.

**ARGUMENT**

I.   **The Subpoena Does Not Contain a Privileged Communication**

Debtor's comment contained in the subpoena issued to third party Buck Joffrey stating "[REDACTED]" is not an attorney-client communication. Attorney-client privilege is not absolute; it does not apply simply due to the inclusion of an attorney in a communication. *In re Riddell Concussion Reduction Litig.*, No. 13-7585 (JBS/JS), 2016 U.S. Dist. LEXIS 168457, at *7 (D.N.J. Dec. 5, 2016). The privilege does

6

not apply "merely because a statement was made by or to an attorney. Nor does the privilege apply simply because a communication conveys advice that is legal in nature." *Genesis Health Care Corp. v. Lexington Ins. Co.*, No. 08-3923 (RMB/JS), 2010 U.S. Dist. LEXIS 152653, at *4 (D.N.J. Mar. 19, 2010). Indeed, "the attorney-client privilege protects only those disclosures— necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id.* (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991)).

Here, the document in dispute is a subpoena containing Debtor's comment, which articulates an improper purpose of the subpoenas. He is not asking if this improper purpose can be pursued by subpoena; he is not responding to questioning from counsel—in other words, the comment is not a communication seeking or receiving legal advice. Instead, he is lauding his attorneys for pursuing what even he perceives as a suspect purpose. He is congratulating them for shaking down his adversaries. Thus, the document was not sent for the reason of seeking or obtaining legal advice. Moreover, Debtor's comment facially falls outside the protection of attorney-client privilege because it is not a "communication necessary to obtain informed legal advice." *Genesis Health*, 2010 U.S. Dist. Lexis 152653 at *4.

Therefore, the Court should find that Debtor's mere editorial comment in a subpoena sent to Prestige's counsel and twenty-one other attorneys is not privileged.

## II.     The Subpoena is Not Protected by Inadvertent Disclosure

Though the Court should find that the comment in the subpoena is not privileged, if it does, it should rule that the privilege was waived. When faced with questions of waiver due to inadvertent disclosure Courts engage in a two-step analysis. *D'Onofrio v. Borough of Seaside*

4924-0342-7412, v. 4

*Park*, 2012 U.S. Dist. LEXIS 75651, at *32 (D.N.J. May 30, 2012). First, the Court should determine whether the documents are privileged. *Id.* If the Court determines the documents are privileged, then it turns to a multi-factor analysis set forth in FRE 502(b). *Id.* at 32-33. FRE 502(b) sets forth three elements that the privilege holder must establish: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." FRE 502(b). The burden of establishing privilege and proving the elements set forth by FRE 502(b) rests on the party asserting the privilege. *D'Onofrio*, 2012 U.S. Dist. LEXIS 75651 at *32-*33. But when the disclosure is due to "gross negligence" the disclosure is deemed intentional, and privilege is deemed waived. *Bensel v. Air Line Pilots Ass'n*, 248 F.R.D. 177, 179-80 (D.N.J. 2008).

      Here, Debtor cannot establish any of the three elements because the disclosure was intentional. In addition to emailing the subpoena to Prestige's counsel, the subpoena was printed and mailed to twenty-one attorneys—one-by-one, twenty-one times—per the service list that accompanied the subpoena. <u>See</u> Kizner Cert., Exhibit "3." If the Court reviews the test under FRE 502(b) there is also no conclusion other than Debtor cannot meet his burden under the conjunctive test in the rule. Debtor cannot provide the disclosure was inadvertent when he emailed the subpoena and then printed and mailed it, repeatedly, to twenty other attorneys and the Examiner. Along these same lines, Debtor cannot claim reasonable steps were taken to prevent the disclosure since the presence of tracked changes or comments in the Subpoena is immediately apparent, especially when compared side-by-side with the other subpoenas served simultaneously. The fact that the marked-up version was printed and served twenty-one times only underscores the absence of any reasonable precautions to prevent disclosure. Finally, Debtor took no reasonable steps to rectify the situation. The subpoena was sent on June 18, 2025.

4924-0342-7412, v. 4

Although Debtor was alerted of the issue on June 25, 2026, Prestige did not receive confirmation that Debtor believed the subpoena contained privileged information until July 14, 2025; nearly a month after Debtor issued the subpoena and sent it to twenty-one third parties. Further, as noted above, as of the filing of this motion, Debtor has taken *no steps* to clawback the subpoena from the nearly two-dozen parties he mailed it to.

Accordingly, Debtor cannot show *any* "reasonable steps" taken to rectify the disclosure. *See Dubler v. Hangsterfer's Labs.*, No. 09-5144 (RBK/JS), 2011 U.S. Dist. LEXIS 2403, at *13 (D.N.J. Jan. 11, 2011). The lack of effort firmly weighs against Debtor's ability to establish the elements articulated under FRE 502(b). *Id.* at *13 (finding in favor of disclosure where counsel took no steps to seek the return of the subject documents); *Crothall v. Mancini Custom Homes*, Civil Action No. 07-3935 (JAP), 2008 U.S. Dist. LEXIS 130227, at *8 (D.N.J. July 17, 2008) (finding an attempt to rectify an inadvertent disclosure three months later is insufficient).

### III.    The Crime-Fraud Exception Applies

The comment in the subpoena is also subject to disclosure under the crime-fraud exception. The crime fraud exception allows for the disclosure of privileged communication when the communication is made with the intent to further or commit a crime or fraud. *Iqvia, Inc. v. Veeva Sys., Inc.*, No. 2:17-CV-00177-CCC-MF, 2021 U.S. Dist. LEXIS 273648, at *35 (D.N.J. May 7, 2021). The crime-fraud exception applies to communications that threaten or undermine the adversarial system. *Id.* Indeed, the Third Circuit explained that the crime-fraud exception applies broadly to "wrongdoings." *In re Abbott Labs.*, 96 F.4th 371, 381 (3d Cir. 2024). "All that is necessary is that the client misuse or intend to misuse the attorney's advice in furtherance of an *improper purpose*." *Id.* (emphasis in the original) (finding that frivolous

9

litigation and the "client's subjective intent to interfere" with the judicial process triggers the crime-fraud exception).

Establishing the crime-fraud exception lies on the party seeking disclosure. This involves a multistep burden-shifting process. The first step is for the party invoking the exception to "make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." *In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000). Once the exception is established the burden shifts to the privilege holder to rebut. *Id.* at 218.

Here, Debtor's statement, "███████████████████████████████████████" evidences an intent to abuse the judicial system to harass third party representatives of Prestige. By Debtor's own statement, the subpoena is meant to harass Prestige and its representatives and does not serve a proper purpose. Accordingly, the Court should—if it reaches the issue—determine that the comment is subject to disclosure due to the crime-fraud exception.

## **CONCLUSION**

For these reasons, the Court should find that the comment in the subpoena is non-privileged, was not inadvertently disclosed and/or falls within the crime-fraud exception to privilege.

Respectfully submitted,

STARK & STARK
A Professional Corporation

By:/s/ *Marshall T. Kizner*
   MARSHALL T. KIZNER, ESQ.

By: /s/ *Joseph H. Lemkin*
JOSEPH H. LEMKIN, ESQ.
100 American Metro Blvd.
Hamilton, NJ 08619
(609) 791-7922 (direct)
(609) 896-9060 (main)
(609) 895-7395 (facsimile)

-and-

SAXTON & STUMP LLC
Joshua J. Voss, Esq.
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
(717) 556-1072 (direct)
(717) 441-3810 (facsimile

*Attorneys for Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC*

Dated: July 15, 2025

11