# EXHIBIT 3

4839-4739-3596, v. 1

## Marshall T. Kizner

| | |
|---|---|
| **From:** | Joshua H. Raymond <JRaymond@MSBNJ.COM> |
| **Sent:** | Wednesday, June 18, 2025 2:24 PM |
| **To:** | Marshall T. Kizner |
| **Cc:** | Joseph H. Lemkin; Anthony Sodono; Joshua Voss; Sari B. Placona |
| **Subject:** | [EXTERNAL] Heller - Subpoenas |
| **Attachments:** | Letter to Marshall T. Kizner - enclosing revised subpoenas.pdf; Rule 2004 Subpoena re - Dave Zook 6-18-25.pdf; Rule 2004 Subpoena re  - William Poole 6-18-25.pdf; Rule 2004 Subpoena re - Buck Joffrey 6-18-25.pdf; Rule 2004 Subpoena re - Jerry Hostetter 6-18-25.pdf |

Attached please find our correspondence and four Subpoenas.
Please confirm receipt hereof and that this email is sufficient.  If you require us to mail you hard copies, kindly advise.
Best regards,
Josh

**Joshua H. Raymond**
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
**Direct Dial:** 973-721-5031
**Email:** JRaymond@MSBNJ.COM
Website

**Connect with MS&B on** LinkedIn | Twitter | Instagram

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Tuesday, June 17, 2025 4:22 PM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Cc:** Joseph H. Lemkin <jlemkin@stark-stark.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss <jvoss@saxtonstump.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Subject:** RE: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003]

Sari:

If you want to send a subpoena with these requests, we are happy to review.

Thank you,

---

**Marshall T. Kizner, Esq.**
*Shareholder*

**t:** 609.219.7449 **|** **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Tuesday, June 17, 2025 4:20 PM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>
**Cc:** Joseph H. Lemkin <jlemkin@stark-stark.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss <jvoss@saxtonstump.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Subject:** [EXTERNAL] Re: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003]

Marshall

Please confirm you received these additional requests.

Thanks

From Sari B. Placona, Esq.
Sent from my iPhone


On Jun 13, 2025, at 12:23 PM, Sari B. Placona <SPlacona@msbnj.com> wrote:


Marshall


In addition to the subpoenas sent to the Fund Managers, here are three additional requests.

1. For the Prestige escrow account, or any bank or legal escrow account associated with, provide any and all revenues received since Nov 21 takeover
2. Accounting for every dollar of revenue generated from ATMs since November (inflows, outflows, all payments to legal, etc)
3. List of Acquisition partners and agents of Paramount including All emails, discussions, document, etc related to settlement discussions or any communications with acquisition partner/agent.


Thank you.

Sari B. Placona | **Attorney Bio**
Partner
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
**Direct Dial:** 973-721-5030
**Email:** SPlacona@MSBNJ.COM
Website

**MS&B** McMANIMON • SCOTLAND • BAUMANN

75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
**splacona@msbnj.com**
35240-001

June 18, 2025

**Via Email - mkizner@stark-stark.com**
Marshall T. Kizner, Esq.
Stark & Stark PC
100 American Metro Boulevard
Hamilton, NJ 08619

Re: **Daryl Fred Heller**
**Chapter 11, Case No. 25-11354**

Dear Mr. Kizner:

In connection with the above captioned matter, and pursuant to our prior email correspondence, enclosed please find amended subpoenas directed at: William Poole, Buck Joffrey, Jerry Hostetter and David Zook.

This shall confirm that you have agreed to accept service on behalf of these individuals. This shall further confirm that the responsive documents are to be produced on or before July 3, 2025. Please note that the depositions are scheduled for July 7, 2025.

Sincerely,

*/s/ Sari B. Placona*

Sari B. Placona

Enclosures

**SERVICE LIST**

Daryl Fred Heller
909 Greenside Ave
Lititz, PA 17543

United States Department of Justice
Office of the United States Trustee
Jeffrey M. Sponder, Esq.
One Newark Center, Ste. 2100
Newark, NJ  07102

Edward Phillips, CPA
Getzler Henrich & Associates
295 Madison Ave, 20th Floor
New York, NY 10017

Albert Ciardi, III, Esq.
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103
*Attorneys for Deerfield Capital, LLC*
*NOA (20 Largest Creditor)*

Steven Mitnick, Esq.
S. Mitnick Law PC
PO Box 530
49 Old Turnpike Road
Oldwick, NJ 08858
*Attorneys for Receiver of Golden Gate*
*Investment Company, LLC and Paramount*
*Management Group, LLC, NOA*

Marc D. Miceli, Esq.
S. Mitnick Law PC
PO Box 530
49 Old Turnpike Road
Oldwick, NJ 08858
*Attorneys for Receiver of Golden Gate*
*Investment Company, LLC and Paramount*
*Management Group, LLC, NOA*

