# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br><div align="center">Debtor.</div> | Case No. 25-11354 (JNP)<br><br>Chapter 11<br><br>Honorable Jerrold N. Poslusny, Jr., U.S.B.J. |

---

## DARYL FRED HELLER'S MEMORANDUM OF LAW IN OPPOSITION TO PRESTIGE'S MOTION UNDER SEAL TO DETERMINE PRIVILEGE

---

**MCMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel for Daryl Fred Heller, Chapter 11 Debtor and Debtor-in-Possession*

On the Brief:
Anthony Sodono, III, Esq.
Sari B. Placona, Esq.
Joshua H. Raymond, Esq.

## Table of Contents

Preliminary Statement............................................................................... 3

Statement of Facts.................................................................................... 5

Legal Argument.......................................................................................... 9

    I.      The Subpoena Contains a Privileged Communication...................... 9

    II.     The Comment in the Subpoena's Margin Is Privileged and Thus, Protected

          Because The Disclosure Was Inadvertent ........................................ 11

          (1) The reasonableness of the precautions taken to prevent the inadvertent

             disclosure in view of the extent of the document production.............. 12

          (2) The number of inadvertent disclosures.......................................... 13

          (3) The extent of the disclosure.......................................................... 15

          (4) Any delay and measures taken to rectify the disclosure.................. 15

          (5) The overriding interest of justice ................................................. 16

    III.    The Crime-Fraud Exception Does Not Apply ................................... 19

    IV.    The Presence of Ms. Sorvino On The Email Chain Does Not Waive Privilege. 21

Conclusion.................................................................................................. 22

4933-4506-5048, v. 2

## PRELIMINARY STATEMENT

Daryl Fred Heller ("Mr. Heller") submits this Memorandum of Law in opposition to the Motion filed under seal by Prestige Fund A, LLC, Prestige Fund A II, LLC, Prestige Fund A IV, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC, and WF Velocity Fund VII, LLC (collectively, the "Movant"), seeking a judicial determination on the applicability of the attorney-client privilege and the baseless invocation of the crime-fraud exception (the "Motion").

Th Motion arises out of an inadvertent, isolated disclosure of a confidential attorney-client communication by Mr. Heller's counsel, which occurred solely due to a technical error in document conversion—specifically, a marginal comment in a Microsoft Word draft of a subpoena that was unintentionally presented during PDF conversion and included in one of four subpoenas served on June 18, 2025. That marginal note, plainly a communication from client to counsel, made in the course of legal strategy and document preparation, is unquestionably protected by the attorney-client privilege.

The privilege was not waived—intentionally or otherwise. The inadvertent disclosure resulted from a purely clerical mistake and was neither knowing, voluntary, nor strategic. Courts have consistently held that such inadvertent disclosures, especially when immediately identified and addressed, do not constitute waiver under well-established standards. To suggest otherwise is

3

to elevate form over substance and disregard the bedrock principles that protect client communications in the legal process.

Moreover, Movant's attempt to invoke the crime-fraud exception is legally unsound and factually unsupported. The privileged comment at issue does not contain any directive to engage in, or conceal, criminal or fraudulent activity. There is no evidence—none whatsoever—that the communication was made in furtherance of a crime or fraud. Movant's assertion to the contrary is not only speculative, it is a transparent attempt to pierce privilege protections without meeting the strict burden required under controlling law.

In short, the attorney-client privilege squarely applies to the communication at issue, the disclosure was inadvertent and promptly addressed, was only served upon the Fund Managers (as defined herein) and their counsel and was not provided to any other third parties despite the service list outlined in the letter serving the subpoena.[1]  Furthermore, the crime-fraud exception is inapplicable by any legal standard. Movant's motion is a legally flawed fishing expedition and should be denied in its entirety.

---

[1] The service list was inadvertently contained with the cover letter serving the subpoena to the Fund Managers' counsel, however, was not served on those other parties.

4933-4506-5048, v. 2

## STATEMENT OF FACTS

On February 10, 2025 (the "Petition Date"), Mr. Heller filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). See ECF No. 1.

Mr. Heller's bankruptcy case has been highly contentious and vigorously litigated. In January 2025, Prestige Capital Partners ("Movant") filed a complaint against Mr. Heller asserting claims for fraud in the inducement, fraudulent misrepresentation, and voidable transactions. In response, Mr. Heller filed counterclaims, asserting that Movant's conduct has caused significant harm to Paramount and its investors, giving rise to substantial counterclaims and affirmative defenses.

