**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

McMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel to Daryl Fred Heller*
*Chapter 11 Debtor and Debtor-in-Possession*

In re:

DARYL FRED HELLER,

                    Debtor.

Case No. 25-11354 (JNP)

Chapter 11

## CERTIFICATION OF JOSHUA H. RAYMOND, ESQ. IN OPPOSITION TO PRESTIGE'S MOTION UNDER SEAL TO DETERMINE PRIVILEGE

**JOSHUA H. RAYMOND, Esq.** of full age, hereby certifies as follows:

1. I am an attorney-at-law duly admitted to practice law in the courts of the State of New Jersey and the District of New Jersey.

2. I am a Partner in the law firm McManimon, Scotland & Baumann, LLC, counsel to Daryl Fred Heller, the Chapter 11 Debtor and Debtor-in-Possession ("Mr. Heller"), in the above captioned matter.

3. I submit this Certification in opposition to the Motion filed under seal by Prestige Fund A, LLC, Prestige Fund A II, LLC, Prestige Fund A IV, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF

Velocity Fund V, LLC, WF Velocity Fund VI, LLC, and WF Velocity Fund VII, LLC (collectively, the "Movant"), seeking a judicial determination on the applicability of the attorney-client privilege and the baseless invocation of the crime-fraud exception (the "Motion").

4.      On April 13, 2025, Mr. Heller's counsel, Sari B. Placona, Esq., emailed a draft subpoena (the "Draft Subpoena") to Mr. Heller, requesting that he review Schedule A and provide comments or identify additional documents to be requested. See **Exhibit A**.

5.      This communication was part of the ordinary course of attorney-client collaboration and necessary to further Mr. Heller's legal representation.

6.      On April 15, 2025, Mr. Heller responded to his counsel with a revised draft subpoena, including redline edits suggesting additional documents to be requested ("Revised Draft Subpoena"). See **Exhibit B**.

7.      Mr. Heller also included marginal comments reflecting his thoughts and concerns on the scope of the subpoenas and litigation strategy. See id.

8.      One such marginal comment stated: ███████████████████████
█████████████████████

9.      This comment referenced a proposed definition for "Identity" in the Revised Draft Subpoena, which specified oral communications including time and location. See id.

10.     Mr. Heller only sent this April 15, 2025, email to Ms. Placona, and her colleagues, Anthony Sodono, Esq. and John Stern Esq., as well as corporate counsel Heidi Sorvino, representing Heller Capital Group. See id.

11.     Subsequently, Ms. Placona requested that I assist her and finalize the Revised Draft Subpoena and arrange for service on four fund managers: Jerry Hostetter, Buck Joffrey, Dave Zook, and William Poole (collectively, the "Fund Managers").

12.    On May 19, 2025, I sent the finalized subpoenas (the "Original Subpoenas") via email to Movant's counsel—Marshall Kizner, Esq., Joseph Lemkin, Esq., and Joshua Voss, Esq.—as well as to Ms. Placona and her legal assistant Stacy Lipstein. See **Exhibit C**.

13.    These Original Subpoenas did **not** contain any redline edits or marginal comments from Mr. Heller. See id.

14.    On June 13, 2025, Ms. Placona sent an email to Movant's counsel indicating that Mr. Heller had identified three additional categories of documents to be requested from the Fund Managers. See **Exhibit D**.

15.    On June 17, 2025, Mr. Kizner responded, stating: "If you want to send a subpoena with these requests, we are happy to review." See **Exhibit E**.

16.    In response, on June 18, 2025, I revised the Original Subpoenas to include the new document requests, generating a set of Supplemental Subpoenas ("Supplemental Subpoenas") to be served on the Fund Managers.

17.    After converting the revised subpoenas from Microsoft Word to PDF format, I emailed the Supplemental Subpoenas to Mr. Kizner, Mr. Lemkin, Mr. Voss, Mr. Sodono, and Ms. Placona. See **Exhibit F**.

18.    I did not realize that the marginal comment had been embedded into the PDF during the Word-to-PDF conversion process.

19.    Unfortunately, I did not realize that when I converted the document from Word to PDF format, in  order to serve the Supplemental Subpoenas, one of the four subpoenas inadvertently included the marginal comment from Mr. Heller's April 15 Revised Draft Subpoena. See id.

20.    At no point was it Mr. Heller's intention—or his counsel's—to share this privileged communication.

21.    The inadvertent disclosure was not known to Ms. Placona until a hearing on June 26, during which she was advised of the embedded comment.

22.    Ms. Placona immediately notified me of the issue.

23.    Also attached to the June 18, 2025, email was a cover letter that I drafted on behalf of Ms. Placona. See id.

24.    Attached to the cover letter was a Service List of other parties involved in the bankruptcy proceeding. See id.

25.    The Supplemental Subpoenas were never printed or mailed to the parties identified on the service list.

26.    Although the Supplemental Subpoenas that I sent on June 18, 2025, included a cover letter and a Service List, I did not cause the cover letter nor any of the Supplemental Subpoenas to be served on any of the parties on the Service List.

27.    The Supplemental Subpoenas were only sent via email with the cover to Mr. Kizner, Mr. Lemkin, Mr. Voss, Mr. Sodono, and Ms. Placona.

28.    The fact that the cover letter contained a service list was, in effect, a second inadvertent mistake when serving the Supplemental Subpoenas.

29.    Neither Mr. Heller nor his counsel intended to serve the Supplemental Subpoenas on third parties, nor did they intend for attorney-client privileged communication in the marginal comment to be provided to any third parties.

30.    On July 14, 2025, Mr. Kizner emailed Ms. Placona, raising the issue of the inadvertently disclosed comment. See **Exhibit G**.

4

31.     That same day, I responded by email, asserting that the comment was protected under the attorney-client privilege and that its inadvertent disclosure did not constitute a waiver.

32.     I requested that Movant's counsel refrain from reviewing, copying, disseminating, or using the information, and to return or destroy the document. See **Exhibit H**.

33.     Despite this clear and prompt invocation of privilege, Movant's counsel proceeded to request a copy of Mr. Heller's April 15th email attaching the Revised Draft Subpoena. See **Exhibit I**.

34.     I refused, reiterating that the communication was privileged and not subject to disclosure. See **Exhibit J**.

35.     On July 15, 2025, Movant filed a motion under seal requesting that the Court determine whether the inadvertently disclosed marginal comment is protected by the attorney-client privilege.

I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Joshua H. Raymond*
Joshua H. Raymond

Dated:  August 5, 2025

4898-8817-1353, v. 1

# EXHIBIT A

## Sari B. Placona

| | |
|---|---|
| **From:** | Sari B. Placona |
| **Sent:** | Sunday, April 13, 2025 10:12 AM |
| **To:** | 'Daryl Heller' |
| **Cc:** | Anthony Sodono; Heidi Sorvino; John D. Stern |
| **Subject:** | RE: In re: Daryl Fred Heller, Case No. 25-11354 (JNP) |
| **Attachments:** | DRAFT - Rule 2004 Subpoena re Prestige.docx |

Daryl

███████████████████████████████████████████████

Thanks.

**Sari B. Placona | Attorney Bio**
**Partner**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5030**
**Email: SPlacona@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

            Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Marshall T. Kizner, Esq.
      Joseph Lemkin, Esq.
      Joshua Voss, Esq.
      Stark & Stark
      PO Box 5315
      Princeton, NJ 08543

Case No.   25-11354

Chapter   11

      YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | April 28, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | April 14, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

      *If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## <u>UNAVAILABILITY OF DOCUMENTS</u>

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## <u>PRIVILEGE</u>

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.    "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.    "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

G.    "Paramount" means Paramount Management Group, LLC.

G.    "Identify" means when used in reference to:

5

i.      A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)    The place where received.

(iii)   The substance thereof.

(iv)    The means or medium employed for transmission thereof.

(v)     The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

6

(vi)   Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

## SCHEDULE "A"

1.   Any and all documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.   Any and all documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.   Any and all communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.   Any and all documents reflecting each claim or judgment held by Prestige against the Debtor.

