**MS&B** | McMANIMON · SCOTLAND · BAUMANN          427 Riverview Plaza, Trenton, NJ 08611  (609) 695-6070

**Sari B. Placona**
**Direct Dial:** (973) 721-5030
splacona@msbnj.com
35240-001

August 15, 2025

<u>Via ECF</u>
Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Camden, New Jersey 08101

   **Re:** **Daryl Fred Heller**
      **Ch. 11; Case No. 25-11354 (JNP)**

      **Debtor's Response to Notice of (I) Filing of Second Interim Report of**
      **Examiner, Edward A. Phillips and (II) Statement of General Legal Principles**
      **Regarding Alleged Ponzi Schemes [ECF 473]**

Dear Judge Poslusny:

   As Your Honor is aware, this firm represents Daryl Fred Heller, the Chapter 11 Debtor and
Debtor-in-Possession (the "Debtor"), in the above referenced matter. The Debtor, by and through
his counsel, McManimon, Scotland & Baumann, LLC, hereby submits this initial response to
Notice of (I) Filing of Second Interim Report of Examiner, Edward A. Phillips (the "Examiner")
(the "Second Examiner Report")[1] and (II) Statement of General Legal Principles Regarding
Alleged Ponzi Schemes (the "Examiner's Counsel's Statement").[2] ECF 473.  Notwithstanding this
filing, the Debtor is still reviewing the Second Examiner Report[3] and Examiner's Counsel's
Statement and intends to file a more formal response. The Debtor is gathering further information
and, upon preliminary review, refutes the findings in the Second Examiner Report.

   For abundance of clarity as it appears there continues to be a fundamental
misunderstanding of the business model and infrastructure by the Examiner in this report that
Prestige is an "investor" into Paramount/Affiliates which is both factually and legally inaccurate
and leads to misguided analysis and false assessments. We do recognize that Prestige Fund
Managers like to purport this myth. There is no "investment" into PMG/Affiliates (equity or
otherwise) as Prestige is simply customer of Paramount/Affiliates who purchased ATMs from
PMG/Affiliates with defined terms for management of ATMs, and accordingly they did NOT
invest into PMG/Affiliates.  The investment by the investors occurred into Prestige Funds which

---

[1] Undefined capitalized terms used herein shall have the same meaning as ascribed in the Second Examiner Report.
ECF 473.
[2] The Examiner's Counsel's Statement simply provides caselaw on Ponzi Schemes, without providing an opinion or
legal argument. <u>Id.</u>
[3] The Second Examiner's Report is forty (40) pages. <u>Id.</u>

Honorable Jerrold N. Poslusny, Jr.
August 15, 2025
Page 2 of 5

has fundamentally nothing to do with PMG/Affiliates who simply sold an ATM to Prestige Funds and Prestige Funds is having Paramount/Affiliates manage in exchange for payment over a defined period of time and then an option to buyback those ATMs for pennies on the dollar. Additionally, there were many ripcords and terminations options by Paramount/Affiliates that allowed for termination of the program prior to end of the management period. Regardless, we have responded to the report with the following commentary.

The Second Examiner's Report is materially deficient and misleading because it relies on an incomplete and arbitrarily narrow dataset, focusing exclusively on two (2) PMG bank accounts and a single internal profit center while disregarding the vast majority of revenue and profit centers associated with Prestige-owned ATMs.[4] This selective approach results in a distorted portrayal of the operations and financial performance of PMG and also excludes revenue from PMG owned entities as well as affiliate entities who were managing Prestige ATMs therefore completely misleading. Specifically, the Second Examiner's Report omits substantial revenue streams, including, but not limited to: (i) revenue and profit from ATM hardware sales amounting to hundreds of millions of dollars; (ii) revenues from PMG-owned entities whose transactions did not flow through the two (2) FNB accounts selected by the Examiner, despite the existence of additional FNB accounts where other revenue flowed; (iii) revenues from PMG-owned entities utilizing non-FNB banking relationships; and (iv) revenues from PMG affiliates, which, although under common ownership, in many cases were required to operate separately from PMG for regulatory compliance and therefore also not included in Examiner Report even they managed and operated Prestige ATMs. Collectively, these omissions exclude hundreds of millions of dollars of gross profit and during the time period of 2021 through 2023 (excluding 2024 which Examiner includes) the combined revenue is approximately $1.1 billion associated with Prestige-owned ATMs entities and if you were to add in 2024, it would be substantially higher. If you even take a smaller snapshot of the three entities referenced in Examiner Report (PMG, First Regents and Powerqwest) there is revenue in excess of $850 million and profits in excess of $75 million during that same 2021 through 2023 period which is supported and verified by tax returns and exemplifies how misleading the Examiner Report is.

