| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| *Caption in Compliance with D.N.J. LBR 9004-2(c)*<br><br>Ciardi Ciardi & Astin<br>Albert A. Ciardi, III, Esquire<br>Daniel S. Siedman, Esquire<br>1905 Spruce Street,<br>Philadelphia, PA 19103<br>Telephone:  215-557-3550<br>Facsimile:  215-557-3551<br>aciardi@ciardilaw.com<br>dsiedman@ciardilaw.com | |
| *In re:*<br><br>Daryl Fred Heller<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11354 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF
FROM THE AUTOMATIC STAY TO PERMIT DEERFIELD CAPITAL, LLC
TO EXECUTE ITS PLEDGE AS TO HELLER INVESTMENT HOLDINGS, LLC
AND GCC INVESTMENT HOLDINGS LLC**

Deerfield Capital, LLC, by and through its counsel, Ciardi Ciardi & Astin respectfully submits this Memorandum of Law in Support of its Motion for Relief from the Automatic Stay to execute its pledge as to Heller Investment Holdings, LLC ("HIH") and GCC Investment Holdings, LLC[1] ("GCC") (the "Motion").

## INTRODUCTION

Deerfield Capital, LLC ("Deerfield") is a limited liability company formed and operating in the Commonwealth of Pennsylvania and is a secured creditor of the Debtor, Daryl Heller (the "Debtor"). Prior to the Petition Date, Deerfield filed and perfected UCC-1 statements against the Debtor, Heller Capital Group and HIH. True and correct copies of the UCC-1 Statements are

---

[1] GCC Investment Holdings LLC is owned by HIH, and is a holding company that holds assets, such as various real estate assets and operating assets in the cannabis industry.

#124983040v1

attached as **Exhibit C** to the Certification of Eric Warfel (the "Certification"). Deerfield is secured as to Debtor's interest in HIH and Heller Capital Group, LLC. On or about April 8, 2025, Deerfield filed a secured claim in the amount of $9,150,367.12. A true and correct copy of the Proof of Claim is attached as **Exhibit D** to the Certification. The Proof of Claim is based upon a judgment entered in the Court of Common Pleas of Lancaster County on December 5, 2024 at Case No. CI-24-08740. *See* **Exhibit D** to the Certification.

The Debtor owns an interest in Heller Investment Holdings, LLC. All of the Debtor's interests are pledged to Deerfield, as well as all of HIH"s interest in GCC Investment Holdings LLC. Heller Investment Holdings LLC invests in Cannabis related assets which cannot be administered in this Court. There is a receiver appointed in the state court over the operating entities of GCC Investment Holdings LLC. According to the receiver, in excess of $80,000,000 is necessary to pay the creditors of the operating entities before any money would flow to GCC Investment Holdings LLC. In addition, Heller Investment Holdings has creditors, including Deerfield, which must be paid before any funds flow to Debtor. Upon information and belief, Heller Investment Holdings has unsecured claims with Deerfield and Silverview.

The other members of GCC Investment Holdings LLC have allegedly dispossessed, diluted or seized the interests of Heller Investment Holdings LLC in GCC Investment Holdings and the Debtor is without funds to protect his interests. Heller Investment Holdings LLC is not in bankruptcy and, therefore, Deerfield has the right to execute on its pledge of the GCC Investment Holdings LLC interests but held off pending the proposed settlement.

Deerfield attempted to enter into a settlement with the Debtor with regards to its Pledge. On or about May 20, 2025, the Debtor filed a Motion to Approve Compromise or Settlement under Rule 9019 with regards to Deerfield (the "Deerfield 9019 Motion"). *See* D.N. 258. As part of the

2

Deerfield 9019 Motion, the Debtor sought to resolve the claims and litigation involving Deerfield and the Debtor, including, but not limited to (i) the Claim and judgments held by Deerfield against the Debtor, (ii) Deerfield's asserted entitlements to the net sales proceeds of the Beach House, and (iii) to address Deerfield's rights regarding its claims against HCG and HIG. The specific details of the settlement between Deerfield and the Debtor were memorialized in a term sheet (the "Term Sheet"), which is attached as **Exhibit E** to the Certification. The Term Sheet was conditioned upon approval of the 9019 Motion. As of the date of this Motion, the Debtor has yet to obtain approval of the Term Sheet. Several of the Debtor's creditors have objected to the proposed settlement, as well as the proposed settlement with Orrstown Bank.

## BASIS FOR RELIEF REQUESTED

Deerfield is entitled to relief from the Automatic Stay. Bankruptcy Code section 362(d) provides that on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay for cause. 11 U.S.C.§ 362(d)(1).

