# TERM SHEET SETTLEMENT

## DARYL HELLER, HELLER CAPITAL GROUP, HELLER INVESTMENT HOLDINGS AND DEERFIELD CAPITAL

**PARTIES:**
1) Heller Capital Group, LLC ("HCG")
2) Heller Investment Holdings LLC ('HIH")
3) Daryl Heller ("Heller")
4) Deerfield Capital, LLC ("Deerfield")

**BACKGROUND:**
1) On or about April 11, 2024, HCG made, executed and delivered to Deerfield a Promissory Note evidencing HCG's indebtedness and obligations to Deerfield in the face amount of $5,900,000 (the "Note").
2) Heller provided a Membership Pledge Agreement to Deerfield in HIH and GCC Investment Holdings LLC.
3) Deerfield filed UCC1s on each of Heller, HCG and HIH.
4) HIH issued 15% of its membership interests directly to Deerfield as part of forbearance agreements executed prior to the Petition Date.
5) Pursuant to various events of default Deerfield confessed judgment against Judgment Debtors, for the total amount of $7,916,938.92 and reasonable attorney's fees in the amount of $791,693.89, for a total of $8,708,632.81, plus interest and costs.
6) The following amounts are immediately due and payable by Heller, HCG ad HIH in connection with the Note and Fifth Forbearance Agreement:
   a. Principal as of November 21, 2024         $ 7,916,938.92
   b. Attorney's Fees (10% Commission)          $    791,693.89
   c. Total                                     $ 8,916,414.44 (the "Deerfield Claim"). Interest will accrue until the Deerfield Claim is paid in full. For so long as there is no default hereunder and after approval of the Settlement Agreement, Interest will accrue at 15% however will drop to 12% when $6.5M of claim is paid.

**TERMS:**
1) Heller, HIH and HCG agree and confirm that as of the Petition Date, the amount of the Deerfield Claim is owed for principal, interest, and attorneys' fees which amount will increase by actual fees incurred and interest at the default rate until paid in full.
2) There are no defenses or counterclaims to Deerfield's liens and claims, however, Deerfield agrees that there will be no lien on the proceeds of the NJ Sea Isle real property.
3) Heller confirms that Deerfield owns 15% of HIH and has a valid but unexercised pledge of the remaining 85% and a valid but unexercised pledge of GCC Investment Holdings LLC.

4) Heller agrees that there are no defenses to the exercise of the pledge on Heller's interest in HIH, other than the pending bankruptcy stay and there are no defenses to the exercise of the pledge on GCC Investment Holdings.
5) Heller would like to use a portion of his interest in HIH to fund his plan of reorganization and has asked that Deerfield forbear from executing the pledge.
6) The parties agree that Deerfield will receive an additional 10% interest in HIH free and clear of liens ("Additional HIH Interest") and release its pledge on up to 49% of Heller's remaining interests in HIH which Heller can use to fund a Plan. The remaining interests in HIH owned by Heller shall remain subject to the pledge currently held by Deerfield. So long as there is no default on the terms of the agreement, Deerfield shall forbear from exercising its pledge on the remaining interests own by Heller. The interests provided to creditors under a Plan shall be subject to an operating agreement prohibiting dilution of Deerfield without consent and providing tag along and veto/oversight rights and the shares provided to any creditors are no greater than the rights provided to Deerfield. The parties shall all execute an Amended Operating Agreement which shall address any succession issues if Heller can no longer manage the business.
7) Heller agrees that he will not contest nor have HIH contest the exercise by Deerfield of its pledge of the interests of GCC Investment Holdings which exercise shall not effect or diminish the rights and claims of Deerfield against Heller, HIH, HCG or any other person or entity. Deerfield agrees that upon payment in full of the Deerfield Claim, the GCC Investment Holdings member interests will be returned by Deerfield to Heller and/or HIH.
8) The parties agree that Deerfield will return 5% of the Additional HIH Interest to HIH upon Deerfield Claim being paid in full after which point Deerfield will own 20% interest in HIH.
9) HIH will pledge as the collateral to Deerfield, free and clear of all other clams, the three notes which HIH has from Glorious up to $8,000,000 (unless Deerfield Claim is already paid in full). Deerfield must be provided all Needham Loan documents and subordination agreements prior to execution of final settlement agreement. As additional collateral to secure payment of the Deerfield Claim, HIH will pledge the three notes up to $8,000,000 which will be evidenced by a pledge agreement to be executed upon execution of a settlement agreement, may file an additional UCC, and take such other steps to perfect and confirm its lien and security interest in all three Notes. Deerfield agrees that upon payment in full of the Deerfield Claim, the three Notes will be returned by Deerfield to HIH unless paid in whole or part to Deerfield, however if paid in part to Deerfield any excess amount to HIH and any unpaid notes to HIH
10) HIH shall pay Deerfield $15,000/month commencing on the first of each month with the first payment commencing 30 days from court approval of the agreement.
11) HIH will distribute dividends or distributions pro-rata to members of all proceeds received from free cash flow and liquidity events. The payments pursuant to the Deerfield Claim will not affect Deerfield's right to receive distributions as a member of HIH but distribution on the Additional HIH Interest will be used to pay Deerfield Claim. Any distribution made on the initial Deerfield 15% HIH Interest shall not be applied to the Deerfield Claim.
12) Deerfield agrees to a joint defense agreement with HIH to assist HIH in litigation with GCC Investment Holdings and GCC MSO and other individual parties regarding the alleged seizure of HIH's interest in GCC Investment Holdings and the entities owned by GCC MSO.

