# APPENDIX A

### DEFINITIONS

1. Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

2. ATM means automated teller machine (or other kiosk) as that term is used in the Second Interim Report or as used in the AUGUST 15 LETTER or the AUGUST 26 LETTER, as applicable.

3. AUGUST 15 LETTER means the letter filed with the court by Debtor's counsel on August 15, 2025 [Docket No. 481].

4. AUGUST 26 LETTER means the letter filed with the court by Debtor's counsel on August 26, 2025 [Docket No. 517].

5. CHAPTER 11 CASE means bankruptcy proceeding *In re Daryl Fred Heller*, Case No. 25-11354-JNP pending before the Bankruptcy Court for the District of New Jersey.

6. COMMUNICATION(S) means any written or oral correspondence, contact, discussion, or exchange, including, without limitation, documents, writings, notes, oral conversations, conversations or discussions by telephone or by computer, or other exchange of information in any form as well as any notes or recordings thereof. Both terms, "Communication" and "Communications," include all "Documents" as defined herein.

7. The terms CONCERN or CONCERNING shall include, together with their full meaning, containing, constituting, showing, relating to, or referring to, in any way, directly or indirectly, and are meant to include, among other things, the DOCUMENT or COMMUNICATION itself and any underlying or supporting DOCUMENTS or

3

COMMUNICATIONS, whether now or previously attached or appended to or used in the preparation of the DOCUMENT or COMMUNICATION.

8. DEBTOR means Daryl Fred Heller.

9. DOCUMENT(S) means original and all copies, unless identical, regardless of origin or location, of written, recorded and graphic matter, however produced or reproduced, formal or informal, whether for internal or external use, including without limitation, the following: emails, text messages, instant messages, voicemails, correspondence, letters, memoranda, notes, diaries, calendars, reports, contracts, agreements, directives, instructions, court papers, lists of persons or things, blueprints, sketches, graphic representations, maps, books, pamphlets, canceled checks, mechanical and electrical sound recordings, charts, catalogs, tapes, indices, data sheets, statistical tables and diagrams, memoranda or records of telephone or personal conversations or conferences, inter-office communications, electronic data processing inputs and memories of all kinds, including tapes and discs, active files, duplicate files, back-up files, printouts and electronic mail messages including active and deleted data. The term specifically includes any drafts, whether or not used, of the foregoing, and any altered or annotated copies of the foregoing.

10. EXAMINER means Edward A. Phillips in his capacity as examiner.

11. FIRST INTERIM REPORT means the *First Interim Report of Examiner, Edward A. Phillips (Regarding Multiple Sales of the Same Automatic Teller Machines to the Same or Multiple Purchasers)* filed by the Examiner on June 9, 2025 [Docket No. 329].

12. FNB means First National Bank.

13. FUNDS means Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige

Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC.

14. PMG means Paramount Management Group, LLC.

15. SECOND INTERIM REPORT means the *Second Interim Report of Examiner, Edward A. Phillips (Regarding Ponzi Allegation)* filed by the Examiner on August 13, 2025 [Docket No. 473-1].

16. TID means the terminal identification number of an ATM.

17. YOU OR YOUR means Daryl F. Heller, and YOUR agents, representatives, advisors, attorneys, or anyone acting on YOUR behalf.

Each of the foregoing definitions shall be fully applicable to each Question notwithstanding that a definition above may, in whole or in part, be reiterated in a particular Question, or that a particular Question may incorporate supplemental definitions.

The singular includes the plural and the plural includes the singular. The terms "and" and "or" as used herein have both conjunctive and disjunctive meanings, and shall be construed to bring within the scope of these Questions all information that might otherwise be construed to be outside their scope.

**INSTRUCTIONS**

1. Except as may otherwise be set forth in any request below, the relevant time period covered by these Requests is January 1, 2021 through the present.

2.      If production of any DOCUMENT covered by this request is refused on the grounds of any claim of privilege, including, without limitation, a claim of "work-product," a list is to be furnished identifying each DOCUMENT for which the privilege is claimed, together with the following information stated separately with respect to each DOCUMENT identified: (i) the date of the DOCUMENT; (ii) the name, address and relationship to YOU of each person who authored, prepared or signed the DOCUMENT; (iii) the name, address and relationship to the party claiming the applicable privilege of each person who was sent or furnished with the DOCUMENT; (iv) the present location of the DOCUMENT; (v) a brief description of the DOCUMENT; and (vi) a statement of the basis for the claim of privilege. In the case of any DOCUMENT relating in any way to a meeting or other conversation, all persons involved in the meeting or conversation are to be identified.

