| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, NJ 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for Daryl Fred Heller, Chapter 11 Debtor and Debtor-in-Possession* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>       Debtor. | Case No. 25-11354 (JNP)<br><br>Chapter 11 |

**CERTIFICATION OF KENNETH J. DEGRAW IN SUPPORT OF DEBTOR'S BRIEF IN SUPPORT OF WHY THE COURT SHOULD NOT APPOINT A TRUSTEE OR CONVERT THE CASE PURSUANT TO 11 U.S.C. §§ 1104(a)(1), (2), 1112(b)(1)**

    **Kenneth J. DeGraw** of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and

declares as follows:

    1.    I am a Partner of Withum Smith + Brown, PC ("Withum"), an accounting and

advisory professional company, retained financial advisor by McManimon, Scotland & Baumann,

LLC ("MSB")[1] [ECF 582, 583] for Daryl Fred Heller, the chapter 11 Debtor and debtor-in-

possession (the "Debtor"). I am a Certified Public Accountant and hold the following certifications

(i) Certified Fraud Examiner, (ii) Certified Financial Forensics, and (iii) Certified Financial

Planner. I am fully familiar with the facts and circumstances set forth herein. If I am called to

testify as a witness in this matter, I would competently testify as to same.

---

[1] Withum was retained by MSB under the *Kovel* doctrine.

2.      I submit this Certification in Support of Debtor's Brief Why the Court Should Not Appoint a Trustee or Convert the Case Pursuant to 11 U.S.C. §§ 1104(a)(1), (2), 1112(b)(1).

3.      My report addressing the (i) First Interim Report of Edward A. Philips (Regarding Multiple Sales of the Same Automated Teller Machines to the Same or Multiple Purchasers [ECF 329], and (ii) the Second Interim Report of Examiner, Edward A. Phillips (Regarding *Ponzi* Allegation) [ECF 473], is annexed as **Exhibit A**.

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

 */s/ Kenneth J. DeGraw*
Kenneth J. DeGraw

Dated: October 3, 2025

4914-3136-6255, v. 1

# EXHIBIT A



Ms. Sari Placona, Esq.
McManimon, Scottland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland NJ 07068

October 3, 2025

Re Daryl Fred Heller 25-11354

Dear Ms Placona,

WithumSmith+Brown, PC ("Withum") was retained by the United States Bankruptcy Court, District of New Jersey, as a Financial Advisor to the Debtor Daryl Fred Heller relating to his Chapter 11 Bankruptcy on September 19, 2025 (Docket 583[1]).

You have requested that we review the reports of the appointed Examiner in this matter and provide our analysis of the approach, analysis and findings. There are two reports, the First Interim Report of Examiner ("First Report") dated June 9, 2025 (Docket 329) and the Second Interim Report of Examiner ("Second Report") dated August 13, 2025 (Docket 473) (collectively, "Examiner Reports".) Due to the compressed time, limited access to documents and third-party financial data we are limiting our comments to the approach and analysis of the Examiner.

The commentary and findings below are based on the information we were able to review, in the limited time we had, based on the hearing date and briefing deadline. Upon more information becoming available, we reserve the right to amend or supplement this report should such action be deemed appropriate or necessary.

Our fees are subject to the conditions of our retention in this matter as well as Court approval. Our fees are not contingent on our findings. My current Curriculum Vitae is attached as Exhibit A. Documents utilized in the production of this report, are enumerated in Exhibit B.

Based on my review of the Examiner Reports it is my opinion that the Examiner's conclusions are premature. There are several areas of his analysis that are based on limited data sets or review, which may lead to flawed conclusions.

