UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email:  jeffrey.m.sponder@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Daryl Fred Heller, | : Case No. 25-11354 (JNP) |
| | : |
| Debtor. | : Hearing Date:  October 22, 2025 at 10:00 a.m. |
| | : |
| | : The Honorable Jerrold N. Poslusny, Jr. |

**RESPONSE OF THE UNITED STATES TRUSTEE
TO THE COURT'S ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT
APPPOINT A TRUSTEE OR CONVERT THE CASE**

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this Response (the "Response") to the Court's Order to Show Cause Why the Court Should Not Appoint a Trustee or Convert the Case (the "OTSC").[1]  In support thereof, the U.S. Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

At the outset of this case, many allegations were raised by creditors concerning the Debtor and his businesses, which culminated in one of the creditors filing a motion to appoint a chapter 11 trustee (the "Trustee Motion").  *See* Dkt. 30.  The Trustee Motion was resolved by the

---

[1] Although responses to the OTSC were due on or before October 3, 2025, the Debtor agreed to extend the deadline of the U.S. Trustee to file a response to October 10, 2025.

agreement reached between the creditors and the Debtor to the appointment of an examiner. *See* Dkt. 99. The examiner, Edward A. Phillips (the "Examiner") filed a Second Interim Report of Examiner, Edward A. Phillips (the "Second Report") on August 13, 2025. *See* Dkt. 473-1. The Second Report focused on the allegation that the Debtor operated a *Ponzi* scheme. *See id.* Pursuant to the Second Report, the Examiner concluded that the Debtor controlled Paramount Management Group, LLC ("PMG"), that PMG had a meaningful ATM business during the Review Period, that PMG's earnings from ATM operations (excluding Investors' funds) were insufficient to pay returns to Investors during the Review Period, that PMG's gross receipts (excluding Investor's funds) were insufficient to pay the returns to Investors that were paid during the Review Period, and that PMG lacked the number of revenue-generating ATMs necessary to generate $407.3 million paid to the Investors during the Review Period. *See id.* The Examiner also concluded that "PMG necessarily used funds from subsequent Investors to pay returns owed to earlier Investors." *See id.* at page 30 of 44.[2]

Shortly after the filing of the Second Report, on August 21, 2025, the Debtor was indicted by a grand jury in the District Court for the Eastern District of Pennsylvania including one count for securities fraud and four counts for wire fraud (the "Indictment"). *See* Dkt. 549-1. The Indictment provides that the Debtor "devised and intended to devise a scheme to defraud investors in the Prestige and WF Velocity ATM Funds and to obtain the money and property of such investors by false and fraudulent pretenses, representations, and promises." *See id.* Then, on September 3, 2025, the Securities and Exchange Commission (the "SEC") filed a complaint in the

---

[2] The Debtor filed the Certification of Kenneth DeGraw in Support of Debtor's Brief in Support of Why the Court Should Not Appoint a Truste or Convert the Case Pursuant to 11 U.S.C. §§ 1104(a)(1), (2), 1112(b)(1) (the "DeGraw Certification"). *See* Dkt. 588-1. Pursuant to the DeGraw Certification, a report was prepared by the Debtor's financial advisor in response to the Examiner's reports (the "Debtor Report"). The Debtor Report does not conclude that the Debtor was not operating a *Ponzi* scheme, but that the conclusions reached in the Second Report were "premature and require further inquiry." *See id.* at page 7 of 21.

2

District Court for the Eastern District of Pennsylvania against the Debtor and certain of his businesses alleging that the Debtor and certain of his businesses "perpetrated a Ponzi-like scheme exploiting retail investors" (the "SEC Complaint"). *See* Dkt. 549-2.

At this point, the Second Report has been filed by the independent fiduciary in this case, the Debtor has been indicted by a grand jury, and the SEC has filed the SEC Complaint against the Debtor. Although the Debtor has not been criminally convicted or found liable concerning the SEC Complaint, the allegations in the SEC Complaint, the Indictment and the Second Report constitute sufficient cause to either convert the case to chapter 7 or appoint a chapter 11 trustee.

## JURISDICTION AND STANDING

1. Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the UST has "public interest standing" under section 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog"); H.R. REP. NO. 95-595, at 88 (1977), *reprinted in* 1977 U.S.C.C.A.N. 5787, 5963, 6049 ("Some of the supervisory functions removed from the judge will be transferred to a new system of United States Trustees who will act as bankruptcy watchdogs . . . ."). Specifically, the U.S. Trustee is charged with "monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress." 28 U.S.C. § 586(a)(3)(G).

