| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for Daryl Fred Heller, the Chapter 11*<br>*Debtor and Debtor-in-Possession* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>         Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |

**DEBTOR'S REPLY TO (A) SILVERVIEW CREDIT PARTNERS, L.P.'s (I) REPLY TO DEBTOR'S BRIEF IN SUPPORT OF WHY THE COURT SHOULD NOT APPOINT A TRUSTEE OR CONVERT THE CASE PURSUANT TO 11 U.S.C. §§ 1104(a)(1), (2), 1112(b)(1); AND (II) MEMORANDUM OF LAW IN SUPPORT OF AN ORDER CONVERTING CHAPTER 11 CASE TO LIQUIDATING PROCEEDING UNDER CHAPTER 7 OR, IN THE ALTERNATIVE, APPOINTING A CHAPTER 11 TRUSTEE; AND (B) SILVERVIEW CREDIT PARTNERS, L.P.'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS REPLY AND MEMORANDUM OF LAW**

Daryl Fred Heller, the Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and

through his counsel, McManimon, Scotland & Baumann, LLC, respectfully submits his reply

("Reply") to (A) Silverview Credit Partners, L.P.'s ("Silverview") (I) Reply to Debtor's Brief in

Support of why the Court Should not Appoint a Trustee or Convert the Case Pursuant to 11 U.S.C.

§§ 1104(a)(1), (2), 1112(b)(1) [ECF 588]; and (II) Memorandum of Law in Support of an Order

Converting Chapter 11 Case to Liquidating Proceeding Under Chapter 7 or, in the Alternative,

Appointing a Chapter 11 Trustee ("Silverview Reply & Brief") [ECF 596];[1] and (B) Supplemental

---

[1] Also on October 8, 2025, Claudia Z. Springer, solely in her capacity as the chapter 7 trustee of the bankruptcy estates of Blackford ATM Fund D, LLC, Blackford ATM Ventures Fund M II, LLC, Blackford ATM Ventures Fund M IV, LLC, Blackford ATM Ventures Fund M, LLC, Blackford ATM Ventures Fund M V, LLC, and Blackford

Brief in Further Support of Silverview Reply & Brief ("Supplemental Brief") [ECF 603]. The

Debtor respectfully submits as follows:

## I.    Silverview Reply & Brief Should be Disregarded by the Court Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9006(b) for Failure to Comply with the Court's Order to Show Cause Briefing Schedule

On August 27, 2025, the Court *sua sponte* entered the Order to Show Cause ("OSC"),

which specifically ordered "*[r]esponses* to this [OSC] ***shall be filed by 10/3/25***[] *[r]eplies may be*

***filed by 10/8/25***." ECF 520 (emphasis added). Silverview not only misinterpreted the Court's OSC

briefing schedule, but also conveyed to Debtor's counsel its belief that the OSC deadline for filing

a response applied exclusively to the Debtor rather than to all parties. Moreover, Silverview

cemented its position by filing a letter on October 9, 2025 [ECF 599], in response to the Debtor's

filed letter [ECF 598], where Silverview expounds on its misguided interpretation of the OSC

briefing schedule. While this interpretation is incorrect, the responsibility to comply with

procedural requirements rests with each party.

The Court carefully crafted the OSC briefing schedule to allow all parties to receive

*responses* to the OSC by October 3, 2025, and have five (5) days to carefully review and file a

reply by October 8, 2025, all within the backdrop of the OSC hearing date of October 22, 2025.

ECF 520. Even one (1) of the Debtor's most active creditors, Prestige Funds,[2] timely filed a

response by October 3, 2025, which underscores the reasonable understanding that all parties were

to file a response by October 3, 2025, not just solely the Debtor. ECF 586. Silverview Reply &

---

ATM Ventures, LLC (collectively, the "Blackford ATM Entities"), filed the Joinder of Claudia Z. Springer, Chapter 7 Trustee of Blackford ATM Entities to the Silverview Reply & Brief ("Blackford Joinder"). ECF 597. The Debtor respectfully submits that the arguments set forth in this Reply are directly applicable to the Blackford Joinder.

[2] Prestige Funds consists of the following entities: Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A IX, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A, LLC; Prestige Fund B BTMI, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B, LLC; Prestige Fund D BTM I, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; and Prestige Fund D, LLC, WF Velocity I,LLC, WF Velocity IV, LLC, WF Velocity V, LLC, WF Velocity VI, LLC, and WF Velocity VII, LLC.

