MARTIN J. WEIS, ESQUIRE
**DILWORTH PAXSON LLP**
1650 MARKET STREET, SUITE 1200
PHILADELPHIA, PA 19103
TELEPHONE:       (215) 575-7000
FACSIMILE:         (215) 575-7200
EMAIL:                 mweis@dilworthlaw.com
*Counsel for Orrstown Bank*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| In re:<br><br>DARYL FRED HELLER,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |
|---|---|

**OBJECTIONS OF ORRSTOWN BANK TO MOTION CONCERNING PAYMENT OF ACCOUNTING FEES AND APPROVAL OF NEW BUDGET [D.I. 649] AND MOTION FOR APPROVAL OF DHQM LAND SWAP AND SALE OF MYRTLE BEACH PROPERTY [D.I. 650] AND CROSS-MOTION TO STRIKE CERTIFICATIONS OF <u>ETHAN HELLER IN SUPPORT THEREOF</u>**

Orrstown Bank hereby objects (the "Response") to the Motion Concerning (i) Payment of Accounting Fees for 2023 and 2024 Tax Returns; and (ii) Approval of Revised Accordo Operating Budget and Entry of Order Directing Disbursements (the "Disbursement Motion") (D.I. 649) and the Motion Concerning Comfort Order for (i) Approval of Land Swap of DHQM Properties LLC to Allocate and Distribute Interests in Non-Debtor Properties to Accordo, LP and QDM Properties, LLC; (ii) Approval of Sale of Myrtle Beach Property Where Accordo, LP has a Minority Interest; and for the Related Relief of an Entry of Comfort Order Approving These Transactions (D.I. 650) (the "DHQM/Apex Motion" and, together with the Disbursement Motion, the "Motions") and Cross-Motion to Strike the Certifications of Ethan Heller submitted in support of the Motions. In

1

#125340838v2

Support of the Response, Orrstown Bank intends to rely on the Certification of Martin J. Weis which is being filed with the Response (the "Orrstown Decl.").

**Summary**.

By virtue of the Motions, Accordo seeks the following relief:

- Release of funds to pay its accountant under circumstances where it was previously provided funds for that purpose pursuant to a Consent Order entered by this Court, and neither complied with that Order nor utilized the funds for that purpose.

- Release of additional funds to Accordo to utilize in accordance with a budget under circumstances where Accordo previously ignored the constraints of the prior Court Order and Court approved budget and has not complied with the preconditions to the release of funds contained in a prior Order of this Court.

- Release of funds to Accordo under circumstances where Accordo members are selectively self-dealing and not complying with requirements of Orders from a Pennsylvania Court.

- Approval of a land swap arrangement under circumstances where the interests of Orrstown Bank are not being adequately protected.

- Approval of a sale of a condominium in South Carolina under circumstances where, at a minimum, questions exist regarding (a) the sources of the funds utilized to purchase the property and the extent of Accordo's interest and (b) the proposed utilization of funds, including payments to insiders.

These requests are all being made under circumstances where Accordo and others have provided conflicting or incomplete financial information and the managing member of Accordo, who submitted sworn certifications in support of the Motions, has refused to appear at a deposition and produce requested documents. Moreover, Accordo is not adequately protecting Orrstown Bank's interests, including Orrstown Bank's interest arising out of Charging Orders, by providing additional assurances and safeguards that distributions will not be made to select members of

2

Accordo without corresponding distributions being made to Orrstown Bank on account of Orrstown Bank's Charging Orders.

**Discussion.**

Like many other scenarios in this case, a detailed factual analysis and chronology is helpful (if not necessary) to untangle the particular web at issue.

**The Bankruptcy Filing and Schedules**.

On February 10, 2025, the Debtor filed his Chapter 11 petition. In the petition he stated that his assets were between $100,000,000.00 and $500,000,000.00 and liabilities were between $100,000,000.00 and $500,000,000.00. [D.I. 1].

