NANCY ISAACSON, ESQ.
**GREENBAUM ROWE SMITH & DAVIS LLP**
75 LIVINGSTON Avenue
Roseland, New Jersey 07068
973-577-1930
nisaacson@greenbaumlaw.com
*Counsel for Randall Leaman*

## UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| **DARYL FRED HELLER** | **Case No.: 25-11354 JNP** |
| Debtor. | |
| **RANDALL LEAMAN,** | |
| Plaintiff, | |
| vs. | **Adv. Pro. No.:** |
| **DARYL FRED HELLER,** | |
| Defendant. | |

## COMPLAINT FOR DENIAL OF DISCHARGE PURSUANT TO
## 11 U.S.C. § 523 (a) (2), (4) and (6)

Randall Leaman ("Plaintiff") by and through his undersigned counsel, files this Complaint

against Daryl Fred Heller (the "Debtor" or "Defendant") and respectfully states as follows:

1.      Plaintiff is an individual residing at 44 Pintail Turn, Lititz, PA 17543 and the former

Chief Executive Officer of Paramount Management Group, LLC, a Pennsylvania limited liability

company.

2.      Debtor, Daryl Heller, is an adult individual and businessman who resides and

conducted business in Lancaster County, Pennsylvania. Debtor is the CEO of Heller Capital Group,

LLC, a limited liability company and the manager of Heller Investment Holdings, LLC. These entities maintain offices at 415 North Prince Street, Lancaster, PA 17603.

## JURISDICTION AND VENUE

3.      This court has jurisdiction of the subject matter of this adversary proceeding Pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This adversary proceeding arises out of and is related to the Chapter 7 case of Daryl Fred Heller, Case No.: 25-11359 JNP pending before this Court.

5.      This adversary proceeding arises under the equitable powers of the court as set forth in 11 U.S.C. § 105(a), and under 11 U.S.C. § 523(a)(2), (4) and (6) and Bankruptcy Rule 7001(f).

6.      Pursuant to Bankruptcy Rule 7008, Plaintiff hereby consents to the entry of final order or judgment in this matter by the bankruptcy court.

7.      This is a core proceeding over which this court has jurisdiction Pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (J) and (O).

8.      The venue is proper in this core proceeding Pursuant to 28 U.S.C. § 1409.

9.      Pursuant to Sections 523(a) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2), (4) and (6), under circumstances such as those alleged in this Adversary Complaint, the Court shall not grant, and the Debtor shall be denied a discharge of his debt to Plaintiff.

## PARTIES

10.     Plaintiff is the former Chief Executive Officer of Paramount Management Group, LLC, a Pennsylvania limited liability company ("Paramount").

11.     Defendant, Darly Heller is the Debtor and 100% owner of and the chief executive officer of Heller Capital Group, LLC and Heller Investment Holdings ("Heller Capital" and "HIH"). Heller Capital owned 83% of Paramount, Dennis Ream owned 5% and Plaintiff owned 12%.

12.     Defendant was the Chairman of the Board of Paramount through Heller Capital.

## FACTUAL BACKGROUND

13. Defendant filed a Voluntary Petition for Relief Under Title 11, Chapter 11, of the United States Code (the "Bankruptcy Code") on February 10, 2025 (the "Petition Date") in the United States Bankruptcy Court for the District of New Jersey.

14. On October 20, 2025, the Debtor consented to the conversion of his Chapter 11 case to one under Chapter 7 of the Code.

15. On October 28, 2025, Fred Stevens, Esq. was appointed as Debtor's Chapter 7 Trustee ("Trustee") (Doc No. 629).

16. Plaintiff was employed by Paramount as its Chief Executive Officer.

17. On or about August 25, 2025, the Grand Jury for the United States District Court for the Eastern District of Pennsylvania issued an indictment under United States of America v. Daryl F. Heller, Case 5:25-cr-00366-CH ("Indictment") against Defendant finding that, *inter alia,* Paramount purchased Automatic Teller Machines ("ATM") in the Eastern District of Pennsylvania and throughout the country, Defendant caused Paramount to sell some of the ATMs to third party investors and provide processing services for those ATMs for a fee. The Indictment at paragraph 6 further found that Defendant created and maintained a separate set of "false and fraudulent records that grossly overstated the number of ATMs that Paramount purportedly sold to and operated for investors and grossly overstate the financial performance of these ATMs."