Martin J. Weis, Esq.
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19102
*Attorneys for Orrstown Bank*
*NOA (20 Largest Creditor and Secured)*

Gerard S. Catalanello
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Silverview Credit Partners, LP*
*NOA (20 Largest Creditor)*

AIS Portfolio Services, LLC
Attn: BMW Bank of North America Dept.
Account: XXXXXX9616
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118
*NOA*

Jerrold S. Kulback, Esq.
Archer & Greiner, PC
1025 Laurel Oak Road
Voorhees, NJ 08043
*Attorneys for Steward Capital Holdings LP*
*and Avenaero Holdings LLC, NOA*

Christopher J. Leavell, Esq.
Klehr, Harrison, Harvey, Branzburg LLP
10000 Lincoln Drive East, Ste 201
Marlton, NJ 08053
*Attorneys for Univest Bank and Trust Co.*
*NOA (20 Largest Creditor)*

Marshall T. Kizner, Esq.
Stark & Stark
PO Box 5315
Princeton NJ 08543-5315
*Attorneys for Prestige Fund A, LLC et al., NOA*

Joseph H. Lemkin, Esq.
Stark & Stark
PO Box 5315
Princeton NJ 08543-5315
*Attorneys for Prestige Fund A, LLC et al., NOA*

Edmond M. George, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
*Attorneys for Customers Bank, NOA*

Christopher P. Mazza, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Attorneys for Gallimore Properties, LLC, NOA*

Rachel A. Parisi, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Attorneys for Gallimore Properties, LLC, NOA*

William E Craig, Esq.
Eisenberg, Gold & Agrawal, PC
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
*Attorneys for Fulton Bank,*
*Secured Creditor, NOA*

Janet L. Gold, Esq.
Eisenberg, Gold & Agrawal, PC
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
*Attorneys for Fulton Bank,*
*Secured Creditor, NOA*

E. Richard Dressel, Esq.
Lex Nova Law LLC
10 E. Stow Road, Suite 250
Marlton, NJ 08053
*Attorneys for Brett and Gail Levin, NOA*

Nancy Isaacson, Esq.
Greenbaum, Rowe, Smith & Davis LLP
75 Livingston Avenue - Suite 301
Roseland, New Jersey 07068
*Attorneys for Randall Leaman, NOA*

Jeffrey M. Lichtstein, Esq.
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, MD 21201
*Attorneys for Truist Bank, NOA*

Natalie Young, Esq.
MacElree Harvey, Ltd.
17 W. Miner Street, Box 660
West Chester, PA 19381-0660
*Attorneys for Charlene Heller, Ethan Heller,*
*Taite Heller, Accordo, LP, Brookfield, LP and*
*Brigantine Group, LP, NOA*

Donald W. Clarke, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ 07102
*Attorneys for GCC Investment Holdings LLC,*
*Grizzly RE, LLC, and NEO Mfg. MA, LLC, NOA*

Jaclynn N. McDonnell, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ 07102
*Attorneys for GCC Investment Holdings LLC,*
*Grizzly RE, LLC, and NEO Mfg. MA, LLC, NOA*

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

**DARYL FRED HELLER,**

Debtor.

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE PURSUANT TO FED. R. BANKR. P. 2004 AND D.N.J. LBR 2004-1**

To: Buck Joffrey
    3463 State Street, Suite 595
    Santa Barbara, CA 93105

Case No.    25-11354

Chapter    11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 1:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |
| ISSUING OFFICER SIGNATURE AND TITLE<br>/s/ Sari B. Placona | DATE<br>June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| **SERVED** | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws  of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

4915-2335-1887, v. 1

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

4915-2335-1887, v. 1

## **DEFINITIONS**

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each."  "Any" includes the word "all" and "all" includes the word "any."  "And" includes the word "or" and "or" includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC,  Prestige  Funds Management, LLC, Prestige  Funds Management, II, LLC, Prestige  Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

4915-2335-1887, v. 1

G.      "Paramount" means Paramount Management Group, LLC.

H.      "Glorious" means GCC MSO Holdings including but not limited to the following GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.      "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.      "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.      "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.      "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.      "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.      "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.      "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.      "Identify" means when used in reference to:

i.      A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

Commented [DH1]: ████████████

(ii)    The place where received.

(iii)   The substance thereof.

(iv)    The means or medium employed for transmission thereof.

(v)      The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)      Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.      "You" refers to Buck Joffrey, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

**SCHEDULE "A"**

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

9

4915-2335-1887, v. 1

11.    Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.    Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all Documents indicating Debtor's relation to Paramount.

16.    Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.    All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.    All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.    All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

10

20.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.    All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.    All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.    All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.    Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

4915-2335-1887, v. 1

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

33.     Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

34.     List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of

12

communication including settlement discussions or general communication with acquisition partners/agents.