Movant, over the course of several years, has egregiously misappropriated no less than $75 million from Paramount and its investment funds. Rather than acting in good faith and in the best interests of the company and its investors, Movant diverted substantial funds for personal benefit— depriving investors, many of whom suffered substantial losses, of the returns and capital they were rightfully entitled to. This conduct constitutes a blatant breach of fiduciary duty and unjust enrichment, as Movant owed a duty to manage assets solely for the benefit of the investors and the enterprise.

Moreover, Movant's pattern of misconduct caused hundreds of millions of dollars in damages to Paramount and its affiliates. These damages were the direct result of tortious interference, gross negligence, and a persistent disregard for fiduciary obligations.

Despite numerous warnings, Movant engaged in a campaign of disruption and intimidation—including hiring private investigators, filing retaliatory lawsuits, and orchestrating negative media coverage—designed to instill fear and uncertainty among Paramount's key stakeholders, vendors, and customers.

4933-4506-5048, v. 2

During the course of litigation, on April 13, 2025, Mr. Heller's counsel, Sari B. Placona, Esq., emailed a draft subpoena (the "Draft Subpoena") to Mr. Heller, requesting that he review Schedule A and provide comments or identify additional documents to be requested. See Certification of Joshua H. Raymond, Esq. ("Raymond Cert.") at Ex. A. This communication was part of the ordinary course of attorney-client collaboration and necessary to further Mr. Heller's legal representation. See Raymond Cert. at ¶ 5.

On April 15, 2025, Mr. Heller responded to his counsel with a revised draft subpoena, including redline edits suggesting additional documents to be requested ("Revised Draft Subpoena". See Raymond Cert. at **Ex. B**. Mr. Heller also included marginal comments reflecting his thoughts and concerns on the scope of the subpoenas and litigation strategy. See id. One such marginal comment stated: ███████████████████████████ ██████████████ This comment referenced a proposed definition for "Identity" in the Revised Draft Subpoena, which specified oral communications including time and location. See id.

Mr. Heller only sent this April 15, 2025, email to Ms. Placona, and her colleagues, Anthony Sodono, Esq. and John Stern Esq., as well as corporate counsel Heidi Sorvino, representing Heller Capital Group. See id.

Subsequently, Ms. Placona requested assistance from her partner, Joshua H. Raymond, Esq., to finalize the Revised Draft Subpoena and arrange for service on four fund managers: Jerry Hostetter, Buck Joffrey, Dave Zook, and William Poole (collectively, the "Fund Managers"). See Raymond Cert. at ¶ 11.

On May 19, 2025, Mr. Raymond sent the finalized subpoenas (the "Original Subpoenas") via email to Movant's counsel—Marshall Kizner, Esq., Joseph Lemkin, Esq., and Joshua Voss, Esq.— as well as to Ms. Placona and her legal assistant Stacy Lipstein. See Raymond Cert. at **Ex.**

6

**C**. These Original Subpoenas did **not** contain any redline edits or marginal comments from Mr. Heller.

On June 13, 2025, Ms. Placona sent an email to Movant's counsel indicating that Mr. Heller had identified three additional categories of documents to be requested from the Fund Managers. See Raymond Cert. at **Ex. D**.

On June 17, 2025, Mr. Kizner responded, stating: "If you want to send a subpoena with these requests, we are happy to review." See Raymond Cert. at **Ex. E**.

In response, on June 18, 2025, Mr. Raymond revised the Original Subpoenas to include the new document requests, generating a set of Supplemental Subpoenas ("Supplemental Subpoenas") to be served on the Fund Managers. See Raymond Cert. at ¶ 16.

After converting the revised subpoenas from Microsoft Word to PDF format, Mr. Raymond emailed the Supplemental Subpoenas to Mr. Kizner, Mr. Lemkin, Mr. Voss, Mr. Sodono, and Ms. Placona. See Raymond Cert. at **Ex. F**. Mr. Raymond did not realize that the marginal comment from Mr. Heller had been embedded into the PDF during the Word-to-PDF conversion process. See Raymond Cert. at ¶ 18. Mr. Raymond did not realize that when he converted the document from Word to PDF format in  order to serve the Supplemental Subpoenas, one of the four subpoenas inadvertently included the marginal comment from Mr. Heller's April 15 Revised Draft Subpoena. See id.