5.   Any and all documents reflecting the Debtor's legal or equitable interest in Paramount.

6.   Any and all documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.   Any and all communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.   Any and all documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.   Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

7

10.    Any and all documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.    Any and all documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.    Any and all documentation indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all documents indicating Debtor's relation to Paramount.

8

# EXHIBIT B

## Sari B. Placona

| | |
|---|---|
| **From:** | Daryl Heller <dheller@hellercg.com> |
| **Sent:** | Tuesday, April 15, 2025 4:07 PM |
| **To:** | Sari B. Placona |
| **Cc:** | Anthony Sodono; Heidi Sorvino; John D. Stern |
| **Subject:** | RE: In re: Daryl Fred Heller, Case No. 25-11354 (JNP) |
| **Attachments:** | DRAFT - Rule 2004 Subpoena re Prestige_DH comments.docx |



Best Regards,

Daryl Heller

THIS MESSAGE MAY CONTAIN CONFIDENTIAL OR LEGALLY PRIVILEGED INFORMATION. IF YOU HAVE
RECEIVED IN ERROR, PLEASE DELETE.

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Sunday, April 13, 2025 10:12 AM
**To:** Daryl Heller <dheller@hellercg.com>
**Cc:** ASodono <ASodono@MSBNJ.COM>; Heidi Sorvino <Sorvinoh@whiteandwilliams.com>; John D. Stern
<jstern@msbnj.com>
**Subject:** RE: In re: Daryl Fred Heller, Case No. 25-11354 (JNP)

## EXTERNAL

Daryl

Thanks.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

In re
**DARYL FRED HELLER,**
       Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Marshall T. Kizner, Esq.
Joseph Lemkin, Esq.
Joshua Voss, Esq.
Stark & Stark
PO Box 5315
Princeton, NJ 08543

Case No.    25-11354

Chapter    11

YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | April 28, 2025 at 10:00 am |
| ISSUING OFFICER SIGNATURE AND TITLE<br>/s/ Sari B. Placona | DATE<br>April 15, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| **SERVED** | | | | |
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.     "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.     "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.     "Debtor" means Daryl Fred Heller.

D.     "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes

or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the

Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts

(a) own such document in whole or in part, (b) has a right by control, contract, statute, or

otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding,

expressed or implied, that they may use, inspect, examine or copy such document on any terms,

or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when

the Debtor sees fit to do so.

E.    "Each" includes the word "every" and "every" includes the word "each." "Any"

includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or"

includes the word "and."

F.    "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund

A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige

Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I,

LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund

A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige

Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC,

WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF

Velocity Fund VII, LLC, and any partner, agent, officer, professional, representative, employee or

other person, and any other entity acting on its behalf.

G.    "Paramount" means Paramount Management Group, LLC.

G.    "Identify" means when used in reference to:

5

i.        A natural person -- his or her full name and present or last known address.

ii.       A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.      A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.       An oral statement or communication:

(i)       The date and the place where uttered.

(ii)      The place where received.

(iii)     The substance thereof.

(iv)      The means or medium employed for transmission thereof.

(v)       The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

6

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

## SCHEDULE "A"

1.    Any and all documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.    Any and all documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.    Any and all communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.    Any and all documents reflecting each claim or judgment held by Prestige against the Debtor.

5.    Any and all documents reflecting the Debtor's legal or equitable interest in Paramount.

6.    Any and all documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.    Any and all communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.    Any and all documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.    Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

7

4907-0488-6581, v. 1

10.    Any and all documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.    Any and all documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action"). 

12.    Any and all documentation indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all documents indicating Debtor's relation to Paramount.

1)    All the customary elements when sending to individuals which I sure is a long list

2)    All emails, vmails, text, written, and verbal communication between all Fund managers that directly or indirectly references Daryl Heller

8

3) All emails, vmails, text, written, and verbal communication (for each fund manager) to anyone and everyone that directly or indirectly references Daryl Heller

4) All emails, vmails, text, written, and verbal communication for each individual to any outside person that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings.

5) For Jerry, Dave, and William only - All emails, vmails, text, written, and verbal communication for each individual to any outside person that directly or indirectly references any Glorious Cannabis entity (send list of them as it is about 20)

9

4907-0488-6581, v. 1

# EXHIBIT C

**Joshua H. Raymond**

| | |
|---|---|
| **From:** | Joshua H. Raymond |
| **Sent:** | Monday, May 19, 2025 4:01 PM |
| **To:** | Marshall T. Kizner |
| **Cc:** | Stacy L. Lipstein; Joseph H. Lemkin; Josh Voss; Sari B. Placona |
| **Subject:** | RE: Heller - Prestige Funds |
| **Attachments:** | Letter to Jerry Hostetter enclosing subpoena FINAL.pdf; Letter to Dave Zook enclosing subpoena FINAL.pdf; Letter to William Poole enclosing subpoena FINAL.pdf; Letter to Buck Joffrey enclosing subpoena FINAL.pdf |

Please see attached.

**Joshua H. Raymond**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5031**
**Email: JRaymond@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Monday, May 19, 2025 3:38 PM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>
**Cc:** Stacy L. Lipstein <slipstein@msbnj.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>; Joseph H. Lemkin <jlemkin@stark-stark.com>; Josh Voss <jvoss@saxtonstump.com>
**Subject:** RE: Heller - Prestige Funds

Josh

Please provide Marshall a copy of the final subpoenas.

Thanks.

**Sari B. Placona | Attorney Bio**
**Partner**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5030**
**Email: SPlacona@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Friday, May 16, 2025 8:38 AM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Cc:** Stacy L. Lipstein <slipstein@msbnj.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>; Joseph H. Lemkin <jlemkin@stark-stark.com>; Josh Voss <jvoss@saxtonstump.com>
**Subject:** Re: Heller - Prestige Funds

You could simply send me a copy and give me a chance to review and advise. Seems like a waste of money in the event we can accept service. Thanks,

1

**Marshall T. Kizner, Esq.**
*Shareholder*

t: 609.219.7449 | f: 609.895.7395
e: mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all
copies of the original message.

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Friday, May 16, 2025 8:35:58 AM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>
**Cc:** Stacy L. Lipstein <slipstein@msbnj.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>; Joseph H. Lemkin
<jlemkin@stark-stark.com>; Josh Voss <jvoss@saxtonstump.com>
**Subject:** [EXTERNAL] RE: Heller - Prestige Funds

Thanks, I will have them served.

**Sari B. Placona | Attorney Bio**
**Partner**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5030**
**Email: SPlacona@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Friday, May 16, 2025 8:33 AM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Cc:** Stacy L. Lipstein <slipstein@msbnj.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>; Joseph H. Lemkin
<jlemkin@stark-stark.com>; Josh Voss <jvoss@saxtonstump.com>
**Subject:** RE: Heller - Prestige Funds

Sari:

I would have to see the subpoenas before I can respond.

Thanks,

**Marshall T. Kizner, Esq.**
*Shareholder*

**t:** 609.219.7449 | **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all
copies of the original message.

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Friday, May 16, 2025 8:31 AM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>
**Cc:** Stacy L. Lipstein <slipstein@msbnj.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Subject:** [EXTERNAL] Heller - Prestige Funds


Hi Marshall

I am sending out subpoenas today to Prestige Fund Managers. Will you accept service on behalf of your clients — William
Poole, Dave Zook, Jerry Hostetter, and Buck Joffrey?

Please let me know.
Thank you.

**Sari B. Placona | Attorney Bio**
**Partner**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5030**
**Email: SPlacona@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the
addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message . If you have received
the message in error, please advise the sender by e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at
(973) 622-1800 and delete the message. Thank you very much.

**MS&B**  McManimon · Scotland · Baumann                75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
splacona@msbnj.com
35240-001

May 19, 2025

**Via Regular Mail and Certified Mail RRR**
Buck Joffrey
3463 State Street, Suite 595
Santa Barbara, CA 93105

       **Re:**   **Daryl Fred Heller**
                   **Chapter 11, Case No. 25-11354**

Dear Mr. Joffrey:

     This firm is counsel for Daryl Fred Heller, Chapter 11 debtor/debtor-in-possession and plaintiff in the above-captioned matter.