Further, the Examiner did not take into account in his analysis the financial evidence available -- filed tax returns and consolidated financial statements -- for the entities commonly controlled by Paramount ownership group, however for regulatory or other reasons not running through PMG bank accounts or books which accurately reflect the true economics. For PMG alone (not including any affiliates) when all PMG profit centers revenues are considered, tax returns validate that from 2021 through 2023 there was more than $825 million in revenue and over $70 million in profit (net of Prestige payments). Inclusion of affiliate revenues takes revenue to over $1.1 billion, not including 2024 which would increase this number. Instead of reconciling to these verifiable records, the Examiner relied mostly on two (2) bank accounts and a single gross profit report for one PMG profit center, which even on its face acknowledges that it does not represent all entities or revenue streams.

---

[4] Although the Second Examiner Report refers to ATMs, the Debtor submits ATMs encapsulates ATM or BTM, which generally refers to kiosk. Id.

Honorable Jerrold N. Poslusny, Jr.
August 15, 2025
Page 3 of 5

It is particularly significant that PMG tax returns by themselves clearly demonstrate that they made all Prestige payments and still reported a profit over the last three (3) years not even considering the affiliates that were managing some of the ATMs. This is because those PMG tax returns reflect multiple entities and revenue streams that the Examiner entirely omitted from his analysis.

The Second Examiner's Report also mischaracterizes the nature of the business by failing to account for profits derived from ATM hardware sales, thereby implying that Prestige Funds either functioned as sales with no profit, or as loans or equity contributions rather than recognizing the legitimate profits associated with hardware product sales. Additionally, the Examiner's assertion that all relevant revenues would appear in two (2) PMG accounts is factually and legally incorrect. There is no requirement -- nor would it have been permissible under applicable banking and regulatory frameworks -- for all revenues to be centralized in those accounts. In fact, such centralization would have jeopardized and terminated many banking relationships and processing agreements, particularly in connection with certain merchant categories, such as cannabis-related and cryptocurrency related businesses.

Most critically, the Examiner applies an inconsistent and analytically unsound methodology by counting one-hundred percent (100%) of the Prestige Fund purchases of ATMs and payments to the Funds while excluding a substantial portion of the revenues and profits generated by the very ATMs those investments purchased. If revenues from certain entities and accounts are to be excluded, then the corresponding investments and payments must also be excluded, which would materially change this report. Anything less creates a false narrative that 'new money paid old money,' which is unsupported when the full scope of revenues and profits is properly considered. On a call held approximately twenty-four (24) hours prior to the release of the Second Examiner's Report, the Debtor even offered to help identify additional bank accounts that were part of the Prestige program with PMG and its Affiliates however not running through the FNB banks accounts, or in some cases not even through PMG books, for the reasons noted earlier which would reflect tens of millions of dollars in relevant revenue. These offers were disregarded without explanation as well as the vast majority of the 20 questions sent in advance and answered on call were not included in the Examiner Report. For one quick example, VCMG, which is another FNB bank account, was excluded even though Debtor clearly noted and showed Examiner that it was one of Paramount many acquisitions, held Prestige ATMs, and that revenue flowed through PMG tax returns.

Additionally, the Second Examiner's Report focus was limited to determining whether new investor funds were used to pay prior investors of which there are no investors as noted above and is a fundamental misunderstanding we have communicated to the Examiner. As justification for excluding revenues from many other PMG owned entities, or commonly owned PMG affiliates, the Examiner rationalized using two bank accounts and even excluded the profit generated from ATM hardware division of PMG on ATMs sold to Prestige Funds that resided in those accounts. This rationale is fundamentally flawed because ATMs sold to Prestige and Prestige-owned ATMs managed by affiliates generated substantial profits that were material to pay Prestige management payments. The Examiner met with Prestige employees (Jerry Hostetter and Matt Eby) five