Because section 362(d)(1) does not define the term "cause," courts are left to consider what constitutes cause based on the totality of the circumstances in each particular case. *In re Heine*, 2022 U.S. App. LEXIS 7759, at *6 (3d Cir. Jan. 12, 2022) (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). The Third Circuit accords wide latitude to a bankruptcy court in determining whether to grant relief from the automatic stay. *Id.* (citing *In re Myers*, 491 F.3d 120, 130 (3d Cir. 2007)). The Third Circuit has expressly noted that the legislative history of section 362(d)(1) provides: "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Wilson*, 116 F.3d at 91 (quoting S. Rep. No. 95-989 at 50 (1978),

*reprinted in* 1978 U.S.C.C.A.N 5787, 5836).

With this principle in mind, the Third Circuit has repeatedly recognized that relief from the automatic stay is appropriate to permit a proceeding to continue in another court. *See, e.g., Heine*, 2022 U.S. App. LEXIS 7759, at *2, 5-7 (holding that bankruptcy court did not abuse its discretion when it granted relief from the automatic stay to allow movant to continue to litigate ongoing state court action against debtor where "there had already been extensive proceedings" in the action at the time the debtor filed petition and the state court had already resolved certain issues in the action); *Boltz-Rubinstein v. Berman*, 2011 U.S. App. LEXIS 22460, at *1-2 (3d Cir. Nov. 3, 2011) (affirming district court decision that affirmed bankruptcy court decision granting creditor relief from automatic stay to pursue litigation against debtor in Washington district court, where district court had found that parties had made requests for a jury trial; the Washington action was "progressing"; the record supported the bankruptcy court's concern that the debtors' bankruptcy filing was motivated in part by an interest in shifting the forum from Washington to Pennsylvania, where the debtors had filed bankruptcy; and the debtor would not suffer any prejudice if relief was granted because the movant could move to withdraw the reference and assert its right to a jury trial in the district court (*citing Boltz-Rubenstein v. McNaul Ebel Nawrot & Helgren, PLLC*, 2011 U.S. Dist. LEXIS 156376, at *1 n.1 (E.D. Pa. Feb. 24, 2011))); *Wilson*, 116 F.3d at 90-91 (reversing and remanding to district court for entry of order directing bankruptcy court to lift automatic stay to allow appellant to proceed with a pending appeal in state court action against debtor); *In re Brown*, 951 F.2d 564, 565-66, 570 (3d Cir. 1991) (citing opinions in which other circuit courts had affirmed orders lifting the automatic stay to permit litigation of a dispute in state court; and holding that bankruptcy court should permit pending state court proceeding to continue on grounds that the state court was familiar with the background of the case, and therefore, "allowing the

bankruptcy judge to step in at this point would result in duplication of effort and added expense to the parties"; there was no reason why the state court, in making the necessary determinations, would not be competent and impartial; there was "no cognizable prejudice" to the debtor in permitting the state court proceeding to proceed to conclusion in the state court; and court could not "overlook the impact of the flood of litigation pouring in on the bankruptcy courts, a development that requires that they carefully husband their resources" (*citing In re Holtkamp*, 669 F.2d 505, 508-09 (7th Cir. 1982); *In re Olmstead*, 608 F.2d 1365, 1367-68 (10th Cir. 1979))).

In assessing whether cause exists, courts consider whether (i) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (ii) the hardship to the movant by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the creditor has a probability of prevailing on the merits. *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Int'l Bus. Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)).

The legislative history of section 362(d) indicates that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." *Id.* (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)). In fact, the mere existence of a more appropriate forum than the bankruptcy court constitutes cause for relief under section 362(d). *Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995).

Other courts consider a variety of factors, including: 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4)

whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms. *In re Abeinsa Holding, Inc.*, 2016 Bankr. LEXIS 3641, at *8-9 (Bankr. D. Del. Oct. 6, 2016) (citing *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007)). These factors all also weigh in favor of Deerfield.

Under section 362(g), in any hearing concerning relief from the automatic stay, the party opposing relief has the burden of proof on all issues other than the debtor's equity in the property. 11 U.S.C. § 362(g); *In re Johnson*, 196 Fed. App'x 112, 114 (3d Cir. Aug. 15, 2006). According to some courts, the movant bears the initial burden to establish a *prima facie* case of cause and the debtor must then rebut the movant's case. *Rexene*, 141 B.R. at 577. According to other courts, when the debtor's equity is not at issue, it is not the movant's responsibility to show that the debtor would not be harmed by stay relief; instead, the debtor bears the burden of resisting stay relief. *See, e.g., In re Abeinsa Holding, Inc.*, 2016 Bankr. LEXIS 3641, at *7-8 (Bankr. D. Del. Oct. 6, 2016).