Deerfield's legal fees under the joint defense can be accrued on HIH balance sheet and paid with FCF at a time to be determined until the Deerfield Claim is paid in full. Heller or parties connected to him shall provide all information requested by Deerfield to diligence this claim. Heller will be provided with status updates on a continual basis at the discretion of Deerfield.

13) Deerfield is an interested party in claims by HIH and GCC Investment Holdings in all claims against the other members of GCC MSO, the Receiver of Glorious Cannabis and all entities in the HIH portfolio.

14) HCG agrees to file a liquidating Chapter 11 bankruptcy petition in New Jersey within 30 days of execution of this Term Sheet in exchange for the support of Deerfield in a Plan of Reorganization. The settlement agreement must be filed within five (5) days of execution of this Term Sheet. HCG agrees that Deerfield's security interest in HCG shall be treated as follows:
    a. Cohn Reznick shall be appointed as the liquidating agent in the Chapter 11 Plan of HCG to be filed with the Petition to liquidate the assets of HCG for the benefit of the creditors of HCG.
    b. Deerfield shall receive 25 % of each portfolio company liquidation and 25% recovery from PAAS/Green Cabbage up to 5 million dollars as a secured creditor of HCG until the Deerfield Claim is paid in full, subject to senior liens ahead of Deerfield.

15) <u>Payment on the Deerfield Claim.</u>
    a. Deerfield shall receive $350,000 from the sale proceeds of the NJ Sea Isle Home upon court approval and in exchange for the partial release of the pledge of HIH referenced in paragraph 6 above;
    b. Deerfield shall receive $300,000 from Accordo upon sale of real property owned by Accordo; and
    c. In the event Heller is able to sell HIH or HCG assets on or before August 31, 2025, Heller shall pay $5,000,000 in full satisfaction of the Deerfield Claim.

16) Upon approval of a settlement agreement/plan support agreement and the executed ancillary documents, HCH, HIH, Heller and Deerfield shall execute a tolling agreement which shall toll the Statute of Limitations on all claims against Charlene Heller, Ethan Heller, Taite Heller, Accordo, L.P., Brigantine Group, Inc, and Brookfield L.P. Upon receipt of a total of $2,000,000 by December 31, 2025, from the payments in 15(a), 15(b) and 15(c) only, Deerfield will release its claims against Charlene Heller, Ethan Heller, Taite Heller, Accordo, L.P., Brigantine Group, Inc, and Brookfield L.P. No funds received by Deerfield from , GCC Investment or the claims, if any, against Gold, Getter or Madison shall count towards this target. If payment is not made by December 31, 2025, this does not constitute a default under this Term Sheet.