3.      Unless otherwise indicated, YOU shall produce all responsive DOCUMENTS that are in YOUR possession, custody, or control, which shall include both any DOCUMENTS YOU have actual possession or custody of, and shall also include any DOCUMENT that YOU have the right to obtain the DOCUMENT (whether an original or a copy thereof) upon request or demand from any entity or person. This includes any DOCUMENTS contained on or in any computer, mobile device, server, mainframe, or other storage device (including: (i) DOCUMENTS on or in computer memory; (ii) DOCUMENTS on or in computer or network backup files; and (iii) DOCUMENTS that have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within our possession, custody, or control. For the avoidance of doubt, this also includes any DOCUMENTS contained on any personal computer, mobile device, server, mainframe, or other storage device within YOUR possession, regardless of whether YOU owns such device.

4. The DOCUMENTS produced pursuant to these requests shall be either: (a) segregated and identified by the number of the request below to which they are responsive; or (b) produced as they are maintained in the ordinary course of business.

5. DOCUMENTS shall be produced with sufficient information to identify the files or repositories in which such responsive DOCUMENTS are maintained in the normal course of business, including, for example, an index, key, code, or other means of ascertaining the source of the produced DOCUMENTS.

6. DOCUMENTS shall be provided in searchable .PDF or CSV (comma-separated values) format, except that **electronically stored information must be produced in both native and a searchable format.**

7. Any DOCUMENTS attached to each other shall not be separated.

8. Any DOCUMENTS with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

9. Each requested DOCUMENTS shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other DOCUMENTS at any time affixed thereto. If a DOCUMENT is responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

10. If YOU maintain that any responsive DOCUMENT has been destroyed, YOU shall set forth the contents of the DOCUMENT, the date of its destruction, and the name of the person(s) who authorized its destruction.

11. If a request is only partly objectionable, YOU shall respond to the remainder of the Request that is not objectionable.

12. If an objection or request for relief is made with respect to any request or portion thereof, the objection or request for relief shall state all grounds on which it is based with specificity. Any ground not stated in a timely objection shall be deemed waived.

13. These requests shall be deemed continuing requests so as to require supplemental responses if YOU obtain or discover additional information or DOCUMENTS between the time of initial response or production and the time of judgment. Such supplemental information and DOCUMENTS must be produced promptly upon discovery.

## REQUEST(S) FOR PRODUCTION

1. All DOCUMENTS that support the assertions made in the AUGUST 15 LETTER or the AUGUST 26 LETTER and that the DEBTOR intends to admit into evidence or otherwise use during the HEARING.

2. A list of all ATMs that were not "Prestige-owned ATMS" and from which PMG generated revenue.

3. DOCUMENTS sufficient to identify each ATM, by serial and TID number, that replaced an ATM listed in the exhibits to the FIRST INTERIM REPORT with serial or TID numbers beginning with "PH."

4. DOCUMENTS sufficient to show the "substantial revenue streams, including, but not limited to: (i) revenue and profit from ATM hardware sales amounting to hundreds of millions of dollars; (ii) revenues from PMG-owned entities whose transactions did not flow through the FNB accounts ending in #3440 or #8413; (iii) revenues from PMG-owned entities utilizing non-FNB banking relationships; and (iv) revenues from PMG affiliates, which, although under

common ownership, in many cases were required to operate separately from PMG for regulatory compliance and therefore also not included in Examiner Report even [though] they managed and operated Prestige ATMs" asserted on page 2 of the AUGUST 15 LETTER. *See* August 15 Letter, pg. 2.

5. DOCUMENTS sufficient to show how any revenue not accounted for in the Second Interim Report was used (*i.e.,* whether the revenue was used to pay returns to investors of the FUNDS or for some other purposes).

6. DOCUMENTS sufficient to show the alleged "combined revenue [of] approximately $1.1 billion associated with Prestige-owned ATMs entities" as asserted on page 2 of the AUGUST 15 LETTER and the net income resulting from such "combined revenue."

7. DOCUMENTS sufficient to identify by bank, branch location, account number, and account holder, the "approximately 20 bank accounts" excluded in the Second Interim Report and the balances in those accounts on (i) January 1 and December 31 or each year, (ii) February 10, 2025, and (iii) August 31, 2025. *See* AUGUST 15 LETTER, pgs. 3-4.

8. DOCUMENTS sufficient to identify each of the "Affiliates" as that term is used in the AUGUST 15 LETTER.