***Enterprise Structure***

The overall structure, relationships, control and economic environment (collectively the "Enterprise Structure") is mischaracterized and in some instances the entity and financial relationships are disregarded. The Examiner did not discuss the Enterprise Structure in his report, which would provide the Trier of Fact with context to the overall discussion. A simplified structure as I understand it based on review of documents (Exhibit B) and conversations with the Debtor is as follows:

---

[1] Withum was retained by MSB under the *Kovel* doctrine

**WithumSmith+Brown, PC**   200 Jefferson Park, Suite 400, Whippany, New Jersey 07981-1070   **T** (973) 898 9494   **F** (973) 898 0686   withum.com

AN INDEPENDENT MEMBER OF HLB · THE GLOBAL ADVISORY AND ACCOUNTING NETWORK



Investors were participants in the various Prestige Funds[2], (the "Funds") the investors committed capital based on Private Placement Memorandums (PPM) and offering agreements.  The Prestige funds were governed by their own operating agreements.

The Prestige Funds would acquire ATM's ("Kiosks") from Paramount Management Group (PMG) and or one of its affiliated entities (Exhibit C). The sale of the Kiosk was revenue to the respective Paramount entity, and generated net income after costs.  The acquisition of the Kiosk by the Prestige Fund was an asset of the acquiring Prestige fund, which was eligible to be depreciated.

The Prestige Kiosks were managed and maintained through a Management Services Agreement ("MSA") with PMG and or one of its affiliated entities ("Paramount Entities").

The Paramount entities were distinct from the Prestige Entities.  The investors in the Prestige entities were not a party to the Paramount entities.

PMG and or one of its affiliates would then pay a fee to the Prestige Fund based on a waterfall in the MSA. Prestige would in turn distribute funds to its member/investors to the extent of available cash flow as outlined in the Funds Operating Agreement.

After a period of years, or other triggering event which was described in the MSA, the arrangement would terminate, and PMG would reacquire the Kiosk(s) from the Fund under an Asset Purchase Agreement (APA). The sale price was defined in the MSA as a percentage of the original purchase price or at option of the Management Company Fair Market Value.

While my analysis above is simplified, it points to the need to a more fulsome review of the contractual obligations of each of the parties associated with the various transactions, and the review of the calculation of the cash flows called for under the MSA's, APA's and Operating Agreements to provide a more accurate and thorough analysis.

Further a review of the business decisions, financial assumptions and projections that underpinned the agreements versus actual results of the business, combined with the related actions, reactions or inactions of management would be instructive in understanding the context of the operating environment, decision making and the ultimate demise of the business.

### *Subsidiaries and Affiliated Entities*

PMG has various affiliated entities (Exhibit C) that were utilized for management and maintenance of the Kiosks owned by the Prestige Funds. Some of these entities were serving specific purposes such as cryptocurrency Kiosks/BTMs. Some of these PMG affiliates were established for regulatory reasons and related to industries such as cryptocurrency and cannabis.  PMG could not operate these Kiosks without the use of separate entities, or they

---

[2] First Examiner Report Exhibit 1



would have defaulted on various core operating agreements and banking partnerships. These entities were subject to supervision and audit by the respective sponsoring institution.

The Examiners Second Report focuses on the cash flow of PMG from its Kiosk servicing[3] to the exclusion of the revenues derived by those serviced by the affiliated entities, assuming the revenues if any were already reflected in PMG[4]. The exclusion of the economic activity from these affiliated entities would lead the reader to erroneous conclusions regarding the sources and uses of funds. Further the Examiner points to the cash flows from the various affiliates[5] that were identified in the accounts of PMG, however, discounts their relevancy[6].

### Hardware Sales

The Examiner identifies Kiosk sourced revenue during the review period in the PMG accounts[7]. He then dismisses the availability of revenues from the sale of Kiosks within PMG. He has chosen instead to reference the funds received by PMG as investor funds[8]. The investor funds belong to the relevant Prestige entity. The Prestige entity to the extent it was remitting funds to PMG for the acquisition of Kiosks was revenue to PMG and was therefore available funds to meet the servicing payments called for in the MSA's. While the funds clearly originated with investors, once remitted for the acquisition of Kiosks the character of the revenues changed.

The focus solely on ATM revenues to meet the cash flow needs to the Prestige Funds results in a misleading result. The Examiner quantifies the ATM revenues as $161.6 million[9], which clearly demonstrates a substantive business, to disregard another substantive profit center in hardware sales as well as the servicing by affiliated entities provides a misleading result.