2. The U.S. Trustee has standing to be heard with respect to the OTSC pursuant to 11 U.S.C. § 307.

3

## BACKGROUND AND RELEVANT FACTS

*Bankruptcy Filing*

3.  On February 10, 2025 ("Petition Date"), Daryl Fred Heller (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. *See* Dkt. 1.

4.  The Debtor remains in possession of his assets and continues to manage his affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

*The Trustee Motion, Appointment of Examiner and Examiner Reports*

5.  On February 18, 2025, Deerfield Capital, LLC ("Deerfield") filed the Trustee Motion. *See* Dkt. 30.

6.  On March 7, 2025, as a result of the Trustee Motion, and pursuant to the parties agreement, the Court entered an Order Directing the Appointment of an Examiner (the "Examiner Order"). *See* Dkt. 99. Pursuant to the Examiner Order, the Examiner was authorized to (i) "investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity, if any, in the management of the affairs of the Debtor or in any entity or entities owned or controlled by the Debtor, either directly or indirectly, or through any intermediate entity including but not limited to Heller Capital Group, LLC, Heller Investment Holdings, LLC, Accordo Limited Partnership, Brookfield LP, Brigantine Group, L.P., DHRC, LLC, I Employee Services, LLC, and RAW Ventures, LLC, Golden Gate Investment Company, LLC, or Paramount Management Group, LLC, (collectively "Debtor Entities")," (ii) "investigate any and all transfers by the Debtor and any Debtor Entities including, but not limited to, all transfers or allegations referenced in the Removed Litigation," (iii) "investigate the accuracy and completeness of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, including, but not

4

limited to, the stated value of assets included therein," and (iv) "otherwise perform the duties of an examiner set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code." *See id.*

7. On March 14, 2025, the U.S. Trustee filed a Notice of Appointment of Edward A. Phillips as Examiner. *See* Dkt. 118.

8. On March 18, 2025, the Court entered an Order Approving the Appointment of a Chapter 11 Examiner by United States Trustee. *See* Dkt. 131.

9. On June 9, 2025, the Examiner filed the First Interim Report of Examiner, Edward A. Phillips (the "First Report"). *See* Dkt. 329. The First Report investigated the multiple sales of the same automated teller machines to the same or multiple purchasers. *See id.* The Examiner concluded that sales of the same automated teller machines occurred multiple times. *See id.*

10. On June 13, 2025, the Debtor filed the Debtor's Response to First Interim Report of Examiner, Edward A. Phillips (Regarding Multiple Sales of the Same Automated Teller Machnes to the Same or Multiple Purchasers) ("Debtor's Response to First Report"). *See* Dkt. 334. Pursuant to the Debtor's Response to First Report, the Debtor argued that "the Examiner will file an amended First Interim Report to correct/amend and/or amplify certain findings in his report. *See id.* To date, the first Report has not been amended.

11. On August 13, 2025, the Examiner filed the Second Report. *See* Dkt. 473. Pursuant to the Second Report, the Examiner concluded that the Debtor controlled Paramount Management Group, LLC ("PMG"), that PMG had a meaningful ATM business during the Review Period, that PMG's earnings from ATM operations (excluding Investors' funds) were insufficient to pay returns to Investors during the Review Period, that PMG's gross receipts (excluding Investor's funds) were insufficient to pay the returns to Investors that were paid during the Review Period, and that PMG lacked the number of revenue-generating ATMs necessary to generate $407.3

5

million paid to the Investors during the Review Period. *See id.* The Examiner also concluded that "PMG necessarily used funds from subsequent Investors to pay returns owed to earlier Investors." *See id.* at page 30 of 44.

12. On August 15, 2025, the Debtor filed Debtor's Response to Notice of (i) Filing of Second Interim Report of Examiner, Edward A. Phillips and (ii) Statement to General Legal Principals Regarding Alleged Ponzi Schemes ("Debtor's Response to Second Report"). *See* Dkt. 481. Pursuant to Debtor's Response to Second Report, the Debtor provided arguments about why the Examiner's conclusions were faulty and advised that the Debtor was considering hiring a forensic examiner or financial advisor to rebut the Second Report. *See id.*

13. Shortly after the filing of the Second Report, on August 21, 2025, a grand jury in the District Court for the Eastern District of Pennsylvania indicted the Debtor on one count of securities fraud and four counts of wire fraud. *See* Dkt. 549-1. The Indictment provides that the Debtor "devised and intended to devise a scheme to defraud investors in the Prestige and WF Velocity ATM Funds and to obtain the money and property of such investors by false and fraudulent pretenses, representations, and promises." *See id.*

14. On August 27, 2025, the Court entered the OTSC concerning why the Court should not appoint trustee or convert the case. *See* Dkt. 520.