4935-0376-2034, v. 1

Brief should be disregarded, and no further relief granted to Silverview based on its noncompliant submission.

## II. Silverview Reply & Brief Amounts to *Ad Hominem* Attacks Lacking Substantive Support as to Why a Trustee Should be Appointed or the Case Converted Pursuant to 11 U.S.C. §§ 1104(a)(1), (2), 112(b)(1)

The Silverview Reply & Brief amounts to more of the same rhetoric it previously stated[3] See ECF 549. Silverview attempts to muddy the Debtor's character, yet again, with *ad hominem* attacks based on *alleged* acts – which timeframe occurred several years before the filing of this case – concerning the Debtor and Paramount Management Group, LLC ("Paramount"). Silverview sensationalizes the fact that the Debtor "faces a maximum sentence of 100 years' imprisonment" pursuant to the recent August 21, 2025 indictment of the Debtor in the Eastern District of Pennsylvania (United States v. Daryl Heller, Case 5:25-cr-00366-CH) (the "Criminal Case"). See Silverview Reply & Brief, at ⁋ 3.

There is absolutely no relevance to the OSC hearing about what sentence the Debtor could possibly receive in the Criminal Case, and Silverview's pointing out of same does nothing to advance any legitimate argument why a trustee should be appointed pursuant to 11 U.S.C. §§ 1104(a)(1), (2), 1112(b). Thus, Silverview's mentioning of the Criminal Case, and the September 2, 2025 civil enforcement action by the Securities and Exchange Commission ("SEC") against the Debtor (SEC v. Daryl F. Heller, et al., Case 5:25-cv-0536) (the "Civil Case"), reflects yet another attempt by Silverview to raise the same issue whenever the opportunity arises. Id.

As the Debtor established in his Brief in Support of Why the Court Should not Appoint a Trustee or Convert the Case Pursuant to 11 U.S.C. §§ 1104(a)(1), (2), 112(b)(1) ("Debtor's OSC Brief") [ECF 588], the Criminal Case and Civil Case are unproven allegations, and the

---

[3] See Silverview Status Letter and Request for the Immediate Appointment of a Chapter 11 Trustee. ECF 549.

4935-0376-2034, v. 1

presumption of innocence remains. Although, this "[chapter 11 case] is not such a proceeding" the issues underlying the Criminal Case and Civil Case must not prejudice the Debtor in this bankruptcy proceeding. <u>See</u> Silverview Reply & Brief, at ¶ 3. Relying on unproven allegations goes against fundamental principles of fairness and due process. Indeed, the rule of law demands that decisions in this Court be based solely on admissible evidence and established facts, not speculation or unresolved accusations.

Silverview again[4] brings the Court's attention to the bail set against the Debtor in the Criminal case. <u>Id.</u>, at ¶ 35. This is a red herring. The issue of bail is a non-issue in this bankruptcy case. The Debtor did not have to post bail. The bail applies only if the Debtor flees the Eastern District of Pennsylvania or does not appear when required in the Criminal Case. The court in the Criminal Case did not require the posting of any money or property. To the contrary, the bail was 'unsecured' and is not traditional bail, in which the latter would require the full amount be paid to the court as a deposit of release. That is not the case here. The bail is the least restrictive bail condition that could have been imposed. As this Court is aware, the Debtor has complied with all administrative and court requirements concerning his bankruptcy case, which will continue during the administration of the Debtor's Criminal Case and Civil Case. Thus, the Debtor is confident the bail will never be posted and will not harm any creditors in this bankruptcy case.

Moreover, Silverview points to the condition of release in the Criminal Case as a detriment alleging the "Debtor [is] restricted from having sole access to his finances[] . . . third-party financial services firm, Luma Financial Group [("Luma")] has been granted 'coaccess to all personal and corporate accounts' with any and all expenditures or withdrawals requiring the signature of both parties." <u>See</u> Silverview Reply & Brief, at ¶ 36. This argument is baseless

---

[4] <u>Id.</u>

4935-0376-2034, v. 1

and beyond reason. The Debtor has not ceded control or power over his financial accounts. The criminal court simply required that the same financial services firm, Luma, which reports to this Court be responsible to the criminal court as well. While Luma's signature is required for expenditures and withdrawals, the Debtor retains control over financial decisions and remains the Debtor-in-Possession in this bankruptcy case.