On February 24, 2025, the Debtor filed his Schedules and Statements of Affairs claiming assets of $227,971,500.00 and liabilities of $148,564,241.00. [D.I. 59]. Significantly, the Debtor identified Heller Capital Group as the only individual or entity which owed him money. Schedules, ¶30. In addition, in his Statement of Financial Affairs, the Debtor's list of gifts made in the two years prior to the filing included a March, 2024 gift of $240,000.00 to a "[c]ompany owned by Debtor's son, Ethan Heller" named "Apex." See D.I. 59, SOFA, Question 13.

On February 26, 2025, the Debtor amended his Schedules and Statements, eliminating the reference to the gift to Apex. See D.I. 72, SOFA, Question 13. The response that only Heller Capital Group owed him money remained unchanged.[1] At his March 31, 2025 341 meeting, in response to the counsel for the US Trustee's inquiry regarding the amendment of the Statement of Financial Affairs to eliminate the reference to Apex, the Debtor responded that his initial answer, after review with counsel, was determined to be "an administrative error":

> Q.    [O]n Document 59, Apex is listed as receiving a

---

[1] The Debtor would thereafter amend his schedules on several occasion; however, he did not change these two responses contained in the amended schedules filed at D.I. 72. See D.I. 72, 79, 129, and 552.

3

#125340838v2

> $240,000.00 gift which is no longer listed on Document 72.
>
> A. Yeah, upon further review that was a decision we came to with counsel. There was, essentially, an administrative error in the initial filing. That's all it was.
>
> Q. So there was no gift provided to Apex in March of 2024 of $240,000?
>
> A. Yes, there was not.

Orrstown Decl., Exhibit 1. Transcript of Section 341 Meeting, p. 70, lines 2-9.

**The Examiner and Examiner Reports**.

On March 14, 2025, Edward Phillips of Getzler Henrich and Associates, LLC was appointed the examiner in this case and instructed to:

> (a) investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity, if any, in the management of the affairs of the Debtor or in any entity or entities owned or controlled by the Debtor, either directly or indirectly, or through any intermediate entity including but not limited to Heller Capital Group, LLC, Heller Investment Holdings, LLC, Accordo Limited Partnership, Brookfield LP, Brigantine Group, L.P., DHRC, LLC, I Employee Services, LLC, and RAW Ventures, LLC Golden Gate Investment Company, LLC, or Paramount Management Group, LLC, (collectively "Debtor Entities"), (b) investigate any and all transfers by the Debtor and any Debtor Entities including, but not limited to, all transfers or allegations referenced in the Removed Litigation, (c) investigate the accuracy and completeness of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, including, but not limited to, the stated value of assets included therein, (d) otherwise perform the duties of an examiner set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code (collectively the "Investigation").

[D.I. 99, and 118], Examiner Order, paragraph 3.

On June 9, 2025, Mr. Phillips issued a status report in which he anticipated issuing three reports in the case. [D.I. 328].

On June 9, 2025, Mr. Phillips issued the First Interim Report of Examiner, Edward A. Phillips (Regarding Multiple Sales of the Same Automated Teller Machines to the Same or

4

Multiple Purchasers) addressing the allegations that the Debtor had pledged the same assets [ATM and bitcoin machines] to the same or multiple purchasers. [D.I. 329].

On August 13, 2025, Mr. Phillips issued the Second Interim Report of Examiner Edward A. Phillips and (II) Statement of General Legal Principles Regarding Alleged Ponzi Schemes dealing with allegations that Debtor was involved in a Ponzi scheme. [D.I. 473].

On October 24, 2025, Fred Stevens was appointed Chapter 11 Trustee and Mr. Phillips involvement as examiner largely ceased. [D.I. 616, and 625]. The final examiner reports have not been issued.