18. At all times relevant, Defendant was cognizant of Paramount's financial condition, controlled Paramount's operations and directed and controlled the maintenance of separate books and records for Paramount.

19. Plaintiff and Paramount were parties to an Employment Agreement effective July 1, 2019 (the "Employment Agreement");

20. On or about December 12, 2024, Paramount, Debtor and Plaintiff entered into a Separation Agreement to confirm the termination of Plaintiff's employment with Paramount

("Separation Agreement").

21.   Debtor personally guaranteed all provisions of the Separation Agreement.

22.   In the Separation Agreement, Plaintiff is referred to as the **Employee** and Paramount is referred to as the **Employer**.

23.   In consideration of Plaintiff's termination of his employment with Paramount and Defendant, the Separation Agreement promised Plaintiff:

(a)   **Accrued Obligations.** On the first regular payroll date following the Termination Date, Employer shall pay Employee all base salary earned but unpaid as of the Termination Date. In addition, Employee shall submit a final request for reimbursement of any outstanding business expenses, together with such substantiation as may be requested or required pursuant to the Company's reimbursement policy, no later than fifteen (15) business days following the Termination Date and shall receive payment of reimbursable expenses within fifteen (15) business days thereafter. Reimbursement under this paragraph shall include all company expenses paid personally by Employee on Employee's personal credit card.

(b)   **Termination Payments.** Subject to Employee's compliance with all covenants herein and such other agreements that he has entered into with Employer on even date herewith, Employer agrees to continue to pay Employee his base salary ($13,547.50 paid bi-weekly) on every payroll date for the next twelve (12) months, concluding with the payroll date occurring on or after December 1 , 2025 (the Termination Payments totaling on $352,235). Employee acknowledges that, except for the Termination Payments agreed to herein, he is not entitled to any other payment whatsoever incidental to his employment by the Company or any of its affiliates, including, but not limited to, payment in the nature of severance or termination pay from the Company, and that the Termination Payment is in full satisfaction of all obligations owed to him by the Company, except as set forth in Sections 2(a) and 2(c) hereof.

(c)   **Qualified Plans/COBRA.** Subject to all terms and conditions included in such plans, Employee shall be entitled to all vested benefits under any tax qualified pension plan of the Company and continuation of health insurance benefits to the extent provided in Section 4980B of the Internal Revenue Code of 1986, as amended (the "Code") and Section 601 of the Employee Retirement Income Security Act of 1974, as amended (which provisions are commonly known as "COBRA"). If Employee continues his health insurance benefits under COBRA, the Company shall pay the full expense through July 2025 after which any continuation coverage shall be paid solely by the Employee.

(d)   **Director and Officer Insurance and Indemnification.** The Company agrees to continue to maintain directors' and officers' liability insurance covering Employee to the fullest extent allowable by law until such time as suits against Employee with respect to his provision of services to the Company are no longer permitted by law. The Company shall defend and indemnify Employee in any action against Employee with respect to his provision

of services to the Company to the fullest extent allowable by law, except in such instances involving Employee's fraud, gross negligence or willful misconduct.

24.     In addition to the above monetary considerations, Paramount and Defendant promised in the Separation Agreement, as guaranteed by Defendant, Plaintiff was also to promised:

**(e)**     Notwithstanding any other provision of this Agreement, Employer hereby agrees to continually defend and indemnify Employee with regard to any future action by Orrstown Bank regarding the loan personally guaranteed by Employee on behalf of Company to acquire First Regents Banc Services and Equipment.

25.     Plaintiff has not received any monetary or non-monetary promises under the Separation Agreement from Paramount and guaranteed by Defendant for his termination of employment pursuant to the Separation Agreement

26.     Plaintiff calculates the amount due to him as follows:

| | | |
|---|---|---:|
| Paramount Management Group, LLC (PMG) Stock | $ | 7,100,000 |
| Interest on PMG Stock | $ | 1,065,000 |
| Last week of pay from PMG | $ | 3,860 |
| 6 months of COBRA separation agreement | $ | 15,389 |
| Orrstown Bank | $ | 100,000 |
| Fulton Bank Mortgage Late Fees* | $ | 21,253 |
| Severance -- 12 months | $ | 352,235 |
| | **$** | **8,657,737** |

27.     In exchange for the promises, Defendant, *inter alia,* released Paramount from any and all claims.

28.     Defendant, at all times relevant, had control of Paramount and caused Paramount to enter into the Separation Agreement to induce Plaintiff's termination of his employment.