13

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

             Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To:  William Poole
      5 Whitefield Lane
      Lancaster, PA 17602

Case No.   25-11354

Chapter   11

YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 10:00 a.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |
| ISSUING OFFICER SIGNATURE AND TITLE<br><br> /s/ Sari B. Placona | DATE<br><br>June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws  of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

4918-1144-8143, v. 1

## <u>UNAVAILABILITY OF DOCUMENTS</u>

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## <u>PRIVILEGE</u>

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

4918-1144-8143, v. 1

## **DEFINITIONS**

A.    "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.    "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.    "Debtor" means Daryl Fred Heller.

D.    "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each."  "Any" includes the word "all" and "all" includes the word "any."  "And" includes the word "or" and "or" includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC,  Prestige  Funds Management, LLC, Prestige  Funds Management, II, LLC, Prestige  Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.      "Paramount" means Paramount Management Group, LLC.

H.      "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.      "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.      "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.      "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.      "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.      "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operation of ATMs

N.      "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult

6

4918-1144-8143, v. 1

O.     "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.     "Identify" means when used in reference to:

i.     A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.     A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)     The place where received.

(iii)     The substance thereof.

(iv)     The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to William Poole, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

# SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

33.     Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

34.     List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of

12

communication including settlement discussions or general communication with acquisition partners/agents.

4918-1144-8143, v. 1

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

**DARYL FRED HELLER,**

Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To:  Dave Zook
    5075 Lower Valley Road
    Atglen, PA 19310

Case No.   25-11354

Chapter   11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 3:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |
| ISSUING OFFICER SIGNATURE AND TITLE<br>  /s/ Sari B. Placona | DATE<br>June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

    *If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws  of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on:

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## **UNAVAILABILITY OF DOCUMENTS**

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## **PRIVILEGE**

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## **DEFINITIONS**

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each."  "Any" includes the word "all" and "all" includes the word "any."  "And" includes the word "or" and "or" includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC,  Prestige  Funds Management, LLC, Prestige  Funds Management, II, LLC, Prestige  Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.     "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.     "Identify" means when used in reference to:

i.     A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.     A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)     The place where received.

(iii)     The substance thereof.

(iv)     The means or medium employed for transmission thereof.

7

(v)     The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Dave Zook, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

4896-6311-2527, v. 1

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

9

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

10

20.      All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.      All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.      All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.      All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.      All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.      All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.      Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Documents relating to and arising out of all compensation paid directly or indirectly from YOU, RAI, or any affiliated entities of either, to Jeremy Roll and any of his affiliated entities and all communication and agreements with Jeremy Roll and any of his affiliated entities.

33.     All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity  that directly or indirectly references Jeremy Roll and his affiliated entities from January 1, 2021 through the present.

34. Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

12

35.     Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

36.     List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of communication including settlement discussions or general communication with acquisition partners/agents.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

          Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Jerry Hostetter
     121 Eshelman Road
     Lancaster, PA 17601

Case No.    25-11354

Chapter    11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 4:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

    *If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws  of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on:

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

4934-8726-9199, v. 1

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

4934-8726-9199, v. 1

## **DEFINITIONS**

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each."  "Any" includes the word "all" and "all" includes the word "any."  "And" includes the word "or" and "or" includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC,  Prestige  Funds Management, LLC, Prestige  Funds Management, II, LLC, Prestige  Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.      "Paramount" means Paramount Management Group, LLC.

H.      "Glorious" means GCC MSO Holdings including but not limited to the following:
GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI
Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC,
Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC,
GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC
Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.      "GCC Investment Holdings" means GCC Investment Holdings LLC and any and
all of its members.

J.      "Heller Capital Group" means any and all entities and individuals you understand
to be owned by or have an affiliation with Heller Capital Group.

K.      "Heller Investment Holdings" means any and all entities and individuals you
understand to be owned by or have an affiliation with Heller Investment Holdings.

L.      "Project Catapult" means any and all entities and individuals you understand to
have an affiliation with Project Catapult.

M.      Fund Manager ATM Operators" means any and all entities and individuals Fund
Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from
Paramount including but limited to employees and contractor and any entities Fund Managers have
used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.      "Private Investigators" means any and all entities and individuals Fund Manager,
or others related to Fund Managers approval, have hired, contracted or otherwise to investigate
Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment
Holdings, Glorious or Project Catapult.

6

O.      "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.      "Identify" means when used in reference to:

i.      A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)    The place where received.

(iii)   The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

(v)     The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Jerry Hostetter, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

9

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital

Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

11

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Documents relating to and arising out of any and all communications regarding Alden Place and its affiliated entities including but not limited to Cornwall Associates LP and Cornwall Associates, LLC.

33.     All emails, voicemails, text, written, and verbal communication by You or to You or any person or entity  that directly or indirectly references Alden Place and its affiliated entities

12

including but not limited to Cornwall Associated LP and Cornwall Associates, LLC from January 1, 2021 through the present.

34.     Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

35.     Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

36.     List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of communication including settlement discussions or general communication with acquisition partners/agents.

4934-8726-9199, v. 1