At no point was it Mr. Heller's intention—or his counsel's—to share this privileged communication. See Raymond Cert. at ¶ 20. The inadvertent disclosure was not known to Ms. Placona until a hearing on June 26, 2025, during which she was advised of the embedded comment. She immediately notified Mr. Raymond of the issue. See Raymond Cert. at ¶ 21.

Also attached to the June 18, 2025, email was a cover letter drafted by Mr. Raymond on behalf of Ms. Placona. See id. Attached to the cover letter was a Service List of other parties involved in the bankruptcy proceeding. See id.

Though there was a service list attached to the cover letter, none of the parties on the service list were provided copies of the Supplemental Subpoenas. Mr. Raymond only emailed the cover letter and the four Supplemental Subpoenas to Mr. Kizner, Mr. Lemkin, Mr. Voss, Mr. Sodono, and Ms. Placona. Neither Mr. Heller nor his counsel intended to serve the Supplemental Subpoenas on third parties, nor did they intend for attorney-client privileged communication in the marginal comment to be provided to any third parties. See Raymond Cert. at ¶ 29.

On July 14, 2025, Mr. Kizner emailed Ms. Placona, raising the issue of the inadvertently disclosed comment. See Raymond Cert. at **Ex. G.**

That same day, Mr. Raymond responded by email, asserting that the comment was protected under the attorney-client privilege and that its inadvertent disclosure did not constitute a waiver. He requested that Movant's counsel refrain from reviewing, copying, disseminating, or using the information, and to return or destroy the document. See Raymond Cert. at **Ex. H.**

Despite this clear and prompt invocation of privilege, Movant's counsel proceeded to request a copy of Mr. Heller's April 15th email attaching the Revised Draft Subpoena. See Raymond Cert. at **Ex. I.**

Mr. Raymond refused, reiterating that the communication was privileged and not subject to disclosure. See Raymond Cert. at **Ex. J.**

On July 15, 2025, Movant filed a motion under seal requesting that the Court determine whether the inadvertently disclosed marginal comment is protected by the attorney-client privilege.

4933-4506-5048, v. 2

**LEGAL ARGUMENT**

**POINT I**

**THE SUBPOENA CONTAINS A PRIVILEGED COMMUNICATION**

The comment made by Mr. Heller, which was inadvertently disclosed in the Buck Joffrey Supplemental Subpoena, is protected under the attorney-client privilege because the comment is a confidential communication between Mr. Heller and his attorneys for the purpose of obtaining legal advice and furthering his legal representation. Attorney-client privilege applies to communications "(1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." See Columbus Life Ins. Co. v. Wilmington Tr., N.A., 344 F.R.D. 207, 217 (D.N.J. 2023), citing Hedden v. Kean Univ., 434 N.J.Super. 1, 82 A.3d 238, 244 (N.J. Super. Ct. App. Div. 2013).

When determining whether or not a communication from a client is sought for legal advice, New Jersey District Courts look at "'whether the communication is designed to meet problems which can fairly be characterized as predominantly legal.'" See Columbus Life Ins. Co. v. Wilmington Tr., N.A., 344 F.R.D. 207, 217 (D.N.J. 2023) citing Champion Painting Specialty Servs. Corp. v. Delaware River Port Auth., No. 21-cv-10146, 2022 WL 1217442, at *3 (D.N.J. Apr. 25, 2022) quoting Leonen v. Johns-Manville, 135 F.R.D. 94, 98-99 (D.N.J. 1990).

On April 13, 2025, Ms. Placona emailed Mr. Heller a Draft Subpoena asking Mr. Heller to provide any comments, edits, or instructions in order to finalize the subpoena. See Raymond Cert. at **Ex. A**. On April 15, 2025, Mr. Heller emailed Ms. Placona a Revised Draft Subpoena, which contained private revisory comments, questions, and instructions for the final subpoena draft. See Raymond Cert. at **Ex. B**.

Mr. Heller's redline changes and communications through marginal comments in a revised draft subpoena were made for the purpose of obtaining legal advice, as his comments, questions,

9

and proposed revisions were essential to finalize the subpoena and address any of his legal concerns. See Columbus Life Ins. Co. v. Wilmington Tr., N.A., 344 F.R.D. at 218 citing Margulis v. Hertz Corp., No. 14-cv-1209, 2017 WL 772336, at *5 (D.N.J. Feb. 28, 2017) (quoting Leonen, 135 F.R.D. at 99 "the claimant should demonstrate that the communication would not have been made but for the client's need for legal advice or services"). Not only was Mr. Heller's comment made for obtaining legal advice, but they were also made in connection with Ms. Placona's professional services, as his redline changes and marginal comments, opinion, and concerns were needed to revise the subpoena.