     Enclosed for service upon you, please find a Subpoena in a Case Under the Bankruptcy Code Pursuant to Fed. R. Bankr. P. 2004 and D.N.J. LBR 2004-1.

     Please be advised that the Subpoena requires your appearance at an examination under Rule 2004 on June 17, 2025 at 1:00 p.m. and requires you to produce documents on or before June 4, 2025 at 10:00 a.m.  Please be guided accordingly.

                       Sincerely,

                       */s/ Sari B. Placona*

                       Sari B. Placona

SBP/sll
Enclosure

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

Debtor.

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE PURSUANT TO FED. R. BANKR. P. 2004 AND D.N.J. LBR 2004-1**

To: Buck Joffrey
    3463 State Street, Suite 595
    Santa Barbara, CA 93105

| Case No. | 25-11354 |
|---|---|
| Chapter | 11 |

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | June 17, 2025 at 1:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | June 4, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | May 19, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

4933-3923-4373, v. 1

## DEFINITIONS

A.     "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.     "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.     "Debtor" means Daryl Fred Heller.

D.     "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.    "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.    "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC, Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.    "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.    "Identify" means when used in reference to:

i.      A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)    The place where received.

(iii)   The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Buck Joffrey, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

4933-3923-4373, v. 1

### SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

4933-3923-4373, v. 1

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

10

20.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.    All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.    All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.    Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.    Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.    Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.    Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.    Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.    Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

12

**MS&B**  McMANIMON · SCOTLAND · BAUMANN                    75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
splacona@msbnj.com
35240-001

May 19, 2025

**Via Regular Mail and Certified Mail RRR**
William Poole
5 Whitefield Lane
Lancaster, PA 17602

Re:   **Daryl Fred Heller**
      **Chapter 11, Case No. 25-11354**

Dear Mr. Poole:

This firm is counsel for Daryl Fred Heller, Chapter 11 debtor/debtor-in-possession and plaintiff in the above-captioned matter.

Enclosed for service upon you, please find a Subpoena in a Case Under the Bankruptcy Code Pursuant to Fed. R. Bankr. P. 2004 and D.N.J. LBR 2004-1.

Please be advised that the Subpoena requires your appearance at an examination under Rule 2004 on June 17, 2025 at 10:00 a.m. and requires you to produce documents on or before June 4, 2025 at 10:00 a.m.  Please be guided accordingly.

Sincerely,

/s/ Sari B. Placona

Sari B. Placona

SBP/sll
Enclosure

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

**DARYL FRED HELLER,**

Debtor.

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE PURSUANT TO FED. R. BANKR. P. 2004 AND D.N.J. LBR 2004-1**

To: William Poole
   5 Whitefield Lane
   Lancaster, PA 17602

Case No.     25-11354

Chapter     11

YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC 75 Livingston Avenue, Suite 201 Roseland, New Jersey 07068 | June 17, 2025 at 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC 75 Livingston Avenue, Suite 201 Roseland, New Jersey 07068 Attn: Sari B. Placona, Esq. | June 4, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | May 19, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.    "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.    "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.    "Debtor" means Daryl Fred Heller.

D.    "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes
or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the
Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts
(a) own such document in whole or in part, (b) has a right by control, contract, statute, or
otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding,
expressed or implied, that they may use, inspect, examine or copy such document on any terms,
or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when
the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each." "Any"
includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or"
includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund
A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige
Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I,
LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund
A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige
Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC,
WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF
Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC,
Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds
Management, LLC and any partner, agent, officer, professional, representative, employee or other
person, and any other entity acting on its behalf.

4910-9462-6373, v. 1

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operation of ATMs

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult

6

O.    "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.    "Identify" means when used in reference to:

i.    A natural person -- his or her full name and present or last known address.

ii.    A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.    An oral statement or communication:

(i)    The date and the place where uttered.

(ii)    The place where received.

(iii)    The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

(v)   The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)   Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.   "You" refers to William Poole, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

9

4910-9462-6373, v. 1

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

10

20.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.    All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.    All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.    Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

12

4910-9462-6373, v. 1

 McMANIMON · SCOTLAND · BAUMANN          75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
splacona@msbnj.com
35240-001

May 19, 2025

**Via Regular Mail and Certified Mail RRR**
Dave Zook
5075 Lower Valley Road
Atglen, PA 19310
        **Re:**   **Daryl Fred Heller**
               **Chapter 11, Case No. 25-11354**

Dear Mr. Zook:

    This firm is counsel for Daryl Fred Heller, Chapter 11 debtor/debtor-in-possession and plaintiff in the above-captioned matter.

    Enclosed for service upon you, please find a Subpoena in a Case Under the Bankruptcy Code Pursuant to Fed. R. Bankr. P. 2004 and D.N.J. LBR 2004-1.

    Please be advised that the Subpoena requires your appearance at an examination under Rule 2004 on June 17, 2025 at 3:00 p.m. and requires you to produce documents on or before June 4, 2025 at 10:00 a.m. Please be guided accordingly.

                         Sincerely,

                         */s/ Sari B. Placona*

                         Sari B. Placona

SBP/sll
Enclosure

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

Debtor.

SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1

To: Dave Zook
5075 Lower Valley Road
Atglen, PA 19310

Case No.    25-11354

Chapter    11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | June 17, 2025 at 3:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | June 4, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | May 19, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| **SERVED** | DATE | PLACE | |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial, be commanded to travel from any such place within the state in which the trial is held; or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.    "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.    "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC, Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.     "Paramount" means Paramount Management Group, LLC.

H.     "Glorious" means GCC MSO Holdings including but not limited to the following:
GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI
Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC,
Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC,
GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC
Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.     "GCC Investment Holdings" means GCC Investment Holdings LLC and any and
all of its members.

J.     "Heller Capital Group" means any and all entities and individuals you understand
to be owned by or have an affiliation with Heller Capital Group.

K.     "Heller Investment Holdings" means any and all entities and individuals you
understand to be owned by or have an affiliation with Heller Investment Holdings.

L.     "Project Catapult" means any and all entities and individuals you understand to
have an affiliation with Project Catapult.

M.     Fund Manager ATM Operators" means any and all entities and individuals Fund
Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from
Paramount including but limited to employees and contractor and any entities Fund Managers have
used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.     "Private Investigators" means any and all entities and individuals Fund Manager,
or others related to Fund Managers approval, have hired, contracted or otherwise to investigate
Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment
Holdings, Glorious or Project Catapult.

6

O.   "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.   "Identify" means when used in reference to:

i.   A natural person -- his or her full name and present or last known address.

ii.   A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.   A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was. but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.   An oral statement or communication:

(i)   The date and the place where uttered.

(ii)   The place where received.

(iii)   The substance thereof.

(iv)   The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Dave Zook, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

4930-0447-6485, v. 1

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

9

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

4930-0447-6485, v. 1

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Ryncarson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.    Any and all Documents relating to and arising out of any communications with

Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers,

Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the

present.

28.    Any and all Documents relating to and arising out of any communications with and

amongst Fund Manager individually with each other or as a group of Fund Managers from January

1, 2021 through the present.

29.    Any and all Documents relating to and arising out of any communications with

Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.    Any and all Documents, including bank statements, relating to and arising out of

all compensation received from Prestige by You since 2020, by year, including, but not limited to

expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.    Any and all Bank Statements, Credit Card Statements, Digital Cash Application

Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity

owned by You from January 1, 2021 through the present.

32.    Any and all Documents relating to and arising out of all compensation paid directly or

indirectly from YOU. RAI, or any affiliated entities of either, to Jeremy Roll and any of his affiliated entities

and all communication and agreements with Jeremy Roll and any of his affiliated entities.

33.    All emails, voicemails, text, written, and verbal communication by You or to You for any

person or entity that directly or indirectly references Jeremy Roll and his affiliated entities from January 1,

2021 through the present.

12

**MS&B**    McMANIMON · SCOTLAND · BAUMANN                75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
**splacona@msbnj.com**
35240-001

May 19, 2025

**Via Regular Mail and Certified Mail RRR**
Jerry Hostetter
121 Eshelman Road
Lancaster, PA 17601

      **Re:**   **Daryl Fred Heller**
             **Chapter 11, Case No. 25-11354**

Dear Mr. Hostetter:

    This firm is counsel for Daryl Fred Heller, Chapter 11 debtor/debtor-in-possession and plaintiff in the above-captioned matter.