Honorable Jerrold N. Poslusny, Jr.
August 15, 2025
Page 4 of 5

different times as indicated in the Second Examiner Report and only met with the Debtor two times. Interestingly, the Debtor and counsel met with the Examiner and his counsel on August 12, 2025, for two hours via zoom. One day after that meeting, the Examiner released a 608-page report. The Examiner clearly did not consider anything the Debtor advised him of, nor did he allow the Debtor to produce further documentation to substantiate his position. It appears the Examiner met with Prestige employees who do not have the ability to provide relevant insight into PMG and Affiliates given they had no access, inner knowledge or understanding of PMG and Affiliates. This demonstrates the Examiner's partiality and bias toward the Debtor. We asked the Examiner to share the report before it was filed so that the Debtor could clarify issues raised by the Examiner. The Examiner did not share the report.  The Examiner's refusal to consider additional facts or clarification, coupled with his selective reliance on incomplete data, constitutes a disregard for his fiduciary duty to provide the Court with a fair and accurate analysis.  We have now requested a meeting with the Examiner to discuss the report to discuss the "fundamental flaws" in the report.

While there are many fundamental flaws to the Examiner Report, not the least of which is that there are no investors into Paramount/Affiliates, the top three that distort reality are as follows:

1) Excludes approximately 20 bank accounts and revenue and focuses mainly on two bank accounts.  Most of the approximately 20 accounts he did not subpoena records therefore did not even have the bank statements in his possession that were associated with PMG entities and PMG Affiliated entities that were part of the Prestige Program thereby excluding hundreds of millions of revenues generated by PMG/Affiliates over analysis period;

2) Excludes the ATM hardware profit, or at a minimum portrays/assumes the ATM hardware sales to be breakeven thereby excluding hundreds of millions of gross profits over the analysis period. By making statements such as there was $161 million of revenue and $407 million of Prestige payments during that period is completely misleading and fails to acknowledge the hundreds of millions of revenue and profits from hardware sales retained in those accounts that was paying Prestige and therefore NOT using new funds (which examiner calls investors which is inaccurate) money to pay old funds  rather using profits from the hardware sales as well as revenue generated by PMG and the many affiliates not included the $161 million.  What stays or occurs in a bank account is typically different than how it gets accounted for at accounting level which is the only relevant item. While the Examiner myopically looking at two bank accounts for most of his analysis is in and of itself flawed, not acknowledging the $587 million of ATM sales and associated hundreds of millions of profits complexly undermines the integrity of Examiner Report; and

3) Excludes review and reconciliation back to a tax return for all the entities which is a fundamental requirement for any type of financial analysis. Rather, Examiner uses a couple isolated bank accounts that have no relevance or tie to the accounting of the businesses and do not reflect many of the entities. Not tracking to the tax returns of entities to understand the basic accounting of the entities and ATM program provides misleading outcomes.

Honorable Jerrold N. Poslusny, Jr.
August 15, 2025
Page 5 of 5

Accordingly, the Second Examiner's Report omits the majority of revenues generated under the Prestige ATM Program ignores tax returns and complete financial records and applies inconsistent standards that materially misrepresent the program's financial reality. We respectfully request that the Second Examiner's Report be revised to incorporate the accurate structure of program with Prestige, all relevant entities, accounts, and profit centers, or, alternatively, that the analysis be adjusted to exclude the corresponding purchases and payments associated with any revenues the Examiner omitted.

In summary, when you compile only PMG and the two of its smaller Affiliates referenced in the Examiner Report –First Regents and Powerqwest – and then also exclude all the other Affiliate entities that were also actually managing some Prestige owned ATMs therefore should be included, you still get approximately $875 million of revenue and approximately $80 million of profit during a shorter time period of 2021-2023 (excludes 2024 that Examiner included which would increase these numbers) which is quite disparate from the misleading reporting from the Examiner which carved out of certain selective data sets.  Given these numbers are pulled directly from tax returns, they include ALL revenue, ALL COGs, ALL SG&A and ALL Prestige Funds payment.  This is the factual and true reality and validates that isolating a couple bank accounts, which have no accounting function, grossly skews reality.  Had the examiner considered the tax returns it would have reflected the true accounting of entities and would have reflected the revenue that ran through its books. The myopic view of focusing on 2 of approximately 20 bank accounts creates inaccurate and completely misleading reporting and demonstrates errancy of this report.

The Debtor is considering hiring a forensic examiner and/or financial advisor to formally rebut the inconsistencies outlined above.

We look forward to meeting with the Examiner to discuss Report and to hear his response on how he intends to correct the Report based on the above.

Respectfully submitted,

*/s/ Sari B. Placona*

Sari B. Placona