In *Rexene*, the Delaware Bankruptcy Court granted relief from the automatic stay to permit the movants to prosecute an action against the debtors in a Texas district court. *Id.* at 575. In addressing the first factor of the analysis, the court found that no great prejudice to the

debtors would result from lifting the stay because discovery in the action was nearly complete; the movants sought only to liquidate, and not implement, their claim; and the longer the trial was delayed, the more burdensome it would be for the parties to prepare for trial. *Id.* at 577.

In addressing the second factor, the court found that the equities greatly favored the movants because the hardship to the movants would be considerable if relief were denied, whereas the prejudice to the debtors would be very slight, if any, were relief were granted. *Id.* The court noted that the attorneys, witnesses, documents, and parties were located in Texas, and thus, the movants would suffer an added logistical burden if they were forced to litigate in Delaware. *Id.* Thus, the court found, the added expense of moving the action to Delaware was unnecessary. *Id.*

Next, observing that "[o]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources," the court found that the record indicated that the lawsuit would come to trial quickly in Texas and that if the lawsuit were moved to Delaware, it was not even clear whether it would go to trial in the bankruptcy court or the district court. *Id.* (*quoting Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 249 (D. Colo. 1990)).

The court found further that duplicative litigation would impose a burden on not only the movants, but also the courts. *Id.* The court noted that judicial economy requires a prompt resolution in a single forum and with the same judge who was originally assigned to the case. *Id.* "This Court is of the opinion that to begin this litigation anew in this bankruptcy court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources." *Id.* (*quoting In re Murray Indus., Inc.*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990)).

Finally, in addressing the third prong, the court observed that the required showing for probability of success on the merits is "very slight." *Id.* at 578 (*citing Peterson*, 116 B.R. at 250). The court noted: "Only strong defenses to state court proceedings can prevent a bankruptcy

court from granting relief from the stay in cases where, as here, we believe that the decision-making process should be relegated to bodies other than this court." *Id.* (*quoting Fonseca v. Phila. Housing Auth. (In re Fonseca)*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990)). The court found the required slight showing "easily met" because the district court had already denied the debtors' motion for summary judgment in the action, and concluded, after an analysis of the facts and equitable considerations, that relief from the automatic stay was justified. *Id.*

The Delaware Bankruptcy Court has not hesitated in other cases to grant relief from the automatic stay to allow parties to continue or even initiate litigation in another court. *See, e.g., Abeinsa*, 2016 Bankr. LEXIS 3641, at *6-14 (granting motion for relief from automatic stay to allow movant to initiate litigation for breach of contract against debtors in Oregon district court because debtors had failed to show that litigation would prejudice interests of creditor body, where any concerns about effect of stay relief were purely speculative; the potential hardship to movant outweighed the hardship to debtors, where court was cognizant of movant's misgivings that debtors were using the stay offensively to force their choice of forum, and district court, having already ruled on a related matter involving the parties, was already familiar with their dispute and best positioned to take up the matter; and movant had sufficient likelihood of success on merits); *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 126-29 (Bankr. D. Del. 2009) (granting motion for relief from automatic stay to allow movant to proceed with California district court action against debtors where although bankruptcy courts are routinely called upon to interpret and apply non-bankruptcy law, including contracts like the one involved at issue, debtors had indicated a willingness, and indeed a preference, to resolve the issue promptly, and thus, debtors would not suffer great prejudice if stay were lifted and the action moved forward; the action would not be heard in both Delaware and California, and thus,

8

debtors would not have to litigate the dispute on two fronts and thereby suffer prejudice, and in fact, any such duplicate proceedings would cause a waste of judicial resources; debtors would not suffer prejudice if the matter, which involved a contract interpretation dispute, were heard by district court; debtors, having a principal place of business in Illinois, would have to travel whether the action was heard in Delaware or California; many of the facts underlying the dispute occurred in California, and hence, although debtors' central management and business operations were not located in California, debtors would not suffer any material hardship if they litigated the matter in California district court as compared to economic and strategic hardship that movant would suffer if the stay was not lifted and the matter was litigated in bankruptcy court; and movant submitted sufficient exhibits to support a slight showing of probability of success on the merits); *Save Power Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 718-19 (Bankr. D. Del. 1996) (granting motion for relief from automatic stay to allow pending Texas district court to continue breach of contract action against debtors where although there was no evidence that the hardship to movants considerably outweighed the hardship to debtors, the court found that no prejudice would result from continuation of the action; the district court had already made a judicial finding that debtor had not shown a substantial likelihood of success on the merits, and thus, movants had at least a probability of prevailing on the merits; debtor had invested significant human resources and legal fees in prosecuting the Texas action to date, and thus, common sense suggested that the investments would be best protected by allowing the Texas action to proceed; district court judge had already heard issued a 15 page decision, and thus, "advanced significantly along the judicial learning curve"; a pre-trial schedule indicated a timely adjudication of the Texas action could be effected; a pending adversary action between the parties was subject to a motion to withdraw

reference and a related motion for a determination of the core nature of the proceeding, and these motions would only incur further expense and delay for the parties, and for district court judge addressing the reference issue, and thus, judicial efficiency also argued strongly in favor of lifting the stay; and in its briefing, debtor had not offered any arguments why cause had not been shown).