17) Expedited due diligence of the entities and management of to occur while settlement agreement pending.

18) As part of signing this term sheet, Deerfield agrees to suspend all existing actions and potential claims until a global settlement agreement is signed and approved by the Bankruptcy Court in New Jersey. Upon execution of the global settlement agreement, Deerfield continues to suspend all existing actions and potential claims.

19) Defaults.  The following are self-executing Events of Default which result in the immediate termination of this Term Sheet:
    a. The failure of HCG to file its Chapter 11 within 30 days of execution of this Term Sheet;
    b. The failure of HCG to retain Cohn Reznick as Liquidating Agent and file a Plan of Liquidation within 45 days of this Term Sheet;

    c. The execution of a Settlement Agreement within 5 days of execution of the term Sheet and approval of that Settlement Agreement within 30 days thereafter subject to the Court's calendar and any opposition. If there is any filed opposition to approval of the proposed Settlement Agreement, that timing shall not be construed as a default by Heller.  Approval of the Settlement Agreement shall not exceed seventy-five (75) days from execution of the Term Sheet unless consented to by the parties to extend such time.
    d. HCG or Heller propose or confirm a Plan which is materially different from the treatment set forth in this Term Sheet or in an approved Settlement Agreement.
    e. The failure to make any payment called for in this agreement in the time period required by this agreement. If payments in paragraph 15 b. or c and 16 are not received, that is not considered a default.
    f. The failure to obtain the approval of the terms contained in this term sheet.
    g. The failure to make the payment in 15a or obtain its approval, the failure to make any of the payments in 10, the failure to deliver or obtain court approval of any of the additional collateral to be provided herein or to perform any of the material provisions herein is an Event of Default.

20) Deerfield further agrees to the following:
    a. A stand-still of all claims, litigation, discovery, against Charlene, Ethan, Taite, Accordo, Brigantine, and Brookfield, unless there is a default under Term Sheet or Settlement Agreement. Deerfield also provides a release to Taite upon approval of a Settlement Agreement by the Bankruptcy Court and payment of the NJ Sale proceeds in the amount of $350,000, however, should there be a default under this Term Sheet or the Settlement Agreement, the release executed in favor of Taite shall be terminated as null and void.
    b. The status quo order [D.I. ____] shall remain in effect until confirmation of Heller's Plan.  Post confirmation Heller will provide Deerfield protections similar to the status quo order until $2,000,000 is received from the 15(a) (b) and (c) payments (Deerfield recoveries from GCC Investment and lawsuits against Gold Gaeta an Madison are excluded), and then until Deerfield receives $5,000,000, Deerfield shall receive notice of all sales and purchases over $150,000 which shall provide at least 30 days notice . However if the $2,000,000 is received by December 31, 2025, the post confirmation status quo provisions shall expire.
    c. Upon execution of this Term Sheet, Deerfield will withdraw all the current subpoenas without prejudice
    d. Full support and voting in favor of Heller and HCG's Plans.

  e. That upon signing this term sheet, Deerfield will contact the Examiner's counsel and ask him to stand down as Deerfield has agreement in place for settlement.

  f. As the movant and along with Heller counsel, Deerfield will file a motion to remove the Examiner with the court upon three (3) days of execution of the term sheet so as to be heard at the same time as the motion to approve the settlement agreement with Deerfield.

  g. Deerfield will agree to discuss a resolution of all claims with all creditors of Heller, HIH, and HCG.

21) Heller agrees to provide all emails, Communications or documents not already provided relating or with Joel Getter, Gold Capital or Madison Capital from the period 1/1/24 to 4/30/24 and by approval of the settlement agreement all communications and emails with the foregoing from 1/1/24 to 9/30/24 within seventy-two (72) hours of execution of this Term Sheet.

Signed by: Daryl Heller
*Daryl Heller*
_____

Signed by: Daryl Heller
Heller Capital Group, LLC
*Daryl Heller*
_____

Signed by: Daryl Heller
Heller Investment Holdings, LLC
*Daryl Heller*
_____

Signed by:
Deerfield Capital, LLC
_____