### Additional Financial Institution Accounts

There are additional accounts at various financial institutions for PMG and affiliated entities that were not reviewed as part of the analysis contained in the Second Report. The Debtor has identified 29 additional institutions that were not sent subpoenas (Exhibit D). The economic activity that flowed through these accounts, in addition to subpoenaed institutions, should have been considered in arriving at conclusions regarding the sources and uses of cash.

Specifically, multiple accounts were maintained at financial institutions to conduct transactions for the cryptocurrency Kiosks. One entity, PowerCoin, LLC, maintained accounts at multiple financial institutions including cryptocurrency exchanges such as Kraken, Crypto.com, and Binance which were utilized to facilitate the purchase and sale of

---

[3] Para 79 Second Examiner Report
[4] Footnote 22 Second Examiner Report
[5] Footnote 30, Second Examiner Report
[6] Footnote 22, Second Examiner Report
[7] Para 69, Second Examiner Report
[8] Para 84, Second Examiner Report
[9] Para 79, Second Examiner Report



cryptocurrency. Similarly, PowerQwest Financial, LLC, operated cannabis Kiosks located in dispensaries and maintained separate bank accounts for regulatory concerns.

The Second Report discusses non-FNB accounts that were not relied upon to conduct the analysis to include both accounts at financial institutions that were subpoenaed and accounts not subpoenaed. A full analysis of all accounts utilized by PMG and PMG affiliates would have provided a full picture of business revenues generated by the operation of Kiosks owned by Prestige Funds, as well as other revenue streams available to make payments under the MSA's.

### *Accounting Records*

The Second Report relies on the analysis of a limited number of bank accounts but does not include a reconciliation of all financial accounts to internal accounting records for PMG and subsidiaries/affiliates. The conclusions included in the report rely exclusively on the bank accounts and deposits as classified by the examiner and retained professionals without a reconciliation to how those transactions are treated in the accounting records, which is essential if the analysis is to be relied upon.

A full analysis of all financial institution accounts and reconciliation to the accounting and business records would assist with clarifying the economics of the entities. In particular, the Second Report contains an analysis of two FNB accounts – restricted account #8413 and operating account #3440. Specifically, the Second Report classifies deposits from the Funds as "investments"[10] which disregards the relationship with the Prestige Funds and the acquisition of the Kiosks. A full analysis of all available financial accounts and underlying accounting records is necessary to properly classify these financial transactions.

### **Conclusion**

The Examiners Reports are the result of the review of extensive financial and business information. However, given the size and volume of information of the total Enterprise there was still a significant amount of data that has not been accessed, reviewed and/or analyzed.  Accordingly, I believe that the conclusions reached are premature and require further inquiry into the financial and business activity of the entire Enterprise before conclusions can be reached.

Yours Truly,

Ken DeGraw CPA CFF CFP CFE  |  Bio
Partner
Forensic & Valuation Services

---

[10] Para 81 Second Examiner Report

# EXHIBIT A



# withum

## Kenneth J. DeGraw, CPA, CFP®, CFE, CFF

### Partner, Market Leader, Financial Distress and Recovery Services



### Professional Experience

- Over 40 years of public accounting experience.
- Expertise extends to the professional practice areas of distressed business services, forensic accounting, business disputes, tax compliance and controversy.
- Has represented clients in various industries including alternative investment funds, professional services, as well as high net worth individuals.

### Credentials/Education

- BA, Accounting, Lycoming College
- Certified Public Accountant (CPA), New Jersey, New York and Georgia
- Certified Financial Planner (CFP®)
- Certified in Financial Forensics (CFF) Accreditation AICPA
- Certified Fraud Examiner (CFE)
- Candidate- Certification in Distressed Business Valuation (CBDV)