15. On September 3, 2025, only a few weeks after the Indictment, the SEC filed the SEC Complaint in the District Court for the Eastern District of Pennsylvania against the Debtor and certain of his businesses alleging that the Debtor and certain of his businesses "perpetrated a Ponzi-like scheme exploiting retail investors." *See* Dkt. 549-2.

## LAW, ANALYSIS AND ARGUMENT

### I. The Court Should Enter an Order Appointing a Chapter 11 Trustee

16. Creditors require an independent, conflict-free, experienced party investigating the financial affairs of this Debtor — someone who can determine an appropriate reorganization or liquidation strategy, free from the constraints of the Debtor.

17. The usual presumption in favor of allowing a debtor's management to remain in the case vanishes completely when management does not or cannot perform its fiduciary duties. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'") (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)).

18. 11 U.S.C. § 1104(a) states that the Bankruptcy Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

*See* 11 U.S.C. § 1104(a).

19. Subsection (1) of section 1104(a) addresses management's pre- and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *See In re Bellevue*

*Place Assocs.*, 171 B.R. 615, 623 (N.D. Ill. 1994); *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019). Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *See Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002); *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 502, 507 (D.N.J. 2003) ("While appointment of a trustee is mandatory upon a finding of cause under subsection (1) or upon a finding that a trustee would serve the interests outlined in subsection (2), the decision to appoint a trustee still falls within the court's discretion. A determination of "cause" under subsection (1) is within the court's discretion.").

20. The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *See In re Marvel Entertainment Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (quoting *Committee of Dalkon Shield Claimants v. A.H. Robbins Co.*, 828 F.2d at 242). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Colby Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985).

21. The determination of whether cause exists must be taken on a case-by-case basis, considering all relevant factors. *See Sharon Steel*, 871 F.2d at 1225. Pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995).

22. In its decision in *In re Marvel Entertainment Group, Inc.*, the Third Circuit quoted the following passage approvingly in affirming the appointment of a Chapter 11 trustee:

8

> The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee.

*Id.* (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)) (emphasis added).

23. The Third Circuit in *Marvel* further stated that appointment of a trustee is mandatory if cause is found under 11 U.S.C. § 1104(a)(1), and while it is not mandatory under 11 U.S.C. § 1104(a)(2), the Third Circuit held that the district court's refusal in that case to appoint something less than a trustee was not an abuse of discretion. *See Marvel*, 140 F.3d at 174-75.

24. There are significant allegations concerning the operation of a *Ponzi* scheme by the Debtor and certain of the Debtor's businesses. The Debtor has been indicted for wire and securities fraud and the SEC has filed a complaint charging him with multiple violations of the Securities Act. In addition, the Examiner in the Second Report details how the Debtor and his businesses "used funds from subsequent Investors to pay returns owed to earlier Investors," which is a classic hallmark of a *Ponzi* scheme. These taken separately or together are sufficient to satisfy the requirement for "cause" to appoint a chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a)(1). In addition, it appears that the appointment of a chapter 11 trustee is in the best interest of creditors and the estate pursuant to 11 U.S.C. § 1104(a)(2).

**II.    In the Alternative, the Court Should Enter an Order Converting This Case to Chapter 7**

25. 11 U.S.C. § 1112(b)(1) provides, in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee

9

or an examiner is in the best interests of creditors and the estate.

*See* 11 U.S.C. § 1112(b)(1).

26. "Cause" is defined in 11 U.S.C. § 1112(b)(4) as including –

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the Acting United States Trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

    (M)    inability to effectuate substantial consummation of a confirmed plan;

    (N)    material default by the debtor with respect to a confirmed plan;

    (O)    termination of a confirmed plan by reason of the occurrence of a specific condition in the plan; and

    (P)    failure of the debtor to pay domestic support obligation that first becomes payable after the date of the filing of the petition.

27. It is well settled that the list of factors constituting "cause" are not exhaustive. The legislative history for the statute provides in part, "[t]he court will be able to consider other factors, and to use its equitable powers to reach an appropriate result in individual cases." H. Rep. 595, 95th Cong., 1st Sess. 406 (1977). *See In re Pittsfield Weaving Company*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008) (Section 1112(b)(4) provides a non-exhaustive list of "causes" for conversion or dismissal).

28. Section 1112(b)(4)(A) provides that cause for conversion or dismissal exists when there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A).

29. A party seeking to demonstrate cause under Section 1112(b)(4)(A) must establish both the "substantial or continuing" loss prong as well as the absence of a reasonable likelihood of rehabilitation prong. *See In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)(*citing In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985). *See also In re BH S&B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010); *In re EnCap Golf Holdings, LLC*, 2008 Bankr. LEXIS 2774 * 26 (September 4, 2008); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 790 (Bankr. W.D. Tenn 1992); *In re Union County Wholesale Tobacco & Candy Co.*, 8 B.R. 439, 441 (Bankr. D.N.J. 1981).