Silverview asserts federal prosecutors in the Criminal Case and Edward A. Philips (the "Examiner"), through the Second Interim Report of Examiner, Edward A. Phillips (Regarding Ponzi Allegation) (the "Second Examiner Report") [ECF 473], alleged ponzi-activity by the Debtor as support of why the Debtor's case should have a trustee appointed or be converted. Id., at ¶¶ 2-3, 13. The Debtor submitted the independent report of Withum Smith + Brown, PC ("Withum"), financial advisor, in support of the Debtor's OSC Brief which refutes such accusations and demands further analysis. ECF 588. Withum's report[5] refutes the Second Examiner Report on grounds Paramount did not have investors documented by factual financial and accounting records, and in essence the Examiner compared apples to oranges citing to caselaw with inapplicable examples. See Debtor OSC Brief, at ¶ 28.

The Withum report reviewed tax returns filed by independent accountants, executed agreements showing no Paramount investors, and the companies reviewed by Withum have no employees which makes review more difficult. The reason for lack of employees is due to the Prestige Funds' takeover of Paramount, in which Prestige Funds is no longer operating said entities. This has caused tens of millions of dollars of lost funds, which could be recovered if Prestige Funds being operating ATM/ Kiosks. Despite this, the Withum report is thorough and objectively questions the completeness and accuracy of the Second Examiner Report.

---

[5] Annexed as Exhibit A to the Certification of Kenneth J. DeGraw in Support of Debtor's OSC Brief. ECF 588.

4935-0376-2034, v. 1

As Silverview has proven time and time again throughout this case, it prefers to jump the gun and find the Debtor culpable of alleged acts, without allowing for proper response and analysis by the Debtor. Indeed, under Silverview's reasoning, the adversarial process would be rendered meaningless, effectively allowing the Debtor's bankruptcy case to be converted or a trustee appointed without affording the Debtor any opportunity to respond. Moreover, there was never any guarantee of payment from Paramount. Silverview's assertion that money used to pay earlier investors is false. <u>See</u> Silverview Response & Brief, at ¶ 34. Paramount was structured as a fixed payment within a waterfall framework, subject to variable adjustments, and could be terminated at any time through multiple contractual 'ripcord' provisions. Silverview's portrayal of these terms constitutes a deliberate misrepresentation intended to create a false narrative which is demonstrably untrue. <u>Id.</u>

Silverview argues that the mere filing of fifteen (15) nondischargeability complaints against the Debtor supports appointment of a trustee or conversion. <u>See</u> Silverview Reply & Brief, at ¶ 32. Moreover, the referenced nondischargeability complaints are uniformly formulaic and largely boilerplate in nature, appearing to have been prepared through a mere copy-and-paste approach, after the initial Prestige Funds' nondischargeability complaint was filed. Eight (8) of the nondischargeability complaints are from Prestige Funds' managers or their families who have no claim against the Debtor or was an investment risk that did not guarantee a return. Additionally, Prestige Funds' managers did not lose money, they had a windfall including a $75,000,000 payment. This argument fails on the same grounds why merely referencing the Criminal Case and Civil Case as grounds for appointment of a trustee or conversion is not an adequate foundation. The filing of a complaint alleges acts, which are unproven until a judgment is secured. The act of filing cannot be construed to mean the alleged acts occurred. The filing of a nondischargeability

complaint is a routine pleading in a bankruptcy case. Silverview's arguments rest on an unstable foundation, the nondischargeability complaints, the Criminal Case, and the Civil Case all remain in preliminary stages, with no findings established under any evidentiary standard. These unresolved matters provide no basis for appointing a trustee or converting the case.

Silverview argues "[t]here is no reorganizable business here[] [o]ne cannot reorganize a Ponzi scheme." See Silverview Reply & Brief, at ⁋ 3. Silverview's argument is misguided as this is an *individual* bankruptcy case, not a business. Moreover, the ponzi-allegation is alleged at Paramount, not Heller Capital Group, LLC ("HCG"), which has many entities to support the Debtor's reorganization. Silverview then states "[t]his Chapter 11 Case has been pending for eight months, yet virtually no progress has been made toward a legitimate reorganization." Id., at ⁋ 7. That assertion is inaccurate. The facts show that on August 1, 2025, the Debtor timely filed his (i) Debtor's Chapter 11 Plan (the "Plan"), and (ii) Debtor's Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Debtor's Chapter 11 Plan. ECF 433, 434. Silverview's assertion that the Debtor's Plan attempts to obfuscate this Court's authority by being "outside of the oversight of this Court—[by] 'strategical[] liquidat[ion]' [of] his undisclosed interests in undisclosed portfolio companies" is entirely unfounded. See Silverview Reply & Brief, at ⁋ 50.