**The Charging Orders**.

On June 25, 2025, charging orders (the "Charging Orders") were entered by the Court of Common Pleas of Lancaster County, Pennsylvania against Charlene Heller's interest in Accordo and Brigantine Group Family Ltd. ("Brigantine")[2]. Orrstown Decl., Exhibits 2(a) and (b). Among other things, the Charging Orders require financial disclosures:

> 4. Unless the parties otherwise agree, Charlene Heller shall provide Orrstown Bank with detailed information concerning any and all assets corporations, partnerships, limited liability companies, or other business entities in which Accordo Limited

---

[2] Brigantine. On information and belief, Brigantine is a Pennsylvania limited liability company whose sole assets are a Florida timeshare and its ownership interests in Brookfield GP, LLC (100%) and Brookfield Partners LP (97%). Brookfield GP, LLC's sole asset is its 3% interest Brookfield Partners, LP. Orrstown Decl., Exhibit 3. Initial Responses, ¶11.

Brookfield Partners LP identified assets valued by it at $1,108,964.52, including approximately 184 acres of land on which is located a garage, lodge, as well as furniture and hunting stands and gear, equipment and vehicles. Brookfield Partners also reported current accounts receivable of $13,450.21 and a note receivable from Accordo in the amount of $95,683.63. Orrstown Decl., Exhibit 3,4. Id. and Accordo LP's List of Assets.

According to Accordo, the note is reflected in Accordo's books and records and no other document. As to the inquiries regarding the sum and substance the note, including date, repayment terms, signatories, individuals involved in its negotiation, Accordo responded "N/A." Orrstown Decl., Exhibit 5. See Second Responses, ¶8.

No further inquiries regarding Brookfield or Brigantine were answered, as the respondents, notwithstanding previously providing consolidated answers to inquiries, took the position that they were now only responding to the extent required by the Prince Street Order and that these questions were beyond its scope. See Orrstown Decl., Exhibit 5. Second Responses, ¶¶9-11.

5

      Partnership holds an interest within 30 days of this Order.

      …

8.  Unless the parties otherwise agree, Charlene Heller shall provide Orrstown Bank with detailed information concerning any and all assets corporations, partnerships, limited liability companies, or other business entities in which Brigantine holds an interest within 30 days of this Order.

Orrstown Decl., Exhibit 2(a) and (b). Charging Orders, ¶¶4,8.

**First DHQM Motion**.

On July 25, 2025, the Debtor filed the Motion Authorizing DHQM Properties, LLC to Allocate and Distribute Interests in Non-Debtor Properties to Accordo, L.P. and QDM Properties, LLC; and for Related Relief (the "First DHQM Motion") [D.I. 414].[3] In support thereof, the Debtor filed the certification of Lydia Miller, an individual who, with her husband Quinton Miller, owns QDM Properties Ltd., a corporation which, in turn, owns 50% of the interests in the entity known as DHQM. A second certification was filed by the managing member of Accordo, Ethan Heller who, with Charlene R. Heller ("Mrs. Heller"), and his sister, owns Accordo, a Pennsylvania limited liability corporation, which owns the other 50% of DHQM. By virtue of the First DHQM Motion, the Debtor requested authority for Accordo to engage in a land swap transaction whereby DHQM would divest itself of certain interests in six properties that it owns. These properties are contiguous and located in Tioga County, Pennsylvania and Steuben County, New York.

The First DHQM Motion was opposed by Deerfield and Orrstown Bank [D.I. 466 and 472]. Orrstown Bank's objections included that the swap transaction was not adequately protecting Orrstown Bank's charging lien against Mrs. Heller's interest in Accordo. The Orrstown Bank and Deerfield objections were not resolved and the first DHQM Motion was stayed pending the

---

[3] It remains unclear to Orrstown Bank why the Debtor, who professes to have no interest in Accordo, filed the First DHQM Motion (as opposed to Accordo, DHQM or QDM).

6

determination by the Court of the Rule to Show Cause regarding the appointment of a trustee. [See August 26, 2025 Minute Entry].