29.     Defendant guaranteed the obligation under the Separation Agreement to further induce Plaintiff's termination of his employment.

30.     Defendant, as the perpetrator of the fraud alleged in the Indictment and in total control of the double books and records Defendant directed and maintained for Paramount, knew that the promises made to Plaintiff in the Separation Agreement that he guaranteed could not and would not be satisfied by Paramount or Defendant.

31.     When Debtor signed the Separation Agreement as its guarantor of promises and payments, he knew that he did not have the financial wherewithal to satisfy his guaranty of the promises made by Paramount in the Separation Agreement to Plaintiff.

**COUNT ONE – DENIAL OF DISCHARGE FOR OBTAINING MONEY OR PROPERTY BY FALSE PRETENSES OR ACTUAL FRAUD. PURSUANT TO SECTION 11 U.S.C. § 523(a)(2)**

32.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Adversary Proceeding as if fully set forth herein.

33.     Defendant obtained Plaintiff's agreement to the Separation Agreement by false pretenses or actual fraud.

34.     Under Section 11 U.S.C. § 523(a)(2), the court shall not grant, and a debtor shall be denied a discharge where the debtor obtained money or property by false pretenses or actual fraud.

**WHEREFORE**, Plaintiff demands judgment in its favor and against the Defendant denying Defendant a discharge of **$ 8,657,737** pursuant to 11 U.S.C. § 523(a)(2), and awarding attorneys' fees, costs and such other relief as the Court deems equitable and just.

**COUNT TWO – DENIAL OF DISCHARGE FOR FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY, EMBEZZLEMENT OR LARCENY PURSUANT TO 11 U.S.C. § 523(a)(4),**

35.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Adversary Proceeding as if fully set forth herein.

36.     Defendant as Chairman of Paramount acted in a fiduciary capacity.

37. Defendant, by directing and maintaining second books and records for Paramount and advising Plaintiff that Paramount's financial condition was stable, induced Plaintiff to continue to provide employment services to Paramount.

38. At all times relevant, Defendant, knowing that Paramount was not a solvent entity, induced Plaintiff to continue to provide services to Paramount.

39. Defendant, as a fiduciary, owed Plaintiff a duty to accurately and truthfully represent the financial condition of Paramount.

40. Defendant breached his fiduciary duties he owed to Plaintiff as an employee of Paramount by failing to inform him of Paramount's financial condition inducing Plaintiff to enter into the Separation Agreement.

41. Under Section 11 U.S.C. § 523(a)(4), the court shall not grant, and a debtor shall be denied a discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

**WHEREFORE**, Plaintiff demands judgment in its favor and against the Defendant denying Defendant a discharge of **$ 8,657,737**, while acting as a fiduciary to Plaintiff, embezzled, committed larceny pursuant to 11 U.S.C. § 523(a)(4), and awarding attorneys' fees, costs and such other relief as the Court deems equitable and just.

### COUNT THREE – DENIAL OF DISCHARGE FOR WILLFUL AND MALICIOUS INJURY BY THE DEBTOR TO ANOTHER ENTITY OR TO THE PROPERTY OF ANOTHER ENTITY PURSUANT TO 11 U.S.C. § 523(a)(6),

42. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Adversary Proceeding as if fully set forth herein.

43. As stated above, Defendant was in control of Paramount and its books and records.

44. Defendant used his control of Paramount to create alternate books and records for Paramount to intentionally and willfully cause Plaintiff financial damage.  Defendant knew at all times

of Plaintiff's employment by Paramount that he directed alternate books and records for Paramount to induce Plaintiff to remain employed and then to execute the Separation Agreement.

45.    Defendant's intentional and malicious conduct has caused and continues to cause Plaintiff substantial damages.

46.    Under Section 11 U.S.C. § 523(a)(6), the court shall not grant, and a debtor shall be denied a discharge for willful and malicious injury by the debtor to another entity or to the property of another entity.

**WHEREFORE**, Plaintiff demands judgment in its favor and against the Defendant denying Defendant a discharge of **$ 8,657,737**, for Defendant's willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), and awarding attorneys' fees, costs and such other relief as the Court deems equitable and just.

GREENBAUM ROWE SMITH & DAVIS, LLP
Attorneys for Plaintiff, Randall Leaman

By:    */s/ Nancy Isaacson*
          NANCY ISAACSON

Dated:  April 27, 2026