The first element required to establish attorney-client privilege is satisfied because Mr. Heller's comment was made with the intention of obtaining legal advice because Mr. Heller's redline changes, and marginal comments were a necessary part of the collaborative process with counsel to address legal considerations and finalize the subpoena. Therefore, Mr. Heller's comment is protected under the attorney-client privilege because the comment was made to assist in his representation by proving necessary commentary needed to finalize the subpoena.

The second element is satisfied because Mr. Heller communicated his comments, questions, and concerns to Ms. Placona and other counsel representing Mr. Heller and his company, Mr. Heller's comments were made respect to finalizing the subpoenas with his counsel.

The third element is satisfied because the inadvertently disclosed comment was made by Mr. Heller to Ms. Placona, Mr. Sodono, Ms. Sorvino, and Mr. Stern in confidence, as it was sent via a private email exchange intended solely for attorney-client purposes and sent only to his attorneys.

Lastly, the fourth element is satisfied, because Mr. Heller was the individual who made the comment that was later inadvertently disclosed by his attorney.

4933-4506-5048, v. 2

Movant makes hostile and malicious accusations against Mr. Heller and his counsel, alleging they intended to "abuse the judicial system" and "harass third-party representatives." See "Prestige's Memorandum of Law" pg. 10. Movant's accusations wrongfully call into question Mr. Heller's and his counsel's intentions, morals, and character. In view of all the evidence presented, Mr. Heller seeks entry of an Order holding that the inadvertently disclosed comment made on the Buck Joffrey Supplemental Subpoena is privileged because the comment was made to his counsel for the purpose of assisting and furthering his representation, and that the comment was inadvertently disclosed because the disclosure only occurred once affecting only one of eight subpoenas sent due to a document conversion error, not negligence.

## POINT II

### THE COMMENT IN THE SUBPOENA'S MARGIN IS PRIVILEGED AND THUS, PROTECTED BECAUSE THE DISCLOSURE WAS INADVERTENT

The marginal comment on the Buck Joffrey Supplemental Subpoena sent on June 18, 2025, is protected under attorney-client privilege because the disclosure was inadvertent. An inadvertent disclosure does not automatically result in a waiver of attorney-client privilege. See Bensel v. Air Line Pilots Ass'n, 248 F.R.D. 177,179 (D.N.J. 2008) citing Jame Fine Chems., Inc. v. Hi–Tech Pharmacal Co., 2006 WL 2403941, at *2, 2006 U.S. Dist. LEXIS 58235, at *6 (D.N.J. Aug. 16, 2006). In order to determine whether and inadvertent disclosure is deemed intentional, and thus a waiver of privilege New Jersey District Courts look at the following five factors[2]: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the

---

[2] Movant cites to D'Onofrio v. Borough of Seaside Park, No. 09–6220, 2012 WL 1949854, at *7 (D.N.J. May 30, 2012) an unpublished District Court case which states ("the approach set forth in FRE 502(b) is essentially the same as" the multiple factor test used in Ciba–Geigy Corp., 916 F.Supp. at 411.

11

disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the

overriding interests of justice would or would not be served by reliving the party of its error."

Ciba–Geigy Corp. v. Sandoz Ltd., 916 F.Supp. 404, 411 (D.N.J.1995) citing Advanced Medical,

Inc. v. Arden Medical Sys., Inc., Civ.A. No. 87–3059, 1988 WL 76128 at *2 (E.D.Pa. July 18,

1988).

**(1) The reasonableness of the precautions taken to prevent the inadvertent disclosure in view of the extent of the document production**

Reasonable precautions were taken to prevent the inadvertent disclosure because only one

out of the eight subpoenas[3] contained the privileged communication. The first factor New Jersey

District Courts look at when determining whether an inadvertent disclosure was intentional is "the

reasonableness of the precautions taken to prevent the disclosure." See Ciba–Geigy Corp., 916

F.Supp. at 411. On April 15, 2025, Mr. Heller provided a Revised Draft Subpoena containing

redline changes and comments in the margin to Ms. Placona. The redline changes and comments

were not included in any of the four Original Subpoenas sent on May 19, 2025. However, one

marginal comment was included in one of the four Supplemental Subpoenas sent on June 18, 2025,

almost two months after being initially made.