    Enclosed for service upon you, please find a Subpoena in a Case Under the Bankruptcy Code Pursuant to Fed. R. Bankr. P. 2004 and D.N.J. LBR 2004-1.

    Please be advised that the Subpoena requires your appearance at an examination under Rule 2004 on June 17, 2025 at 4:00 p.m. and requires you to produce documents on or before June 4, 2025 at 10:00 a.m.  Please be guided accordingly.

                Sincerely,

                /s/ Sari B. Placona

                Sari B. Placona

SBP/sll
Enclosure

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

            Debtor.

**SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE PURSUANT TO FED. R. BANKR. P. 2004 AND D.N.J. LBR 2004-1**

To: Jerry Hostetter
     121 Eshelman Road
     Lancaster, PA 17601

Case No. _____ 25-11354

Chapter    11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | June 17, 2025 at 4:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | June 4, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | May 19, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)   PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held; or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

4937-4391-9173, v. 1

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.   "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.   "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.   "Debtor" means Daryl Fred Heller.

D.   "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC, Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.   "Paramount" means Paramount Management Group, LLC.

H.   "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.   "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.   "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.   "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.   "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.   Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.   "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.    "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.    "Identify" means when used in reference to:

i.    A natural person -- his or her full name and present or last known address.

ii.    A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.    An oral statement or communication:

(i)    The date and the place where uttered.

(ii)    The place where received.

(iii)    The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

4937-4391-9173, v. 1

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Jerry Hostetter, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

9

10.    Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.    Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.    Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all Documents indicating Debtor's relation to Paramount.

16.    Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.    All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.    All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.    All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital

10

Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

20.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.    All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.    All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

11

26.    Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

27.    Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.    Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.    Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.    Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.    Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.    Any and all Documents relating to and arising out of any and all communications regarding Alden Place and its affiliated entities including but not limited to Cornwall Associates LP and Cornwall Associates, LLC.

33.    All emails, voicemails, text, written, and verbal communication by You or to You or any person or entity that directly or indirectly references Alden Place and its affiliated entities

12

4937-4391-9173, v. 1

including but not limited to Cornwall Associated LP and Cornwall Associates, LLC from January 1, 2021 through the present.

13

# EXHIBIT D

## Joshua H. Raymond

| | |
|---|---|
| **From:** | Sari B. Placona |
| **Sent:** | Friday, June 13, 2025 12:23 PM |
| **To:** | 'Marshall T. Kizner' |
| **Cc:** | Joseph H. Lemkin; Anthony Sodono; Joshua Voss; Joshua H. Raymond |
| **Subject:** | RE: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003] |

Marshall

In addition to the subpoenas sent to the Fund Managers, here are three additional requests.

      a.  For the Prestige escrow account, or any bank or legal escrow account associated with, provide any and all revenues received since Nov 21 takeover

      b.  Accounting for every dollar of revenue generated from ATMs since November (inflows, outflows, all payments to legal, etc)

      c.  List of Acquisition partners and agents of Paramount including All emails, discussions, document, etc related to settlement discussions or any communications with acquisition partner/agent.

Thank you.

**Sari B. Placona | Attorney Bio**
**Partner**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5030**
**Email: SPlacona@MSBNJ.COM**
**Website**

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Thursday, June 12, 2025 3:56 PM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Cc:** Joseph H. Lemkin <jlemkin@stark-stark.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss <jvoss@saxtonstump.com>
**Subject:** RE: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003]

Hi Sari:

Your client has until July 2nd to file a response to our non-dischargeabilty action already based on the date of mailing (see attached). That gives you the 20 days you seek, without the need for a further extension. We are fine extending the deadline to respond to the adversary proceeding to 6/20, which is effectively a 60 plus day extension since the deadline to respond has long passed.

I am away for part of the week of the 23rd and 30th and I have a trial next week before I leave, so I would like to fix the responsive deadline for the subpoenas to 7/3, with your consent.

Please advise.

# EXHIBIT E

## Joshua H. Raymond

| | |
|---|---|
| **From:** | Marshall T. Kizner <mkizner@stark-stark.com> |
| **Sent:** | Tuesday, June 17, 2025 4:22 PM |
| **To:** | Sari B. Placona |
| **Cc:** | Joseph H. Lemkin; Anthony Sodono; Joshua Voss; Joshua H. Raymond |
| **Subject:** | RE: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003] |

Sari:

If you want to send a subpoena with these requests, we are happy to review.

Thank you,

---

**Marshall T. Kizner, Esq.**
*Shareholder*
**t:** 609.219.7449 | **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Sent:** Tuesday, June 17, 2025 4:20 PM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>
**Cc:** Joseph H. Lemkin <jlemkin@stark-stark.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss <jvoss@saxtonstump.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Subject:** [EXTERNAL] Re: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003]

Marshall

Please confirm you received these additional requests.

Thanks

From Sari B. Placona, Esq.
Sent from my iPhone

1

# EXHIBIT F

**Joshua H. Raymond**

| | |
|---|---|
| **From:** | Joshua H. Raymond |
| **Sent:** | Wednesday, June 18, 2025 2:24 PM |
| **To:** | 'Marshall T. Kizner' |
| **Cc:** | Joseph H. Lemkin; Anthony Sodono; Joshua Voss; Sari B. Placona |
| **Subject:** | Heller - Subpoenas |
| **Attachments:** | Letter to Marshall T. Kizner - enclosing revised subpoenas.pdf; Rule 2004 Subpoena re - Dave Zook 6-18-25.pdf; Rule 2004 Subpoena re  - William Poole 6-18-25.pdf; Rule 2004 Subpoena re - Buck Joffrey 6-18-25.pdf; Rule 2004 Subpoena re - Jerry Hostetter 6-18-25.pdf |

Attached please find our correspondence and four Subpoenas.
Please confirm receipt hereof and that this email is sufficient.  If you require us to mail you hard copies, kindly advise.
Best regards,
Josh

Joshua H. Raymond
**McManimon, Scotland & Baumann, LLC**
75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068
**Direct Dial: 973-721-5031**
Email: **JRaymond@MSBNJ.COM**
Website

**Connect with MS&B on LinkedIn | Twitter | Instagram**

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Tuesday, June 17, 2025 4:22 PM
**To:** Sari B. Placona <SPlacona@MSBNJ.COM>
**Cc:** Joseph H. Lemkin <jlemkin@stark-stark.com>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss <jvoss@saxtonstump.com>; Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Subject:** RE: REQUEST FOR MORE TIME - HELLER COMPLAINTS RE NONDISCHARGEABILITY [IMAN-ACTIVE.FID441003]

Sari:

If you want to send a subpoena with these requests, we are happy to review.

Thank you,

---

**Marshall T. Kizner, Esq.**
*Shareholder*

**t:** 609.219.7449 | **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

1

**MS&B**  McMANIMON · SCOTLAND · BAUMANN                75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

**Sari B. Placona**
**Direct Dial: (973) 721-5030**
<u>splacona@msbnj.com</u>
35240-001

June 18, 2025

<u>**Via Email - mkizner@stark-stark.com**</u>
Marshall T. Kizner, Esq.
Stark & Stark PC
100 American Metro Boulevard
Hamilton, NJ 08619

Re:    **Daryl Fred Heller**
       **Chapter 11, Case No. 25-11354**

Dear Mr. Kizner:

In connection with the above captioned matter, and pursuant to our prior email correspondence, enclosed please find amended subpoenas directed at: William Poole, Buck Joffrey, Jerry Hostetter and David Zook.

This shall confirm that you have agreed to accept service on behalf of these individuals. This shall further confirm that the responsive documents are to be produced on or before July 3, 2025. Please note that the depositions are scheduled for July 7, 2025.