Likewise, here, insofar as it bears the burden of making a *prima facie* case under section 362(d), Deerfield easily satisfies the requirements for showing cause for relief from the automatic stay. First, for a host of reasons, no prejudice, great or otherwise, to the Debtor will result from granting relief from the automatic stay.

The Debtor executed the Pledge Agreement. Deerfield obtained a judgment against the Debtor and HIH prior to bankruptcy filing. HIH is not in bankruptcy and, therefore, the only relief that is being sought is to provide notice regarding the Debtor's alleged interest in HIH. Prior to the Petition Date, Deerfield filed and perfected UCC-1 statements against the Debtor, Heller Capital Group and HIH. True and correct copies of the UCC-1 Statements are attached as **Exhibit C** to the Certification. Deerfield is secured as to Debtor's interest in HIH and Heller Capital Group, LLC. On or about April 8, 2025, Deerfield filed a secured claim in the amount of $9,150,367.12. *See* **Exhibit D** to the Certification. The Proof of Claim is based upon a judgment entered in the Court of Common Pleas of Lancaster County on December 5, 2024 at Case No. CI-24-08740. *See* **Exhibit D**.

The Movant attempted to settle its claims with the Debtor to permit the Debtor to use some of funds obtained from HIH for its plan of reorganization. The Movant's judgments are of record and not subject to attack in this Court under the *Rooker-Feldman* doctrine. The Debtor is unable to obtain approval of the 9019 Motion and, therefore, Deerfield has decided to seek to exercise its rights under the Pledge Agreement.

Other than Orrstown and Deerfield, no creditor of the Debtor has demonstrated any willingness to sit with the Debtor and formulate a Plan or a resolution. The continued fighting is jeopardizing the collateral of Deerfield. Heller Investment Holdings LLC invests in Cannabis related assets which cannot be administered in this Court.

There is a receiver appointed in the state court over the operating entities of GCC Investment Holdings LLC. According to the receiver, in excess of $80,000,000 is necessary to pay the creditors of the operating entities before any money would flow to GCC Investment Holdings LLC. In addition, Heller Investment Holdings has creditors, including Deerfield, which must be paid before any funds flow to Debtor. Upon information and belief, Heller Investment Holdings has unsecured claims with Deerfield and Silverview. The other members of GCC Investment Holdings LLC have allegedly dispossessed, diluted or seized the interests of Heller Investment Holdings LLC in GCC Investment Holdings and the Debtor is without funds to protect his interests.

Heller Investment Holdings LLC is not in bankruptcy and, therefore, Deerfield has the right to execute on its pledge of the GCC Investment Holdings LLC interests but held off pending the proposed settlement. Heller Investment Holdings LLC has three additional cannabis investments which are currently languishing. Deerfield does not desire to wait while the remaining creditors of the Debtor fiddle and watch the assets that could be used to fund a plan dissipate.

Deerfield avers that the value of Heller Investment Holdings is less than the amount of the debt owed to Deerfield and the Debtor is unable to formulate a plan of reorganization. While Deerfield remains willing to see the settlement proposal through to a hearing on approval, Deerfield will not wait beyond that date and, if the settlement is not approved, is requesting relief to execute on its pledge of the Heller Investment Holdings membership interests.

To be clear, Deerfield does not need relief from the stay to execute on its pledge of GCC Investment Holdings LLC. Deerfield would then be able to preserve its collateral and engage with the receiver of the Glorious entities, the other members of the GCC Investment Holdings LLC and the co-owners of the entities in which Heller Investment Holdings LLC has an interest. Absent approval of the settlement agreement, the Debtor is unable to provide adequate protection of Deerfield's secured interests. The intransigence of the creditor body is proof that a feasible plan in a reasonable time is not possible.

Therefore, Deerfield seeks relief from the automatic stay to exercise its rights under the Pledge Agreement as to HIH. Relief from the stay is warranted to allow Movant to exercise its rights as to HIH and GCC.

WHEREFORE, Deerfield respectfully requests that the Court (a) grant relief from the automatic stay; and (b) for such other and further relief as is just, necessary or appropriate.

**Ciardi Ciardi & Astin**

By: */s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire

Attorneys for Deerfield Capital, LLC

Dated: August 22, 2025