### Memberships

- American Institute of Certified Public Accountants (AICPA)
  - Former Member, Forensic and Valuation Services Executive Committee
  - Former Chair, Bankruptcy Task Force
- New Jersey Society of Certified Public Accountants (NJCPA)
  - Former Chair, NJCPA Insolvency Committee
- New York State Society of Certified Public Accountants (NYCPA)
  - Bankruptcy and Financial Reorganizations Committee
- Turnaround Management Association (TMA)
- American Bankruptcy Institute (ABI)
  - Business Reorganization Committee
  - Financial Advisors and Investment Banking Committee
  - Commercial Fraud Committee
- Association of Insolvency and Restructuring Advisors (AIRA)
- American Bar Association
  - Business Law Committee
  - Taxation Committee and Litigation Committee
- Public Member-NJ District XIII Ethics Committee

### Service

- Bankruptcy, Restructuring and Insolvency
- Forensic Accounting
- Taxation - Compliance
- Taxation - Criminal

## Client Representations

- As a market leader of Withum's Forensic and Valuations Services group, Ken's focus has been in the areas of bankruptcy, insolvency, tax controversy (litigation) and forensic accounting matters. His engagements have included matters of solvency, avoidance actions, claims analysis and fraudulent conveyances. He has been involved in the reconstruction of financial activity through the analysis of fragmented books and records.
- He has served as a Financial Advisor to Debtors, Creditor Committees and other interested parties in numerous bankruptcy matters
- He has served as Liquidating Trustee, Receiver, Examiner and Special Fiscal Agent in a number of distressed situations.
- He provides tax compliance, strategy and structure services to a broad range of privately held business, individuals and related Trusts and Estates.
- Ken represents individuals and their families in matters of tax planning and tax compliance.
- He has represented clients in matters of criminal tax allegations.
- He has represented companies involved in post-merger and acquisition disputes.

## Recent Significant Cases

### Chapter 11:

- Dusobox Corporation 24-00391
- Integrated Group 21-12484
- Frank Mazzola 22-21589
- David Gamburg 20-10780
- Rudy & Catherine Hendel 20-10237
- RHA Stroud, Inc. 20-13482
- RHA Anadarko, Inc. 20-13483
- The Weinstein Company Holdings 18-10601
- The Mall at the Galaxy 10-12435
- New England Motor Freight 19-12809
- Macbeth Designs 16-30967

### Chapter 11 – SubChapter V:

- Frank Mazzola 23-21589
- Stanton Ridge Golf and Country Club 20-21504
- Integrated Group LLC 21-12484
- Universal Towers Construction, Inc. 20-03799
- Affiliated Physicians Employer Master Trust 21-14286

### Chapter 7:

- The Mall at the Galaxy 10-12435

# withum

- Freight Connections 23-21225
- Bamboo Palace 22-10861
- Prestige America Manufacturing 21-19297
- Arts des Province De France 11-29111
- QSS MGMT 22-19664
- MCM Mechanical 23-18121
- David Gamburg 20-10780
- The Espinosa Group, Inc. 19-20649
- John Picioccio 20-10790
- National Management and Preservation Services 18-16859

## Assignment for the Benefit of Creditors:

- Linowes & Blocher
- AFL Printing
- Inventel Products, LLC
- Winning Edge Communications
- Fox and Fox

## Fraud/Fraudulent Transfer Investigation:

- Deutsche Bank v 400 Success, LLC
- Rick Alan Davidson
- Freight Connection
- Grab Ads Media v Wellness Brands
- Hillsong Church
- One Fat Frog Inc
- W1 Optimum Partners LLC v White Rock DMCC
- Hereditary Disease Foundation
- Whiteplains v. Cappelli
- DCS v. Loman Ford
- Sweet Grass Farm v. Barisone
- Vautin v. Windown Inc. Ferretti Group of America, LLC
- Rick Davison 19-11486
- Federal Business Centers v. Conway Spinella
- Donald Jaffe v. Reec 137 Franklin St. LLC
- National Management and Preservation Services

## Shareholder Litigation-Business Disputes:

- Mario Sanchez v 8th Street Passaic et al



- Singer v Singer
- Uziel v Moskowitz
- Abreu v Weiss
- Area Rentals UNN-L-0126-18
- Eisdorfer v. Eisdorfer & Eisdorfer
- Kambitsis v. Kambitsis