30. The Supreme Court has said that "[h]owever honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *See Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1936). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.' " *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *See In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir.1991) and *In re Brown*, 951 F.2d 564, 572 (3d Cir.1991).

31. The purpose of section 1112(b)(4)(A) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *See In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (quoted in *Loop Corp. v. United States Trustee (In re Loop Corp.)*, 379 F.3d 511, 516 (8th Cir. 2004)).

32. The Court should consider both the financial prospects of the Debtor and the financial records filed with the Court to determine whether the Debtor has suffered continuing losses or diminution of the estate. *See Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007). Negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard. *See id. See also Loop Corp.*, 379 F.3d at 515-16; *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *In re Motel Properties, Inc.*, 314 B.R. 889, 894 (Bankr. S.D.Ga. 2004); *In re Route 202 Corp. t/a/ Lionti's Villa*, 37 B.R. 367, 374 (E.D.Pa. 1984); *In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D. N.D. 1994); and *In re Galvin,* 49 B.R. 665,

669 (Bankr. D. N.D. 1985) (post-petition negative cash flow is considered by courts to be evidence of continuing losses).

33. Here, during the seven months reported from February 2025 to and including August 2025, the Debtor's monthly operating reports show that the Debtor has had positive cash flow of $75,112 and average monthly excess income of $10,730.29. *See* Dkt. 576. However, at the time the Debtor commenced this bankruptcy case, he held cash in the amount of $18,797. *See* Dkt. 179. In addition, in August 2025, the Debtor received a tax refund in the amount of $89,697.79. *See* Dkt. 576-1 at page 3 of 20. If the opening balance and the tax refund were removed from the Debtor's total receipts, the Debtor would be operating in the negative during this case (-33,382.79). Further, it appears that the Debtor is accumulating very large professional fees including the payment of $442,157 already made. *See* Dkt. 576. It does not appear that the payment of professional fees is being calculated in the Debtor's disbursements in the monthly operating reports. With the inclusion of professional fees, the Debtor has negative cash flow post-petition.

34. The second prong of Section 1112(b)(4)(A) requires a showing that the Debtor has no reasonable likelihood of rehabilitation. Rehabilitation in the context of Section 1112(b)(4)(A) "contemplates the successful maintenance or re-establishment of the debtor's business operations . . . ." *See Canpartners Realty Holding IV, LLC v. Vallambrosa Holdings, LLC (In re Vallambrosa Holdings, LLC)*, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009). *See also Loop Corp. v. United States Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."). Because a Chapter 11 plan of reorganization may include liquidation, the test under Section 1112(B)(4)(A) is not whether the Debtors can confirm a plan, but, rather, "whether the Debtors' business prospects justify

13

continuance of the reorganization effort." *See Vallambrosa Holdings*, 419 B.R. at 88; *see also Loop*, 379 F.3d at 516 ("Reorganization encompasses rehabilitation and may contemplate liquidation. Rehabilitation, on the other hand, may not include liquidation.") (quoting *In re The Ledges Apartments*, 58 B.R. 84, 87 (Bankr. D. Vt. 1986)). Thus, rehabilitation "begins with a confirmable plan" and requires "at minimum, the prospect of re-establishing a business." *See Vallambrosa Holdings*, 419 B.R. at 89.

35. "In order to determine whether the debtor's business prospects are sufficient to justify a finding of a reasonable likelihood of rehabilitation, the court should determine not only whether the causes of the debtor's continuing losses can be corrected, but also whether the debtor or some other party in interest is capable of performing the necessary remediation. In almost every case, the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." *See* 7 Collier on Bankruptcy P 1112.04 (16th 2025).

36. Here, the Debtor has been indicted in the District Court for the Eastern District of Pennsylvania and the SEC has filed the SEC Complaint. The Indictment includes a Notice of Forfeiture of $770,106,400 and the SEC Complaint seeks the disgorgement of all ill-gotten gains with prejudgment interest. *See* Dkt. 549-1 and 549-2. As such, it does not appear that the Debtor has a reasonable likelihood of rehabilitation.

37. Pursuant to 11 U.S.C. § 1112(b)(4)(A), the Court should convert this case to Chapter 7.

14

## CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that this Court enter an order (i) directing the appointment of a chapter 11 trustee or, alternatively, (ii) converting the case to a case under chapter 7.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

*/s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney

DATED: October 10, 2025