The Debtor's Plan will be subject to the jurisdiction and approval of this Court until all Plan payments are made and the case is discharged. Moreover, Silverview's argument that the Debtor invoked his Fifth Amendment at the 341(a) meeting with creditors or provided evasive and incomplete testimony is untrue. Id., at ⁋ 12. In fact, the Debtor testified for hours at his 341(a) meeting. Moreover, the Debtor's Plan thoroughly addresses the Debtor's assets and his estate, mitigating any non-testimony at the 341(a) meeting. If need be, the Debtor will amend his filed Plan.

Additionally, Silverview states it is concerned with estate cash being diminished[6] and professional fees consuming the estate as a reason in support of appointment of a trustee or conversion. Id., at ¶ 47(i)-(ii). To note, the appointment of the Examiner was a compromise with creditors, in which the Examiner and his professionals have accrued substantial fees, which had the Debtor known would have occurred would not have consented to his appointment. Id., at ¶ 5. Indeed, any argument that the Debtor's estate is "collapsing," is more so attributable to the Examiner and his professionals' fees; nonetheless the Debtor's estate remains intact.[7] Id. In fact, the Debtor is working diligently on partnerships through his entities to maximize creditor returns and has even provided Silverview with a settlement offer. More poignantly, appointing a trustee and her/his professionals would increase the costs to the estate multi-fold, and reduce value of assets significantly not due to the Debtor's actions.

It is counterintuitive to argue on the one (1) hand that Silverview is concerned with amounting fees, and then on the other argue for the costly appointment of a trustee. In essence, Silverview's argument is for further depletion of estate funds, a result that runs directly counter to the best interests of creditors, including Silverview itself. Furthermore, Silverview points out that the claims filed against the Debtor's estate "totaling approximately $825,806,629.52[]" is misleading, as one (1) creditor – Prestige Funds – filed an aggregate claim of $503,290,225.46, attributable to a Pennsylvania judgment against Paramount, not the Debtor, which the Debtor has disputed through his filed Motion Expunging Claim Nos. 13 through 32 Filed by Prestige Fund A II, LLC et al. pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 [ECF 288]. Id., at ¶ 16.

---

[6] HCG does not have credit cards and much of the company's expenses, depicted on the Debtor's monthly operating reports, are expenses due and owed to the company.
[7] The status quo order entered in this case had resulted in no deterioration of the Debtor's estate. ECF 119.

Lastly, Silverview argues it is concerned with the Debtor "spending on personal luxuries" as a reason why the Court should grant the OSC. Again, another artifice to divert the Court's attention. "Debtors are also allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses." In re Downin, 284 B.R. 909, 912 (Bankr. N.D. Iowa 2002) (citing In re Gonzales, 157 B.R. 604, 608 (Bankr.E.D.Mich.1993)). If it were up to Silverview, the Debtor would be "required to live as paupers" which the Bankruptcy Code certainly does not require. In re Wessels, 311 B.R. 851 (Bankr. N.D. Iowa 2004). Silverview points to *de minimis* spending by the Debtor, on Apple streaming subscription, restaurant and alcohol expenditures,[8] clothing and retail, and charitable donations, which in the aggregate do not even amount to $1,000. See Silverview Reply & Brief, at ⁋ 47(iii). Moreover, the alleged expenditures which occurred in August 2025 at a casino – a whopping $118.96 in the aggregate, was not only a nominal amount – which Silverview seeks to exaggerate, but was not the Debtor's expenditures.[9] Id., at ⁋ 4. These expenditures are hardly excessive, and certainly do not amount to "gross mismanagement" of the Debtor's estate. Id., at ⁋ 55. Why would Silverview go out of its way to make a big deal of a $118.96 total casino expense (which isn't even the Debtor's) if it was so convinced of the alleged "Ponzi" scheme. It is a desperate attempt to castigate the Debtor to the Court.

Silverview's argument that the Debtor's estate would be underwater but for a tax refund of $89,697.79 received on or about August 2025 is misleading. Id., at ⁋ 48. The Debtor is close to forty percent (40%) under his approved budget and expenses, and Silverview is not reconciling the HCG expenses, which are noted in his monthly operating reports. Silverview paints the picture

---

[8] The Debtor notes these expenditures include gifts purchased in the ordinary course to individuals, including purchases of wine, clothes, etc.
[9] See Reply, at pg. 13.