**The Prince Street Sale**.

On July 11, 2025, Accordo filed its Motion (the "Prince Street Motion") requesting authority to sell the property located at 415 N. Prince Street, Units 2, 3, 4/6, and 9/7, Lancaster, PA (the "Prince Street Property") (D.I. 381]. The Prince Street Property was owned by Premier Prince Street, LLC, which, in turn, was owned 50% by Accordo and 50% by Robert Horst. The Prince Street Property sale was projected to result in a recovery to Accordo of approximately $500,000.00. Prince Street Motion, Exhibit C.

On August 26, 2025, Ethan Heller submitted a certification and budget for Accordo in response to objections raised to the Prince Street Motion. [D.I. 518]. Orrstown Decl., Exhibit 6. For September, October and November, Accordo budgeted proposed cash out flows of $20,082.00, $44,015.00 and $13,756.00 respectively. The budget did not contain line items for payments to insiders or distributions to equity.

After negotiations among certain parties, on September 3, 2025, the Bankruptcy Court entered the Consent Order approving the sale of the Prince Street Property (the "Prince Street Order") which included parties' agreement to allow the Prince Street Property to be sold and proceeds to be distributed to various non-insider parties[4]. [D.I. 530]. Orrstown Decl., Exhibit 7. As to distributions to Accordo, the agreement memorialized in the Prince Street Order provided that Accordo would receive an increased September payment of $33,971.00 at the closing of the sale of the Property, with the October and November budgeted amount to be released from escrow to Accordo once Accordo provided certain agreed upon information including copies of deeds, a

---

[4] These included closing costs, the payoff of the Orrstown Bank first mortgage, and the net proceeds due to Mr. Horst.

list of assets, and Accordo's tax return for 2021-2024. Specifically, the Order provided:

> 8. Within thirty (30) days of the date of this Order, Accordo shall deliver to Orrstown Bank and Deerfield Capital, LLC (i) copies of all real estate deeds as to which Accordo is an owner, (ii) copies of its tax returns filed for the years 2021 and 2022 (iii) tax returns for 2023 and 2024, which are being prepared and such other financials as Orrstown Bank and Deerfield Capital, LLC may reasonably request, (iv) a list of Accordo's assets. (collectively the "Asset Information"), and (v) K-1's issued by Accordo for 2021-2024. Once items (i) – (iii) and (v) are delivered, the proceeds in the amount of $43,915, in accordance with paragraph 7(b)(1) above shall be released.

Prince Street Order, ¶8. [D.I. 530].

The Order reflected an increase in the amount to be distributed in September to Accordo, from the budgeted amount of $20,082.00 to $33,971.00 so as to permit it to pay its accountants. A footnote in the Order explains the increased September payment and the prerequisites for the release of additional funds thusly:

> $65,915 is the approximate amount required for operating expenses for September, October and November. Thus, on average each month is approximately $21,971. *The first month requires an additional $12,000 to pay the accountant to complete the 2023 and 2024 tax returns. The Debtor was required to retain a new accountant. Accordingly, the first month will require $33,971 and shall be paid immediately upon execution of this Consent Order.* Out of the remaining Sales Proceeds being escrowed (referred to as the "Accordo Proceeds") for October and November of $43,942, such funds shall immediately be released upon Accordo providing the deliverables pursuant to Section 8 herein. All expense amounts are subject to a ten (10%) variance.

Prince Street Order, fn. 1 (emphasis added).

On September 10, 2025, in connection with the closing of the sale of the Prince Street Property, net proceeds of $33,971 were released to Accordo, thereby giving it the requested funds to pay its accountant.

8

On September 30, 2025, in accordance with the Charging Orders, Orrstown sent counsel a series of questions regarding the assets of Brigantine.

On October 3, 2025, Accordo provided copies of deeds, the 2021-2023 tax returns, and a list of assets. It did not provide the 2024 tax return or K-1s.

On October 3, 2025, Orrstown served Accordo with its first set of questions regarding the assets of Accordo.