The gap in time between the privileged comment being made and its inclusion in the Buck

Joffrey Supplemental Subpoena strongly supports the conclusion that the disclosure was

inadvertent. Furthermore, the fact that the marginal comments was not previously disclosed when

the Original Subpoenas were served on May 19, 2025, and that only one of the four Supplemental

Subpoenas included the inadvertent publication of an attorney client privileged communication is

further evidence that neither Mr. Heller nor his counsel intended to share the comment.

---

[3] The four Original Subpoenas were served on the Fund Managers and four Supplemental Subpoenas were served on the Fund Managers.  The inadvertent disclosure was only on one of the 8 subpoenas served, though all eight subpoenas were revised and drafted after Mr. Heller provided his comment in the margin back on April 15, 2005.

4933-4506-5048, v. 2

It is unreasonable to suggest that the disclosure was intentional when the privileged communication was no longer relevant in the drafting of the Supplemental Subpoena, not included in any of the Original Subpoenas, and inadvertently included in only one of the four Supplemental Subpoenas. Thus, the fact that only one out of the eight total subpoenas contained the privileged communication illustrates that there were precautions taken to avoid the inadvertent disclosure.

Unlike in Bensel v. Air Line Pilots Ass'n, where the New Jersey District Court held that because plaintiffs did not present the Court with information regarding precautions taken to avoid disclosure, the factor weighed in favor of Defendants, here, Mr. Raymond is honest and forward about the various steps he took in order to avoid the disclosure. See Bensel v. Air Line Pilots Ass'n, 248 F.R.D. at 180. The Supplemental Subpoenas did not contain the privileged comment from Mr. Heller until the subpoenas were converted from a Word Document to a PDF. It was when the Supplemental Subpoenas were converted to a PDF that, unbeknownst to Mr. Raymond, the marginal notations were evidently and accidently turned on for Buck Joffrey's Supplemental Subpoena. This resulted in Mr. Heller's private communication being included for the first and only time. Out of all four Supplemental Subpoenas, only one of the subpoenas accidently and inadvertently contained the marginal notations. Movant presents no evidence beyond the inadvertent and isolated disclosure to support their bald accusation that the disclosure was intentional.

**(2) The number of inadvertent disclosures**

Because the disclosure occurred only once and makes up one percent of the total pages produced across all eight subpoenas, the disclosure is clearly inadvertent. The second factor the Courts evaluate when determining if an inadvertent disclosure is intentional is "the number of inadvertent disclosures." See Ciba–Geigy Corp., 916 F.Supp. at 411. In Maldonado v. New Jersey

4933-4506-5048, v. 2

ex rel. Admin. Off. of Cts.-Prob. Div., the Court held that because the inadvertent disclosure only

occurred once, it weighed against a finding of waiver of the attorney-client privilege. Maldonado

v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div., 225 F.R.D. 120, 129 (D.N.J. 2004); See Ciba–

Geigy Corp., 916 F.Supp. at 412 (holding that because the inadvertent disclosure occurred on two

separate occasions, the actions supported a finding that privilege had been waived). Because the

inadvertent disclosure occurred once, and is located on only one out of the eight subpoenas sent,

it is clear that the disclosure was accidental and thus a nonwaiver of the attorney-client privilege.

Moreover, of the one hundred pages sent between all eight subpoenas, only one page contained an

inadvertent disclosure of privileged communications.[4] See Gloucester Twp. Hous. Auth. v.

Franklin Square Assocs., 38 F. Supp. 3d 492, 498 (D.N.J. 2014) citing Rhoads Indus., Inc. v. Bldg.

Materials Corp. of Am., 254 F.R.D. 216, 219 (E.D.Pa.2008) (holding that the inadvertent

disclosure represented a "small percentage of 1–2% of the total production").

Movant raises an inaccurate accusation that the inadvertent disclosure was printed and

served twenty-one times. However, the Supplemental Subpoenas were only sent, with the cover

letter, to the following five (5) individuals via email: Mr. Kizner, Mr. Lemkin, Mr. Sodono, Mr.

Voss, and Ms. Placona. See Raymond Cert. at ¶¶ 25-27.