Sincerely,

*/s/ Sari B. Placona*

Sari B. Placona

Enclosures

## SERVICE LIST

Daryl Fred Heller
909 Greenside Drive
Lititz, PA 17543

United States Department of Justice
Office of the United States Trustee
Jeffrey M. Sponder, Esq.
One Newark Center, Ste. 2100
Newark, NJ 07102

Edward Phillips, CPA
Getzler Henrich & Associates
295 Madison Ave, 20th Floor
New York, NY 10017

Albert Ciardi, III, Esq.
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103
*Attorneys for Deerfield Capital, LLC*
*NOA (20 Largest Creditor)*

Steven Mitnick, Esq.
S. Mitnick Law PC
PO Box 530
49 Old Turnpike Road
Oldwick, NJ 08858
*Attorneys for Receiver of Golden Gate*
*Investment Company, LLC and Paramount*
*Management Group, LLC, NOA*

Marc D. Miceli, Esq.
S. Mitnick Law PC
PO Box 530
49 Old Turnpike Road
Oldwick, NJ 08858
*Attorneys for Receiver of Golden Gate*
*Investment Company, LLC and Paramount*
*Management Group, LLC, NOA*

Martin J. Weis, Esq.
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19102
*Attorneys for Orrstown Bank*
*NOA (20 Largest Creditor and Secured)*

Gerard S. Catalanello
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Silverview Credit Partners, LP*
*NOA (20 Largest Creditor)*

AIS Portfolio Services, LLC
Attn: BMW Bank of North America Dept.
Account: XXXXXX9616
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118
*NOA*

Jerrold S. Kulback, Esq.
Archer & Greiner, PC
1025 Laurel Oak Road
Voorhees, NJ 08043
*Attorneys for Steward Capital Holdings LP*
*and Avenaero Holdings LLC, NOA*

Christopher J. Leavell, Esq.
Klehr, Harrison, Harvey, Branzburg LLP
10000 Lincoln Drive East, Ste 201
Marlton, NJ 08053
*Attorneys for Univest Bank and Trust Co.*
*NOA (20 Largest Creditor)*

Marshall T. Kizner, Esq.
Stark & Stark
PO Box 5315
Princeton NJ 08543-5315
*Attorneys for Prestige Fund A, LLC et al., NOA*

Joseph H. Lemkin, Esq.
Stark & Stark
PO Box 5315
Princeton NJ 08543-5315
*Attorneys for Prestige Fund A, LLC et al., NOA*

Edmond M. George, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
*Attorneys for Customers Bank, NOA*

Christopher P. Mazza, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Attorneys for Gallimore Properties, LLC, NOA*

Rachel A. Parisi, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Attorneys for Gallimore Properties, LLC, NOA*

William E Craig, Esq.
Eisenberg, Gold & Agrawal, PC
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
*Attorneys for Fulton Bank,*
*Secured Creditor, NOA*

Janet L. Gold, Esq.
Eisenberg, Gold & Agrawal, PC
1040 North Kings Highway, Suite 200
Cherry Hill, NJ 08034
*Attorneys for Fulton Bank,*
*Secured Creditor, NOA*

E. Richard Dressel, Esq.
Lex Nova Law LLC
10 E. Stow Road, Suite 250
Marlton, NJ 08053
*Attorneys for Brett and Gail Levin, NOA*

Nancy Isaacson, Esq.
Greenbaum, Rowe, Smith & Davis LLP
75 Livingston Avenue - Suite 301
Roseland, New Jersey 07068
*Attorneys for Randall Leaman, NOA*

Jeffrey M. Lichtstein, Esq.
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, MD 21201
*Attorneys for Truist Bank, NOA*

Natalie Young, Esq.
MacElree Harvey, Ltd.
17 W. Miner Street, Box 660
West Chester, PA 19381-0660
*Attorneys for Charlene Heller, Ethan Heller,*
*Taite Heller, Accordo, LP, Brookfield, LP and*
*Brigantine Group, LP, NOA*

Donald W. Clarke, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ 07102
*Attorneys for GCC Investment Holdings LLC,*
*Grizzly RE, LLC, and NEO Mfg. MA, LLC, NOA*

Jaclynn N. McDonnell, Esq.
Genova Burns LLC
494 Broad Street
Newark, NJ 07102
*Attorneys for GCC Investment Holdings LLC,*
*Grizzly RE, LLC, and NEO Mfg. MA, LLC, NOA*

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

**DARYL FRED HELLER,**

Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Dave Zook
5075 Lower Valley Road
Atglen, PA 19310

Case No.    25-11354

Chapter    11

x YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 3:00 p.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| **SERVED** | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

4896-6311-2527, v. 1

## **DEFINITIONS**

A.      "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.        "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.        "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC, Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.     "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.     "Identify" means when used in reference to:

i.     A natural person -- his or her full name and present or last known address.

ii.     A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.     A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.     An oral statement or communication:

(i)     The date and the place where uttered.

(ii)     The place where received.

(iii)     The substance thereof.

(iv)     The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Dave Zook, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

4896-6311-2527, v. 1

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

4896-6311-2527, v. 1

11.    Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.    Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all Documents indicating Debtor's relation to Paramount.

16.    Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.    All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.    All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.    All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

4896-6311-2527, v. 1

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Documents relating to and arising out of all compensation paid directly or indirectly from YOU, RAI, or any affiliated entities of either, to Jeremy Roll and any of his affiliated entities and all communication and agreements with Jeremy Roll and any of his affiliated entities.

33.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Jeremy Roll and his affiliated entities from January 1, 2021 through the present.

34. Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

12

35.    Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

36.    List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of communication including settlement discussions or general communication with acquisition partners/agents.

13

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

              Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To:  William Poole
     5 Whitefield Lane
     Lancaster, PA 17602

Case No. | 25-11354

Chapter | 11

       YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 10:00 a.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER ·

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

     *If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)   PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of.  In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

## DEFINITIONS

A.    "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.    "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.    "Debtor" means Daryl Fred Heller.

D.    "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4918-1144-8143, v. 1

supporting documentation, and including, without limitation, originals, copies (with or without notes

or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the

Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts

(a) own such document in whole or in part, (b) has a right by control, contract, statute, or

otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding,

expressed or implied, that they may use, inspect, examine or copy such document on any terms,

or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when

the Debtor sees fit to do so.

E.      "Each" includes the word "every" and "every" includes the word "each."  "Any"

includes the word "all" and "all" includes the word "any."  "And" includes the word "or" and "or"

includes the word "and."

F.      "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund

A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige

Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I,

LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund

A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige

Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC,

WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF

Velocity Fund VII, LLC, Prestige Investment Group, LLC,  Prestige  Funds Management, LLC,

Prestige  Funds Management, II, LLC, Prestige  Funds Management, III, LLC, WF Velocity Funds

Management, LLC and any partner, agent, officer, professional, representative, employee or other

person, and any other entity acting on its behalf.

5

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operation of ATMs

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult

6

O.      "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.      "Identify" means when used in reference to:

    i.      A natural person -- his or her full name and present or last known address.

    ii.      A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

    iii.      A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

    iv.      An oral statement or communication:

        (i)      The date and the place where uttered.

        (ii)      The place where received.

        (iii)      The substance thereof.

        (iv)      The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to William Poole, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.     Any and all Documents related to efforts to collect on any debts owed by the

Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et*

*al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the

PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the

action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on

the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-

piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the

Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst

all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You

to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021

through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You

for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital

Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021

through the present.

4918-1144-8143, v. 1

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.     Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.     Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.     Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.     Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.     Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.     Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

33.     Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

34.     List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of

communication including settlement discussions or general communication with acquisition partners/agents.

13

4918-1144-8143, v. 1

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

In re

**DARYL FRED HELLER,**

         Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Buck Joffrey
    3463 State Street, Suite 595
    Santa Barbara, CA 93105

Case No.    **25-11354**

Chapter    **11**

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 1:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |
| ISSUING OFFICER SIGNATURE AND TITLE<br>/s/ Sari B. Placona | DATE<br>June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| **SERVED** | | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

4915-2335-1887, v. 1

## DEFINITIONS

A.    "Communications" shall mean any written or oral transmission of fact, information or opinion, including any utterance, notation or statement of any nature whatsoever and including, but not limited to, documents and correspondence as defined herein.