## Expert Testimony/Depositions:

- Integrated Group 21-12484 (Plan Feasibility)
- Frank Mazzola 23-21589 (Plan Feasibility)
- Grab Ads Media v Wellness Brands
- Vautin v. Windown Inc. (Fraudulent Transfer)
- Federal Business Centers (Fraudulent Transfer)
- White Plains Plaza Realty v Louis Cappelli NYS Supreme Court 70276/2015 (Fraudulent Transfer)
- Jewish Center and Hebrew Day School 02-25842 (Creditor Claims)
- RHA Stroud, Inc. 20-13482
- RHA Anadarko, Inc. 20-13483
- The Mall at the Galaxy 10-12435 (Fraudulent Transfer/Solvency)
- Macbeth Designs 16-30967 (Plan Feasibility)

## Examiner:

- Apex Xpress Inc 18-13134

## Special Fiscal Agent (Receiver):

- O'Bierne v O'Bierne
- Blue Mountain Landscaping (Financial Advisor)
- Golden Era, Inc. (Financial Advisor)
- Friends of Mercer County Parks, Inc., Superior Court of NJ-Mercer County Chancery Division, C-40-16
- Auslander Transportation Inc.
- Kambitsis v Kambitsis (Financial Advisor)

## Liquidating & Litigation Trusts:

- Carpenter Realty Join Plan Trust (Financial Advisor)
- NL Common Fund
- DBSI Estate Litigation Trust (Financial Advisor) 08-12687 (DE)
- DBSI Private Action Trust (Financial Advisor) 08-12687 (DE)
- GUC Trust, Enor Corporation (Trustee) 15-32714 (NJ)
- AMG Trust, AMG International Inc. 17-25816



## Criminal

- United States v. Neuberger
- United States v Amit Govil (Tax Matters) 18-607
- United States v. Grant 18-CR-00179 Tax Matters

## Publications

- Practitioner Publishing Company, contributing author to the PPC's Guide to Troubled Business and Bankruptcies
- 2024 Hospitality Business navigating distress
- Frequent Contributor of Withum's "Under the Microscope" Blog
  - M&A Post-Closing Disputes Parts I-VI, 2023
  - Tax Fraud – It's Still Criminal, 2023
  - Whistleblowers in Tax Matters, 2022
  - Taking Aggressive Tax Positions in Light of the Expected IRS Hiring Binge, 2022
  - Creative Accounting and Cooking the Books, 2022
  - Badges of Fraud, 2022
  - Your Tax Audit and Possibility of Tax Fraud, 2022
- 2022 Whistleblowers in Tax Matters
- 2022 Aggressive Tax Positions in Light of IRS Hiring
- 2021 Cancellation of Debt
- Contributing author of 2021 "What CPA's and other advisors need to know about bankruptcy"
- Contributing author of 2021 revisions to PPC's Guide to Troubled Business and Bankruptcy
- The Bankruptcy Process Part IIIB - Chapter 11, Withum , Sep. 2020
- The Bankruptcy Process Part IV - Emergence, Withum, Sep. 2020
- Unscrambling the Egg When Your Customer Files Bankruptcy, Withum, Sep. 2020
- Before the Bankruptcy: Tips for Regrouping with Lender, Withum, Aug, 2020
- The Bankruptcy Process Part III - The Process, Chapter 7, Withum, Aug. 2020
- High Income? Non-Filer? The IRS Will Be Paying You A Visit, Withum, Aug. 2020
- The Bankruptcy Process Part II - Filing for Protection, Withum, Aug. 2020
- The Bankruptcy Process Part I - Planning for the Filing, Withum, Aug. 2020
- Syndicated Conservation Easements and the Vanishing Tax Deduction, Withum, Aug. 2020
- Withum's Perspectives from the Bankruptcy Cliff Podcast, Episode 2 - Bankruptcy Alternatives, 2020
- Withum's Perspectives from the Bankruptcy Cliff Podcast, Episode 3 - Chapter 11 Bankruptcy Process, 2020
- Withum's Perspectives from the Bankruptcy Cliff Podcast, Episode 7 - Bankruptcy Turnaround, 2020
- Withum's Perspectives from the Bankruptcy Cliff Podcast, Episode 10 - Tax Issues to be Aware of During a Bankruptcy, 2020
- Withum's Perspectives from the Bankruptcy Cliff Podcast, Episode 14 - Creditor Issues During a Bankruptcy, 2020
- Developed Forensic Engagement Reporting Requirements & Preparing Sustainable Reports CPE Course for AICPA
- Authored AICPA CFF Exam Modules, Specialized Forensic Accounting Knowledge and Practices - Bankruptcy
- Editor and Co-authored Valuation in Bankruptcy Practice Aids for the AICPA