9

that the Debtor's estate has eroded and lost value, namely because HCG reported assets of approximately $109,000,000 on or about June 2024, and in March 2025 reported assets of $83,000,000, with an impaired balance sheet of $28,000,000. Id., at ¶ 49. This is misleading as HCG had no erosion for many months leading into March 2025, which was reported to the Court in the Debtor's amended schedules. Moreover, Prestige Funds created an impairment, creditor Chicago Atlantic Admin, LLC sold assets, and Prestige Funds' manager Jerry Hostetter misappropriated estate assets, which should have gone to the Debtor's creditors. The fact of the matter is, the Debtor is net positive during the pendency of this action and will continue to operate in a fiscally responsible manner, and the Debtors' entities have more than enough value to provide for payment to the Debtor's creditors in his Plan.

The Debtor has not used the "Bankruptcy Code [as a] shield [nor for] abusive behavior" as the Debtor has filed motions to approve settlements with his creditors[10] and filed an order to preserve the status quo so as to not deplete estate assets.[11] Id., at ¶ 2. Moreover, the Debtor has only taken approximately sixty percent (60%) of his payroll to ensure more funds are available to creditors. Indeed, these are acts of a Debtor utilizing bankruptcy, not to harm creditors, but to ensure orderly administration of his estate. Silverview's highlighting of the Debtor's "refusal to testify" during the hearing to approve a settlement with Deerfield Capital, LLC ("Deerfield")  is not accurate as this was in regard to the settlement approval hearing with Orrstown Bank ("Orrstown"). The settlement hearing with Deerfield was adjourned, and Debtor never had the opportunity, if he decided to testify.[12] Id., at ¶ 10. Nonetheless, Silverview attempts to depict the

---

[10] ECF 213, 258.
[11] ECF 119.
[12] ECF 213, 258.

settlements with Deerfield and Orrstown as "self-preservation over transparency" when in reality this shows the Debtor's cooperation with creditors. Id.

Any contention that a negative inference should arise if the Debtor invokes the Fifth Amendment during the OSC hearing must be rejected. Id. Such invocation is entirely reasonable given the existence of the ongoing Criminal Case, and drawing an adverse inference under these circumstances would be improper as that would be reasonable under the circumstances of the sentence the Debtor faces therein. Id. More critical, the Debtor *consented* to the appointment of an Examiner, which conducts a forensic examination of the Debtor's assets. The Examiner has never intimated that the Debtor has not cooperated in any manner whatsoever. In fact, the opposite is true. The Debtor has reached out to the Examiner on multiple occasions to see whether he could provide further information or clarity. That is not a Debtor seeking to hide behind his Chapter 11.

The Silverview Reply & Brief is another feeble attempt by Silverview to tarnish the Debtor's character. The Debtor has exemplified competence as a debtor-in-possession, which is detailed in the Debtor's OSC Brief. ECF 588. Silverview has submitted *nothing* not already known to the Court, and based on the substance of the arguments advanced, does not support (i) a finding of "cause" under 11 U.S.C. § 1104(a)(1) for appointment of a trustee, (ii) a finding of "cause" under 11 U.S.C. § 1112(b) to support conversion of the Debtor's case, nor (iii) a finding under 11 U.S.C. § 1104(a)(2) for appointment of a trustee being in the best interests of the Debtor's creditors. Nothing has changed since the case was filed nine (9) months ago. There are no allegations that the Debtor has done anything untoward since the filing of the case. Silverview's allegations are the same it has raised a year and a half ago. There has been no harm articulated that the Debtor has caused post-petition and only unproven allegations have been raised for pre-petition acts.

Accordingly, in the absence of such proof, the case should remain in Chapter 11, and the Debtor as debtor-in-possession.