On October 7, 2025, Accordo advised that it needed access to additional funds to pay its accountant before the accountant would release the 2024 tax return. On or about October 8, 2025, in response to a request from Orrstown, Accordo provided a schedule of payments made by it subsequent to the entry of the Prince Street Order. That schedule shows, among other things, "Normal Course-Quarterly distributions" of $2,250.00 and $2,100.00 were paid to Ethan Heller and his sister respectively, and no payment made to the accountant and no quarterly distribution to Orrstown Bank on account of its Charging Orders against Charlene Heller. See Orrstown Decl., Exhibits 8, 13. Emails dated October 7 and 8, 2025 and related schedule of payments.

Thereafter, both Deerfield and Orrstown declined the request to release additional funds.

On October 20, 2025, Orrstown and Deerfield received Responses of Accordo to Initial Questions of Orrstown Bank (the "First Response"), Orrstown Decl., Exhibit 3, along with additional documents bates stamped ALP 2414-21. The responses to the questions sent by Orrstown on September 30, 2025 regarding Brigantine et al were included with and consolidated into the First Response.

On October 29, 2025, Orrstown Bank served its Second Set of Questions Dated October 29, 2025 Regarding Accordo Limited Partnership's Assets. Because the First Responses provided consolidated answers to questions addressed to Accordo and Brigantine, this second set of

9

questions included questions regarding Brigantine and its affiliates.

**The Motions**.

On November 12, 2025, Accordo filed the Disbursement Motion, which relies upon the certification of Ethan Heller attached thereto.

On November 13, 2025, Accordo filed the DHQM/Apex Motion. The DHQM/Apex Motion relies upon the certification of Ethan Heller attached thereto.

**The Deposition Requests**.

On November 14, 2025, Orrstown served its notice of deposition of Ethan Heller in connection with the Disbursement Motion. Orrstown Decl., Exhibit 9.

On November 17, 2025, Orrstown served its notice of deposition of Ethan Heller in connection with the DHQM/Apex Motion.[5] Orrstown Decl., Exhibit 10.

On November 17, 2025, Accordo served Accordo Limited Partnership's Responses to Orrstown Bank's Second Set of Questions Dated October 29, 2025 Regarding Accordo Limited Partnership's Assets (the "Second Responses"). Orrstown Decl., Exhibits 5, 11.

On November 17, 2025, Accordo advised that it would not be producing Ethan Heller for a deposition. See Orrstown Decl., Exhibit 11 letter dated November 17, 2025 from Richard Trenk, Esquire.

On November 19, 2025, Orrstown Bank sent a letter outlining the chronology of events and urging counsel to reconsider the position regarding not producing Ethan Heller for a deposition. See Orrstown Decl., Exhibit 12 letter dated November 19, 2025 from Martin J. Weis, Esquire.

On November 20, 2025 counsel for Orrstown Bank met and conferred with counsel for

---

[5] That deposition was scheduled for the same time and place as the deposition in connection with the Disbursement Motion.

10

#125340838v2

Accordo, Brigantine, Brookfield Partners, Charlene Heller, Ethan Heller, and Taite Heller. No resolution was reached and Ethan Heller did not appear for his deposition.

**The Disbursement Motion should be denied**.

The Disbursement Motion seeks authority to utilize $125,409.00 of funds escrowed from the Prince Street Property sale in accordance with a proposed revised budget. Included in the requested utilization is the sum $26,300.00 to pay the CPA who prepared Accordo's delinquent tax returns for 2023 and 2024 and declined to release the 2024 return due to nonpayment.

Orrstown Bank is the holder of the charging liens against the 33% interest of Mrs. Heller in Accordo. Orrstown Bank is also a party and creditor in interest in the bankruptcy case.[6] Orrstown Bank's objects to the Disbursement Motion in that Accordo has not demonstrated that Orrstown Bank's interests are adequately protected and that it does not have the requisite information to make an informed decision on the propriety of the requested relief.