Although the Supplemental Subpoenas sent on June 18, 2025, included a cover letter and

a Service List, Mr. Raymond did not cause the cover letter nor any of the Supplemental Subpoenas

to be served on any of the parties on the Service List. See Raymond Cert. at ¶ 26. The fact that

the cover letter contained a service list was, in effect, a second inadvertent mistake made by Mr.

Raymond when serving the Supplemental Subpoenas. See Raymond Cert. at ¶ 28.

---

[4] The 100 pages consist of 48 pages from the Original Subpoenas issued on May 19th, 2025, and the remaining 52 pages stem from the Supplemental Subpoenas sent on June 18th, 2025.

4933-4506-5048, v. 2

Thus, because the disclosure only occurred once, and was only sent to Movant's counsel and Mr. Heller's counsel, the disclosure must be classified as inadvertent and not a waiver of the attorney-client privilege.

### (3) The extent of the disclosure

Because the inadvertent disclosure appeared on only a single page within a multi-page document and in just one out of the eight total subpoenas sent, it demonstrates that the disclosure was accidental. The third factor New Jersey District Courts look at when determining if an inadvertent disclosure was intentional is "the extent of the disclosure." See Ciba–Geigy Corp., 916 F.Supp. at 411. Because the inadvertent disclosure occurred on page seven out of thirteen, it is clear that the error was intertwined in the document, making it less obvious to spot. See Gloucester Twp. Hous. Auth. v. Franklin Square Assocs., 38 F. Supp. 3d 492, 499 (D.N.J. 2014) citing Alers v. City of Phila., No. 08–4745, 2011 WL 6000602, at *2 (E.D.Pa. Nov. 29, 2011) (stating that because the one-page email was produced as a part of " a multi-page document", the indirect nature of the production may weigh against a finding of waiver). Moreover, the subpoenas were sent eight times, of which only one subpoena contained the privileged communication.

Furthermore, it is clear that the communication at issue was a marginal comment from Mr. Heller to his counsel. Therefore, because the inadvertent disclosure occurred on only a single page within a larger document, and on only one out of the eight total subpoenas, it was less apparent that the privileged communication was included, and further supports the conclusion that the disclosure was inadvertent.

### (4) Any delay and measures taken to rectify the disclosure

The fourth factor a Court looks at when determining if an inadvertent disclosure was intentional is whether there were "any delays or measures taken to rectify the disclosure." See

4933-4506-5048, v. 2

Ciba–Geigy Corp., 916 F.Supp. at 411. In Gloucester Twp. Hous. Auth. v. Franklin Square Assocs., the New Jersey District Court held that Defendant's three-month delay to rectify the disclosure supports a finding of waiver. Gloucester Twp. Hous. Auth. v. Franklin Square Assocs., 38 F. Supp. 3d at 499. However, in Bensel v. Air Line Pilots Ass'n, the Court held that the fourth factor was neutral because plaintiffs delayed nearly a year after first identifying the privilege document before seeking a protective order. Bensel v. Air Line Pilots Ass'n, 248 F.R.D. at 180-81.

Unlike in Gloucester Twp Hous. Auth., where the defendant took three months to redress the inadvertent disclosure here, Mr. Raymond took instant action to rectify the disclosure. On July 14, 2025 at 10 am, Mr. Kizner contacted Ms. Placona, pointing out the inadvertent disclosure in the Buck Joffrey Supplemental Subpoena. See Raymond Cert. at Ex. G.

At 6:20 pm that same day, Mr. Raymond emailed Mr. Kizner explicitly stating that the inadvertent disclosure was a private privilege communication subject to the protections of attorney-client privilege and that such inadvertent disclosure does not constitute a waiver of that privilege.[5] See Raymond Cert. at Ex. H.

Mr. Raymond kindly requested Mr. Kizner to either return or delete the privileged material. Mr. Raymond took immediate action to rectify the inadvertent disclosure, thus there is no indication of intentional conduct or waiver of attorney-client privilege. If the Court shall not deem the remedial actions swift and thus support the conclusion of an inadvertent disclosure, then the factor should at least be classified as neutral, as the court found in Bensel.

**(5) The overriding interest of justice**

---

[5] There was no need for Mr. Raymond to notify the parties on the Service List of the inadvertent disclosure of an attorney -client privilege in the margin of the Buck Joffrey Supplemental Subpoena, because none of the members of the Service list received the Supplemental Subpoena at issue.