B.    "Concerning" means regarding, referring to, pertaining to, relating to, or in connection with.

C.    "Debtor" means Daryl Fred Heller.

D.    "Documents" shall mean all written, recorded, or graphic material, however produced or reproduced in the actual or constructive possession, custody or control of the Trusts, including documents accessible at the Trusts' request, and shall include, without limitation, the following: e-mails; the originals and all copies of all drafts of written or printed material, recorded audio or video tapes, computer data or information whether printed or recorded on disks or stored in any manner, papers, books, manuals, records, contracts, notes, memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts or activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms, pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards, computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies, interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals, diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related to, prepared, issued or which any way deal with, the documents requested in this Request, including all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes

or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

      A document is deemed in the actual or constructive possession, custody or control of the

Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts

(a) own such document in whole or in part, (b) has a right by control, contract, statute, or

otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding,

expressed or implied, that they may use, inspect, examine or copy such document on any terms,

or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when

the Debtor sees fit to do so.

      E.    "Each" includes the word "every" and "every" includes the word "each." "Any"

includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or"

includes the word "and."

      F.    "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund

A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige

Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I,

LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund

A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige

Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC,

WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF

Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC,

Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds

Management, LLC and any partner, agent, officer, professional, representative, employee or other

person, and any other entity acting on its behalf.

5

G. "Paramount" means Paramount Management Group, LLC.

H. "Glorious" means GCC MSO Holdings including but not limited to the following GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I. "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J. "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K. "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L. "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M. "Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N. "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.    "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.    "Identify" means when used in reference to:

i.    A natural person -- his or her full name and present or last known address.

ii.    A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.    An oral statement or communication:

(i)    The date and the place where uttered.

(ii)    The place where received.

(iii)    The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

> (v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.
>
> (vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Buck Joffrey, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

9

11.    Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.    Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.    Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.    Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.    Any and all Documents indicating Debtor's relation to Paramount.

16.    Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.    All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.    All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.    All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

10

20.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.     All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.     All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.     All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.     All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

26.     Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

11

27.    Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.    Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.    Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.    Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.    Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.    Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

33.    Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

34.    List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of

12

4915-2335-1887, v. 1

communication including settlement discussions or general communication with acquisition

partners/agents.

13

Form 254 - Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re

DARYL FRED HELLER,

Debtor.

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE PURSUANT
TO FED. R. BANKR. P. 2004 AND D.N.J.
LBR 2004-1**

To: Jerry Hostetter
121 Eshelman Road
Lancaster, PA 17601

Case No.   25-11354

Chapter   11

x  YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068 | July 7, 2025 at 4:00 p.m. |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).

*See* attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| McManimon, Scotland & Baumann, LLC<br>75 Livingston Avenue, Suite 201<br>Roseland, New Jersey 07068<br>Attn: Sari B. Placona, Esq. | July 3, 2025 at 10:00 am |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Sari B. Placona | June 18, 2025 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Sari B. Placona, Esq., counsel to Daryl Fred Heller, Debtor
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 622-1800 (Main) | (973) 721-5030 (Direct) | splacona@msbnj.com

*If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 - Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

| SERVED | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Fed.R.Civ.P., Parts (c) & (d) made applicable in cases under the Bankruptcy Code by Rule 9016, Fed.R.Bankr.P.

(c)   PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)      A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)      Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception  or waiver applies, or

(iv)   subjects a person to undue burden.

(B)      If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)      A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)      When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

2

4934-8726-9199, v. 1

## UNAVAILABILITY OF DOCUMENTS

To the extent a document is sought herein and such document was but is no longer in your possession or subject to your control, or no longer in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) has been otherwise disposed of. In each instance, explain the circumstances surrounding and authorization of such disposition thereof, including the date or approximate date thereof, the contents of said document, and the person who authorized the transfer, destruction or other disposition of said document.

## PRIVILEGE

Identify, by date, author, recipient, distribution list, and subject matter, each document which is responsive to a specific document request but which you are not producing based upon the assertion of a claim of privilege, attorney's work product, or other asserted justification for non-production. With respect to each document which is not being produced based upon an assertion of privilege, specifically identify the alleged privilege asserted for each document.

3

4934-8726-9199, v. 1

## DEFINITIONS

A.      "Communications" shall mean any written or oral transmission of fact, information

or opinion, including any utterance, notation or statement of any nature whatsoever and including,

but not limited to, documents and correspondence as defined herein.

B.      "Concerning" means regarding, referring to, pertaining to, relating to, or in

connection with.

C.      "Debtor" means Daryl Fred Heller.

D.      "Documents" shall mean all written, recorded, or graphic material, however

produced or reproduced in the actual or constructive possession, custody or control of the Trusts,

including documents accessible at the Trusts' request, and shall include, without limitation, the

following: e-mails; the originals and all copies of all drafts of written or printed material, recorded

audio or video tapes, computer data or information whether printed or recorded on disks or stored in

any manner, papers, books, manuals, records, contracts, notes, memoranda (including written

memoranda of telephone conversations, other conversations, discussions, agreements, acts or

activities), minutes, diaries, calendars, desk pads, appointment books, notebooks, bulletins, forms,

pamphlets, notices, statements, cancelled checks, checks, check stubs, correspondence, data cards,

computer printouts, photographs, drawings, letters, telegrams, telexes, cables, reports, studies,

interoffice communications, charts, blue prints, plans, drawings, graphs, calculations, proposals,

diagrams, specifications, brochures, sketches, and accounting and financial records whether prepared

by the Trusts for their own use or for transmittal, or received by the Trusts and wherever located.

Unless otherwise specified, documents referred to herein shall be those documents related

to, prepared, issued or which any way deal with, the documents requested in this Request, including

all portions, or pages of each document referred to and all attachments, enclosures, appendices and

4

supporting documentation, and including, without limitation, originals, copies (with or without notes or changes therein), drafts, working papers, routing slips, handwritten notes and similar materials.

A document is deemed in the actual or constructive possession, custody or control of the Trusts if it is in its physical custody or if it is in the physical custody of any person and the Trusts (a) own such document in whole or in part, (b) has a right by control, contract, statute, or otherwise, to use, inspect, examine or copy such document on any terms, (c) has an understanding, expressed or implied, that they may use, inspect, examine or copy such document on any terms, or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Debtor sees fit to do so.

E.     "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any." "And" includes the word "or" and "or" includes the word "and."

F.     "Prestige" means Prestige Fund A, LLC, Prestige Fund A IV, LLC, Prestige Fund A IX, LLC, Prestige Fund B, LLC, Prestige Fund B II, LLC, Prestige Fund B IV, LLC, Prestige Fund B V, LLC, Prestige Fund B VI, LLC, Prestige Fund B VII, LLC, Prestige Fund B BTM I, LLC, Prestige Fund A II, LLC, Prestige Fund A V, LLC, Prestige Fund A VI, LLC, Prestige Fund A VII, LLC, Prestige Fund D, LLC, Prestige Fund D III, LLC, Prestige Fund D IV, LLC, Prestige Fund D V, LLC, Prestige Fund D VI, LLC, Prestige Fund D BTM I, LLC, WF Velocity I, LLC, WF Velocity Fund IV, LLC, WF Velocity Fund V, LLC, WF Velocity Fund VI, LLC and WF Velocity Fund VII, LLC, Prestige Investment Group, LLC, Prestige Funds Management, LLC, Prestige Funds Management, II, LLC, Prestige Funds Management, III, LLC, WF Velocity Funds Management, LLC and any partner, agent, officer, professional, representative, employee or other person, and any other entity acting on its behalf.

5

G.    "Paramount" means Paramount Management Group, LLC.

H.    "Glorious" means GCC MSO Holdings including but not limited to the following: GCC NY Holdings, LLC, GCC MI Holdings, LLC, PERE, LLC, Tycoon Holdings LLC, GCC MI Acquisitions, LLC, Tycoon I RE, LLC, Choice Labs, LLC, Frank Managers Services, LLC, Premier Drive Tycoon 1, LLC GCC Management, LLC, Tycoon 1 operations, LLC, Lyrical LLC, GCC MA Holding, LLC, TSC Investment, LLC, TSC Holdings Group, LLC, TSC RE LLC, TSC Operations, LLC, 48 Industrial LLC, Glorious IL, LLC.

I.    "GCC Investment Holdings" means GCC Investment Holdings LLC and any and all of its members.

J.    "Heller Capital Group" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Capital Group.

K.    "Heller Investment Holdings" means any and all entities and individuals you understand to be owned by or have an affiliation with Heller Investment Holdings.