# withum

- Editor and Co-authored Bankruptcy & Reorganization Services Practice Aid for the AICPA
- WithumSmith+Brown Financial Services and Investment Blast, March 2016 "IRS Gets All New Partnership Audit Process"
- WithumSmith+Brown Withum Advantage Blast, March 2015 "Tax Returns: Reading Between the Lines"
- WithumSmith+Brown Financial Services and Investment Blast, August 2014 "The 411 On Securities Litigation"

## Presentations

- Association of Insolvency & Reorganization Advisors 2024 Conference Bankruptcy Taxation
- Association of Insolvency & Reorganization Advisors 2023 Conference Insolvency-Prove it
- Stafford 2023 Tax Consequences of Bankruptcy
- Louisiana CPA Society 2023 Bankruptcy and the Role of the Financial Advisor
- Alan Gassman Webinar series: Bankruptcy Basics I & II, Bankruptcy Taxation I& II
- Leimberg: Representing the Distressed Business
- 2024 Exit Planning Exchange Financial issues in Post M&A Litigation
- Florida Mutual Insurance – Trust Account Compliance, 2023
- Association of Insolvency and Restructuring Advisors – Tax Case Update, 2022
- AAML – Tax Aspects of Digital Assets, 2022
- AICPA
  - 2024 AICPA Conference - Solvency and the Methods of Proof
  - 2021 AICPA Engage Conference:
    - Bankruptcy Planning Execution and Solutions for Debtors and Creditors
    - Ready for Sale, Panel on Businesses in Distress
  - 2021 AICPA Webinar Solvency Evaluation in Fraudulent Transfer Actions
  - 2020 National Forensic & Valuation Services Conference, Implications and Opportunities Utilizing the New SubChapter V Bankruptcy
  - 2020 National Forensic & Valuation Services Conference, Tax Controversy Beyond the Audit
  - 2019 National Forensic & Valuation Services Conference, Role of the Financial Advisor in
  - Bankruptcy
  - 2019 National Forensic & Valuation Services Conference, Management of a Forensic and
  - Valuation Services Practice in a Traditional Accounting Firm
  - 2018 National Forensic & Valuation Services Conference, Fraudulent Conveyances and Solvency
  - 2016 National Forensic & Valuation Services Conference, Use of Forensic Analytics to Compel Discovery
  - 2015 National Forensic & Valuation Services Conference, Demystifying Asset Tracing
  - AICPA
    - Development of a Forensic and Valuation Services Practice, 2020
    - Reorganizing Businesses Under the Small Business Reorganization Act As Amended By the CARES Act, 2020
  - AICPA Forensic Valuation Services How to Videos:
    - Bankruptcy
    - Valuation
  - Sales of Distressed Business Webinar, July 2021
  - Bankruptcy Rules and Opportunities for CPAs Part I, 2020