**III.    The Supplemental Brief Should be Disregarded on Procedural Grounds and the Court Should not Draw Negative Inferences from the Debtor's Invocation of his <u>Fifth Amendment During Silverview's October 9, 2025 Deposition of the Debtor</u>**

Silverview's Supplement Brief seeks to bring the Court's attention to the October 9, 2025, deposition taken by Silverview of the Debtor, in which the Debtor invoked his Fifth Amendment right against self-incrimination. As previously articulated in the Debtor's OSC Brief, although the Court can draw any inference it desires in its discretion, the Court should consider the "totality of circumstances" and the Debtor reminds the Court, any 'alleged' acts of the Debtor, occurred pre-petition over eighteen (18) months ago. <u>See</u> Debtor OSC Brief, at pg. 3. Moreover, any reasonable person involved in the ongoing Criminal Case would invoke the Fifth Amendment, which was designed as a protective mechanism to serve that purpose. Indeed, the Debtor was reasonable and justified in invoking his Fifth Amendment when questioned by Silverview, as answering questions of a creditor in bankruptcy which could lead to a detriment in the Criminal Case is understandable.

To address the Supplemental Brief, Silverview's insinuation that the "Debtor's Schedule of Assets and Liabilities and amendment thereto" were untruthful and inaccurate is false, the Debtor's initial schedules were based on older data, subsequent impairments occurred, and significant reductions were expected. <u>See</u> Supplement Brief, at ₱ 3. Silverview pointing out the "discrepancies between the Debtor's schedules and the information he reported on his personal financial statement" is misguided, as (i) the Debtor did not receive a bonus in 2023 and 2024, (ii) had significant reductions in income given depreciation, impairments caused by Prestige Funds, and one (1) time write-offs, and (iii) the valuations on his personal financial statement were accurate when developed in early 2023. <u>Id.</u>

4935-0376-2034, v. 1

Silverview's framing of the Debtor having a "gambling addiction" is slanderous, based on an August 2025 casino charges, which was not attributable to the Debtor. Id. Silverview asked the question at the deposition whether the Debtor has a gambling addiction and then uses that term in its Supplemental Brief as if it is credible. Id. Silverview's act of framing a deposition question regarding "whether the Debtor forged or falsified documents," and subsequently incorporating this unfounded assertion into its Supplemental Brief, underscores its lack of evidence to show cause why a trustee should be appointed or the case converted. Id. The Debtor has corroborating emails which show said forged or falsified documents were in fact executed by the relevant individuals. The Debtor respectfully submits that the Court should draw a negative inference against Silverview in that it is prosecuting this matter without a good faith basis.

Silverview's assertions regarding the First Examiner Report [ECF 329] and the alleged discrepancies involving ATM serial numbers, 'TID,' or 'PH' identifiers are unfounded. See Supplemental Brief, at ¶ 3. The Debtor possesses information that directly refutes these allegations, however, because this information is intertwined with matters currently at issue in the ongoing Criminal Case, the Debtor is not prepared to disclose it until those issues are properly addressed in that forum, but is prepared to show the Court at the OSC hearing examples of how the Examiner misinterpreted information. Silverview compares apples to oranges regarding its statement that the Debtor has an "inability to reconcile the Paramount ATM service provider receipts in 2022 as documented by the Examiner with the revenue Debtor's broker represented that Blackford earned from just a subset of those ATMs." Id. The Debtor is prepared to address this at the OSC hearing.

Silverview's Supplemental Brief wishes to guide the Court to make a negative inference regarding the Debtor's invocation of the Fifth Amendment at the deposition. Id., at ¶¶ 6-15. Although true, "[c]ivil courts may draw a negative inference from a witness's assertion of Fifth

Amendment privilege and refusal to testify at trial[]" drawing a negative inference is not mandatory by any means. Farace v. Indep. Fire Ins. Co., 699 F.2d 204, 210 (5th Cir. 1983). "While it is true that the invocation of the Fifth Amendment by a party in a civil proceeding is subject to the drawing of an adverse inference by the trier of fact, []such is not the case here." Matter of McGinnis, 18 B.R. 525, 527 (Bankr. N.D. Ga. 1982) (referencing Wehling v. Columbia Broad. Sys., 608 F.2d 1084 (5th Cir. 1979)). As stated in McGinnis:

> The debtor should not be unjustifiably penalized in this bankruptcy proceeding for exercising her Fifth Amendment rights. The court cannot conclude that the debtor is deriving any benefit other than that provided by law. The court concludes that the debtor's plan comports with 11 U.S.C. s 1325(a)(3), that it should be confirmed, and Brown Ford's objections should be overruled.

McGinnis, 18 B.R. at 527. Indeed, any reasonable person facing the accusations in the Criminal Case would invoke their Fifth Amendment. To answer questions to appease Silverview – a creditor in this bankruptcy case – and run the risk of potentially leading to information which could be used against the Debtor in the Criminal Case, is of course warranted and reasonable. The Debtor asserted his Fifth Amendment out of an abundance of caution, and it should not be construed as an admission that any response the Debtor would have given in the deposition would be incriminating.