> •As set forth in the Prince Street Order, Accordo was to utilize the increased September funds to pay its accountant. It did not.
>
> •The budget provided by Ethan Heller in August 2025 and pursuant to which Accordo was to operate makes no provisions for distributions of payments to insiders or equity. Accordo made distributions to insiders and equity.
>
> •Under Pennsylvania law, by virtue of the Charing Order, Accordo was legally required to make distributions to all members of its limited liability company, *pari passu.* 15 Pa.C.S.A. §8844(a)[7]. Here, Accordo did not make

---

[6] See Proofs of Claim 48, 49, 50, 51, 53 and 62.

[7] (a) General rule.--Any distribution made by a limited liability company before its dissolution and winding up shall be in equal shares among members and persons dissociated as members, except as provided in section 8852(b) (relating to transfer of transferable interest) or to the extent necessary to comply with a charging order in effect under section 8853 (relating to charging order).

11

#125340838v2

    distributions to Charlene Heller despite making distributions to Ethan Heller and his sister.

    •The financial information provided by Accordo and its affiliates is incomplete, yet Accordo and the affiliates are unwilling to provide additional information.

    •The Disbursement Motion relies on the certification of Ethan Heller; yet Accordo will not produce Ethan Heller for deposition.

  Accordo is asking this Court to release funds to it and approve its operation under a revised budget. Accordo, however, has not demonstrated a track record of compliance with its obligations and prior Orders of Court and, as such, does not warrant the trust and confidence of this Court, Orrstown Bank or the creditors.

  The Court should not countenance this behavior and should deny the Disbursement Motion. Alternatively, at a minimum, this Court should put additional safeguards in place, including independent management and a requirement that Accordo cease making distributions to only certain members and not to Orrstown Bank on account of its lien against the interest of Mrs. Heller.

**The Court should not approve the DHQM Land Swap**.

  Subsequent to the filing of its objection to the First DHQM Motion, Orrstown Bank learned, largely through voluntary disclosures by QDM and the First and Second Responses, that QDM, and/or Mr. and Mrs. Miller and Accordo have multiple other business relationships. These include:

    •Ownership by DHQM of (3) additional parcels of land, totaling 165 acres, which are adjacent to parcels proposed to be swapped.

    •Ownership of a 50% interest in an entity known as DHQM2 (with QDM owning the other 50%). DHQM2 reportedly owns a trailer park and other real property in Knoxville, Tioga County, Pennsylvania

---

15 Pa.C.S.A. §8844.

#125340838v2

and receives income from mobile home rentals, mobile home lot rentals, and an Airbnb property. The book value of the trailer park and eleven other properties owned by DHQM2, according to Accordo, is $946,000.00. Accordo's list of assets lists the value of the investment in DHQM2 LLC as $124,014.00.

- Ownership of a 50% interest in DHQM3 (with QDM having the other 50%). This entity invested in the Glorious Cannabis entity.

- Ownership of a 25% interest in an entity known as DQCT, LLC, in which QDM is also a 25% interest holder. DCQT owns ninety acres of land plus equipment and is valued by Accordo on its balance sheet at $55,976.19. (Despite requests, the address of the DCQT property has not been provided.)

- Ownership of a 33.33% interest in an entity known as DCT Ventures LLC. Per the Accordo balance sheet, DCT owes 422 acres of land plus equipment which is collectively valued at $372,711.96. And while Accordo is identified as the managing partner of DCT, Quinton Miller manages this property. Despite requests, the address for the 422 acre property has not been provided.

Given these relationships and unwillingness to provide additional information, the Court should scrutinize the swap transactions under the higher standard of entire fairness. Applying this test requires the movant to demonstrate that each element of the transaction was fair as to both process and price and that each aspect of the transaction was properly structured, negotiated and noticed. See *Calma v. Templeton*, 114 A.3d 563, 577 (Del. Ch. 2015) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (business judgment standard inapplicable if at least half of the directors who approved a business decision are not independent or disinterested, in which case the Court reviews the directors' decision under the entire fairness standard, and the directors must establish "to the court's satisfaction that the transaction was the product of both fair dealing and fair price.")