4933-4506-5048, v. 2

The final factor the Courts consider when determining whether or not an inadvertent disclosure was intentional is "the overriding interest of justice." See Ciba–Geigy Corp., 916 F.Supp. at 411. It is in the interest of justice to hold that the inadvertent disclosure was accidental and not a waiver of attorney-client privilege because the Supreme Court emphasis the importance of upholding attorney-client privilege. Mr. Raymond took reasonable precaution to avoid the disclosure of the privilege comment and took immediate action to rectify the disclosure and, the disclosure was not a result of gross negligence. Throughout time, the Supreme Court has continued to emphasize the fundamental principle of attorney-client confidentiality. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) stating (the purpose of the client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"). Due to the critical importance of attorney-client privilege, it is essential to find the disclosure as inadvertent rather than an intentional waiver, thereby upholding the interest of justice, public policy, and the rules of the Supreme Court.

Additionally, it would be unjust to punish Mr. Raymond, and his client, Mr. Heller, after reasonable precautions were taken to avoid the disclosure of the privileged communication, as well as immediate remedial action to mitigate any harm. See Maldonado v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div., 225 F.R.D. 120, 130 (D.N.J. 2004) (holding that "it can not be in the interest of justice to punish Defendants since they took reasonable precautions to protect the dissemination of the letter").

Here, it is clear that after being notified of the inadvertent disclosure, Mr. Raymond took instant action to rectify the harm caused by requesting Mr. Kizner to either return or delete the confidential communication, as well as refrain from copying or disseminating it. Lastly it is evident

17

that Mr. Raymond took precautions to avoid the disclosure in the entirety because seven out of the eight total subpoenas did not have the inadvertent disclosure.

In Ciba-Geigy Corp., the Court reviewed the three different approaches regarding the waiver doctrine. See Ciba–Geigy Corp., 916 F.Supp. at 410. Under the first approach "the inadvertent disclosure of a privilege document vitiates the privilege and constitutes a waiver." See Ciba–Geigy Corp., 916 F.Supp. at 410. Under the second approach "an attorney's negligence cannot waive the privilege because the client, and not the attorney, is the holder of the privilege. Id. at 410-411. When explaining the third approach, the Court explained that "[w]hile an inadvertent disclosure, is by definition, an unintentional act, if such disclosure results from gross negligence, courts following the third approach will deem the disclosure intentional, thus constituting a waiver of privilege." See Ciba–Geigy Corp., 916 F.Supp. at 411. See Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 117–18 (D.N.J. 2002) (holding that the New Jersey District Court has adopted the third approach to the waiver doctrine). Thus, under the approach followed by the New Jersey District Courts, an inadvertent disclosure must be the result of gross negligence to be considered intentional.

Mr. Raymond's actions were not grossly negligent.  Mr. Raymond took reasonable precautions to avoid the inadvertent disclosure of attorney-client privileged communications. In Ciba-Geigy Corp., the New Jersey District Court held that defendants' failure to take reasonable precautions to avoid the inadvertent disclosure supported a finding of waiver of the attorney-client privilege. See Ciba–Geigy Corp., 916 F.Supp. at 413-414 (finding that defendants failed to demonstrate that they took reasonable precautions to avoid the inadvertent disclosure because they sent privileged documents during the course of two separate productions, failed to conduct a privilege review, and disclosed twenty-three pages of privileged material).

18

4933-4506-5048, v. 2

Unlike the defendant in Ciba-Geigy Corp., here Mr. Raymond took reasonable precautions in order to prevent the disclosure of the privileged communication as the disclosure inadvertently occurred once, and he did not realize that the privileged communication was even on one out of eight subpoenas, as it was in a margin of a document that was not intended to be shared with anyone but Mr. Heller and his counsel.

It would be unjust, extreme, and against the interest of justice to find that a waiver of attorney-client privilege occurred here because Mr. Raymond's actions do not constitute gross negligence, and he used reasonable precautions which inadvertently resulted in the document conversion error.

Moreover, Movant asserts a bald accusation that the inadvertent disclosure was intentional and thus constitutes a waiver but provides no supporting evidence. Movant's argument relies solely on the inadvertent disclosure itself, an isolated accident which does not support a finding of intent or negligence. Therefore, after applying all five factors, it is clear that the inadvertent disclosure was accidental, swiftly addressed and mitigated, and not a waiver of the attorney-client privilege.