L.    "Project Catapult" means any and all entities and individuals you understand to have an affiliation with Project Catapult.

M.    Fund Manager ATM Operators" means any and all entities and individuals Fund Manager have chosen, hired, contracted or otherwise to operate Prestige ATMs it took over from Paramount including but limited to employees and contractor and any entities Fund Managers have used, contemplated to use, corresponded with or otherwise regarding operations of ATMs.

N.    "Private Investigators" means any and all entities and individuals Fund Manager, or others related to Fund Managers approval, have hired, contracted or otherwise to investigate Debtor, Paramount, Prestige, Heller Capital Group, Heller Investment Holding, GCC Investment Holdings, Glorious or Project Catapult.

6

O.    "Fund Managers" means William Poole, Buck Joffrey, Jerry Hostetter, Dave Zook, and any and all Fund of Fund Managers and any and all syndicators of Buck Joffrey and Dave Zook and their entities for Prestige.

P.    "Identify" means when used in reference to:

i.    A natural person -- his or her full name and present or last known address.

ii.    A company, corporation, association, joint venture, sole proprietorship, form, partnership, or any other business or legal entity not a natural person -- its full name now and at the time in question, its principal place of business now and at the time in questions, date of incorporation or jurisdictional status, description or type of entity now and at the time in question, date and place of formation, current jurisdictional status, and nature of business activities in which it is engaged or was engaged at the time in question.

iii.    A document -- its character (e.g., letter, memoranda, report, etc.), its title, date, author, addresses, all distributes, the number of pages, its subject matter, and identification of each person you have reason to believe may have knowledge of the contents thereof, its present location, the identification of its custodian, or if any such document was, but is no longer in existence or in your possession or subject to your control, the disposition made of it and the circumstances and date of such disposition.

iv.    An oral statement or communication:

(i)    The date and the place where uttered.

(ii)    The place where received.

(iii)    The substance thereof.

(iv)    The means or medium employed for transmission thereof.

7

(v)    The identification of each person to whom such statement or communication was made, each person who was present when such statement or communication was made, and each person who was present when such statement was received.

(vi)    Any other thing -- a description with sufficient particularity that such thing may thereafter be specified and recognized as such.

Q.    "You" refers to Jerry Hostetter, the individual to whom this Subpoena is directed. You shall also refer to any name which the party is known or has been known and each and every agent, representative or other persons acting on behalf of such party and/or any of its agents.

8

## SCHEDULE "A"

1.      Any and all Documents submitted in support of any proof(s) of claim Prestige filed in the above-captioned bankruptcy case.

2.      Any and all Documents referenced in or relied upon in connection with any and all of Prestige's proof(s) of claim.

3.      Any and all Communications or correspondence concerning the amount, nature, or basis of Prestige's proof(s) of claim.

4.      Any and all Documents reflecting each claim or judgment held by Prestige against the Debtor.

5.      Any and all Documents reflecting the Debtor's legal or equitable interest in Paramount.

6.      Any and all Documents corroborating Prestige's Motion for Order Confirming That It Is Not Stayed from Proceeding with Discovery and Civil Contempt Proceedings Pursuant to 11 U.S.C. § 362(B)(4) filed March 28, 2025, bearing ECF 158 ("Prestige's Stay Motion").

7.      Any and all Communications or correspondence regarding Prestige's Stay Motion, including communications with the Debtor and with Debtor's counsel.

8.      Any and all Documents evidencing Prestige domesticated any and all out-of-state judgments in the State of New Jersey.

9.      Any and all UCC-1 financing statements, lien filings, or other security instruments relating to any asserted judgment liens by Prestige against the Debtor.

9

10.     Any and all Documents showing the current balance the Debtor owes Prestige under such judgment(s), including any payment history, interest calculations, and ledger summaries.

11.     Any and all Documents related to efforts to collect on any debts owed by the Debtor, including demand letters, notices, or legal pleadings concerning *Prestige Fund A, LLC et al. v. Paramount Management Group, LLC*, Case No. CI-24-06012 (the "PA Action").

12.     Any and all Documents relating to and indicating what extent a recovery from the PA Action would impact the Debtor's estate, either directly or indirectly.

13.     Any and all Communications with third parties—including courts, parties to the action, or opposing counsel—regarding the applicability of 11 U.S.C. § 362's automatic stay on the PA Action.

14.     Any and all Documents evidencing or referencing any alter ego theory, veil-piercing allegations, or claims against the Debtor and Paramount are not distinct legal entities.

15.     Any and all Documents indicating Debtor's relation to Paramount.

16.     Any and all Documents relating to and arising out of Prestige's claims that the Debtor's actions constitute fraud in the inducement and fraudulent misrepresentations.

17.     All emails, voicemails, text, written, and verbal Communications by and amongst all Fund managers that directly or indirectly references the Debtor.

18.     All emails, voicemails, text, written, and verbal Communication by You or to You to/from anyone and everyone that directly or indirectly references the Debtor from January 1, 2021 through the present.

19.     All emails, voicemails, text, written, and verbal Communications by You or to You for any person or entity that directly or indirectly references Paramount, Prestige, Heller Capital

Group or Heller Investment Holdings or any affiliated entity with the Debtor from January 1, 2021 through the present.

20.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Glorious entities from January 1, 2021 through the present.

21.    All emails, voicemails, text, written, and verbal communication by You or to You any person or entity that directly or indirectly references GCC Investment Holdings, LLC from January 1, 2021 through the present

22.    All emails, voicemails, text, written, and verbal communication by You or to You for  any person or entity that directly or indirectly references Project Catapult, LLC from January 1, 2021 through the present.

23.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Fund Manager ATM Operators from January 1, 2021 through the present

24.    All emails, voicemails, text, written, and verbal communication by You or to You for any person or entity that directly or indirectly references Private Investigators from January 1, 2021 through the present

25.    All emails, voicemails, text, written, and verbal communication to by You or to You for any person that directly or indirectly references Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

11

26.    Any and all Documents relating to and arising out of any and all communications which reference the Debtor, Heller Capital Group, Heller Investment Holdings, Glorious, Prestige, Paramount, GCC Investment Holdings, Project Catapult from January 1, 2021 through the present.

27.    Any and all Documents relating to and arising out of any communications with Barry Rynearson, Robert Brandt, David Prill, Wes Lutz, David Breschi, Allan Carr, Will Powers, Matt Eby, Jack Barry, Bret Van Gordon, AJ Bos, Paul Parriera from January 1, 2021 through the present.

28.    Any and all Documents relating to and arising out of any communications with and amongst Fund Manager individually with each other or as a group of Fund Managers from January 1, 2021 through the present.

29.    Any and all Documents relating to and arising out of any communications with Fund Manager ATM Operators and Private Investigators from January 1, 2021 through the present.

30.    Any and all Documents, including bank statements, relating to and arising out of all compensation received from Prestige by You since 2020, by year, including, but not limited to expense reports, 1099s and K-1s and any form of compensation received from Prestige.

31.    Any and all Bank Statements, Credit Card Statements, Digital Cash Application Statements such as but not limited to venmo, paypal, cashapp in the name of You, or any entity owned by You from January 1, 2021 through the present.

32.    Any and all Documents relating to and arising out of any and all communications regarding Alden Place and its affiliated entities including but not limited to Cornwall Associates LP and Cornwall Associates, LLC.

33.    All emails, voicemails, text, written, and verbal communication by You or to You or any person or entity that directly or indirectly references Alden Place and its affiliated entities

12

including but not limited to Cornwall Associated LP and Cornwall Associates, LLC from January 1, 2021 through the present.

34.    Any and all Prestige or Paramount accounts (escrow accounts, legal accounts, bank account, etc.) associated with the takeover of Prestige and Paramount ATMs associated with, provide any and all revenues received since November 21, 2024 takeover.

35.    Accounting for every dollar of revenue generated from ATMs since November 21, 2024 (all inflows, all outflows, all payments to legal, and any type of revenue or expense needs to be defined and included).

36.    List of Acquisition partners and agents (i.e. First Regents, TNT, Mozika, etc)of Paramount including all emails, discussions, document, etc. related to any and all form of communication including settlement discussions or general communication with acquisition partners/agents.