withum

- Bankruptcy Rules and Opportunities for CPAs Part II, 2020
  - Bankruptcy Taxation Basics, 2020
  - Bankruptcy Taxation Advanced, 2020
  - Navigating Bankruptcy For Your Business: What Are Your Options?, 2020
  - Bankruptcy and the Role of the Financial Advisor, 2020
- Distressed M&A: Ramifications of the New Chapter 11, SubChapter V, 2020
- Tenants in Peril: Protecting Your Rights Before and After Tenant Bankruptcy, 2020
- Landlord and Tenant Distress: Options and Considerations, 2020
- American Bankruptcy Institute
  - Insolvency2020 Conference, Solvency and Fraudulent Conveyances, 2020
- New Jersey State Bar Association
  - NJICLE Winter Conference, Small Business, COVID and Bankruptcy: How SubChapter V is Helping Small Businesses Reorganize in the National Health Crisis, 2020
- Landlord/Tenant Issues in Bankruptcy, 2020
- FRA Private Equity Tax Master Conference, May 2018
  - Conference Chair
- Judicial College, Tax Act Update, 2017
- ICLE, 2015
  - Taxes in Chapter 7- Bankruptcy
- National Business Institute (NBI) - Brewery and Distillery Law in Philadelphia 2015 & in New Jersey 2017
  - Taxation of Distillery in Philadelphia
- ICLE, 2014
  - Discharge of Taxes in Bankruptcy

# EXHIBIT B



**Exhibit B**

**Documents Utilized**

Docket 329 First Interim Report of Examiner

Docket 334 Debtor's Response to First Interim Report of Examiner

Docket 473 Second Interim Report of Examiner

Docket 481 Debtor's Response to Second Interim Report of Examiner

Docket 517 Debtors' Counsel Response to Letter of Mr. Gwynne

Asset Purchase Agreement between Paramount Management Group LLC and Prestige Fund B LLC January 1, 2024[11]

Confidential Private Placement Memorandum Prestige Fund D VI, LLC January 24, 2023[12]

Subscription Agreement Prestige Fund D VI, LLC[13]

ATM Management Services Agreement between Prestige Fund D VI, LLC and Paramount Management Group LLC, June 13, 2023[14]

Limited Liability Company Operating Agreement of Prestige Fund D VI, LLC[15]

Withum Resource Workbook

---

[11] It is our understanding that this is one of many such agreements, which may or may not be substantially identical
[12] Ibid
[13] Ibid
[14] Ibid
[15] Ibid

# EXHIBIT C



**Exhibit C**

**Paramount and Affiliated Entities as Identified by the Debtor**

| | |
|---|---|
| ALDIN | EZ Payment Hillside |
| Altpay Holdings LLC | FAB |
| Apollo Investment Holdings | Financial Initiatives LLC |
| Apollo Management LLC | First Regents Holdings LLC |
| ATD | First Regents LLC |
| ATM Group | Golden Gate LLC |
| ATM profits | Hackney |
| ATMs of LA | Hilt Ventures |
| ATMSI | Just Cash |
| ATMWW | Know Tone |
| Automatic Card | Margo |
| B&B Finanical | Maritech |
| Bean Buddies | Mozika SAB |
| Big Apple | Multiplus |
| CAI | National Niche |
| Cash Access | Paramount Management Group LLC |
| Cash Connect | Paramount MGP LLC |
| Cash to Go | PCI |
| Cash to Go | PhoneCo |
| Cash Ventures IV LLC | PowerCoin LLC |
| Catapult LLC | PowerQuest Financial LLC |
| City Cash | Project Catapult LLC |
| City Cash CA | Retail Profit Systems |
| CKE | SE ATM |
| CNY | Sharenet LLC |
| Cypress | Starlight |
| DHDZ LLC | TNT |
| Eagle ATM | VCMG |
| ETS | WAFAZ |
| Express OMV | WC Services |

# EXHIBIT D



**Exhibit D**

**Additional Financial Institutions**

Renasant Bank
Citizens ST BK ONTONAGON
Webbank
Optum
Wells Fargo
First Premier Bank
Intuit
PSECU
Northwest
 Ephrata National
Metro
Bank of George
US Bank
Krakken
Crypto.com
Binance
Enigma
Bankline
WSFS
CashConnect
CDS
Stillman
TBD TN Bank (First Regents Bank)
TBD IL (Chicago) Bank (PCI Bank)
F&M Trust
Centric Bank
Traditions Bank
Unibank
Elan