Silverview's argument that an email from 2023 stated the Debtor claimed to have close to $20,000,000 in income, yet his "most recent amendment to his Schedules lists his income in 2023 as just over $2 million and his income in 2024 as even less[]" is misleading. See Supplemental Brief at ¶ 9. The concepts of bonus depreciation, impairment of assets by Prestige Funds, and one-time impairment write-offs appear to be misunderstood by Silverview. These are tax-driven adjustments, and when the one-time adjustment is properly applied, reported income is substantially higher. Moreover, Silverview's request for an income 'forecast' in August 2023 was

14

inherently flawed, as such tax realities could not have been accurately determined until September 15, 2024, when the relevant tax filings were completed. The structure involves approximately one hundred (100) entities and the issuance of one hundred (100) separate Schedule K-1s, and this email alleging "close to [$20,000,000 in Debtor's income in 2023]" was made more than a year prior to the finalization of tax returns for that tax year. Id. Silverview's cherry-picking of "the same entity [] paying a portion of the retainer for [Withum]" is wrong, as the earned income credit came was applied to the account, which was $0 at the time of the Debtor's initial schedules. Id.

Silverview's Supplemental Brief harps on the "Crown Coins Casino" expenditures as labeling of a gambling expense in a bankruptcy matter of course draws a negative connotation, however, the Debtor notes his monthly operating reports noted fraud occurred, and the amount of the alleged gambling expenditures were *di minimis*, at approximately *$120.00 total or less*. Id., at ¶ 10. Silverview wants to hang its hat on a less than $120.00 total casino expense as a "gambling addiction." Id. Like all its allegations, Silverview's enjoys stretching the truth because they have nothing else. The Debtor has previously explained he has responses to the First Examiner Report [ECF 329] regarding "the apparent sale of the same ATMs multiple times" but is preparing a response to this in the Criminal Case and cannot disclose the information at this time. Id., at ¶ 11.

Regarding the arguments at paragraph 12 of the Supplement Brief, this entire paragraph is addressed by the Withum report. The Withum report shows the Examiner Second Report analysis is incomplete because it (i) excludes hundreds of millions in profits from Paramount's hardware division, (ii) omits revenue from numerous entities directly owned by Paramount, and (iii) disregards revenue from affiliates that were actively managing the ATMs owned by the Prestige Funds. Moreover, and critically, Paramount had no investors as the Withum report explained.

Silverview argues that there is "corroborating evidence" that "two separate employees of [the Debtor's] companies . . . were applied to documents that they do not believe they ever signed." Id., at ₱ 13. The Debtor submits this is vehemently false. Randall Leaman and Barry Rynearson did in fact execute these documents, but only stated they did not recall signing same. Regarding a deposition of Barry Rynearson regarding a text message from Randall Leaman which stated that "somebody stamped [his] signature [for purchases of ATMs for Genmega]" is false, as the Debtor nor his entities had his stamp in their possession, Randall Leaman did stamp this purchase approved. Id. There is absolutely no support to the argument that the Debtor "'created and maintained reports that grossly overstated the true financial performance of the ATMs that Paramount had sold to investors.'" Id. In fact, those reports reflect 'affiliates' who were operating the ATM/ Kiosks which the Examiner ignored. Again, this is a typical Silverview apocryphal statement to excite the parties and the Court.

Silverview has already proven it is willing to forgo filing requirements when it disregarded the OSC briefing schedule and filed the Silverview Reply & Brief after the October 3, 2025, deadline. See ECF 520, 596. Silverview's actions show it thinks deadlines do not apply to it. Now Silverview files the Supplemental Brief well past the OSC briefing schedule deadline and argues this is justified because it "expressly reserved rights to submit such a supplemental brief in its Reply". See Supplemental Brief, at ₱ 16. One cannot reserve a right that has already expired.

Accordingly, the request to appoint a trustee must be denied as "cause" has not been established.

Dated: October 13, 2025                          **McMANIMON, SCOTLAND
                                                 & BAUMANN, LLC**
                                                 *Counsel for Daryl Fred Heller, the Chapter 11
                                                 Debtor and Debtor-in-Possession*

                                                 By: */s/ Sari B. Placona*
                                                        Sari B. Placona