This heightened standard is particularly appropriate where the movant is not cooperating in the discovery process and questionable decisions are being made. The land swap contemplated

here will directly affect the asset composition of Accordo and the impact of the Charging Orders and hence should be strictly scrutinized.

**The Apex Sale should not be approved.**

Included in the DHQM/Apex Motion is a request to approve the sale by Apex Investment Holdings LLC of a condominium in South Myrtle Beach, South Carolina to a third party for $231,000.00. According to the motion, the property was purchased in May, 2024 for $243,000.77. DHQM/Apex Motion, ¶17. Included in the Apex sale request is a proposed schedule of distributions which lists a payment to the estate of Daryl Heller of $18,475.37 on account of a reimbursement for furniture; and a payment of $14,172.18 to Ethan Heller to reimburse him for expenses. The schedule of proposed disbursements shows that the net proceeds from the sale will be $174,440.39. DHQM/Apex Motion, ¶28.

In his bankruptcy schedules, the Debtor does not identify Apex as owing him any money. The schedules were amended on several occasions; however, this answer to question 30 never changed. At a minimum this disbursement should not be approved based on this record.

Accordo's disclosures regarding Apex have also been suspect. The First Responses and Accordo balance sheet do not contain the words "Apex" or "Apex Investment Holdings LLC" on them.

The Second Responses (submitted after the Apex Motion was filed) explain that the entity in the First Responses and the Accordo list of assets listed as "AIH, LLC" is actually "Apex Investment Holdings, LLC," and that it has three members, Accordo (30%); Ethan Heller (40%); and Dakota Enck (30%). See Orrstown Decl., Exhibit 5. Second Responses, ¶12(e.).

By comparison, the First Responses and the Accordo asset list reveal that "AIH, LLC" has two members (Ethan Heller and Accordo), and Accordo's investment in it is worth

14

#125340838v2

$240,733.00. Orrstown Decl., Exhibits 3, 4. First Response, ¶12; Asset list, p.2. This value is strikingly similar to the gift to Apex identified in the initial SOFAs and the original May, 2024 purchase price of the subject property, identified in the motion.

The Court should not approve the sale as the evidence regarding Apex and its relationship with Accordo is conflicting. And as set forth in the cross-motion to strike filed herewith, the Court should not approve the DHQM/Apex Motion given Ethan Heller's unwillingness to appear at a deposition.

In addition, it is unclear that this is a fair price and that Accordo's interest is correctly identified. According to the Accordo balance sheet, the Accordo investment in AIH is $240,733.00. If that is 30% of the value, the property should be worth in excess of $800,000.00.[8] If, however, Accordo paid the purchase price, Accordo should be entitled to the entirety of the proceeds.

Given these discrepancies and short falls and unwillingness to explain, Orrstown Bank's interests in its charging liens are not being adequately protected. The request to approve the Apex sale should be denied.

The DHQM/Apex Motion also seeks leave to utilize proceeds of the sale without restriction. As set forth above, Accordo has not complied with the Charging Orders or the restrictions set forth in the Prince Street Order. As such, the Court should not, if it is inclined to approve the sale, allow unfettered access to these proceeds. Orrstown Bank's interest needs to be adequately protected and the Court should condition any relief short of denial of the DHQM/Apex Motion on adequate protection being provided to Orrstown Bank. Such adequate protection would include cash payments on account of its or Mrs. Heller's interests, better

---

[8] Stated differently, 30% of the net proceeds of $174,440.39 would yield $52,332.12 to Accordo on an 18 month $240,733 real estate investment.

financial reporting (including a fuller picture of the asset, liabilities and business plans of Accordo and its affiliates), independent management, and replacement liens to account for any diminution in value caused by the contemplated transactions.