## POINT III

## THE CRIME-FRAUD EXCEPTION DOES NOT APPLY

The crime-fraud exception does not apply to the private communication with Mr. Heller because there was no intention to facilitate a crime or fraud, nor was there any communication to further a crime or fraud. In the Third Circuit, the crime-fraud exception applies "where there is a reasonable basis to suspect that the privilege holder was committing or intending to commit a crime or fraud and that the attorney-client communications or attorney work product were used in furtherance of the alleged crime or fraud." In re Grand Jury Subpoena, 745 F.3d 681, 691 (3d Cir. 2014) citing In re Grand Jury, 705 F.3d 133,153 (3d Cir. 2012). Moreover, the legal advice provided

to the client must "give direction for the commission of future fraud or crime." In re Grand Jury Subpoena, 223 F.3d at 217, quoting Haines v. Liggett Grp., Inc., 975 F.2d 81, 90 (3d Cir. 1992).

Movant failed to meet its burden of establishing the crime-fraud exception because they have failed to indicate what crime or fraud was committed or intended to be committed, as well as failed to introduce any evidence proving that the subpoena was used in furtherance of that crime or fraud. In order to apply the crime-fraud exception the party seeking to apply the exception must "demonstrate that there is a reasonable basis to suspect (1) that the [lawyer or client] was committing or intending to commit a crime or fraud, and (2) that the ... attorney work product was used in furtherance of that alleged crime or fraud." In re Grand Jury Matter #3, 847 F.3d 157, 165 (3d Cir. 2017) citing In re Grand Jury (ABC Corp.), 705 F.3d 133, 142 (3d Cir. 2012); See In re Grand Jury Matter #3, 847 F.3d 166 (stating that "evidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception. Rather, the second requirement—use in furtherance—exists for the same reason that certain conspiracy statutes require proof that a defendant engaged in an overt act to further the crime").

Movant relies solely on a single, confidential editorial comment made in the course of assisting Ms. Placona and Mr. Raymond in the final drafting of the subpoena as evidence of a crime. This reliance is not only legally insufficient and unsupported, but also an egregious misreading of the comment's purpose and context. Moreover, Movant has failed to prove and or provide any evidence supporting their argument that the subpoena was used in furtherance of the crime or fraud. It is clear that the crime-fraud exception does not apply because no crime or intention to commit a crime or fraud has occurred, nor has the subpoena been used to further a crime or fraud. Movant makes a bald accusation, drawing into question and scrutinizing Mr.

20

Heller's character and morals, as well as attacking the reputation of any attorney who worked on the drafting of the subpoenas. Movant's false accusations are meritless and unsupported.

## POINT IV

### THE PRESENCE OF MS. SORVINO ON THE
### EMAIL CHAIN DOES NOT WAIVE PRIVILEGE

The email from Mr. Heller to Ms. Placona, Mr. Sodono, Ms. Sorvino, and Mr. Stern, sent on April 15, 2025, is protected under the attorney-client privilege because Mr. Heller has an attorney-client relationship with all attorneys listed on the email chain.

On April 15, 2025, Mr. Heller sent all his attorneys an email attaching a copy of his redline changes and marginal comments on Draft Subpoena draft in furtherance of his legal representation and addressing his concerns before serving the Original Subpoenas.

Mr. Heller has an attorney-client relationship with Ms. Placona, Mr. Sodono, and Mr. Stern as they represent him in his individual capacity during the current bankruptcy proceeding. Additionally, Mr. Heller has an attorney-client relationship with Ms. Sorvino because Mr. Heller communicates with Ms. Sorvino in his representative capacity as the owner of Heller Capital Group. See Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J. 1990) (emphasizing that "since a corporation must act through its agents, communications between an attorney and the corporation's employees, including lower-level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege"). Thus, because the email sent from Mr. Heller containing the redline changes and the marginal comment was only sent to his attorneys and no outside third party, the attorney-client privilege is not waived.

21

## **CONCLUSION**

For the reasons stated above, the Court should find that the comment was inadvertently disclosed and thus privileged and does not fall under the crime-fraud exception.

Respectfully submitted,

**MCMANIMON, SCOTLAND & BAUMANN, LLC**
*Attorneys for Daryl Fred Heller, the Chapter*
*11 Debtor and Debtor-in-Possession*

By:＿＿＿*/s/ Sari B. Placona*＿＿＿
　　　Sari B. Placona

Dated: August 5, 2025

22