13

# EXHIBIT G

**Sari B. Placona**

---

| | |
|---|---|
| **From:** | Marshall T. Kizner <mkizner@stark-stark.com> |
| **Sent:** | Monday, July 14, 2025 10:00 AM |
| **To:** | Sari B. Placona |
| **Cc:** | Joshua Voss; Joseph H. Lemkin |
| **Subject:** | Heller – Subpoenas |
| **Attachments:** | Letter to Marshall T. Kizner - enclosing revised subpoenas.pdf; Rule 2004 Subpoena re - Buck Joffrey 6-18-25.pdf |

Sari:

We briefly discussed the attached letter and subpoena by phone on June 26, 2025 but I do not believe we confirmed Debtor's position on the issue. Does Debtor take the position that the attached subpoena was inadvertently disclosed under RPC 4.4? If so, my client disagrees that the comment made by the Debtor in the subpoena is an attorney-client communication. If it is, Prestige believes the privilege was waived. If not, Prestige believes the crime fraud exception applies.

Also, if Debtor takes the position that the comment is privileged, send me a copy of the email wherein Debtor forwarded you the comment. That is particularly important because if third parties were copied on the email, privilege was waived.

**Please let me know no later than end of business tomorrow, July 15th**, if Debtor takes the position that the attached subpoena was inadvertently disclosed under RPC 4.4. If so, send the email referenced above for further review. If we can't work this out, we will need to seek judicial intervention. Of course, if you agree that the comment is not protected and are not seeking to claw it back, we will not need to seek judicial intervention.

If I do not hear back from you, I'll take the most conservative approach and assume that Debtor believes the document was inadvertently disclosed and privileged and will proceed accordingly.

Thank you,

---

**Marshall T. Kizner, Esq.**
*Shareholder*

t: 609.219.7449 | f: 609.895.7395
e: mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# EXHIBIT H

**Joshua H. Raymond**

| | |
|---|---|
| **From:** | Joshua H. Raymond |
| **Sent:** | Monday, July 14, 2025 6:20 PM |
| **To:** | Marshall T. Kizner; Joshua Voss; Joseph H. Lemkin |
| **Cc:** | Sari B. Placona; Anthony Sodono |
| **Subject:** | Heller - Inadvertent Disclosure of Privileged Material – Preservation of Attorney-Client Privilege |

Marshall,

I write concerning the disclosure of certain information which was transmitted in connection with, *In re Daryl Fred Heller*, Case No. 25-11354, and to formally assert that the Subpoena previously served on Buck Joffrey inadvertently contained a notation from our client, and such notation constitutes a communication subject to the attorney-client privilege and/or the work product doctrine.

To the extent any privileged material was inadvertently produced or disclosed, we assert that such disclosure does not constitute a waiver of the privilege or protections under New Jersey law, including but not limited to New Jersey Rule of Professional Conduct 4.4(b).

This Rule explicitly provides that a lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent must promptly notify the sender.

The privileged communication was set forth in a notation which indicates "Commented [DH1]" evidencing a comment from our client Daryl Heller. We have explained that the Subpoena served on Mr. Joffrey inadvertently contained a notation from our client to his counsel during the drafting stage of the Subpoena. It is reasonable for you to know that this comment is outside the language of the Subpoena and a communication from our client.

We request your cooperation in refraining from reviewing, copying, disseminating, or using the inadvertently disclosed information and in returning or destroying it in accordance with applicable rules and ethical obligations.

Moreover, we affirmatively state that the crime-fraud exception does not apply to the communication at issue. The privileged material does not concern any ongoing or intended criminal or fraudulent conduct, and no facts exist that would justify invocation of that narrow exception.

Please confirm in writing that you will take all necessary steps to preserve the privilege by returning or deleting the privileged material and that you will refrain from any further use of its contents. We appreciate your attention to this matter and your adherence to the applicable professional standards governing our respective conduct.

Should you have any questions or wish to discuss further, please do not hesitate to contact me or Sari.

Best regards,
Josh

# EXHIBIT I

## Joshua H. Raymond

| | |
|---|---|
| **From:** | Marshall T. Kizner <mkizner@stark-stark.com> |
| **Sent:** | Monday, July 14, 2025 6:32 PM |
| **To:** | Joshua H. Raymond |
| **Cc:** | Sari B. Placona; Anthony Sodono; Joshua Voss; Joseph H. Lemkin |
| **Subject:** | RE: Heller - Inadvertent Disclosure of Privileged Material – Preservation of Attorney-Client Privilege |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thanks. I understand your position, although Prestige disagrees. Please immediately send me a copy of the email wherein Debtor forwarded you the word document containing the comment. That is particularly important because if third parties were copied on the email, privilege was waived, regardless.

Thanks,

_____

**Marshall T. Kizner, Esq.**
*Shareholder*

**t:** 609.219.7449 | **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)

Website | Blog | Offices | Facebook | LinkedIn | Instagram | YouTube

 

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Sent:** Monday, July 14, 2025 6:20 PM
**To:** Marshall T. Kizner <mkizner@stark-stark.com>; Joshua Voss <jvoss@saxtonstump.com>; Joseph H. Lemkin <jlemkin@stark-stark.com>
**Cc:** Sari B. Placona <SPlacona@MSBNJ.COM>; Anthony Sodono <ASodono@MSBNJ.COM>
**Subject:** [EXTERNAL] Heller - Inadvertent Disclosure of Privileged Material – Preservation of Attorney-Client Privilege

Marshall,

I write concerning the disclosure of certain information which was transmitted in connection with, *In re Daryl Fred Heller*, Case No. 25-11354, and to formally assert that the Subpoena previously served on Buck Joffrey inadvertently contained a notation from our client, and such notation constitutes a communication subject to the attorney-client privilege and/or the work product doctrine.

1

# EXHIBIT J

**Joshua H. Raymond**

| | |
|---|---|
| **From:** | Joshua H. Raymond |
| **Sent:** | Monday, July 14, 2025 7:29 PM |
| **To:** | 'Marshall T. Kizner' |
| **Cc:** | Sari B. Placona; Anthony Sodono; Joshua Voss; Joseph H. Lemkin |
| **Subject:** | RE: Heller - Inadvertent Disclosure of Privileged Material – Preservation of Attorney-Client Privilege |

Marshall

The email from our client with the redlined changes is, in and of itself, protected from the attorney client privilege.
We will not provide you with email correspondence between us and our client.  If necessary we will provide this to the Court for an *in camera* review, if and when necessary.

Until such time, we have explained that this was an inadvertent disclosure pursuant to RPC 4.4.

**Joshua H. Raymond**
**McManimon, Scotland & Baumann, LLC**
**75 Livingston Avenue | 2nd Floor | Roseland, NJ 07068**
**Direct Dial: 973-721-5031**
**Email: JRaymond@MSBNJ.COM**
**Website**

**Connect with MS&B on Linkedin | Twitter | Instagram**

**From:** Marshall T. Kizner <mkizner@stark-stark.com>
**Sent:** Monday, July 14, 2025 6:32 PM
**To:** Joshua H. Raymond <JRaymond@MSBNJ.COM>
**Cc:** Sari B. Placona <SPlacona@MSBNJ.COM>; Anthony Sodono <ASodono@MSBNJ.COM>; Joshua Voss
<jvoss@saxtonstump.com>; Joseph H. Lemkin <jlemkin@stark-stark.com>
**Subject:** RE: Heller - Inadvertent Disclosure of Privileged Material – Preservation of Attorney-Client Privilege

Thanks. I understand your position, although Prestige disagrees. Please immediately send me a copy of the email wherein Debtor forwarded you the word document containing the comment. That is particularly important because if third parties were copied on the email, privilege was waived, regardless.

Thanks,

---

**Marshall T. Kizner, Esq.**
*Shareholder*
**t:** 609.219.7449 | **f:** 609.895.7395
**e:** mkizner@stark-stark.com
Assistant: Cara Conlon, 609.895.7396

Stark & Stark PC
100 American Metro Boulevard, Hamilton, NJ 08619 (Office)
P.O. Box 5315, Princeton, NJ 08543 (Mailing)