**Cross Motion to Strike Certifications of Ethan Heller.**

The Court should strike the certifications of Ethan Heller submitted in connection with the Motions due to his unwillingness to attend the deposition scheduled in connection therewith. In the alternative, the Court should adjourn the Motions and require Ethan Heller to appear for an in person deposition and produce the requested documents before the Court considers the Motions.

**The Motions.**

The Motions are a contested matter subject to Bankruptcy Rule 9014. Bankruptcy Rule 9014 (a). Pursuant to Bankruptcy Rule 9014 (c), certain 7000 series rules applicable to adversary proceedings, including rules 7030 and 7037, apply to motion practice. Bankruptcy Rule 9014 (c)(1). Rule 7030 incorporates Federal Rule 30 regarding depositions by oral examination. Bankruptcy Rule 7037 incorporates Federal Rule 37 regarding the failure to cooperate in discovery and sanctions.

In the case at bar, Ethan Heller has submitted no less than four certifications under oath in support of contested motions, including the two recent declarations in support of the Motions.

**The Deposition Notices**.

In response to these declarations, Orrstown Bank promptly served notices of deposition together with requests for production of documents. By letter dated November 17, 2025, counsel for Accordo and Ethan Heller advised that Ethan Heller would not be attending the scheduled deposition. Orrstown Decl., Exhibit 11. On November 19, 2025, counsel for Orrstown Bank sent a letter to counsel for Accordo and Ethan Heller regarding his non-attendance and requested that

16

his position be reconsidered. Orrstown Decl., Exhibit 12. On November 20, 2025, the parties met and conferred but were unable to resolve the issue.

By virtue of his submission of sworn statements in support of the Motions, Ethan Heller has made himself a witness in this matter and the subject of cross examination at a hearing. See *In re Alston v. DeAngelis (In re Alston),* 2013 U.S. Dist. LEXIS 168661 (E.D. Pa. Nov. 27, 2013)(affirming bankruptcy court's refusal to consider debtor's affidavit filed the evening before a motion to dismiss where the debtor was not available for cross examination).

Counsel for Accordo and Ethan Heller has suggested that the responses to the questions raised regarding Accordo's assets suffice and that he intends to cooperate with the trustee and thus no deposition is necessary.  Orrstown Decl., Exhibit 11.

Ethan Heller's intention to cooperate with the trustee, however, does not relieve him of any obligation to cooperate with other creditors and parties in interests. And as set forth above, the responses are incomplete, in some instances confusing, not given under oath, and do not deal with other inconsistencies in the record (e.g., sources of funds for the purchase by Apex of the South Carolina property). The deposition of Ethan Heller should clarify and supplement some of the information and would likely serve to streamline the proceedings on the Motions as it will better permit Orrstown Bank to focus the evidence and narrow its inquiries.

Pursuant to Rule 37(d), a party (or its managing agent) which fails to appear at a deposition is subject to sanctions available under Rule 37(b)(2). The sanctions available to the Court under Rule 37(b)(2) include prohibiting a party from supporting designated claims or introducing designated matters into evidence or striking pleadings in whole or in part. Fed.R.Civ.P. 37(b)(2)(ii), (iii). Consequently, Orrstown Bank would respectfully request that the Court either strike the certifications in support of the Motions or, in the alternative, require Ethan Heller to

attend an in-person deposition at which he produces the requested documents prior to the Court hearing the Motions.

**Conclusion**.

WHEREFORE, Orrstown Bank respectfully requests that this Court enter an Order denying the Motion Concerning Payment of Accounting Fees and Approval of New Budget and Motion for Approval of DHQM Land Swap and Sale of Myrtle Beach Property and grant such other and further relief, including granting the Cross-Motion to Strike Certifications of Ethan Heller, as the Court deems appropriate.

Date: December 2, 2025

/s/ *Martin J. Weis*
Martin J. Weis
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
mweis@dilworthlaw.com
Attorney for Orrstown Bank